Victoria Lopez (330042)
American Civil Liberties Union
Foundation of Arizona
3707 North 7th Street, Suite 235
Phoenix, Arizona 85014
Telephone: (602) 650-1854
vlopez@acluaz.org
*Counsel for Plaintiffs*

Emily Nestler, *pro hac vice*
Jen Samantha D. Rasay, *pro hac vice*
Center For Reproductive Rights
1634 Eye Street, NW, Suite 600
Washington, DC 20006
Telephone: (202) 629-2657
enestler@reprorights.org
jrasay@reprorights.org
*Counsel for Paul A. Isaacson, M.D.,
National Council of Jewish Women
(Arizona Section), Inc. and Arizona
National Organization for Women*

COUNSEL CONTINUED ON NEXT PAGE

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF ARIZONA**

| | |
|---|---|
| Paul A. Isaacson, M.D., on behalf of himself and his patients, et al., <br><br> Plaintiffs, <br><br> v. <br><br> Mark Brnovich, Attorney General of Arizona, in his official capacity; et al., <br><br> Defendants. | Case No. 2:21-CV-01417-DLR <br><br> **PLAINTIFFS' REPLY IN SUPPORT OF MOTION FOR PRELIMINARY INJUNCTION** |

Gail Deady, *pro hac vice*
Center For Reproductive Rights
199 Water Street
New York, NY 10038
Telephone: (917) 637-3600
gdeady@reprorights.org
*Counsel for Paul A. Isaacson, M.D., National Council of Jewish Women (Arizona Section), Inc. and Arizona National Organization for Women*

Ruth E. Harlow, *pro hac vice*
Rebecca Chan, *pro hac vice*
American Civil Liberties Union
125 Broad Street, 18th Floor
New York, NY 10004
Telephone: (212) 549-2500
rharlow@aclu.org
rebeccac@aclu.org
*Counsel for Eric M. Reuss, M.D., M.P.H., and Arizona Medical Association*

# **TABLE OF CONTENTS**

I. S.B. 1457 IMPOSES AN UNLAWFUL BAN ON PREVIABILITY ABORTION ... 1

II. THE REASON BAN IMPOSES AN UNCONSTITUTIONAL CONDITION ....... 4

III. THE REASON BAN SCHEME IS UNCONSTITUTIONALLY VAGUE ............. 6

    A. Plaintiffs Properly Assert a Facial Claim That Is Ripe for Review ................ 6

    B. The Reason Ban Scheme is Unconstitutionally Vague ................................. 7

IV. THE PERSONHOOD PROVISION IS UNCONSTITUTIONALLY VAGUE ...... 9

    A. The Personhood Provision is Facially Unlawful ............................................ 9

    B. Plaintiffs' Challenge to the Personhood Provision is Ripe for Review ........ 11

V. CONCLUSION ................................................................................................. 11

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Babbitt v. United Farm Wrokers Nat. Union*,
   442 U.S. 289 (1979) .................................................................................................. 11

*Baggett v. Bullit*,
   377 U.S. 360 (1964) .................................................................................................... 7

*Colautti v. Franklin*,
   439 U.S. 379 (1979) .................................................................................................... 9

*Diamond v. Charles*,
   476 U.S. 54 (1986) ...................................................................................................... 7

*Doe v. Bolton*,
   410 U.S. 179 (1973) .................................................................................................... 7

*Epona v. Cty. of Ventura*,
   876 F.3d 1214 (9th Cir. 2017) .................................................................................... 5

*Gomillion v. Lightfoot*,
   364 U.S. 339 (1960) .................................................................................................... 4

*Guerrero v. Whitaker*,
   908 F.3d 541 (9th Cir. 2018) ................................................................................ 6, 10

*Isaacson v. Horne*,
   716 F.3d 1213 (9th Cir. 2013) ............................................................................ 1, 2, 3

*Johnson v. United States*,
   576 U.S. 591 (2015) .................................................................................................. 10

*June Med. Servs. L. L. C. v. Russo*,
   140 S. Ct. 2103 (2020) ................................................................................................ 5

*Koontz v. St. Johns River Water Mgmt. Dist.*,
   570 U.S. 595 (2013) .................................................................................................... 4

*Little Rock Family Planning Servs. v. Rutledge*,
   984 F.3d 682 (8th Cir. 2021) .................................................................................. 2, 8

