**MARK BRNOVICH**
**ATTORNEY GENERAL**
(Firm State Bar No. 14000)

Brunn (Beau) W. Roysden III (No. 28698)
Michael S. Catlett (No. 25238)
Kate B. Sawyer (No. 34264)
Katlyn J. Divis (No. 35583)
2005 N. Central Ave
Phoenix, AZ 85004-1592
Telephone: (602) 542-3333
Michael.Catlett@azag.gov

*Attorneys for Defendant Mark Brnovich in his official capacity as Arizona Attorney General*

[Additional counsel and emails listed on signature page]

### UNITED STATES DISTRICT COURT
### DISTRICT OF ARIZONA

| | |
|---|---|
| Paul A. Isaacson, M.D., on behalf of himself and his patients, et al., <br><br> Plaintiffs, <br><br> v. <br><br> Mark Brnovich, Attorney General of Arizona, in his official capacity, et al., <br><br> Defendants. | Case No. 2:21-cv-01417-DLR <br><br> **STATE DEFENDANTS' EMERGENCY MOTION TO STAY A PORTION OF THE COURT'S SEPTEMBER 28, 2021 PARTIAL PRELIMINARY INJUNCTION PENDING APPEAL** <br><br> **[EXPEDITED CONSIDERATION REQUESTED]** |

**INTRODUCTION**

Pursuant to Federal Rule of Civil Procedure 62(c)–(d) and Federal Rule of Appellate Procedure 8(a)(1), State Defendants[1] respectfully move for a stay pending appeal of the Court's Order, entered on September 28, 2021, only to the extent that it preliminarily enjoined section 2 of Arizona Senate Bill 1457 as applied to amend A.R.S. § 13-3603.02(A) and (A)(2) (Doc. 52) (the "Reason Injunction").[2]

The Reason Injunction sets aside a duly enacted state law prohibiting persons from performing an abortion *knowing* that the abortion is sought solely because of a genetic abnormality. *See* 2021 Ariz. Legis. Serv. Ch. 286 ("S.B. 1457"). In enacting S.B. 1457, the Legislature expressly identified at least three compelling state interests: (1) "protect[ing] the disability community from discriminatory abortions, including for example Down-syndrome-selective abortions"; (2) protecting Arizona citizens from coercive medical practices "that encourage selective abortions of persons with genetic abnormalities"; and (3) "protect[ing] the integrity and ethics of the medical profession by preventing doctors from becoming witting participants in genetic-abnormality-selective abortion." S.B. 1457 § 15. But the Reason Injunction now prohibits State Defendants from enforcing the State's prohibition on physicians knowingly performing discriminatory abortions.

As shown below, a stay pending appeal is warranted here. The State is likely to succeed on its appeal, which raises serious and difficult questions. As to Plaintiffs' Due Process Challenge, the Supreme Court has never addressed the right at issue here—the right to perform an abortion knowing that the sole reason the abortion is sought is the

---

[1] State Defendants are Mark Brnovich in his official capacity as Arizona Attorney General; Arizona Department of Health Services; Don Herrington in his official capacity as Interim Director of the Arizona Department of Health Services; Arizona Medical Board ("AMB"); Patricia McSorley in her official capacity as Executive Director of the AMB; and AMB Members R. Screven Farmer, M.D.; James M. Gillard, M.D.; Jodi A. Bain, M.A., J.D.; Bruce Bethancourt, M.D.; Eileen M. Oswald, M.P.H.; Laura Dorrell, M.S.N., R.N.; Pamela E. Jones; Lois Krahn, M.D.; David C. Beyer, M.D.; and Gary Figge, M.D., in their official capacities.
[2] The State Defendants do not move to stay any other portions of the Preliminary Injunction, but reserve the right to do so at a later time.

existence of a genetic abnormality.  The Supreme Court has acknowledged that a woman does *not* have a right "to terminate her pregnancy at whatever time, in whatever way, and *for whatever reason she alone chooses*." *Roe v. Wade*, 410 U.S. 113, 153 (1973).  While the Court here recognized that S.B. 1457 does not constitute a ban on abortion, it held that it created an "undue burden" on a women's right to an abortion—an argument that Plaintiffs did not advance.  Even if Plaintiffs' had put forth that argument, their evidence was not enough to prevail under the undue burden standard.  Plaintiffs' evidence did not show a substantial obstacle for *any* woman to receive an abortion, let alone a "large fraction" of women.  And the Court's cautionary benefit balancing analysis improperly discounted the State's interests identified in the law.

