**MARK BRNOVICH**
**ATTORNEY GENERAL**
(Firm State Bar No. 14000)

Brunn (Beau) W. Roysden III (No. 28698)
Michael S. Catlett (No. 25238)
Kate B. Sawyer (No. 34264)
Katlyn J. Divis (No. 35583)
2005 N. Central Ave
Phoenix, AZ 85004-1592
Telephone: (602) 542-3333
Michael.Catlett@azag.gov

*Attorneys for Defendant Mark Brnovich in his official capacity as Arizona Attorney General*

[Additional counsel and emails listed on signature page]

# UNITED STATES DISTRICT COURT
# DISTRICT OF ARIZONA

| | |
|---|---|
| Paul A. Isaacson, M.D., on behalf of himself and his patients, et al., <br><br> Plaintiffs, <br><br> v. <br><br> Mark Brnovich, Attorney General of Arizona, in his official capacity; et al., <br><br> Defendants. | Case No. 2:21-cv-01417-DLR <br><br> **STATE DEFENDANTS' RULE 12(b)(1) MOTION TO DISMISS COUNT V OF PLAINTIFFS' COMPLAINT** |

**INTRODUCTION**

On April 22, 2021, the Arizona Legislature passed S.B. 1457 (the "Act") to further the State's significant interests in protecting the disabled community from intentional discrimination. Before the Act was set to become effective on September 29, 2021, Plaintiffs filed this lawsuit, alleging that certain sections of the Act violate the United States Constitution. In particular, Plaintiffs allege that Sections 2, 10, 11, and 13—collectively the "Reason Regulations"—violate the Fourteenth Amendment, create an unconstitutional condition, and are unconstitutionally vague. Plaintiffs also allege that Section 1—the "Interpretation Policy"—is unconstitutionally vague.[1] This motion concerns only the Interpretation Policy and Count V of Plaintiffs' complaint.

Section 1 of the Act creates a new statute which establishes a general policy that the laws of the State of Arizona be "interpreted and construed to acknowledge, on behalf of an unborn child at every stage of development, all rights, privileges and immunities available to other persons, citizens and residents of this state, subject only to the constitution of the United States and decisional interpretations thereof by the United States Supreme Court." A.R.S. § 1-219(A). The new statute also provides that the policy "does not create a cause of action against" either (1) "a person who performs in vitro fertilization procedures as authorized" by state law, or (2) a woman who indirectly harms "her unborn child by failing to properly care for herself or by failing to follow any particular program of prenatal care." A.R.S. § 1-219(B). "For the purposes of this section, 'unborn child' has the same meaning prescribed in section 36-2151." A.R.S. § 1-219(C).

In Count V of the Complaint, entitled "Unconstitutional Vagueness — Personhood Provision," Plaintiffs' primarily speculate about how the Interpretation Policy *might* be used to interpret other statutes. They allege that the Interpretation Policy thereby "alters the meaning of large swaths of the Arizona Revised Statutes in a manner that is unconstitutionally vague." Doc. 1 ¶ 96. Plaintiffs ultimately admit, however, that "[i]t is

---

[1] State Defendants will refer to Section 1 of the Act (A.R.S. § 1-219) as the "Interpretation Policy." *See also* Doc. 52 at 3 (the Court also referring to Section 1 as the "Interpretation Policy").

1

unclear how the [Interpretation Policy] at Section 1 of S.B. 1457 effectively amends other provisions of the Arizona Revised Statutes that include the term 'person,' 'child,' or similar words, or otherwise effectuates 'rights, privileges, and immunities' for 'unborn children.'" *Id.* ¶ 131.

