**MARK BRNOVICH**
**ATTORNEY GENERAL**
(Firm State Bar No. 14000)

Brunn (Beau) W. Roysden III (No. 28698)
Michael S. Catlett (No. 25238)
Kate B. Sawyer (No. 34264)
Katlyn J. Divis (No. 35583)
2005 N. Central Ave.
Phoenix, AZ 85004-1592
Telephone: (602) 542-3333
Michael.Catlett@azag.gov

*Attorneys for Defendant Mark Brnovich in his official capacity as Arizona Attorney General*

[Additional counsel and emails listed on signature page]

# UNITED STATES DISTRICT COURT

# DISTRICT OF ARIZONA

| | |
|---|---|
| Paul A. Isaacson, M.D., on behalf of himself and his patients, et al., <br><br> Plaintiffs, <br><br> v. <br><br> Mark Brnovich, Attorney General of Arizona, in his official capacity, et al., <br><br> Defendants. | Case No. 2:21-cv-01417-DLR <br><br> **STATE DEFENDANTS' RESPONSE TO PLAINTIFFS' EMERGENCY MOTION FOR AN INJUNCTION OF INTERPRETATION POLICY PENDING APPEAL (DOC. 107)** |

**INTRODUCTION**

This Court was correct when it determined that Plaintiffs' vagueness challenge to the Interpretation Policy would not likely succeed. Yet now Plaintiffs say that because of the Supreme Court's recent issuance of *Dobbs v. Jackson Women's Health Organization,* No. 19-1392 (U.S. June 24, 2022), which overruled *Roe* and *Casey*, the Court should completely reverse course. But Plaintiffs' request ignores that the Court's previous conclusion as to Plaintiffs' challenge to the Interpretation Policy was not tied to *Roe* or *Casey*.

The Court correctly recognized that Plaintiffs did not challenge "the specific statutes that they believe will become vague." Doc. 52 at 7. They only challenged "the interpretive rule that would, in their view" render *other* statutes vague if applied. *Id.* And that has not changed. Plaintiffs continue to challenge a statute that is non-substantive, contains no regulation, prohibits no conduct, and imposes no penalty. Such a statute does not trigger due process concerns at all.

The Court also correctly recognized that Plaintiffs' challenge to the Interpretation Policy likely would "meet the same fate" as Missouri's near-identical statute did in the Supreme Court's decision in *Webster v. Reproductive Health Services*, 492 U.S. 490 (1989). Doc. 52 at 8. But Plaintiffs, in their renewed motion, have not offered the Court the "concrete" applications of the Interpretation Policy that this Court deemed essential under *Webster*— and indeed *Webster* requires. *See id.*

Put simply, Plaintiffs have renewed their request for the Court to predict in a vacuum how state law might be applied to hypothetical scenarios. The Court was correct when it said such a challenge cannot succeed. Plaintiffs have offered nothing in their renewed motion that cures the fundamental flaws that this Court already recognized and thus provide no reason for this Court to come to a different conclusion than it already has.

# BACKGROUND

### 1. A.R.S. § 1-219

On April 22, 2021, the Arizona Legislature passed S.B. 1457 (the "Act"), which, included the addition of a new provision, § 1-219, to the Arizona Revised Statutes (the "Interpretation Policy"). *See* 2021 Ariz. Legis. Serv. Ch. 286. The Interpretation Policy establishes a general policy for the State that its laws be "interpreted and construed to acknowledge, on behalf of an unborn child at every stage of development, all rights, privileges and immunities available to other persons, citizens and residents of this state[.]" A.R.S. § 1-219(A). The statute also provides that the policy "does not create a cause of action against" either (1) "a person who performs in vitro fertilization procedures as authorized" by state law, or (2) a woman who indirectly harms "her unborn child by failing to properly care for herself or by failing to follow any particular program of prenatal care." A.R.S. § 1-219(B). "Unborn child" is defined to mean "the offspring of human beings from conception until birth." A.R.S. § 1-219(C); A.R.S. § 36-2151(16).

