Jared Keenan (027068)
Victoria Lopez (330042)
American Civil Liberties Union
Foundation of Arizona
3707 North 7th Street, Suite 235
Phoenix, Arizona 85014
Telephone: (602) 650-1854
jkeenan@acluaz.org
vlopez@acluaz.org
*Counsel for Plaintiffs*

Jen Samantha D. Rasay, *pro hac vice*
Center For Reproductive Rights
1634 Eye Street, NW, Suite 600
Washington, DC 20006
Telephone: (202) 628-0286
jrasay@reprorights.org
*Counsel for Paul A. Isaacson, M.D.,
National Council of Jewish Women
(Arizona Section), Inc., and Arizona
National Organization for Women*

COUNSEL CONTINUED ON
FOLLOWING PAGES

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF ARIZONA**

| | |
|---|---|
| Paul A. Isaacson, M.D., on behalf of himself and his patients, et al., <br><br> Plaintiffs, <br><br> v. <br><br> Mark Brnovich, Attorney General of Arizona, in his official capacity; et al., <br><br> Defendants. | Case No. 2:21-CV-1417-DLR <br><br> **PLAINTIFFS' REPLY IN SUPPORT OF PLAINTIFFS' EMERGENCY MOTION FOR AN INJUNCTION OF INTERPRETATION POLICY** |

Jessica Leah Sklarsky, *pro hac vice*
Gail Deady, *pro hac vice*
Catherine Coquillette, *pro hac vice*
Center For Reproductive Rights
199 Water Street, 22nd Floor
New York, NY 10038
Telephone: (917) 637-3600
jsklarsky@reprorights.org
gdeady@reprorights.org
ccoquillette@reprorights.org
*Counsel for Paul A. Isaacson, M.D., National Council of Jewish Women (Arizona Section), Inc., and Arizona National Organization for Women*

Alexa Kolbi-Molinas, *pro hac vice*
Rebecca Chan, *pro hac vice*
American Civil Liberties Union
125 Broad Street, 18th Floor
New York, NY 10004
Telephone: (212) 549-2633
akolbi-molinas@aclu.org
rebeccac@aclu.org
*Counsel for Eric M. Reuss, M.D., M.P.H., and Arizona Medical Association*

Beth Wilkinson, *pro hac vice*
Anastasia Pastan, *pro hac vice*
Wilkinson Stekloff LLP
2001 M Street, NW
10th Floor
Washington, DC 20036
Telephone: (202) 847-4000
bwilkinson@wilkinsonstekloff.com
apastan@wilkinsonstekloff.com
*Counsel for Paul A. Isaacson, M.D., National Council of Jewish Women (Arizona Section), Inc., and Arizona National Organization for Women*

Ralia Polechronis, *pro hac vice*
Wilkinson Stekloff LLP
130 West 42nd Street
24th Floor
New York, NY 10036
Telephone: (212) 294-9410
rpolechronis@wilkinsonstekloff.com
*Counsel for Paul A. Isaacson, M.D., National Council of Jewish Women (Arizona Section), Inc., and Arizona National Organization for Women*

I.   **Introduction**

Glaringly absent from Defendants' response is any real answer to Plaintiffs' arguments that the Interpretation Policy is unconstitutionally vague *as applied to abortion care*. Defendants have admitted the Interpretation Policy alters the meaning of countless Arizona statutes and can be used to impose criminal penalties, but refuse to answer whether the Interpretation Policy has now altered Arizona's criminal laws to completely ban abortion in the wake of *Dobbs v. Jackson Women's Health Organization*, No. 19-1392, 2022 WL 2276808 (U.S. June 24, 2022). According to Defendants, it is "anyone's guess" whether the Interpretation Policy can be used in this way, Resp. at 7 (ECF No. 113), and Plaintiffs must risk severe criminal penalties and potentially decades in prison to find out. Rather than countering Plaintiffs' arguments showing that this is *precisely* why the Interpretation Policy is unconstitutionally vague in the abortion context, Defendants attempt to avoid all judicial review. But these efforts must fail.

