# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Paul A Isaacson, et al., | No. CV-21-01417-PHX-DLR |
| Plaintiffs, | **NOTICE RE: Oral Argument Topics** |
| v. | |
| Mark Brnovich, et al., | |
| Defendants. | |

In addition to any prepared remarks, the Court asks the parties to come to the July 8, 2022 telephonic oral argument prepared to discuss the following:

**<u>For Plaintiffs:</u>**

1. Plaintiffs' proposed preliminary injunction order would enjoin Defendants from enforcing the Interpretation Policy "as applied to abortion care." (Doc. 107-2.) By this, are Plaintiffs asking the Court to enjoin Defendants from using the Interpretation Policy in a manner that would prohibit abortion care that is otherwise lawful under Arizona's existing abortion statutes? If so, what abortion care currently is lawful in Arizona?

2. Plaintiffs rely heavily on *Johnson v. United States*, 576 U.S. 591 (2015) and *Sessions v. Dimaya*, 138 S.Ct. 1204 (2018), which concluded that certain definitions in federal law were unconstitutionally vague. The Interpretation Policy is not itself

a definition. Arizona law categorizes it as a rule of statutory construction. Are Plaintiffs aware of any cases that have found rules of statutory construction to be unconstitutionally vague?

3. Plaintiffs argue that the Interpretation Policy is unconstitutionally vague for three reasons. First, Plaintiffs argue that the language of the Interpretation Policy (specifically, its use of the word "acknowledge") is vague because it "does not provide any guidance as to what it means to 'acknowledge' the equal rights of a fertilized egg, embryo, or fetus[.]" (Doc. 107 at 13.) Second, Plaintiffs argue that the Interpretation Policy is unconstitutionally vague because it is "unclear how . . . to reconcile [it] with Arizona's existing law permitting abortion up until viability." (*Id.* at 15.) Third, Plaintiffs argue that the Interpretation Policy is unconstitutionally vague because it invites arbitrary enforcement. (*Id.* at 16.) The Court would like to explore each of these and, in particular, understand whether these arguments are independent bases for a vagueness determination, or if they are inextricably intertwined.

    a. *Language of the Interpretation Policy*

        i. To highlight the vagueness of the word "acknowledge," Plaintiffs cite Arizona criminal statutes, such as those criminalizing assault and child abuse, and argue that it is unclear whether the Interpretation Policy would extend the reach of these laws to otherwise permissible abortion care. (*Id.* at 14.) Arizona's criminal code defines "Person" as "a human being and, as the context requires, an enterprise, a public or private corporation, an unincorporated association, a partnership, a firm, a society, a government, a governmental authority or an individual or entity capable of holding a legal or beneficial interest in property." A.R.S. § 13-105(30). As written, this definition does not include an "unborn child." Is it Plaintiffs' position that the Interpretation Policy is vague because it is unclear whether

"acknowledg[ing], on behalf of an unborn child at every stage of development, all rights, privileges and immunities available to other persons, citizens and residents of this state," A.R.S. § 1-219, would require Arizona's judicial and law enforcement officials to change the criminal code's definition of person?

    ii.  Suppose that instead of enacting the Interpretation Policy with its "acknowledge" language, Arizona had amended the criminal code's definition of person to explicitly include an "unborn child," which state law elsewhere defines as "the offspring of human beings from conception until birth," A.R.S. § 36-2151(16). Would the language of such an amendment be unconstitutionally vague and, if so, how?

  b.  *Reconciling the Interpretation Policy with Other Statutes*

    i.  Plaintiffs cite to Arizona's existing laws permitting abortion up until viability and argue that the Interpretation Policy creates confusion about whether providers who conform their conduct to these laws will nonetheless face criminal, civil, or professional liability. (Doc. 107 at 15.) Is this argument dependent on the Court first concluding that the language of the Interpretation Policy is vague?

    ii.  Assume that the language of the Interpretation Policy is not vague.