*McCormack v. Herzog*,
   788 F.3d 1017 (9th Cir. 2015) .................................................................................. 9

*MedImmune, Inc. v. Genentech, Inc.*,
   549 U.S. 118 (2007) ............................................................................................ 7, 11

*Memphis Ctr. for Reprod. Health, et al v. Slatery*,
   2020 WL 4274198 (M.D. Tenn July 24, 2021) ..................................................... 7, 9

*Nat'l Assoc. for the Advancement of Colored People v. Horne*,
   2013 WL 55194514 (D. Ariz. Oct. 3, 2013) ............................................................... 4

*Planned Parenthood of Ind. & Ky., Inc. v. Comm'r of Ind. State Dep't of Health*,
   888 F.3d 300 (7th Cir. 2018), *reversed in part on other grouds* .............................. 2, 8

*Planned Parenthood of S. Ariz. v. Lawall*,
   180 F.3d 1022 (9th Cir. 2013), *opinion amended on denial of reh'g*, 193
   F.3d 1042 (9th Cir. 1999) ........................................................................................ 6

*Planned Parenthood of Se. Pa. v. Casey*,
   505 U.S. 833 (1992) .............................................................................................. 2, 3

*Preterm-Cleveland v. McCloud*,
   994 F.3d 512 (6th Cir. 2021) ................................................................................ 2, 4

*Sessions v. Dimaya*,
   138 S. Ct. 1204 (2018) ............................................................................................ 10

*U.S. v. Scott*,
   450 F.3d 863 (9th Cir. 2006) .................................................................................... 5

*United States v. Davis*,
   139 S. Ct. 2319 (2019) ............................................................................................ 11

*Village of Hoffman Estates v. Flipside, Hoffman Estates, Inc.*,
   455 U.S. 489 (1982) .................................................................................................. 9

**Statutes**

A.R.S. § 36-2157(1)-(2) .................................................................................................. 8

A.R.S. § 36-2158(A)(1)-(2) ............................................................................................. 8

A.R.S. § 36-2161(A)(12)(c)(i)-(iii) .................................................................................. 8

The challenged Act is unconstitutional because it bans abortion, and incoherently alters the entire Arizona Revised Statutes by broadly annointing fertilized eggs and fetuses with undefined "personhood" rights. This sweeping law completely eliminates previability abortion access for patients whose circumstances create any inference of a fetal diagnosis, and threatens medical professionals and pregnant people with arbitrary prosecution.

Because the Act is unconstitutional under decades of binding precedent, Defendants attempt to obfuscate by raising procedural defenses—all of which lack merit. But, Defendants' response is most telling for what it does not do: Defendants do not even mention, much less dispute, the extensive evidence in the record that demonstrates the Reason Ban Scheme would make it impossible for patients to access abortion when there is any indication of a fetal diagnosis; Defendants do not deny that the law requires patients to censor their communications with healthcare providers, as a forced trade to try to preserve access to previability abortion; and Defendants put up *no* challenge whatsoever to the Personhood Provision claim on the merits—and do not deny that it alters the meaning of the entire Arizona Code, apparently criminalizing both maternal healthcare *and* pregnant people in some fashion.

Based on the undisputed facts and unwavering precedent that supports Plaintiffs' motion, the Court should issue a preliminary injunction.

**I.    S.B. 1457 IMPOSES AN UNLAWFUL BAN ON PREVIABILITY ABORTION**

Fifty years of unwavering Supreme Court precedent makes clear that "a State may not prohibit *any woman* from making the ultimate decision to terminate her pregnancy before viability." *Isaacson v. Horne*, 716 F.3d 1213, 1227 (9th Cir. 2013) (emphasis in original) ("*Isaacson I*") (quoting *Planned Parenthood of Se. Pa. v. Casey*, 505 U.S. 833, 879 (1992) ("*Casey*"). As explained in Plaintiffs' opening brief, the Reason Ban "operate[s] as a complete bar to the rights of some women to choose to terminate the pregnancies before the fetus is viable." *Id.* at 1228. It is therefore "per se unconstitutional." *Id.* at 1217.[1]

---

[1] Defendants suggest that Plaintiffs "purposely fail to argue" that the Reason Ban "creates