As to Plaintiffs' vagueness challenge, first, the claim is not ripe.  The Ninth Circuit has made clear that a plaintiff cannot bring a pre-enforcement vagueness challenge, as Plaintiffs attempt here, without presenting a concrete factual situation to delineate the boundaries of what conduct the government may or may not regulate without running afoul of the Constitution.  Plaintiffs did not do so here, and thus they have not presented a ripe pre-enforcement vagueness challenge.  Second, the Reason Regulation is not vague.  The Reason Regulation's language provides fair notice to ordinary physicians of when the Regulation applies and when it does not.  And the statute contains a scienter requirement that alleviates any concern about vagueness or arbitrary enforcement.

"When courts declare state laws unconstitutional and enjoin state officials from enforcing them, [the] ordinary practice is to suspend those injunctions from taking effect pending appellate review." *Strange v. Searcy*, 135 S. Ct. 940, 940 (2015) (Thomas and Scalia, JJ., dissenting from denial of the application for a stay) (collecting cases).  State Defendants are certain to suffer irreparable harm absent a stay, the public interest clearly favors a stay, and the balance of harms also tips sharply in favor of a stay.

For all these reasons, the Court should grant a stay of the Reason Injunction pending appeal.

## ARGUMENT

In evaluating a request for a stay pending appeal, this Court must consider "(1) whether the stay applicant has made a strong showing that he is likely to succeed on the merits; (2) whether the applicant will be irreparably injured absent a stay; (3) whether issuance of the stay will substantially injure the other parties interested in the proceeding; and (4) where the public interest lies." *Lair v. Bullock*, 697 F.3d 1200, 1203 (9th Cir. 2012) (quoting *Nken v. Holder*, 556 U.S. 418, 434 (2009)).[3] Each of these four elements is satisfied here.

### I. State Defendants Are Likely To Prevail In Their Appeal, Which Raises Serious And Difficult Questions of Law.

As this Court has recognized, "[c]ourts have interpreted th[e] first [stay-pending appeal] criterion as requiring that the movant show that 'the appeal raises serious and difficult questions of law in an area where the law is somewhat unclear.'" *Overstreet v. Thomas Davis Med. Ctrs., P.C.*, 978 F. Supp. 1313, 1314 (D. Ariz. 1997). That standard is satisfied here.

This case clearly poses serious and difficult questions. Courts across the country have grappled with statutes similar to those challenged here, and the mixed outcomes plainly show that the law is far from settled. While the Ninth Circuit has not yet addressed a law of this nature, several circuits have. For example, the *en banc* Sixth Circuit upheld a law prohibiting "a doctor from performing an abortion with the knowledge that the woman's reason for aborting her pregnancy is that her fetus has Down syndrome and she does not want a child with Down syndrome." *Preterm-Cleveland v. McCloud*, 994 F.3d 512, 516 (6th Cir. 2021) (en banc). The Eighth Circuit recently *sua sponte* granted rehearing *en banc*, vacating the three-judge panel's opinion enjoining a

---

[3] Although "'[t]here is substantial overlap between these and the factors governing preliminary injunctions,'" *Lair*, 697 F.3d at 1203 n.2, several courts have recognized that "[c]ommon sense dictates … that the standard cannot … require that a district court confess to having erred in its ruling" to grant the motion. *Evans v. Buchanan*, 435 F. Supp. 832, 843 (D. Del. 1977); *Canterbury Liquors & Pantry v. Sullivan*, 999 F. Supp. 144, 149 (D. Mass. 1998). An injunction pending appeal is also appropriate if there are serious questions going to the merits on appeal and the balance of the hardships tips sharply in their favor. *See All. for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1134 (9th Cir. 2011).