Along with the Complaint, Plaintiffs moved for a preliminary injunction against the Interpretation Policy. *See* Doc. 10. Plaintiffs argued that "[t]he [Interpretation Policy] amends large swaths of the Arizona Revised Statutes without sufficient clarity to survive constitutional scrutiny." *Id.* at 18. Plaintiffs claimed that the Interpretation Policy violates their due process rights "because it fails to provide adequate notice of prohibited conduct, and also because it will lead to arbitrary enforcement." *Id.*

The State Defendants opposed Plaintiffs' request for a preliminary injunction of the Interpretation Policy. *See* Doc. 46. As to the Interpretation Policy, the State Defendants argued that Plaintiffs' vagueness challenge is not ripe under *Webster v. Reproductive Health Services*, 492 U.S. 490, 504-06 (1989). *Id.* at 20-21. The State Defendants explained that "[u]nder *Webster*, which remains binding precedent, the Court should refuse to address Plaintiffs' constitutional vagueness challenge to the Interpretation Policy." *Id.* at 21. The State Defendants argued that the Court should refuse to decide Plaintiffs' pre-enforcement challenge to the Interpretation Policy because deciding that claim "would require the Court to speculate about all potential factual scenarios, to anticipate how the provisions at issue would be interpreted under state law, and then to apply the imagined interpretation to all of the imagined facts." *Id.* at 20

The Court agreed with the State Defendants and refused to enjoin the Interpretation Policy. Doc. 52 at 6-9. After pointing out that "Plaintiffs do not challenge the specific statutes that they believe will become vague," the Court concluded that "[t]he most useful guidance for addressing Plaintiffs' challenge to the Interpretation [Policy] is the Supreme Court's decision in *Webster v. Reproductive Health Services*[.]" *Id.* at 7. The Court explained that the Interpretation Policy is "substantially and materially similar" to "[t]he language in the Missouri law at issue in *Webster*." *Id.* at 8. Thus, the Court predicted that

"Plaintiffs' facial challenge to the Interpretation Policy will likely meet the same fate [as the constitutional challenge in *Webster*] when the Court enters its final order on the merits." *Id.*

The Court's conclusion as to the viability of Count V was sound—Plaintiffs' allegations about how the Interpretation Policy might impact other provisions of Arizona law in future, hypothetical cases are pure conjecture, making this claim unripe for adjudication. State Defendants, thus, move to dismiss Plaintiffs' challenge to the Interpretation Policy (Count V) under Federal Rule of Civil Procedure 12(b)(1).

## LEGAL STANDARD

A motion to dismiss for lack of ripeness is properly raised in a Rule 12(b)(1) motion. *Chandler v. State Farm Mut. Auto. Ins.*, 598 F.3d 1115, 1122 (9th Cir. 2010); *see also St. Clair v. City of Chico*, 880 F.2d 199, 201 (9th Cir. 1989) ("Whether a claim is ripe for adjudication goes to a court's subject matter jurisdiction under the case or controversy clause of article III of the federal Constitution."). A Rule 12(b)(1) motion may raise facial or factual attacks. *Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004). "In a facial attack, the challenger asserts that the allegations contained in a complaint are insufficient on their face to invoke federal jurisdiction." *Id.*

## ARGUMENT

**I.    Plaintiffs' Challenge To The Interpretation Policy Fails Under *Webster*, Which Is Controlling Here.**

As this Court has already recognized (Doc. 52 at 7), *Webster v. Reproductive Health Services*, 492 U.S. 490 (1989) guides the outcome of Plaintiffs' challenge to the Interpretation Policy. In *Webster*, the U.S. Supreme Court was presented with challenges to several provisions of Missouri law, including a provision with language almost identical to the language that Arizona has adopted in Section 1:

> [T]he laws of [Missouri] shall be interpreted and construed to acknowledge on behalf of the unborn child at every stage of development, all the rights, privileges, and immunities available to other persons, citizens, and residents of this state, subject only to the Constitution of the

3

>United States, and decisional interpretations thereof by the United States Supreme Court … .