The Legislature added the Interpretation Policy to the first title of the Arizona Code, which is titled "General Provisions." Specifically, the Legislature added the Interpretation Policy to an article of code titled "General Rules of Statutory Construction," which provides "rules and [] definitions" to "be observed in the construction of the laws of the state unless such construction would be inconsistent with the manifest intent of the legislature." A.R.S. § 1-211(A). For example, A.R.S. § 1-213 instructs that "[w]ords and phrases shall be construed according to the common and approved use of the language. Technical words and phrases and those which have acquired a peculiar and appropriate meaning in the law shall be construed according to such peculiar and appropriate meaning."

### 2. Prior Proceedings

On August 17, 2021, weeks before S.B. 1457 would go into effect, Plaintiffs sued State Defendants and others, seeking a preliminary injunction to stop portions of the Act from becoming effective, including the Interpretation Policy. Docs. 1, 10. Plaintiffs argued that the Interpretation Policy is unconstitutionally vague and thus "violates their due process rights because it fails to provide adequate notice of prohibited conduct, and

2

also because it will lead to arbitrary enforcement." Doc. 10 at 25. While the Court partially granted Plaintiffs' request for a preliminary injunction by enjoining other portions of the Act, the Court denied Plaintiffs' request to enjoin the Interpretation Policy. Doc. 52 at 9. The Court recognized that "[t]he Interpretation Policy is neither a penal statute nor a civil regulatory provision." *Id.* at 7. The Court pointed out that "Plaintiffs do not challenge the specific statutes that they believe will become vague; they challenge the interpretive rule that would, in their view, render vast swaths of Arizona law vague if applied by law enforcement agencies, prosecutors, courts, juries, and regulators." *Id.*

The Court also correctly concluded that "[t]he most useful guidance for addressing Plaintiffs' challenge to the Interpretation [Policy] is the Supreme Court's decision" in *Webster*, which discusses Missouri's nearly-identical statute. *Id.* at 7. Looking to *Webster*, the Court declined to enjoin the Interpretation Policy, concluding instead that "Plaintiffs have not shown a likelihood that their pre-enforcement facial challenge to Arizona's Interpretation Policy will meet a different fate than the facial challenge to Missouri's similar provision[.]" *Id.* at 9. And since the Interpretation Policy went into effect on September 29, 2021, Plaintiffs have not alleged that it has been arbitrarily implemented or used against Plaintiffs or their patients, or anyone else, in any way.

Plaintiffs and State Defendants each pursued appeals of the Court's order to the Ninth Circuit. While those appeals were pending, the United States Supreme Court issued its opinion in *Dobbs,* No. 19-1392 (U.S. June 24, 2022), overruling *Roe* and *Casey*. The next day, Plaintiffs filed an emergency motion for an injunction pending appeal of the Court's order regarding the Interpretation Policy. Doc. 107. But before the Court could rule on that motion, the United States Supreme Court, in response to Defendant Attorney General Brnovich's Application for Partial Stay, No. 21A222 (U.S.), treated that Application "as a petition for a writ of certiorari before judgment" and granted the petition. *Brnovich v. Isaacson*, No. 21-1609 (U.S. June 30, 2022). The Supreme Court vacated this Court's September 28, 2021 order concerning Plaintiffs' original request for preliminary injunction and instructed the Ninth Circuit "to remand [the case] to the District Court for

further consideration in light of *Dobbs*[.]" *Id.* Shortly thereafter, the Ninth Circuit remanded the case to this Court and issued the mandate, *see Isaacson v. Brnovich*, No. 21-16645 (9th Cir.) (June 30, 2022), and this Court ordered that Plaintiffs' pending motion (Doc. 107) would be "treated as a renewed motion for preliminary injunction under Rule 65," Doc. 112 at 3. State Defendants now respond to that motion.

## LEGAL STANDARD

Injunctive relief is "an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief," and "never awarded as of right." *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 22, 24 (2008). Plaintiffs seeking a preliminary injunction have the burden of proving: (1) that they are "likely to succeed on the merits;" (2) that they are "likely to suffer irreparable harm in the absence of preliminary relief;" (3) "that the balance of equities tips in [their] favor;" and (4) "that an injunction is in the public interest." *Id.* at 20.