First, Defendants argue that Plaintiffs' vagueness claim is unripe. Resp. at 5–8. This argument ignores the fact that Plaintiffs are seeking as-applied relief against "a particular application of the Interpretation Policy" in the abortion context, which is now "restrict[ing] Plaintiffs' activities 'in some concrete way.'" Prelim. Inj. Order at 8 (ECF No. 52) ("PI Order"). Plaintiff Physicians, Drs. Isaacson and Reuss, have ceased providing abortion care out of fear that the Interpretation Policy will be used to prosecute them now that *Roe v. Wade*, 410 U.S. 113 (1973) and *Planned Parenthood of Southeastern Pennsylvania v. Casey*, 505 U.S. 833 (1992) have been overturned; that is an unquestionably "concrete" restriction of their activities. Rather than grapple with this reality, Defendants resurrect the same erroneous arguments they raised in opposition to facial relief, none of which cast doubt on the ripeness of Plaintiffs' as-applied vagueness claim.

Second, Defendants wrongly assert that the Interpretation Policy is categorically exempt from the demands of the vagueness doctrine because it is not a criminal statute.

Resp. at 8–10. Yet Defendants have admitted that, in the absence of *Roe* and *Casey*, the Interpretation Policy could be used to alter criminal statutes that would impose severe, felony criminal penalties in the abortion context. Oral Argument Tr. at 83–85 (ECF No. 61). Defendants have never rescinded this admission or claimed the Interpretation Policy could not be applied to impose criminal penalties in the abortion context. Accordingly, the Interpretation Policy can be used to subject Plaintiffs to criminal penalties and is squarely subject to the vagueness doctrine.

Third, Defendants themselves highlight why the Interpretation Policy is unconstitutionally vague as applied to abortion care. In Defendants' own words, "[h]ow the Interpretation Policy might alter the Arizona judiciary's analysis of these issues, *if at all*, is anyone's guess." Resp. at 7 (emphasis in original). Defendants offer no narrowing construction, or even a single example of how the Interpretation Policy would be clearly and consistently applied to "acknowledge" the rights of fertilized eggs, embryos, or fetuses in the abortion context, let alone how law enforcement would clearly and consistently enforce those rights. This is the very definition of an unconstitutionally vague law.

Plaintiffs are thus likely to succeed on their claim that the Interpretation Policy is unconstitutionally vague as applied to abortion care. Absent immediate relief from this Court, uncertainty over the Interpretation Policy and a total lack of standards to guide enforcement by police, prosecutors, and others will continue to irreparably harm Plaintiffs, their members, their patients, and pregnant people across Arizona—achieving through vagueness what the Arizona legislature has refused to enact directly: a total ban on abortion. *See, e.g.*, S.B. 1164, 55th Leg., 2d Reg. Sess. (Ariz. 2022) (15-week gestational ban). This outcome is precisely what the vagueness doctrine proscribes. The public interest and the balance of equities thus sharply tip in Plaintiffs' favor, and Plaintiffs' Renewed Motion for Preliminary Injunction should be expeditiously granted.

## II. Plaintiffs' Challenge to the Interpretation Policy As Applied to Abortion Care is Ripe

By seeking preliminary relief from the Interpretation Policy as applied to abortion care, Plaintiffs present "a particular application of the Interpretation Policy" that is "restrict[ing] Plaintiffs' activities 'in some concrete way.'" PI Order at 8. This is precisely the type of as-applied challenge that this Court made clear "federal courts stand ready to address." *Id*.