        1.  On that assumption, is it Plaintiffs' position that a statute which is not vague when read in isolation nonetheless becomes unconstitutionally vague if it conflicts with other statutes?

        2.  If so, when confronted with conflicting statutes, how does the Court determine which ones to enjoin? For example, suppose a highway has two speed limit signs, one reading 65 miles per hour and the other reading 45 miles per hour. Each sign standing alone is clear, but when read together they create uncertainty over the legal speed limit. If a motorist were to

raise a vagueness challenge to the speed regulations, what would be the appropriate remedy?

   c. *Risk of Arbitrary Enforcement*

      i. Plaintiffs argue that the Interpretation Policy is unconstitutionally vague because it "provides no standards to guide the discretion of local prosecutors, police officers, and other state enforcement officials in determining what the law means and how it is to be applied." (*Id.* at 17.)

         1. Is this argument dependent on the Court first concluding that the language of the Interpretation Policy is vague?

         2. Assume that the language of the Interpretation Policy is not vague. Is an otherwise clear statute unconstitutionally vague if local officials have discretion over whether or how strictly to enforce it? For example, suppose a highway has a speed limit of 65 miles per hour. Sometimes law enforcement officials choose to cite motorists who exceed the speed limit; sometimes they choose to issue warnings without citations; sometimes they choose not to pull over motorists unless they are exceeding the speed limit by more than 10 miles per hour; sometimes they choose to ignore violations entirely. Any given motorist cannot know in advance how an officer will choose to enforce the law. Does this uncertainty render the speed limit vague?

4. If all three of Plaintiffs' vagueness arguments are intertwined, then does Plaintiffs' argument boil down to whether the word "acknowledge" in the Interpretation Policy is unconstitutionally vague?

5. With respect to irreparable harm, Plaintiffs argue that "[g]iven the Interpretation Policy's vagueness, Drs. Isaacson and Reuss credibly fear prosecution and therefore

- 4 -

have ceased providing any abortion care in Arizona. . . . Without injunctive relief, the Interpretation Policy will at minimum delay—but more likely deprive—Arizonans of access to abortion care." (*Id.* at 19.) The Court wants to better understand the degree to which enjoining the Interpretation Policy will remedy this harm.

a. Arizona has a pre-statehood law that prohibits the provision of abortion unless necessary to save the pregnant person's life. A.R.S. § 13-3603. Arizona recently enacted a new law that would, except in a medical emergency, prohibit abortions after fifteen weeks gestation. *See* S.B. 1164, 55th Leg., 2d Reg. Sess. (Ariz. 2022). S.B. 1164 explicitly states, however, that the new law is not intended to make lawful an abortion that currently is unlawful, or to repeal the pre-statehood law. *Id.* According to public reporting, there has been considerably uncertainty in Arizona over the legal status of abortion care. For example, the Arizona Attorney General has publicly stated that, in his view, Arizona's pre-statehood abortion ban is enforceable. One of S.B. 1164's sponsors has expressed a similar view. Arizona's Governor has expressed his view that S.B. 1164 supersedes the pre-statehood law. *See, e.g.*, The Associated Press, *Arizona's Attorney General Says a Pre-1901 Abortion Ban is Enforceable*, June 30, 2022, available at https://www.npr.org/2022/06/30/1108871251/arizonas-attorney-general-says-pre-1901-abortion-ban-is-enforceable. Given this uncertainty, will Drs. Isaacson and Reuss resume providing abortion care in Arizona if the Court enjoins the Interpretation Policy? If not, then how will the requested injunction remedy the harm alleged?

6. In *SisterSong Women of Color Reproductive Justice Collective v. Kemp*, the United States District Court for the Northern District of Georgia permanently enjoined a provision of Georgia law recognizing "unborn children" as "natural persons" and defining "unborn child" as an embryo/fetus "at any stage of development who is

carried in the womb," after concluding that this definition was unconstitutionally vague.  472 F. Supp. 3d 1297, 1302, 1314-18 (N.D. Ga. 2020).  Are there any meaningful distinctions between the law at issue in *SisterSong* and the Interpretation Policy?