Defendants insist that "there is no right" to an abortion sought because of a "genetic abnormality" of the fetus or embryo. Opp. at 8. That is incorrect. Every circuit to directly consider this question has held that the right to previability abortion applies regardless of the reason for terminating the pregnancy. *See Planned Parenthood of Ind. & Ky., Inc. v. Comm'r of Ind. State Dep't of Health*, 888 F.3d 300, 307 (7th Cir. 2018), *reversed in part on other grouds* ("*PPINK*") (state may not "invade the privacy realm to examine the underlying basis for a woman's decision to terminate her pregacy prior to viability"); *Little Rock Family Planning Servs. v. Rutledge*, 984 F.3d 682, 690 (8th Cir. 2021) (right to abortion cannot "exist[] if the State can eliminate this privacy right [when the patient] wants to terminate her pregnancy for a particular purpose"). Defendants nowhere even mention, much less distinguish, these cases.[2]

---

an undue burden in violation of *Casey or June Medical*." Opp. at 13. On the contrary, while the undue burden test does not apply here, Plaintiffs' opening brief nonetheless explained that the Reason Ban would readily meet that test—since it "imposes a substantial obstacle [to abortion]—indeed a complete one" and no state interest is "strong enough to support a prohibition of abortion" before viability. Pls.' Mem. at 11 n.6 (quoting *Casey*, 505 U.S. at 846, 860); *see also PPINK*, 888 F.3d at 307 (holding reason ban is "far greater than a substantial obstacle; [it is an] absolute prohibition on abortions prior to viability which the Supreme Court has clearly held cannot be imposed by the state").

[2] The Reason Ban Scheme is akin to the Arkansas and Indiana laws that were enjoined in those cases, though it is even more sweeping. These bans erect multi-faceted bars on abortion by, *inter alia,* requiring physicians to inform patients that abortion is prohibited for the reason sought *and* requiring physicians to inquire about the patient's reason and/or about prenatal tests or diagnoses, which render it implausible that patients could nonetheless succeed in accessing care. They would have to flout these aspects of the law and hide not only their fetal diagnosis but also other readily-apparent medical and personal circumstances to attempt to deceptively secure care. The statute in Arizona and in those analogous states clearly erects a ban, even if a few patients might evade it. *See* Pls.' Mem. at 9-13; Reuss Decl. ¶¶ 44, 72-73; Isaacson Decl. ¶¶ 44-50, 55-63; Glaser Decl. ¶¶ 12, 18-22. By contrast, in *Preterm-Cleveland v. McCloud*, 994 F.3d 512 (6th Cir. 2021), none of these additional interlocking statutory layers were present. Moreover, the Court erroneously assumed that doctors would not be aware of patients' Down syndrome reason and that, regardless, Ohio patients would readily try one doctor after another, which makes no sense under the Arizona scheme. *See* Compl. ¶¶ 29-43, 76-79. *Preterm* dealt with a much different law and record, made numerous unfounded assumptions, and fails to aid Defendants here.

The Ninth Circuit likewise recognized that a law eliminating access to abortion "in cases of fetal anomaly" was unconstitutional because it effectively barred access to previability abortion for some patients. *Isaacson I*, 716 F.3d at 1228. Defendants attempt to distinguish *Isaacson I* on the basis that other "exceptions the Ninth Circuit thought necessary in *Isaacson I* are present here." Opp. at 12 (pointing to S.B. 1457's exceptions "for life or health of the mother" and "lethal fetal conditions"). But, *Isaacson I* held the exact opposite—finding that "*regardless of whether exceptions are made for particular circumstances*," a state law is unconstitutional if it "continues to operate as a complete bar to the rights of some women to choose to terminate their pregnancies before the fetus is viable." 716 F.3d at 1227-28 (emphasis added).

Defendants alternatively argue that the Reason Ban is not a prohibition on "all previability abortions," listing pages of irrelevant "situations" in which pregnant people will not be impacted by the Ban—*e.g.*, pregnant patients without any genetic test results or diagnosis. Opp. at 2, 9-11. This is beside the point. The law is clear that "the proper focus of constitutional inquiry is the group for whom the law is a restriction, not the group for whom the law is irrelevant." *Casey*, 505 U.S. at 894; *see also Isaacson I*, 716 F.3d at 1228 ("A prohibition's constitutionality is measured by its impact on those whom it affects not by the number of people affected."). Thus, what matters here is that S.B. 1457 would operate as a complete ban on previability abortion for some people in Arizona. *See* Pls.' Mem. at 12 (explaining that the Reason Ban's broad sweep makes it impossible to perform abortions whenever a possible fetal condition may factor into the patient's decision); Reuss Decl. ¶¶ 66-73; Isaacson Decl. ¶¶ 28-43; *see also* Opp. Ex. A ¶ 10 (confirming that state-mandated question to abortion patients about their reason caused more than 150 patients to identify fetal diagnosis as their reason in a single year). Because S.B. 1457 is a total bar to previability abortion for patients with fetal diagnoses, it contravenes decades of Supreme Court precedent and must be enjoined.[3]