3

similar Missouri law.  *Reproductive Health Servs. of Planned Parenthood of the St. Louis Region, Inc. v. Parson*, No. 19-2882 (8th Cir. July 13, 2021).  Yet other circuits have affirmed preliminary injunctions of similar statutes based on likely success of the plaintiffs' constitutional claims.  *See Memphis Ctr. For Reproductive Health v. Slatery*, ––F.4th—, No. 20-5969, 2021 WL 4127691 (6th Cir. 2021); *Little Rock Family Planning Serv. v. Rutledge*, 984 F.3d 682 (8th Cir. 2021); *Planned Parenthood of Ind. & Ky. v. Comm'r of the Ind. State Dep't of Health*, 888 F.3d 300 (7th Cir. 2018).  While the Supreme Court has yet to directly address laws of this nature, Justice Thomas has written a lengthy concurrence noting that the constitutionality of laws regulating discriminatory abortions remains "an open question."  *Box v. Planned Parenthood of Ind. & Ky.*, 139 S. Ct. 1780, 1792 (2019).  Additionally, the Supreme Court has recently granted certiorari in a case dealing with whether pre-viability prohibitions on elective abortions are unconstitutional under *Casey*, *see Dobbs v. Jackson Women's Health Org.*, No. 19-1392, and is also considering a petition dealing with challenges to an Arkansas law prohibiting abortions that are sought solely because of a prenatal diagnosis of Down syndrome, *Rutledge v. Little Rock Family Planning Servs.*, No. 20-1434.

Here, the Court agreed with State Defendants and rejected Plaintiffs' sole argument under the Fourteenth Amendment, concluding that the Reason Regulation[4] did not constitute a ban on abortion.  Doc. 52 at 17–18.  Instead, the Court conducted its own analysis and struck down the Reason Regulation after determining that it constituted an "undue burden" and is unconstitutionally vague.  But that conclusion is contrary to State Defendants' strong showing that Plaintiffs will not ultimately be able to succeed on the merits of their claims.

### A. Plaintiffs Are Not Likely To Succeed On Their Due Process Challenges to the Reason Regulation.

The Court's conclusion that the Reason Regulation creates an undue burden is–if not incorrect–at a minimum, fairly contestable.

---

[4] The State Defendants use this term to refer only to the portion of the Court's injunction for which the State Defendants seek a stay.  Specifically, that portion of Section 2 of S.B. 1457 which would amend A.R.S. § 13-3603.02(A).

As the State Defendants have explained, it is extremely doubtful that the right first recognized in *Roe* and later narrowed in *Casey* applies to a regulation restricting discriminatory abortions. As the Court recognized at oral argument (Transcript at 7), *Roe* itself rejected the notion that a woman has a right "to terminate her pregnancy at whatever time, in whatever way, and for whatever reason she alone chooses." 410 U.S. at 153. While the Pennsylvania law in *Casey* included a restriction on performing an abortion based on the sex of the unborn child, Plaintiffs there did not challenge that provision, and none of the other provisions at issue were akin to a regulation on the reason an abortion is sought. *See Planned Parenthood of Se. Pa. v. Casey*, 505 U.S. 833, 844 (1992) (describing the provisions at issue). And a right to perform an abortion knowing the sole reason the abortion is being sought is the presence of a genetic abnormality is certainly not "objectively, 'deeply rooted in this Nation's history and tradition.'" *Washington v. Glucksberg*, 521 U.S. 702, 720–21 (1997) (quoting *Moore v. City of E. Cleveland*, 431 U.S. 494, 504 (1977)).