*Webster*, 492 U.S. at 505 n.4.  But in considering the challenge, the Court concluded that it could not decide that provision's constitutionality.  The Court discussed several threshold considerations, including that only state courts could consider "the extent to which the [provision's] language *might* be used to interpret other state statutes or regulations[.]"  *Id.* at 506 (emphasis added).  Beyond that, the Court recognized that Plaintiffs were asking the courts to weigh in on a "state statute which ha[d] not yet been applied or threatened to be applied by the state courts to petitioners or others in the manner anticipated."  *Id.* at 506 (quoting *Alabama State Federation of Labor v. McAdory*, 325 U.S. 450, 460).  If Plaintiffs were later restricted by the provision "in some concrete way," the federal courts could weigh in.  *Id.*  But "[u]ntil then," the Court was "not empowered to decide … abstract propositions, or to declare, for the government of future cases, principles or rules of law which cannot affect the result as to the thing in issue in the case before it."  *Id.* at 506-07 (quoting *Tyler v. Judges of Court of Registration,* 179 U.S. 405, 409 (1900)).

As the Court has already recognized (Doc. 52 at 7-8), Plaintiffs' challenge to the Interpretation Policy is nearly identical to the challenge in *Webster* and should suffer the same fate.  Plaintiffs do not allege that Arizona's state courts have used the Interpretation Policy to interpret any statute, and Plaintiffs can only speculate as to how that might occur in the future.  Plaintiffs do not challenge the actual Arizona statutes that they believe will become vague through incorporation of the Interpretation Policy.  Instead, they ask the Court (and the State Defendants) to guess about which statutes the Interpretation Policy might impact and to speculate about how that impact might play out in any number of future factual scenarios.  Federal courts are not designed to operate in this fashion.  Instead, Arizona state courts should first be permitted to apply the Interpretation Policy in concrete factual situations.  Facing a concrete factual context, Plaintiffs or other parties can assert a due process challenge if they believe the Interpretation Policy did not put them on adequate notice that the law would be enforced in the particular manner at issue.  Until then, the Court should stay its hand.

As the Court concluded in denying Plaintiffs' request to preliminarily enjoin the Interpretation Policy, the Supreme Court's holding in *Webster* remains binding precedent and controls here. Just as the Court in *Webster* determined that the challenge was not ripe for review, the Court here should do the same (again) and dismiss Count V of Plaintiffs' complaint.

## II.     Even Without *Webster*, Count V Fails Because It Is Entirely Speculative.

Even if the Court reverses course and concludes that *Webster* is not controlling, basic principles of ripeness and comity demand dismissal. Plaintiffs' challenge to the Interpretation Policy in Count V is a classic example of a claim that should be dismissed as unripe.

Plaintiffs have challenged a statute that "is neither a penal statute nor a civil regulatory provision." Doc. 52 at 7. The Interpretation Policy on its own is no more than that—a policy. "It is a directive that all other provisions of Arizona law be interpreted in a certain manner." Doc. 52 at 7. Plaintiffs can do no more than speculate that the Interpretation Policy "alters the meaning of large swaths" of Arizona statutes. Doc. 1 ¶ 96. Plaintiffs claim the Interpretation Policy will make it "impossible … to identify whether a vast array of actions (including, but not limited to, maternal health care decisions and treatment for patients who are, or could be, pregnant) puts them at risk of criminal prosecution." *Id.* ¶ 100. But Plaintiffs allegations ignore an important fact—as this Court has recognized, "Plaintiffs do not challenge the specific statutes that they believe will become vague; they challenge the interpretive rule that would, in their view, render vast swaths of Arizona law vague if applied by law enforcement agencies, prosecutors, courts, juries, and regulators." Doc. 52 at 7.