## ARGUMENT

**I.   Plaintiffs Remain Unlikely To Succeed On The Merits, As The Supreme Court's Opinion in *Dobbs* Did Not Alter The Defects In Plaintiffs' Claim.**

Plaintiffs' vagueness challenge to the Interpretation Policy is no more meritorious post-*Dobbs* than it was pre-*Dobbs*.

**A.   This Court's Prior Ruling Denying Injunctive Relief Was Not Tied To *Roe* or *Casey*.**

Plaintiffs assert that the Supreme Court's decision in *Dobbs* changes how the Court should react to their vagueness challenge to the Interpretation Policy. But nothing in this Court's previous order denying Plaintiffs' request for a preliminary injunction of the Interpretation Policy hinged on the holdings in *Roe* or *Casey*. And Plaintiffs admitted at oral argument that their vagueness challenge did not hinge on *Roe* or *Casey*. *See* Doc. 61 at 41:19–22 ("THE COURT: So for present purposes, you're not arguing that the [Interpretation Policy] violates due process under *Roe* and *Casey*; is that right? [Plaintiffs' Counsel]: That's right, Your Honor.") Thus, the Court's previous analysis remains applicable and correct, and the Court should deny Plaintiffs' renewed request.

4

In its prior ruling, the Court recognized that the Interpretation Policy "is neither a penal statute nor a civil regulatory provision." Doc. 52 at 7. Indeed, the Legislature included it, along with other non-substantive provisions, in an introductory article of the A.R.S. titled "General Rules of Statutory Construction." By its very terms, the Interpretation Policy on its own is nothing more than a directive, primarily to state courts, that Arizona laws "be interpreted and construed to acknowledge" the rights of unborn children. A.R.S. § 1-219(A); *see also* Doc. 52 at 7 ("It is a directive that all other provisions of Arizona law be interpreted in a certain manner."). The Court accordingly recognized that "Plaintiffs do not challenge the specific statutes that they believe will become vague[.]" Doc. 52 at 7. And that has not changed. Plaintiffs' new request does not ask the Court to enjoin any substantive statute; Plaintiffs only ask anew that this Court enjoin the Interpretation Policy.

The Court concluded that "Arizona courts *must* decide in the first instance" "[w]hether and to what extent the Interpretation Policy *might* be used to interpret other provisions of Arizona law[.]" Doc. 52 at 8 (emphases added). The Court looked to the U.S. Supreme Court's decision in *Webster*, where the Supreme Court was presented with challenges to several provisions of Missouri law, including a provision with language almost identical to the language of the Interpretation Policy. *See Webster*, 492 U.S. at 504 n.4.

In *Webster*, the Supreme Court concluded that it could not decide that provision's constitutionality. The Supreme Court discussed several threshold considerations, including that only state courts could consider "the extent to which the [provision's] language *might* be used to interpret other state statutes or regulations[.]" *Id.* at 506 (emphasis added). Beyond that, the Supreme Court recognized that Plaintiffs were asking the courts to weigh in on a "state statute which ha[d] not yet been applied or threatened to be applied by the state courts to petitioners or others in the manner anticipated." *Id.* (quoting *Ala. State Fed'n of Lab. v. McAdory*, 325 U.S. 450, 460). If Plaintiffs were later restricted by the provision "in some concrete way," the federal courts could weigh in. *Id.*

But "[u]ntil then," the Supreme Court was "not empowered to decide . . . abstract propositions, or to declare, for the government of future cases, principles or rules of law which cannot affect the result as to the thing in issue in the case before it." *Id.* at 506–07 (quoting *Tyler v. Judges of Court of Registration,* 179 U.S. 405, 409 (1900)); *see also Stiles v. Blunt*, 912 F.2d 260, 269 (8th Cir. 1990) ("[W]e believe it is particularly imperative to follow *Webster* and leave it to the Missouri courts to decide what legal effect, if any, to give to the preamble to the 1986 Missouri Abortion Act.").