Defendants' suggestion that *Dobbs* does not alter this Court's ripeness analysis because Plaintiffs did not challenge the Interpretation Policy on substantive due process grounds under *Roe* and *Casey* is incorrect and misinterprets how *Dobbs* impacts Plaintiffs' vagueness challenge. Resp. at 4. Specifically, Defendants conceded on the record that the Interpretation Policy could not be used to criminalize or otherwise restrict abortion care while *Roe* and *Casey* remained good law. Oral Argument Tr. at 84–85. Now that the decision in *Dobbs* has removed this backstop, Plaintiffs are deprived of a crucial defense should anyone attempt to prosecute them under the Interpretation Policy for providing, receiving, or taking other actions involving abortion care. And Plaintiff Physicians have ceased providing all abortion care because they do not know whether the Interpretation Policy can now be used to criminalize abortion and as a result credibly fear prosecution.[1] Ex. A, Declaration of Eric M. Reuss, M.D., M.P.H. ("Reuss Decl.") ¶¶ 13, 15 (ECF No. 107-1); Ex. B, Declaration of Paul A. Isaacson, M.D. ("Isaacson Decl.") ¶¶ 12–13, 15–16

---

[1] Defendants' assertions that the "record is devoid of any actual evidence supporting that anyone, including the State Defendants has, or is threatening to, apply the Interpretation Policy in a specific or concrete way," Resp. at 6, is baldly incorrect. *See* Mot. at 1 (ECF No. 107) (citing Meg O'Connor, *Without* Roe, *Prosecutors Will Be the Abortion Police*, The Appeal (June 1, 2022), https://tinyurl.com/3dbakb4e (Maricopa County Attorney Rachel Mitchell "did not respond when asked if she would use the fetal personhood law to prosecute people who provide or obtain abortions."). Regardless, nowhere in Defendants' submission do they argue the Interpretation Policy will not or cannot be used in this way or that Plaintiffs' fears are not credible.

(ECF No. 107-1). This unquestionably presents risks to abortion providers, their staff, their patients, and their members that did not exist before *Dobbs*.

Rather than explain why Plaintiffs' *as-applied* challenge to the Interpretation Policy is unripe, Defendants pretend Plaintiffs' motion seeks facial relief and double down on their prior arguments that this case is controlled by *Webster v. Reproductive Health Services*, 492 U.S. 490 (1989). Those arguments fail for three reasons. First, *Webster* involved a facial claim; Plaintiffs' motion seeks only as-applied relief. Second, *Webster* did not involve a vagueness claim, and thus does not control whether Plaintiffs' as-applied vagueness claim is ripe.

Third, as Plaintiffs explained in their Ninth Circuit briefing, *Webster* is legally and factually distinguishable and should not control this case.[2] Specifically, the relevant question in *Webster* was whether two subsections of a legislative preamble, Mo. Rev. Stat. §§ 1.205.1(1), (2), should be struck down on substantive due process grounds. *See* 492 U.S. at 504–05. The challenged subsections of the preamble set forth "'findings' by the state legislature that '[t]he life of each human being begins at conception,' and that 'unborn children have protectable interests in life, health, and well-being.'" *Id.* (alterations in original) (quoting Mo. Rev. Stat. §§ 1.205.1(1), (2)). Those subsections, which Missouri argued were precatory, were the *only* provisions of Mo. Rev. Stat. § 1.205 challenged and before the Court in *Webster*. *See* 492 U.S. at 500–01, 504–05.[3] They do not resemble the

---

[2] All of Plaintiffs' arguments regarding *Webster* were clearly laid out for Defendants in briefing before the Ninth Circuit in the now dismissed cross-appeal. Plaintiffs-Appellees/Cross-Appellants' Principal and Response Brief at 57–62, Dkt. No. 41, *Isaacson. v. Brnovich*, Nos. 21-16645, 21-16711 (9th Cir. Dec. 20, 2021); Plaintiffs-Appellees/Cross-Appellants' Reply Brief at 12–18, Dkt. No. 73, *Isaacson v. Brnovich*, Nos. 21-16645, 21-16711 (9th Cir. Feb. 8, 2022).

[3] *See also Webster*, 492 U.S. at 501 (noting that five provisions of the Act were before the Court: Mo. Rev. Stat. §§ 1.205.1(1), (2) (defined as the "preamble"), 188.029, 188-205, 188-210, and 188-215); *id.* at 504 (defining the "preamble" as Mo. Rev. Stat. §§ 1.205.1(1),

Interpretation Policy in form or function. *Compare* A.R.S. § 1-219, *with* Mo. Rev. Stat. §§ 1.205.1(1), (2).[4] Nowhere do Defendants even attempt to address these *known* flaws in their argument.