7.  Arizona is not the only state with a law like the Interpretation Policy.  Missouri and Kansas, for example, have similar provisions directing that their laws "be interpreted and construed to acknowledge on behalf of the unborn child at every stage of development, all the rights, privileges and immunities available to other persons, citizens and residents" of those states.  *See* Mo. Stat. § 1.205; Kans. Stat. § 65-6732.  Have either of those provisions (or comparable provisions, if any, in other states) been found to be unconstitutionally vague?

**For: Defendants:**

1.  Are Defendants aware of any cases that have found rules of statutory construction to be unconstitutionally vague?

2.  Defendants suggest in their response brief that rules of statutory construction are not subject to vagueness challenges.  Are Defendants aware of any case law supporting the proposition that codified rules of statutory construction are immune from vagueness challenges?

3.  Under well-established canons of statutory construction, words or phrases are presumed to bear the same meaning throughout a text, different words are presumed to mean different things, and statutes should be read to avoid rendering their language superfluous.  Arizona's criminal code defines "Person" as "a human being and, as the context requires, an enterprise, a public or private corporation, an unincorporated association, a partnership, a firm, a society, a government, a governmental authority or an individual or entity capable of holding a legal or beneficial interest in property."  A.R.S. § 13-105(30).  Discrete sections of the criminal code, however, specify when they apply to an "unborn child."  *See, e.g.,*

A.R.S. §§ 13-1102 (negligent homicide), 13-1103 (manslaughter), 13-1104 (second degree murder), and 13-1105 (first degree murder).  Under ordinary rules of statutory construction, a court presumably would conclude that "person" and "unborn child" mean different things, otherwise there would be no reason for Arizona to use different words, and the language in the discrete statutes listed above would be superfluous.  In Defendants' view, does the Interpretation Policy supersede these long-standing, ordinary rules of statutory construction?

4. In Defendants' view, what does it mean to "acknowledge on behalf of an unborn child at every stage of development, all rights, privileges and immunities available to other persons, citizens and residents" of Arizona?  What practical, real-world impact does such an "acknowledgment" have?

5. In Defendants' view, does the Interpretation Policy amend the definition of person in Arizona's criminal code?  If so, why didn't the legislature simply amend the criminal code to avoid any ambiguity?

6. Plaintiffs identify several provisions of Arizona's criminal code—namely, A.R.S. §§ 13-1204 (aggravated assault), 13-1203 (assault), 13-1201 (reckless endangerment), 13-3612(1) & 13-1613 (contributing to delinquency of a child), 13-3619 (child endangerment), and 13-3623 (child abuse)—which Plaintiffs claim could potentially be interpreted to criminalize the provision of otherwise lawful abortion care in Arizona.  (Doc. 107 at 14.)  In Defendants' view, does the Interpretation Policy make any or all of these laws applicable to abortion care?

7. Defendants argue that Plaintiffs' vagueness challenge is premature because it "is anyone's guess" as to "[h]ow the Interpretation Policy might alter the Arizona judiciary's analysis of these issues[.]" (Doc. 113 at 8.)

   a. Doesn't this argument demonstrate that the Interpretation Policy is unconstitutionally vague? How, in Defendants' view, are Plaintiffs supposed to comply with the law if it "is anyone's guess" what the law in Arizona is?

   b. Defendants' argument refers specifically to the Arizona judiciary, but does

not address police officers, prosecutors, and other law enforcement officials. If it "is anyone's guess" how the Interpretation Policy impacts Arizona law, what will prevent law enforcement officials from arbitrarily using the Interpretation Policy to arrest or prosecute those who provide otherwise lawful abortion care in Arizona?

8. What is the current legal status of abortion in Arizona? Can Drs. Issacson and Reuss lawfully provide any abortion care in the state at this time?

9. Does the *SisterSong* case from the Northern District of Georgia support the issuance of a preliminary injunction in this case?

Dated this 7th day of July, 2022.


Douglas L. Rayes
United States District Judge