---

[3] Defendants argue that S.B. 1457 "does not 'ban' pre-viability abortions any more than the State's existing regulation of abortions based on race or sex." Opp. at 12. That is

## II. THE REASON BAN IMPOSES AN UNCONSTITUTIONAL CONDITION

Defendants' argument that patients who seek abortions for the prohibited reason may somehow circumvent the Ban by refraining from open communications with their healthcare providers, Opp. at 2, 9-11, both misstates the sweep of the Ban's prohibition *and* establishes another constitutional violation: The Ban forbids patients' speech with their physician as a condition of exercising their abortion right.

As Defendants see it, patients must somehow figure out—in the face of providers' requisite inquiry into their reason and the Ban's mandated statement of prohibition[4]—that if they stay silent about a fetal condition-based reason for their abortion, they might succeed in obtaining it. Yet, it is precisely this kind of "extortionate" demand to forsake speech that the unconstitutional conditions doctrine protects against. *Koontz v. St. Johns River Water Mgmt. Dist.*, 570 U.S. 595, 604-08 (2013) (the unconstitutional conditions doctrine "vindicates the Constitution's enumerated rights by preventing the government from coercing people into giving them up"); *Gomillion v. Lightfoot*, 364 U.S. 339, 347 (1960) ("state power" cannot be exerted to "circumvent[] a federally protected right"). An individual's decision to exercise a fundamental right does not allow states to coerce silence and censor speech in exchange. *See Preterm-Cleveland v. McCloud*, 994 F.3d 512, 550-51 (6th Cir. 2021) (Coles, J., dissenting) (if reason ban is construed to "merely restrict[] the

---

incorrect. While pre-existing law erects a ban on those reasons, its real-world impact is different. Unlike the Reason Ban at issue here, Plaintiffs are not aware of patients whose access to previability abortion has been or will be impeded due to Arizona's prohibition on sex- and race-based abortions. While Plaintiffs remain concerned that those other laws nonetheless impose stigmatic harms, this Court dismissed a prior challenge on the grounds that "stigmatizing injury alone is not sufficient for standing in equal protection cases." *Nat'l Assoc. for the Advancement of Colored People v. Horne*, 2013 WL 55194514, at *5-8 (D. Ariz. Oct. 3, 2013).

[4] Defendants concede that the Reason Ban Scheme requires providers to tell patients that the Act "*prohibits abortion* because of . . . a genetic abnormality of the child." Opp. at 6-7 (quoting A.R.S. § 36-2158(d)). It is Kafkasque for the state to require that patients be told the abortion they seek is prohibited, while simultaneously arguing in court that patients nonetheless retain their right to access that abortion—and that patients should somehow know to seek out an alternate provider after the first doctor tells them the abortion they seek is unlawful. Opp. at 11.

information and opinions a woman may share with her doctor" it unlawfully forces her to "trade one constitutional right for another"). Nor can Defendants evade the Ban's unconstitutional condition by erroneously claiming it is caused by private physicians, as opposed to the state. Opp. at 14. It is obviously the challenged statute—state action—that ties the hands of physicians and mandates that they deny care if a patient communicates to them that they have received a covered fetal diagnosis.

The fact that the unconstitutional conditions doctrine *also* protects against a state's manipulation of discretionary government benefits, Opp. at 14, does not take away its application here. Instead, forcing patients to give up their ability to speak with their physicians in order to keep the vital benefit of constitutionally-protected access to abortion establishes unconstitutional coercion especially starkly. *See, e.g., U.S. v. Scott*, 450 F.3d 863, 866 & n.5 (9th Cir. 2006) (making clear that unconstitutional conditions doctrine applies "even when" benefits are discretionary, but noting that the Constitution protects against denials of bail, the benefit at issue). The present type of unconstitutional condition—requiring a trade of one federal right for another—is rare, Opp. at 14, precisely because it presents such plainly impermissible state action.