In any event, Plaintiffs never advanced the argument that the Reason Regulation imposes an undue burden. Instead, they put forth only one argument—that the law should be struck down as a complete ban on pre-viability abortion. *See* Doc. 10 at 9–14. As already noted, the Court disagreed. Doc. 52 at 17 ("The Reason Regulations do not ban women from terminating pre-viability pregnancies because of a fetal genetic abnormality."). Yet the Court still held that the Reason Regulation regulates the mode and manner of abortion and fails under the "undue burden" test.

Plaintiffs did no more than allude in passing to the undue burden standard in their briefing, relegating all discussion of undue burden to a footnote and circularly arguing only that the standard is met because S.B. 1457 creates a ban. Doc. 10 at 11 n.6. Plaintiffs' motion for preliminary injunction did not cite *June Medical* at all and only cited *Whole Woman's Health* for the proposition that the State cannot impose a pre-viability ban on abortion. Even at oral argument, when pushed by the Court, Plaintiffs' response was circular, repeatedly arguing that the Reason Regulation would be a

substantial obstacle because the law in practicality constitutes a ban. *See, e.g.*, Transcript at 14–17; *see also* Doc. 10 at 11 n.6 ("In any case, this law imposes a substantial obstacle—indeed a complete one."). When further pushed for a description of the burdens, Plaintiffs could only point to declarations attached to the motion (Transcript at 19), which at most, provide general statements regarding what a few doctors in Arizona (who also happen to be plaintiffs in this action) self-servingly speculate they might encounter. Plaintiffs made no effort whatsoever to question the State's compelling interests. Because Plaintiffs did not assert an undue burden claim, the State Defendants did not brief undue burden or benefit. *See United States v. Sineneng-Smith*, 140 S. Ct. 1575, 1579 (2020) ("[A]s a general rule, our system is designed around the premise that parties represented by competent counsel know what is best for them, and are responsible for advancing the facts and argument entitling them to relief." (cleaned up)).

Even so, Plaintiffs did not satisfy their heavy burden to prevail under the undue burden standard. Plaintiffs must prove that "in a large fraction of the cases in which [the Reason Regulation is] relevant, [it] will operate as a substantial obstacle to a woman's choice to undergo an abortion." *Casey*, 505 U.S. at 895; *see also McCormack v. Herzog*, 788 F.3d 1017, 1029 (9th Cir. 2015). Yet Plaintiffs' evidence fails to show that the Reason Regulation would create a substantial obstacle for *any* woman to receive an abortion, let alone a "large fraction" of women. The Court self-identified the relevant group of women who would be affected by the statute as those women who want to terminate their pregnancies because of a genetic abnormality. But that is inaccurate. At best for Plaintiffs, the relevant group of women are those who know that their unborn child has a genetic abnormality. The Reason Regulation "operate[s] as an actual, rather than irrelevant, restriction" on those women, even if they ultimately do not choose to terminate their pregnancy solely because of the genetic abnormality. Even if the Court was correct, the record is completely devoid of how many women fall into that category—again because Plaintiffs did not argue undue burden—and thus the Court could not possibly determine what number of women decide to terminate their pregnancy

6

solely because of a genetic abnormality, nor how many women are regulated in doing so because circumstances exist where a doctor would know that to be the case (assuming *arguendo* this is the proper numerator).  It is apparent from the 2019 Arizona Abortion Report that this number is exceedingly small (no more than 191 women but likely many less).  *See* Doc. 46-1 at 22.  Because there is nothing in the record from which the Court could determine the proper numerator or denominator—which Plaintiffs' bore the burden to establish—the State Defendants will likely succeed on appeal with respect to the Reason Regulation.