In order to review Plaintiffs' challenge, therefore, the Court would be required to consider endless hypothetical situations in a vacuum. The Ninth Circuit has recognized that "the District Court should not be forced to decide ... constitutional questions in a vacuum." *San Diego Cty. Gun Rts. Comm. v. Reno*, 98 F.3d 1121, 1132 (9th Cir. 1996). But that is exactly what Plaintiffs ask the Court to do here. If this Court were to issue a

"decision on the merits of [P]laintiffs' constitutional claim[]," that decision "would be devoid of any factual context whatsoever." *Id.* Plaintiffs' hypothetical guesses about how the Interpretation Policy might apply to various Arizona statutes demonstrate this reality. *See* Doc. 10 at 26-28. Answering those hypotheticals would require the Court to speculate about all numerous hypothetical factual scenarios, to anticipate how the provisions at issue would be interpreted under state law, and then to apply the imagined interpretation to all of the imagined facts. The Court should refuse to engage in that exercise, just as it did in denying Plaintiffs' request to enjoin the Interpretation Policy.

## CONCLUSION

The State Defendants respectfully request that the Court dismiss Count V of Plaintiff's Complaint.

Respectfully submitted,

**MARK BRNOVICH**
**ATTORNEY GENERAL**

By /s/ *Michael S. Catlett*
Brunn W. Roysden III (No. 28698)
Michael S. Catlett (No. 25238)
Kate B. Sawyer (No. 34264)
Katlyn Divis (No. 35583)
Office of the Arizona Attorney General
2005 N. Central Ave.
Phoenix, Arizona 85004
Telephone: (602) 542-3333
Fax: (602) 542-8308
Beau.Roysden@azag.gov
Michael.Catlett@azag.gov
Kate.Sawyer@azag.gov
Katlyn.Divis@azag.gov

*Attorneys for Defendant Mark Brnovich in his official capacity as Arizona Attorney General*

**MARK BRNOVICH**
**ATTORNEY GENERAL**

Kevin Ray (No. 007485)
Aubrey Joy Corcoran (No. 025423)
Office of the Arizona Attorney General
15 S. 15th Ave
Phoenix, AZ 85007
Telephone: (602) 542-8328
Fax: (602) 364-0700
Kevin.Ray@azag.gov
AubreyJoy.Corcoran@azag.gov

*Attorneys for Defendants Arizona Department of Health Services and the Director of the Arizona Department of Health Services in their official capacity*

**MARK BRNOVICH**
**ATTORNEY GENERAL**

Mary D. Williams (No. 013201)
Carrie H. Smith (No. 022701)
Office of the Arizona Attorney General
15 S. 15th Ave
Phoenix, AZ 85007
Telephone: (602) 542-7992
Fax: (602) 364-3202
MaryD.Williams@azag.gov
Carrie.Smith@azag.gov

*Attorneys for Defendants Arizona Medical Board, Patricia McSorley, in her official capacity as Executive Director of the Arizona Medical Board; R. Screven Farmer, M.D.; James M. Gillard, M.D.; Jodi A. Bain, M.A., J.D.; Bruce Bethancourt, M.D.; Eileen M. Oswald, M.P.H.; Laura Dorrell, M.S.N., R.N.; Pamela E. Jones; and Lois Krahn, M.D., in their official capacities as members of the Arizona Medical Board*

| | |
|---|---|
| 1 | **BERGIN, FRAKES, SMALLEY & OBERHOLTZER, PLLC** |
| 2 | |
| 3 | Brian McCormack Bergin (No. 016375) |
| 4 | 4343 E. Camelback Road, Suite 210 |
|   | Phoenix, AZ  85018 |
| 5 | Telephone: (602) 888-7858 |
|   | Fax: (602) 888-7856 |
| 6 | bbergin@bfsolaw.com |
| 7 | |
| 8 | *Attorneys for Defendants Gary R. Figge, M.D. and David Beyer, M.D., in their official capacities as members of the Arizona Medical Board* |
| 9 | |

(Lines 10–28 blank)

8

# CERTIFICATE OF SERVICE

I hereby certify that on this 19th day of October, 2021, I electronically filed the foregoing with the Clerk of the Court for the United States District Court for the District of Arizona using the CM/ECF filing system. Counsel for all parties are registered CM/ECF users and will be served by the CM/ECF system pursuant to the notice of electronic filing.

/s/ *Michael S. Catlett*