This Court heeded *Webster*'s guidance, similarly declaring that it "is not positioned to decide 'abstract propositions[.]'" Doc. 52 at 8 (quoting *Webster*, 492 U.S. at 507). And as in *Webster*, the Court also noted that "if a particular application of the Interpretation Policy restricts Plaintiffs' activities 'in some concrete way,'" the Court could address a constitutional challenge "as to that specific application." *Id.*[1]

But contrary to Plaintiffs' assertions, they have not turned their original "abstract propositions" into anything more than they were when this Court ruled on Plaintiffs' first request for preliminary injunction. The hypotheticals they offer (at 14–15) are still "abstract propositions" that do not provide the Court with any more of a "concrete" scenario than it had previously. The record is devoid of any actual evidence supporting that anyone, including the State Defendants, has, or is threatening to, apply the Interpretation Policy in a specific or concrete way. Narrowing their request to "abortion care" does not alter that reality. Plaintiffs are still asking the Court (and State Defendants) to guess about which statutes the Interpretation Policy might impact and to speculate about how that impact might play out in any number of future factual scenarios.

The numerous unanswered hypotheticals Plaintiffs pose continue to demonstrate

---

[1] Not only does *Webster* control here, but the Court's prior conclusions also respect principles of comity and federalism that require Arizona state courts to be the first to decide *if* and *how* the Interpretation Policy might be used. *See Arizonans for Official English v. Arizona*, 520 U.S. 43, 79 (1997) ("Warnings against premature adjudication of constitutional questions bear heightened attention when a federal court is asked to invalidate a State's law, for the federal tribunal risks friction-generating error when it endeavors to construe a novel state Act not yet reviewed by the State's highest court.").

6

why it would be troublesome for federal courts to decide the constitutionality of the Interpretation Policy at this juncture. Any potential future application of the Interpretation Policy would need to be examined in the context with which it is to be applied. Each title of the A.R.S. includes its own separate definitions and interpretations, and thus, any application of the Interpretation Policy would need to be analyzed under the lens of Arizona's principles of separation of powers, common-law background regarding the definition of the term "person," and rules of statutory interpretation and lenity, not to mention the specific factual context within which the application arises. *See, e.g.*, A.R.S. § 1-211(A) ("The rules and the definitions set forth in this chapter shall be observed in the construction of the laws of the state unless such construction would be inconsistent with the manifest intent of the legislature.").

This sort of analysis by the Arizona state judiciary would not be novel. Prior to the Legislature's enactment of the Interpretation Policy, the Arizona Supreme Court analyzed whether the term "person" in an Arizona civil wrongful death statute includes a viable fetus and concluded it does. *See Summerfield v. Super. Ct. in and for Maricopa Cnty.*, 144 Ariz. 467, 479 (1985). After observing that the Arizona Legislature had not provided a definition of the term "person," the court concluded that "the law has evolved and the issue of recovery for tort damage to the fetus has come within the province of common law development." *Id.* Thus, "absent a clear and definitive demonstration of legislative intent to the contrary, the word 'person' in the wrongful death statutes (A.R.S. § 12-611 et seq.) encompasses a stillborn, viable fetus." *Id.* On the other hand, seven years after *Summerfield*, the Arizona Court of Appeals, in concluding that a fetus was not included in the definition of "person" or "human being" within a prior version of the murder statute, explained that "where the legislature intends to protect the unborn, it does so by specific reference to a fetus, separate and apart from the general definition of 'person' or 'human being.'" *Vo v. Super. Ct. in and for Cnty. of Maricopa*, 172 Ariz. 195, 202 (App. 1992). How the Interpretation Policy might alter the Arizona judiciary's analysis of these issues, *if at all*, is anyone's guess. But it is not the proper function of a federal court to short-

circuit the organic development of state law through a vagueness challenge wrapped in a preliminary injunction request.

### B. Plaintiffs' Claim Fails Because The Interpretation Policy Is Still Not Subject To A Vagueness Challenge.

While the Court primarily relied on *Webster*, the Court's conclusions also recognized that the nature of the Interpretation Policy prohibits it from even being subject to a vagueness challenge like the one Plaintiffs bring here.