In sum, this Court previously invited Plaintiffs to seek as-applied relief should a "particular application of the Interpretation Policy" "restrict Plaintiffs' activities 'in some concrete way.'" PI Order at 8. Plaintiffs' request for preliminary relief, specifically as applied to abortion care, provides this Court both with a concrete restriction and several specific statutory provisions under which the Interpretation Policy's "acknowledgment" mandate is entirely unclear. Mot. at 2, 11. Defendants' utter failure to respond merely underscores that Plaintiffs' vagueness claim is ripe.

### III. The Vagueness Doctrine Applies Here Because the Interpretation Policy Threatens Plaintiffs with Severe Criminal Penalties in the Abortion Context

The Interpretation Policy—which threatens Plaintiffs with severe criminal penalties, among others, in the abortion context—is properly subject to a vagueness challenge. Defendants' position that Plaintiffs' challenge is improper because, standing alone, the Interpretation Policy "contains no regulation, prohibits no conduct, and contains no penalty," is wrong and misinterprets applicable law. *See* Resp. at 8. That Arizona's legislature drafted a single provision directing the interpretation and revision of countless other unspecified laws, rather than revising those laws individually, cannot be the basis to

---

(2)); *id.* at 507 (declining to "pass on the constitutionality of the Act's *preamble*") (emphasis added). *See also Reprod. Health Servs. v. Webster*, 662 F. Supp. 407, 413 (W.D. Mo. 1987) (declaring unconstitutional Mo. Rev. Stat. §§ 1.205.1(1), (2)); *Reprod. Health Serv. v. Webster*, 851 F.2d 1071, 1075–77 (8th Cir. 1988) (affirming same).

[4] The *Webster* plaintiffs did not challenge the Missouri law's operative provisions, Mo. Rev. Stat. §§ 1.205.2–1.205.4. While one of those provisions, Mo. Rev. Stat. § 1.205.2, is similar, but not identical, to a subsection of the Interpretation Policy, A.R.S. § 1-219(A), it was not challenged in *Webster* and the Court accordingly did not analyze whether a facial or as-applied vagueness challenge (or any other challenge) to it would be ripe.

*avoid* constitutional review. Such a haphazard and imprecise legislative mechanism is precisely the kind of enactment that requires the courts to preserve and protect an individual's right to know what kind of conduct is prohibited by Arizona law and to thwart arbitrary enforcement.

First, the due process concerns created by the Interpretation Policy do not disappear merely because the Interpretation Policy does not appear within the context of a specific civil or criminal statute. Resp. at 8.[5] "[D]ue process protections against vague laws are 'not to be avoided by the simple label a State chooses to fasten upon its conduct or its statute.'" *Dimaya*, 138 S. Ct. at 1229 (Gorsuch, J., concurring) (quoting *Giaccio v. Pennsylvania*, 382 U.S. 399, 402 (1966)). The "happenstance that a law is found in the civil or criminal part of the statute books cannot be dispositive" as to whether vagueness claims can be raised. *Id.*; *cf. Gundy v. United States*, 139 S. Ct. 2116, 2127 (2019) (plurality opinion) ("[T]he placement of such a statement [of purpose] within a statute makes no difference. . . . Wherever it resides, it is 'an appropriate guide' to the 'meaning of the [statute's] operative provisions.'" (citing Antonin Scalia & Bryan Garner, Reading Law: The Interpretation of Legal Texts 218, 220 (2012))). Second, that the Interpretation Policy does not proscribe conduct as a standalone provision but instead will be used to interpret other laws puts it directly in a class of statutes for which the Supreme Court has permitted vagueness challenges.[6] In both *Johnson* and *Dimaya*, the Supreme Court struck down provisions, like the Interpretation Policy, that were used to interpret language in other laws.