Defendants also erroneously claim that Plaintiffs lack third-party standing to complain about the Ban's conditioning abortion on relinquishment of speech. Opp. at 14-15. On the contrary, Plaintiffs' physician-patient relationships are prototypical examples of service relationships in which a provider can enforce the service recipients' First Amendment and other constitutional rights.[5] In addition, litigants are "generally permitted" to assert third-party rights where, as here, "'enforcement of the challenged restriction *against the litigant* would result indirectly in the violation of third parties' rights.'" *June Medical Servs.*, 140 S. Ct. at 2118-19. Indeed, the need for third-party assertion of patients'

---

[5] *See, e.g., June Med. Servs. L. L. C. v. Russo*, 140 S. Ct. 2103, 2118 (2020) ("We have long permitted abortion providers to invoke the rights of their actual or potential patients in challenges to abortion-related regulations."); *Epona v. Cty. of Ventura*, 876 F.3d 1214, 1220 (9th Cir. 2017) (vendors and similar providers have third-party standing to assert First Amendment claims of potential participants).

First Amendment rights is particularly strong in this instance, because any direct suit would itself necessitate that the patient communicate their reason—which, by Defendants' own account, would end physicians' ability to provide them abortion care.

Finally, Defendants turn the facts upside down by asserting that this unlawful condition on abortion access does not apply "in all circumstances." Opp. at 15. In fact, this unconstitutional condition applies universally: If any patient discloses to a provider the forbidden basis for an abortion, no abortion can proceed. *See, e.g., id*. at 11. Defendants' exaggerated contentions that the Ban is irrelevant in some circumstances, *see id*. at 10-11, neither explain nor justify the unconstitutional condition the Ban places on *all* patients.[6]

### III.  THE REASON BAN SCHEME IS UNCONSTITUTIONALLY VAGUE

#### A.  Plaintiffs Properly Assert a Facial Claim That Is Ripe for Review

Defendants contend that the vagueness claim against the Reason Ban must be framed as an as-applied challenge, arguing that facial relief is only appropriate if the Ban is "impermissibly vague in all of its applications" or if it "implicate[s] First Amendment rights." Opp. at 16. That specious argument defeats itself, because the Reason Ban *does* implicate First Amendment rights. Compl ¶¶ 86-95, 127-29. In addition, the law also has long been clear that facial vagueness claims are appropriate in cases where abortion rights are implicated. *See Planned Parenthood of S. Ariz. v. Lawall*, 180 F.3d 1022, 1027 (9th Cir. 2013), *opinion amended on denial of reh'g*, 193 F.3d 1042 (9th Cir. 1999). And, in any event, the "all applications" rule for other, non-fundamental right contexts has been superceded by recent Supreme Court and Ninth Circuit precedents. *See Guerrero v. Whitaker*, 908 F.3d 541 (9th Cir. 2018); *see infra* Part IV.A.

Defendants also erroneously argue that because Plaintiffs seek to enjoin future enforcement of the Ban, their vagueness claim is not yet ripe for review. Opp. at 17-19. But, scores of Supreme Court precedent make clear that claim is wrong, and that a plaintiff need not violate a challenged criminal statute and risk prosecution as "the sole means of

---

[6] Moreover, Defendants concede that facial relief is appropriate when First Amendment rights are implicated. Opp. at 16; *see also infra* Parts III.A & IV.A.

- 6 -

seeking relief." *See, e.g.*, *Doe v. Bolton*, 410 U.S. 179, 188 (1973); *Diamond v. Charles*, 476 U.S. 54, 65 (1986); *MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118, 128-29 (2007). This Court has ample information now to conclude that the Reason Ban is unconstitutionally vague—both because the text of the law is unclear on its face *and* because the record contains detailed (and unrebutted) testimony demonstrating that the Ban's facial vagueness will force providers to turn away pregnant patients if the law goes into effect. *See* Compl. ¶¶ 29-43, 76-79; Pls.' Mem. at 9-17. Accordingly, this claim does not hinge on "unending future factual scenarios," Opp. at 18, but rather stems from harms that are concrete and discernible now.[7]