Plaintiffs' only actual evidence consists of self-serving hypotheticals in which a physician *may* suspect that a genetic abnormality *may* be one of the reasons that a woman seeks an abortion.  *See, e.g.*, Doc. 10-2, Ex. 3, Decl. of Paul A. Isaacson, M.D. Decl. ¶ 44 ("I believe many pregnant people with fetal diagnoses who seek abortion care at [my practice] will ultimately disclose—either intentionally or unintentionally—their fetal diagnosis to me or to a member of my staff.  I believe this outcome is likely.").  Plaintiffs provided no data or even estimations of how often a patient will discuss the reasons for an abortion; how often a doctor would *know* the sole reason; and importantly, how often a woman would have any difficulty obtaining an abortion from a doctor who did not know her sole reason for the abortion.  Moreover, while the Court was concerned about women obtaining late pre-viability diagnoses of genetic abnormality (Doc. 52 at 24), and thereafter having a limited number of providers to choose from, Plaintiffs provided no data about the actual number of providers who would perform late pre-viability abortions (or where they are located) or the number or percentage of women who seek to obtain an abortion solely because of a genetic abnormality between 16 and 24 weeks.  The Court was left to guess.

The Court also erred in rejecting the benefits that the State will obtain from the Reason Regulation.[5]  *See* Doc. 52 at 25–29.  Had Plaintiffs actually disputed the benefits

---

[5] The Court applied *Whole Women's Health* benefits-burdens balancing test "out of caution."  Doc. 52 at 22.  But that test is inconsistent with *Casey*, and under *Marks v. United States*, 430 U.S. 188 (1977), Chief Justice Roberts opinion in *June Medical* controls.  *June Med. Servs. L.L.C. v. Russo*, 140 S. Ct. 2103, 2136 (2020) (Roberts, C.J.,

of the law, rather than arguing nothing more than that S.B. 1457 imposes a total ban on pre-viability abortions, the State would have identified the following eight benefits: (1) the Reason Regulation will protect the State's compelling interest in protecting an entire class of persons from being targeted for discrimination; (2) the Reason Regulation will advance the State's compelling interest in eradicating historical animus and bias against persons with disabilities, including persons with Down syndrome; (3) the Reason Regulation will safeguard the integrity of the medical profession by preventing doctors from abandoning their traditional role as healers to become the witting participants in genetic-selective abortions; (4) the Reason Regulation will draw a clear boundary against additional eugenic practices targeted at disabled persons and others—modern technology will one day allow testing for any manner of genetic traits and the State will send a message that it will not permit those advances to result in eugenic abortion; (5) the Reason Regulation will counter the stigma that genetically selective abortion imposes on living persons with Down syndrome and other disabilities; (6) the Reason Regulation will ensure that the existing disability community does not become starved of resources for research and care for individuals with disabilities; (7) the Reason Regulation will protect against the devaluation of all human life inherent in any decision to target a person for elimination based on an immutable characteristic; and (8) the Reason Regulation will foster the diversity of society and protect it from the enormous loss that will occur if people with Down syndrome and other genetic abnormalities are eliminated. Each of these compelling benefits outweighs any burden that the Reason Regulation's impact on "the mode and manner of abortion" (Doc. 52 at 18) will have in whatever small number of cases are even affected by the prohibition on performing an abortion knowing that the patient is doing so solely because of a genetic abnormality.

While acknowledging that the three interests the Legislature expressly identified in S.B. 1457 are legitimate state interests, the Court concluded that serving those interests does not count as a benefit because S.B. 1457 imposes a substantial obstacle on women

concurring) ("Nothing about *Casey* suggested that a weighing of costs and benefits of an abortion regulation was a job for the courts.").

who wish to obtain an abortion because of a genetic abnormality. In this way, the Court erroneously collapsed the substantial obstacle and benefits analyses. As explained above, Plaintiffs did not argue, let alone establish, that the Reason Regulation will create a substantial obstacle in a material percentage of cases. Moreover, the Court discounted the State's expressed interest in protecting against coercive health care practices that encourage selective abortions of persons with genetic abnormalities based on a lack of record evidence that such practices have occurred in Arizona. But "[a]cademic literature confirms such practices within the United States medical community, including examples of health professionals who gave families 'inaccurate and overly negative information,' perceivably 'intended to coerce a woman into a decision to terminate her pregnancy if the fetus is diagnosed with Down syndrome.'" *Preterm-Cleveland*, 994 F.3d at 518. To the extent such practices are not occurring in Arizona, the State nonetheless has a strong interest in *preventing* such practices from ever occurring. The benefits the State will obtain from the Reason Regulation far outweighs any burden that it imposes on whatever small percentage of relevant women that it impacts.