As explained, the Interpretation Policy on its own is no more than that—a policy. It is included, along with other non-substantive provisions, in an introductory article of the Arizona Revised Statutes titled "General Rules of Statutory Construction." But the vagueness doctrine primarily applies to criminal laws, *see* Doc. 52 at 6, which the Interpretation Policy is not. A criminal law violates due process on vagueness grounds only when it is "so vague that it fails to give ordinary people fair notice of the conduct it punishes, or so standardless that it invites arbitrary enforcement." *Johnson v. United States*, 576 U.S. 591, 595 (2015). As the Ninth Circuit has put it, to avoid being struck down for vagueness, a regulation "must (1) define the offense with sufficient definiteness that ordinary people can understand what conduct is prohibited; and (2) establish standards to permit police to enforce the law in a non-arbitrary, non-discriminatory manner." *McCormack v. Herzog*, 788 F.3d 1017, 1031 (9th Cir. 2015). This standard simply cannot be applied to the Interpretation Policy, which contains no regulation, prohibits no conduct, and contains no penalty. *See* Doc. 52 at 7 ("The Interpretation Policy is neither a penal statute nor a civil regulatory provision.").

Because the Interpretation Policy lacks the fundamental characteristics of a law that could be subject to a vagueness challenge, Plaintiffs can only hypothesize about how *other* Arizona statutes may be rendered vague. But as noted above, none of those statutes are before the Court. As the Court previously put it, "Plaintiffs do not challenge the specific statutes that they believe will become vague; they challenge the interpretive rule that would, in their view, render vast swaths of Arizona law vague if applied by law

enforcement agencies, prosecutors, courts, juries, and regulators." Doc. 52 at 7. Plaintiffs effectively ask the Court to consider endless hypothetical situations in a vacuum—an approach the Ninth Circuit has disavowed. *See San Diego Cnty. Gun Rights Comm. v. Reno*, 98 F.3d 1121, 1132 (9th Cir. 1996).

Plaintiffs make two arguments to try to avoid this conclusion, both of which are unavailing. *First*, Plaintiffs rely (at 12) on *Johnson v. United States*, 576 U.S. 591 (2015), and *Sessions v. Dimaya*, 138 S. Ct. 1204 (2018), for the proposition that "both civil and criminal statutes directing the way other laws are to be interpreted can be struck down on vagueness grounds." But the statutes challenged in *Johnson* and *Dimaya* are not at all analogous to the statute challenged here. At issue in *Johnson* was an actual criminal provision, nothing like the Interpretation Policy. There, the Court struck down as vague a portion of a federal sentencing statute which increased sentencing time when the defendant had three or more convictions for a "violent felony," a defined term that included "any felony that 'involves conduct that presents a serious potential risk of physical injury to another.'" *Johnson*, 576 U.S. at 593. The Court held that "[i]nvoking so shapeless a provision to condemn someone to prison for 15 years to life does not comport with the Constitution's guarantee of due process." *Id.* at 602. *Dimaya* addressed a similar challenge to terms in a removal statute within the Immigration and Nationality Act. 138 S. Ct. at 1210–11.

Unlike here, both *Johnson* and *Dimaya* dealt with challenges to independent, substantive provisions imposing actual penalties—prison time in *Johnson*, removal in *Dimaya*. The challenges before the Court in those cases did not require it to look to any other statutes in making its vagueness determination. Rather, the Court held that the statutes themselves required courts, prosecutors, and criminal defendants to analyze a multitude of imaginary crimes to determine whether the statute's penalty applied. *See Guerrero v. Whitaker*, 908 F.3d 541, 545 (9th Cir. 2018) ("The problem in *Johnson* and *Dimaya* was not that the terms were uncertain in isolation; the problem was that the uncertainty had to be applied to an idealized crime[.]"). The Interpretation Policy, on the

other hand, is not a penal statute, and its language does not require comparison to idealized crimes. Instead, it is Plaintiffs' vagueness challenge that would require this Court to attempt to glean how the Interpretation Policy might apply to other statutes and how those other statutes might then apply to idealized crimes and how Arizona courts would react in response. The Court should again refuse to engage in such speculation.