---

[5] Furthermore, contrary to Defendants' assertion, Resp. at 8, it is well established that the vagueness doctrine applies outside the realm of criminal law. *See Sessions v. Dimaya*, 138 S. Ct. 1204, 1223 (2018) (striking down the INA's residual clause as impermissibly vague).

[6] Defendants have made clear that the Interpretation Policy "may be used in interpreting other statutes and other provisions . . . including civil provisions, probate provisions, criminal provisions, or in any other place in the law where the interpretive . . . preference . . . is triggered." Oral Argument Tr. at 83:13-24.

*See Johnson v. United States*, 576 U.S. 591, 593–94, 598–600 (2015) (holding unconstitutional a statute defining the phrase "violent felony" to be construed with other parts of the statutory scheme); *Dimaya*, 138 S. Ct. at 1221, 1223 (same as to "crime of violence"). If the Interpretation Policy "lacks the fundamental characteristics of a law that could be subject to a vagueness challenge," as Defendants suggest, Resp. at 8, then so too would the laws that were struck down as vague in *Johnson* and *Dimaya*. They did not, and here too, the Interpretation Policy does not.

Third, the vagueness in the Interpretation Policy actually *does threaten* Plaintiffs with severe criminal penalties in the abortion context. Specifically, it requires that the "laws of this State . . . be interpreted and construed to acknowledge" the rights of a fertilized egg, embryo, or fetus. A.R.S. § 1-219. Plaintiffs have identified for this Court several statutory examples where the "acknowledgment" provision could be used to criminalize abortion care, Mot. at 11, and nowhere do Defendants claim that the Interpretation Policy does not create this threat. Instead, the State merely suggests that these examples and concerns are "hypothetical" or abstract, Resp. at 9–10, ignoring the already present and very real consequences of this provision. *See, e.g.*, Isaacson Decl. ¶¶ 10–17; Reuss Decl. ¶¶ 10–15.

Moreover, it is "the severity of the consequences [that] counts when deciding the standard of [vagueness] review," not the label applied to it by the state's legislature. *Dimaya*, 138 S. Ct. at 1229 (Gorsuch, J., concurring). Accordingly, as applied in the context of abortion care, the Interpretation Policy demands the most stringent review, and this court should not hesitate to apply the vagueness doctrine and strike down this provision as impermissibly vague.

**IV. The Interpretation Policy Is Vague As Applied to Abortion Care**

Defendants admit that a vagueness challenge is proper when a law deprives

"ordinary people [of] fair notice of the conduct it punishes, or [is] so standardless that it invites arbitrary enforcement." Resp. at 8 (quoting *Johnson*, 576 U.S. at 595). The Interpretation Policy, as applied to abortion care, does just that.

Indeed, Defendants nowhere offer any construction of the Interpretation Policy that would provide Plaintiffs with notice of how to conform their conduct to the law or prevent arbitrary and discriminatory enforcement under a range of Arizona laws that could criminalize or otherwise restrict abortion care now that *Roe* and *Casey* have been overturned. *See* Resp. at 7. Instead, Defendants state that it is "*anyone's guess*" whether the Interpretation Policy's rudderless acknowledgment mandate renders abortion care illegal. *Id.* (emphasis added); *see also* Mot. at 13–15. But if Defendants, who by statute are those charged with enforcing the criminal, licensing, and regulatory laws to which the Interpretation Policy applies,[7] have no idea whether the law renders abortion care illegal, how is an ordinary citizen supposed to know what falls within the bounds of the law? Likewise, Defendants' inability to articulate any coherent understanding of the Interpretation Policy in the abortion context (or in any context) all but ensures arbitrary enforcement—leaving "a mere handful of unelected judges and prosecutors free to 'condem[n] all that [they] personally disapprove and for no better reason than [they] disapprove it.'" *Dimaya*, 138 S. Ct. at 1228 (Gorsuch, J., concurring) (alterations in original).