### B. The Reason Ban Scheme is Unconstitutionally Vague

The Reason Ban Scheme is unconstitutionally vague because it fails to provide requisite notice of what fetal conditions trigger its prohibition, or under what circumstances a provider could be deemed to "know" that the patient seeks an abortion "because of" the prohibited reason. Under the Ban, providers are thus left to guess what is prohibited and risk arbitrary and discriminatory enforcement unless they broadly withhold constitutionally-protected care. Pls.' Mem. at 14-18. For these same reasons, the only district court to consider a vagueness challenge levied against a similar abortion reason ban enjoined that law, finding it "impossible for a person of ordinary intelligence to know what conduct constitutes a crime." *Memphis Ctr. for Reprod. Health, et al v. Slatery*, 2020 WL 4274198, at *17-18 (M.D. Tenn July 24, 2021). And, the Sixth Circuit recently affirmed that preliminary injunction, holding that Tennessee's reason ban "does not give persons of ordinary intelligence . . . a reasonable opportunity to know when they are permitted to perform an abortion," thereby "effectuating the inaccessibility of a right deemed fundamental under the Constitution." 2021 WL 4127691, at *30 (6th Cir. Sept. 10, 2021). This court should reach the same conclusion and enjoin the Reason Ban.

---

[7] Notwithstanding Defendants' assertions to the contrary, Opp. at 18, where, as here, "the uncertain issue of state law does not turn upon a choice between one or several alternative meanings of a state statute," but rather "an indefinite number" of interpretations, there is no reason to defer to state courts. *Baggett v. Bullit*, 377 U.S. 360, 375-79 (1964).

Defendants' counterpoints are unavailing. First, Defendants try to sidestep the fact that the Reason Ban Scheme prohibits abortions sought "because of a genetic abnormality," in addition to situations where that is the "sole" reason, *see* Pls.' Mem. at 16-17. But, Defendants nowhere explain how providers can perform abortions without first abiding by the law's requirement that they attest that it is not "because of" the prohibited reason. A.R.S. §§ 36-2157(1)-(2), 36-2161(A)(12)(c)(i)-(iii).[8] Use of "solely because of" in just one clause does nothing to alleviate vagueness concerns, particularly where the word "solely" is omitted elsewhere, and only contributes to the law's lack of clarity. *See* Reuss Decl. ¶¶ 58-59, 68. Isaacson Decl. ¶¶ 31-32.[9]

Second, Defendants insist that the Ban's definition of "genetic abnormality" is not vague, by offering only unsupported conclusory statements such as that "[t]he normal human genome is well known by now." Opp. at 20. Defendants never even attempt to grapple with the layers of uncertainty this definition imposes for medical providers—*e.g.*, they fail to explain whose "presum[ption]" governs; which morphological malformations are deemed to "occur[] as the result of abnormal gene expression;" and whether medical interventions matter in trying to apply the definition of "lethal fetal condition."[10] As Plaintiff Physicians attest, fetal testing and screening during pregnancy is complex and

---

[8] Defendants' position is so inconsistent with the statute's plain language that even they ultimately concede that its affidavit requirement "institutes" the Ban "by condition[ing] [abortions] on being, *at least in part*, non discriminatory." Opp. at 13 (emphasis added).

[9] Even if the Ban were limited to abortions in which a "genetic abnormality" were the "sole" reason, that would not save this law. Because patient's reasons for seeking abortion are often inextricably linked, it is unclear when a fetal test or diagnosis could be deemed the only reason. *See* Pls.' Mem. at 17; *cf. Little Rock*, 984 F.3d at 689 (enjoining Arkansas law prohibiting abortion when "solely on the basis" of Down syndrome); *PPINK*, 888 F.3d. at 306 (enjoining law proscribing abortion when "solely because of" prohibited reasons).

[10] Defendants claim the Ban's definition of "lethal fetal condition" cannot be vague because it has been used in another context. Opp. at 20. But, that other context involves state-mandated consent information, A.R.S. § 36-2158(A)(1)-(2), as to which providers can cope with the definition's manifest uncertainty by providing that information to all patients. By contrast, under the Reason Ban, physicians need exactitude about the precise scope of that "lethal fetal condition" exception to proceed with an abortion—especially in the face of severe criminal penalties if they get the definition wrong.

uncertain, resulting in variable likelihoods, causes, and prognoses. Pls.' Mem. at 5-8; Reuss Decl. ¶¶ 21-26, 31-36; Isaacson Decl. ¶¶ 38-42. The "imprecision of . . . variables" about which "experts will disagree," and the resulting "chilling effect on the willingness of physicians to perform abortions," renders the Scheme vague. *Colautti v. Franklin*, 439 U.S. 379, 395-97 (1979).