### B.     Plaintiffs Will Not Likely Succeed On Their Vagueness Challenge.

Plaintiffs are also not likely to succeed on the merits of their vagueness challenge for two reasons. First, the claim is not ripe because of the pre-enforcement nature of Plaintiffs' challenge. *See Gonzales v. Carhart*, 550 U.S. 124, 150 (2007) (rejecting the argument "that the Act should be invalidated on its face because it encourages arbitrary or discriminatory enforcement."). An entirely "speculative" pre-enforcement challenge "where 'no evidence has been, or could be, introduced to indicate whether the [Act] has been enforced in a discriminatory manner or with the aim of inhibiting [constitutionally protected conduct]'" should be viewed with caution. *Id.*; *see also Alaska Right to Life Pol. Action Comm. v. Feldman*, 504 F.3d 840, 849 (9th Cir. 2007) ("A party bringing a *preenforcement* challenge must nonetheless present a 'concrete factual situation … to delineate the boundaries of what conduct the government may or may not regulate without running afoul' of the Constitution.") (quoting *San Diego Cnty. Gun Rights*

*Comm. v. Reno*, 98 F.3d 1121, 1132 (9th Cir. 1996)). The timing of Plaintiffs' claims creates serious ripeness issues here by introducing only hypothetical situations, while ignoring that the scope of this law will be obvious in almost all situations.

In the Order (at 10), the Court discusses *Guerrero v. Whitaker*, 908 F.3d 541, 544 (9th Cir. 2019) and *Kashem v. Barr*, 941 F.3d 358 (9th Cir. 2019) as establishing the standard about the identity of litigants who can assert a vagueness challenge and the standard they must meet. But neither case addressed the Ninth Circuit's prior standard for *when* vagueness challenges are ripe. In other words, neither case altered the standard for pre-enforcement challenges, which Plaintiffs do not dispute they are bringing here. Neither *Kashem*, *Guerrero*, *Johnson*, nor *Sessions* involved a pre-enforcement vagueness challenge to a statute, and thus the discussions contained therein about who may generally bring a vagueness challenge and the applicable standards when they do are not relevant to the ripeness inquiry (which is about timing). *See Kashem*, 941 F.3d at 377 (noting that *Johnson* and *Dimaya* presented unique scenarios which led to their conclusion). Because Plaintiffs did not present, and the Court's Order is not based on, a concrete factual scenario, Plaintiffs are not likely to succeed on the ripeness issue.

Even if the Court could entertain Plaintiffs' vagueness argument, the law is not unconstitutionally vague. The threshold for invalidating a law on vagueness grounds is high, only being deemed unconstitutional if it "fails to give ordinary people fair notice of the conduct it punishes, or [is] so standardless that it invites arbitrary enforcement." *Johnson v. United States*, 576 U.S. 591, 595 (2015) (citation omitted). There is nothing about the law here that does not sufficiently put doctors on notice of the prohibited conduct.

To begin, the Court places great weight on the law not offering "workable guidance about which fetal conditions bring abortion care within the scope of these provisions" and that "'doctors might question' what amounts to a genetic abnormality." Doc. 52 at 11, 13. The Ninth Circuit has held that a statute is not unconstitutionally vague just because it "provides an uncertain standard to be applied to a wide range of

fact-specific scenarios." *Guerrero*, 908 F.3d at 545. That is true here. The statute provides a definition of "genetic abnormality" that allows doctors to apply the facts of each situation. S.B. 1457 § 2 (defining "genetic abnormality," with one exception, as "the presence or presumed presence of an abnormal gene expression in an unborn child, including a chromosomal disorder or morphological malformation occurring as the result of abnormal gene expression.").