Second, Plaintiffs argue (at 12) that a "stringent standard of review is appropriate" because the Interpretation Policy "is at minimum quasi-criminal in nature." Plaintiffs are again incorrect. Plaintiffs cite to *Village of Hoffman Estates v. Flipside*, 455 U.S. 489 (1982), to support their argument, but that case dealt with a regulation that prohibited conduct and carried penalties. The Interpretation Policy does neither of those things. Nothing in *Village of Hoffman Estates* supports review of Plaintiffs' challenge to an interpretive provision that on its own does nothing more than provide a rule of statutory construction.

**II.     Plaintiffs Have Not Demonstrated That Irreparable Harm Is Likely.**

Plaintiffs have not established irreparable harm. Plaintiffs make the circular argument that they are suffering irreparable harm because they and their patients are subject to a vague statute. But as State Defendants have explained herein, and as the Court previously concluded, the Plaintiffs' vagueness challenge fails as a matter of law. That being the case, there is no deprivation of Plaintiffs' rights.

**III.    The Balance Of Equities And The Public Interest Favor The State Defendants.**

When the government is a party to the litigation, "the balance of the equities and public interest factors merge." *Roman v. Wolf*, 977 F.3d 935, 940–41 (9th Cir. 2020).

Legislation "is in itself a declaration of public interest." *Virginian Ry. Co. v. Sys. Fed'n No. 40*, 300 U.S. 515, 552 (1937). "[A] court sitting in equity cannot 'ignore the judgment of [the legislature], deliberately expressed in legislation.'" *United States v. Oakland Cannabis Buyers' Co-op.*, 532 U.S. 483, 497 (2001). When combined with the fundamental flaws in Plaintiffs' challenge that this Court already recognized, the balance of the equities strongly favors the State Defendants.

# CONCLUSION

The Court should deny Plaintiffs' renewed request to enjoin the Interpretation Policy. The Court's prior conclusions about the flawed nature of Plaintiffs' challenge to the Interpretation Policy were correct and there is no principled reason why those conclusions should change.

RESPECTFULLY SUBMITTED this 1st day of July, 2022.

**MARK BRNOVICH**
**ATTORNEY GENERAL**

By <u>/s/ *Michael S. Catlett*</u>
Brunn W. Roysden III (No. 28698)
Michael S. Catlett (No. 25238)
Kate B. Sawyer (No. 34264)
Katlyn J. Divis (No. 35583)
Office of the Arizona Attorney General
2005 N. Central Ave.
Phoenix, Arizona 85004
Telephone: (602) 542-3333
Fax: (602) 542-8308
Beau.Roysden@azag.gov
Michael.Catlett@azag.gov
Kate.Sawyer@azag.gov
Katlyn.Divis@azag.gov

*Attorneys for Defendant Mark Brnovich in his official capacity as Arizona Attorney General*

**Additional counsel on next page**

**MARK BRNOVICH**
**ATTORNEY GENERAL**

Kevin Ray (No. 007485)
Aubrey Joy Corcoran (No. 025423)
Office of the Arizona Attorney General
2005 N. Central Ave.
Phoenix, AZ 85004
Telephone: (602) 542-8328
Fax: (602) 364-0700
Kevin.Ray@azag.gov
AubreyJoy.Corcoran@azag.gov

*Attorneys for Defendants Arizona Department of Health Services and Don Herrington in his official capacity as Interim Director of the Arizona Department of Health Services*

**MARK BRNOVICH**
**ATTORNEY GENERAL**

Mary D. Williams (No. 013201)
Carrie H. Smith (No. 022701)
Office of the Arizona Attorney General
2005 N. Central Ave.
Phoenix, AZ 85004
Telephone: (602) 542-7992
Fax: (602) 364-3202
MaryD.Williams@azag.gov

*Attorneys for Defendants Arizona Medical Board and Patricia McSorley in her official capacity as Executive Director of the Arizona Medical Board*

**CERTIFICATE OF SERVICE**

I hereby certify that on this 1st day of July, 2022, I electronically filed the foregoing with the Clerk of the Court for the United States District Court for the District of Arizona using the CM/ECF filing system. Counsel for all parties are registered CM/ECF users and will be served by the CM/ECF system pursuant to the notice of electronic filing.

/s/ *Michael S. Catlett*