---

[7] *See* A.R.S. §§ 41-192 and 41-193 (investing Attorney General, the chief legal officer of the state, with discretion to institute and conduct prosecutions for any crime occurring in the state); *id.* § 11-532(A) (assigning to County Attorney duty to prosecute all violations of Arizona's criminal statutes occurring within their respective counties); *id.* §§ 32-1403(A)(2), (5), and (9), 32-1405(C)(12), and 32-1401(27)(a) (assigning to Arizona Medical Board primary duty for initiating investigations to determine whether a physician has engaged in unprofessional conduct, which includes violation of federal or state law, disciplining physicians, and establishing penalties for such conduct); *id.* §§ 36-406(1), 36-449.02, and 36-2161 (charging the Arizona Department of Health Services with responsibility for promulgating and enforcing rules related to the practice of abortion).

Defendants' punt to the Arizona judiciary, Resp. at 7, is particularly troubling because the Interpretation Policy provides no standards that could guide Plaintiffs, Defendants, or the Arizona courts in answering this question in the abortion context or in any context. Further, the legislature, not the judiciary, is charged with "establish[ing] minimal guidelines to govern law enforcement." *Kolender v. Lawson*, 461 U.S. 352, 358 (1983) (quoting *Smith v. Goguen*, 415 U.S. 566, 574 (1974)). Laws, like the Interpretation Policy, that "set a net large enough to catch all possible offenders, and leave it to the courts to step inside and say who could be rightfully detained, and who should be set at large" are, by definition, unconstitutionally vague. *Id.* at 358 n.7 (quoting *United States v. Reese*, 92 U.S. 214, 221 (1875)). Such laws "substitute the judicial for the legislative department of government," *id.*, violating separation of powers and posing a significant threat to liberty. *Dimaya*, 138 S. Ct. at 1228 (Gorsuch, J., concurring).

Accordingly, far from refuting the Interpretation Policy's vagueness as applied to abortion, Defendants' submission only confirms it.

## V. The Interpretation Policy Inflicts Irreparable Harm, Particularly in the Abortion Context

With respect to Plaintiffs' showing of irreparable harm, Defendants' only response is that there is no constitutional violation, and therefore no harm. Resp. at 10. As set forth above, that is incorrect and Plaintiffs therefore satisfy this prong of the injunctive relief standard for this reason alone. *See* Mot. at 15–16. Notably absent from Defendants' submission is *any* engagement with the significant, ongoing—and now undisputed— harms that are being inflicted on abortion providers and pregnant people in Arizona. Because of the Interpretation Policy's vagueness, Plaintiff Physicians have stopped providing all abortion care. Reuss Decl. ¶¶ 13, 15; Isaacson Decl. ¶¶ 12–13, 15–16. Nearly all other providers in the state are known to have stopped providing as well. *See* Taylor Seely & Stephanie Innes, *Fearing Criminal Charges, Clinics Across Arizona Have Stopped*

*Providing Abortions*, Ariz. Republic (June 24, 2022), https://tinyurl.com/bdh9yap9. Without injunctive relief, the Interpretation Policy will at minimum delay, if not deprive, Arizonans of access to abortion care. *See* Mot. at 15–16

## VI. An Injunction Is In The Public Interest and the Balance of Equities Thus Tips Sharply Toward Plaintiffs

Defendants' only argument that the balance of equities falls in their favor is that injunctive relief would "ignore the judgment of [the legislature], deliberately expressed in legislation." Resp. at 10 (citation omitted). This argument proves too much: the balance of the equities and public interest never weigh in favor of the unconstitutional application of a law. *See Melendres v. Arpaio*, 695 F.3d 990, 1002 (9th Cir. 2012). So even if it had been the legislature's intent to enact a law that could arbitrarily and discriminatorily be used to prohibit or restrict abortion, it would not change the outcome here.