Finally, while a scienter element "*may* mitigate a law's vagueness" in some circumstances, *Village of Hoffman Estates v. Flipside, Hoffman Estates, Inc.*, 455 U.S. 489, 499 (1982) (emphasis added), it cannot cure a statute where, as here, the prohibited conduct is itself unclear and the statute's enforcement relies on "wholly subjective judgments," *McCormack v. Herzog*, 788 F.3d 1017, 1032 (9th Cir. 2015). Pls.' Mem. at 15-16. As the Sixth Circuit held, the word "know" cannot mitigate vagueness concerns when the law "requires that a doctor 'know the motivations underlying the action of *another* person to avoid prosecution,' while simultaneously evaluating whether the decision is 'because of' that subjective knowledge." *Memphis Ctr.*, 2021 WL 4127691 at *25.

### IV. THE PERSONHOOD PROVISION IS UNCONSTITUTIONALLY VAGUE

Defendants nowhere dispute that the Personhood Provision is wildly unclear and unconstitutionally vague. Instead, they merely seek to evade judicial review by lodging baseless arguments about ripeness and scope of remedy. Facial relief is the proper remedy to address the broad reach of this sweeping law.

#### A. The Personhood Provision is Facially Unlawful

Defendants are wrong to argue that only an as-applied vagueness challenge is available against the Personhood Provision. Opp. at 16. First, the provision is vague *on its face* because, by its own terms, its sole function is to create an "interpretive rule" that applies across the entire Arizona Revised Statutes. How that new rule works and what it does in practice is wholly unclear. *See* Pls.' Mem. at 18-21. In other words, the Personhood Provision is vague in its only (and thus every) application.

In any event, Defendants are also wrong on the law. Opp. at 16 (arguing that if a law "'does not implicate First Amendment rights, it may be challenged for vagueness only

as applied' unless the enactment is 'impermissibly vague in all of its applications.'"). As the Ninth Circuit has recognized, the Supreme Court recently rejected the all-or-nothing principle relied upon by Defendants. *Guerrero*, 908 F.3d at 544 (holding that *Johnson v. United States*, 576 U.S. 591, 602 (2015) and *Sessions v. Dimaya*, 138 S. Ct. 1204 (2018) "expressly rejected the notion that a statutory provision survives a facial vagueness challenge merely because some conduct clearly falls within the statute's scope").[11] In *Johnson*, the Court held facially unconstitutional a statute that required judges to determine whether any one of thousands of crimes would be considered a "violent felony" within its meaning, where there was no "generally applicable test that prevents the risk comparison required by the residual clause from devolving into guesswork and intuition." 576 U.S. at 600. The same is true here. Nothing in the Personhood Provision provides a "generally applicable test" that would make its potential application to thousands of Arizona statutes subject to anything more than "guesswork and intuition." Indeed, even Defendants are unable to articulate what the Personhood Provision does and does not do—having utterly failed to address (much less clarify) its scope and impact in their response. Thus, under *Johnson*, the fact that some (unidentified) circumstance may fall within its scope does not save the whole of the statute from a vagueness challenge.

Facial relief is appropriate here because the Personhood Provision requires applying an uncertain standard, here, "acknowledgement" of an undefined and previously-unrecognized set of rights for fetuses and fertilized eggs—to hundreds of statutes in a manner that is "uncertain both in nature and degree of effect." *Johnson*, 576 U.S. at 605. Among other things, this opens the door to criminalizing or otherwise punishing people's decisions to become pregnant, to carry a pregnancy to term, or to receive healthcare that could impact their pregnancy. This is particularly problematic where, as here, that sweeping vagueness invites punishment of constitutionally-protected activity.[12]

---

[11] This precedent supersedes the cases relied upon by Defendants. *See* Opp. at 16.