Further, Plaintiffs' vagueness argument ignores that in almost all cases, it will be obvious whether the statute applies or not. For example, out of approximately 13,000 abortions reported in Arizona in 2019, only 161 women "reported that their primary reason for obtaining an abortion was due to fetal health/medical considerations." *See* Doc. 46-1, Ex. A, Decl. of Steven Robert Bailey ¶ 10. An additional 30 women who reported "other" as their primary reason, included "genetic risk/fetal abnormality" as a detailed reason. *Id.* Thus, in over 98% of cases in 2019, the Reason Regulation's inapplicability would have been obvious. Even among the very small percentage of medical cases when the Reason Regulation might apply, the statute's applicability will remain obvious (and will not prohibit an abortion). *See* Doc. 46 at 12–13.

Finally, and contrary to well-established precedent, the Court held that the inclusion of the scienter requirement, i.e. "knowingly," actually contributes to the vagueness problem here. Although the Court acknowledged that "scienter requirements ordinally alleviate vagueness concerns," it found problematic that "the distinct wording of this law requires that a doctor know the motivations underlying the action of another person to avoid prosecution, while simultaneously evaluating whether the decision is because of that subjective knowledge." Doc. 52 at 13 (quoting *Slatery*, 2021 WL 4127691, at *14). At a minimum, this is an incorrect characterization. A doctor is not required to *know* anything to avoid prosecution. Rather, prosecution would only ever be triggered if the doctor *knew* that a woman was seeking an abortion solely because of a genetic abnormality of the child and the doctor performed the abortion anyway.

\*          \*          \*

Based on the foregoing, Plaintiffs are not likely to succeed on the merits of the State Defendants' appeal. At the very least, there are serious and difficult questions of law. As the Court acknowledged at the end of oral argument, "This is not an easy one[.]" (Transcript at 88.). The Court should, therefore, stay the Reason Injunction pending appeal.

## II. State Defendants Will Suffer Irreparable Harm Absent A Stay.

State Defendants are certain to suffer irreparable harm absent a stay. The State by definition suffers irreparable harm when it is precluded from carrying out the laws passed by its democratic processes. *See, e.g.*, *Coal. for Econ. Equity v. Wilson*, 122 F.3d 718, 719 (9th Cir. 1997) ("[A] state suffers irreparable injury whenever an enactment of its people or their representatives is enjoined."); *Maryland v. King*, 567 U.S. 1301, 1303 (2012) (Roberts, C.J., in chambers) ("Any time a State is enjoined by a court from effectuating statutes enacted by representatives of its people, it suffers a form of irreparable injury.").

More specifically, the preliminary injunction sets aside the Reason Regulation, through which the Legislature intended "to send an unambiguous message that children with genetic abnormalities, whether born or unborn, are equal in dignity and value to their peers without genetic abnormalities, born or unborn." S.B. 1457 § 15. While the law is enjoined, doctors can continue performing abortions *knowing* that the abortion is sought solely because of a genetic abnormality. This certainly constitutes irreparable harm.

## III. The Remaining Factors Favor A Stay Pending Appeal.

While "[t]he first two factors of the traditional standard are the most critical," *Nken*, 556 U.S. at 434, the balance of the remaining factors also favors granting a stay pending appeal. The public interest clearly favors a stay. Here, the Arizona Legislature has made the decision to prohibit doctors from knowingly performing abortions because of a genetic abnormality diagnosis. State officials have a strong interest in seeing the

policy decisions of its elected representatives carried out without interference. And the Supreme Court confirmed decades ago that States have "legitimate interests from the outset of [a] pregnancy in protecting the health of the woman and the life of the fetus that may become a child." *Casey*, 505 U.S. at 834; *see also Isaacson v. Horne*, 716 F.3d 1213, 1233 (9th Cir. 2013) (Kleinfeld, J., concurring).