Furthermore, because of the Interpretation Policy's vagueness, the "judgment of [the legislature]" has not been "deliberately expressed." Resp. at 10. Instead, Defendants are achieving with fear and uncertainty a total ban on abortion with no exceptions. All evidence suggests that this is a result the legislature did not intend given that the Interpretation Policy was passed as part of an omnibus bill, S.B. 1457, that clearly contemplated legal abortion would continue in Arizona, *see* S.B. 1457 § 2 (enacting a reason-based abortion ban) and § 7(F) (imposing requirements regarding the disposal of fetal remains after abortion), and the legislature just this year passed a law that permits abortion up to 15 weeks, *see* S.B. 1164, 55th Leg., 2d Reg. Sess. (Ariz. 2022). Accordingly, an injunction is in the public interest and the balance of equities tips sharply toward Plaintiffs.

## VII. Conclusion

For the above reasons, Plaintiffs request that their Renewed Motion for Preliminary Injunction be granted.

Dated: July 6, 2022

By: /s/ *Jessica Sklarsky*

Jessica Leah Sklarsky, *pro hac vice*
Gail Deady, *pro hac vice*
Catherine Coquillette, *pro hac vice*
Center For Reproductive Rights
199 Water Street, 22nd Floor
New York, NY 10038
Telephone: (917) 637-3600
jsklarsky@reprorights.org
gdeady@reprorights.org
ccoquillette@reprorights.org

Jen Samantha D. Rasay, *pro hac vice*
Center For Reproductive Rights
1634 Eye Street, NW, Suite 600
Washington, DC 20006
Telephone: (202) 628-0286
jrasay@reprorights.org

*Counsel for Paul A. Isaacson, M.D., National Council of Jewish Women (Arizona Section), Inc., and Arizona National Organization for Women*

Jared Keenan (027068)
Victoria Lopez (330042)
American Civil Liberties Union Foundation of Arizona
3707 North 7th Street, Suite 235
Phoenix, AZ 85014
Telephone (602) 650-1854
jkeenan@acluaz.org
vlopez@acluaz.org
*Counsel for Plaintiffs*

COUNSEL CONTINUED ON NEXT PAGE

- 11 -

| 1 | Alexa Kolbi-Molinas, *pro hac vice* |
| --- | --- |
| 2 | Rebecca Chan, *pro hac vice* |
|   | American Civil Liberties Union |
| 3 | 125 Broad Street, 18th Floor |
|   | New York, NY 10004 |
| 4 | Telephone: (212) 549-2633 |
| 5 | akolbi-molinas@aclu.org |
|   | rebeccac@aclu.org |
| 6 | *Counsel for Eric M. Reuss M.D., M.P.H.,* |
| 7 | *and Arizona Medical Association* |
| 8 | Beth Wilkinson, *pro hac vice* |
|   | Anastasia Pastan, *pro hac vice* |
| 9 | Wilkinson Stekloff LLP |
| 10 | 2001 M Street, NW |
|   | 10th Floor |
| 11 | Washington, DC 20036 |
| 12 | Telephone: (202) 847-4000 |
|   | bwilkinson@wilkinsonstekloff.com |
| 13 | apastan@wilkinsonstekloff.com |
|   | *Counsel for Paul A. Isaacson, M.D.,* |
| 14 | *National Council of Jewish Women* |
| 15 | *(Arizona Section), Inc., and Arizona* |
|   | *National Organization for Women* |
| 16 |   |
| 17 | Ralia Polechronis, *pro hac vice* |
|   | Wilkinson Stekloff LLP |
| 18 | 130 West 42nd Street |
|   | 24th Floor |
| 19 | New York, NY 10036 |
| 20 | Telephone: (212) 294-9410 |
|   | rpolechronis@wilkinsonstekloff.com |
| 21 | *Counsel for Paul A. Isaacson, M.D.,* |
| 22 | *National Council of Jewish Women* |
|   | *(Arizona Section), Inc., and Arizona* |
| 23 | *National Organization for Women* |
| 24 |   |
| 25 |   |
| 26 |   |
| 27 |   |
| 28 |   |

## **CERTIFICATE OF SERVICE**

I hereby certify that on July 6, 2022, I electronically transmitted the attached document to the Clerk's Office using the CM/ECF System for filing. All counsel of record are registrants and are therefore served via this filing and transmittal.

/s/ *Jessica Sklarsky*