[12] While facial relief is appropriate, the Personhood Provision also is unconstitutional as applied to Provider Plaintiffs and their patients, because the law's vagueness gives no notice of what pregnancy-related actions it proscribes, and it could lead to the arbitrary and

B. <u>Plaintiffs' Challenge to the Personhood Provision is Ripe for Review</u>

Similarly, Defendants are wrong to assert that Plaintiffs must wait for the Personhood Provision to be enforced against them. As explained above, *see supra* Part III.A, a plaintiff "does not have to await the consummation of threatened injury to obtain preventive relief. If the injury is certainly impending, that is enough." *Babbitt v. United Farm Workers Nat. Union*, 442 U.S. 289, 298 (1979). Nor must Plaintiffs violate an allegedly unconstitutional law to challenge its constitutionality. *See, e.g., MedImmune*, 549 U.S. at 128-29.[13]

Plaintiffs pose straightforward questions about what actions will give rise to criminal prosecution if the Personhood Provision goes into effect. Defendants' inability to answer those questions is not due to Plaintiffs' failure to present a concrete factual situation. It is due to the inherently unwieldy and impermissibly vague nature of the Personhood Provision. Instead of explaining what conduct this law will proscribe, Defendants ask this court to "hand responsibility for defining crimes to relatively unaccountable police, prosecutors, and judges, eroding the people's ability to oversee the creation of the laws they are expected to abide." *United States v. Davis*, 139 S. Ct. 2319, 2325 (2019) (citations omitted). This is the definition of an impermissibly vague law. *Id*.

V. **CONCLUSION**

Accordingly, Plaintiffs' Motion for Preliminary Injunction should be granted.

---

discriminatory prosecution or punishment of pregnant people and of physicians who provide healthcare to pregnant people. Pls.' Mem. at 19-21.

[13] Contrary to Defendants' assertions, *Webster*, 492 U.S. at 506, does not in any way compel this Court to reject Plaintiffs' vagueness challenge to the Personhood Provision. In *Webster*, the Court rejected a challenge to the *preamble* of a Missouri statute stating that "the life of each human being begins at conception." The Supreme Court did not pass on the constitutionality of the preamble because it did "not by its terms regulate abortion or any other aspect of appellees' medical practice" *id.* at 506. Here, the Personhood Provision is not a mere preamble, but rather a mandatory law of interpretation for all Arizona statutes. Act, § 1. Defendants expressly acknowledge the dramatic impact of the provision, dubbing it the "Interpretive Policy." Opp. at 2.

| | |
|---|---|
| Dated: September 17, 2021 | AMERICAN CIVIL LIBERTIES UNION FOUNDATION OF ARIZONA |
| | By: */s/ Victoria Lopez* <br> Victoria Lopez |
| Emily Nestler, *pro hac vice* <br> Jen Samantha D. Rasay, *pro hac vice* <br> Center For Reproductive Rights <br> 1634 Eye Street, NW, Suite 600 <br> Washington, DC  20006 <br> Telephone: (202) 629-2657 <br> enestler@reprorights.org <br> jrasay@reprorights.org | Victoria Lopez (330042) <br> American Civil Liberties Union Foundation of Arizona <br> 3707 North 7th Street, Suite 235 <br> Phoenix, AZ 85014 <br> Telephone (602) 650-1854 <br> vlopez@acluaz.org <br><br> *Counsel for Plaintiffs* |
| Gail Deady, *pro hac vice* <br> Center For Reproductive Rights <br> 199 Water Street <br> New York, NY 10038 <br> Telephone: (917) 637-3600 <br> gdeady@reprorights.org <br> jrasay@reprorights.org <br><br> *Counsel for Paul A. Isaacson, M.D., National Council of Jewish Women (Arizona Section), Inc., and Arizona National Organization for Women,* | Ruth E. Harlow, *pro hac vice* <br> Rebecca Chan, *pro hac vice* <br> American Civil Liberties Union <br> 125 Broad Street, 18th Floor <br> New York, NY 10004 <br> Telephone: (212) 549-2500 <br> rharlow@aclu.org <br> rebeccac@aclu.org <br><br> *Counsel for Eric M. Reuss, M.D., M.P.H., and Arizona Medical Association* |

## CERTIFICATE OF SERVICE

I hereby certify that on September 17, 2021, I electronically transmitted the attached document to the Clerk's Office using the CM/ECF System for filing.  All counsel of record are registrants and are therefore served via this filing and transmittal.

/s/ *Victoria Lopez*
Victoria Lopez