The balance of harms also tips sharply in favor of a stay. As the Court correctly noted, S.B. 1457 does not ban women from terminating pre-viability pregnancies because of fetal genetic abnormalities. Even if a woman's sole reason for the abortion is a fetal genetic abnormality, she can still obtain an abortion from a doctor who lacks the knowledge of her sole reason. And Plaintiffs have admitted that women often seek abortions for many reasons. *See* Doc. 10-2, Ex. 1, Decl. of Eric M. Reuss, M.D., M.P.H. ¶ 47 ("In my experience, patients seek abortion for a wide range of personal reasons, including familial, medical, and financial, and often do not specifically delineate each one."). Leaving S.B. 1457 in place during the pendency of the appeal would further the State's interests in preventing doctors from performing discriminatory abortions, while not prohibiting any woman from obtaining an abortion.

## CONCLUSION

State Defendants respectfully request that the Court grant a stay of the Reason Injunction pending appeal. State Defendants also request that the Court expedite the briefing schedule, to the extent the Court wants additional briefing, and expedite the decision on the State Defendants' request.

RESPECTFULLY SUBMITTED this 5th day of October, 2021.

**MARK BRNOVICH**
**ATTORNEY GENERAL**

By <u>/s/ Michael S. Catlett</u>
Brunn W. Roysden III (No. 28698)
Michael S. Catlett (No. 25238)
Kate B. Sawyer (No. 34264)
Katlyn J. Divis (No. 35583)
Office of the Arizona Attorney General
2005 N. Central Ave.
Phoenix, Arizona 85004
Telephone: (602) 542-3333
Fax: (602) 542-8308
Beau.Roysden@azag.gov
Michael.Catlett@azag.gov
Kate.Sawyer@azag.gov
Katlyn.Divis@azag.gov

*Attorneys for Defendant Mark Brnovich in his official capacity as Arizona Attorney General*

**MARK BRNOVICH**
**ATTORNEY GENERAL**

Kevin Ray (No. 007485)
Aubrey Joy Corcoran (No. 025423)
Office of the Arizona Attorney General
15 S. 15th Ave
Phoenix, AZ 85007
Telephone: (602) 542-8328
Fax: (602) 364-0700
Kevin.Ray@azag.gov
AubreyJoy.Corcoran@azag.gov

*Attorneys for Defendants Arizona Department of Health Services and Don Herrington in his official capacity as Interim Director of the Arizona Department of Health Services*

**MARK BRNOVICH**
**ATTORNEY GENERAL**

Mary D. Williams (No. 013201)
Carrie H. Smith (No. 022701)
Office of the Arizona Attorney General
15 S. 15th Ave
Phoenix, AZ 85007
Telephone: (602) 542-7992
Fax: (602) 364-3202
MaryD.Williams@azag.gov

*Attorneys for Defendants Arizona Medical Board; Patricia McSorley, in her official capacity as Executive Director of the Arizona Medical Board; and R. Screven Farmer, M.D.; James M. Gillard, M.D.; Jodi A. Bain, M.A., J.D.; Bruce Bethancourt, M.D.; Eileen M. Oswald, M.P.H.; Laura Dorrell, M.S.N., R.N.; Pamela E. Jones; and Lois Krahn, M.D., in their official capacities as members of the Arizona Medical Board*

**BERGIN, FRAKES, SMALLEY & OBERHOLTZER, PLLC**

Brian McCormack Bergin (No. 016375)
4343 E. Camelback Road, Suite 210
Phoenix, AZ 85018
Telephone: (602) 888-7858
Fax: (602) 888-7856
bbergin@bfsolaw.com

*Attorneys for Defendants Gary R. Figge, M.D. and David Beyer, M.D., in their official capacities as members of the Arizona Medical Board*

**CERTIFICATE OF SERVICE**

I hereby certify that on this 5th day of October, 2021, I electronically filed the foregoing with the Clerk of the Court for the United States District Court for the District of Arizona using the CM/ECF filing system. Counsel for all parties are registered CM/ECF users and will be served by the CM/ECF system pursuant to the notice of electronic filing.

/s/ *Michael S. Catlett*