**MARK BRNOVICH**
**ATTORNEY GENERAL**
(Firm State Bar No. 14000)

Brunn (Beau) W. Roysden III (No. 28698)
Michael S. Catlett (No. 25238)
Kate B. Sawyer (No. 34264)
Katlyn J. Divis (No. 35583)
2005 N. Central Ave.
Phoenix, AZ 85004-1592
Telephone: (602) 542-3333
Michael.Catlett@azag.gov

*Attorneys for Defendant Mark Brnovich in his official capacity as Arizona Attorney General*

**[Additional counsel and emails listed on signature page]**

# UNITED STATES DISTRICT COURT

# DISTRICT OF ARIZONA

| | |
|---|---|
| Paul A. Isaacson, M.D., on behalf of himself and his patients, et al., | Case No. 2:21-cv-01417-DLR |
| Plaintiffs, | |
| v. | **STATE DEFENDANTS' RESPONSE TO PLAINTIFFS' RENEWED MOTION FOR PRELIMINARY INJUNCTION** |
| Mark Brnovich, Attorney General of Arizona, in his official capacity, et al., | |
| Defendants. | |

# TABLE OF CONTENTS

TABLE OF CONTENTS ............................................................................................ 1

INTRODUCTION ................................................................................................... 1

BACKGROUND ...................................................................................................... 2

    A.   Discrimination Against Individuals With Disabilities ................................. 3

    B.   S.B. 1457 ................................................................................................... 5

        1.   Arizona's Original Non-Discrimination Provision ........................... 5

        2.   The Reason Regulations.................................................................... 5

LEGAL STANDARD ............................................................................................... 7

ARGUMENT ........................................................................................................... 7

    I.   Plaintiffs Are Unlikely To Succeed On The Merits. ..................................... 7

        A.   The U.S. Supreme Court Vacated The Court's Injunction Based On Vagueness And Nothing Has Changed. ..................................... 7

        B.   Plaintiffs' Vagueness Challenge Is Not Ripe. ................................. 10

        C.   The Reason Regulations Are Not Vague. ....................................... 11

            1.   Plaintiffs Are Required To Show That The Reason Regulations Are Vague In All Applications. ...................... 11

            2.   The Reason Regulations Are Not Vague. ............................ 13

    II.   Plaintiffs Have Not Demonstrated That Irreparable Harm Is Likely. ......... 16

    III.   The Balance of the Equities And The Public Interest Favor The State Defendant. ................................................................................................. 17

CONCLUSION ...................................................................................................... 17

# INTRODUCTION

This is the latest in a series of preliminary injunction requests Plaintiffs have made in this case. This request comes to the Court in the form of a renewed motion to preliminarily enjoin those portions of Senate Bill (S.B.) 1457 preventing physicians from performing an abortion knowing that the abortion is sought solely because of the presence (or presumed presence) of a genetic abnormality, or what the Court has referred to as the "Reason Regulations." Plaintiffs again assert that the Reason Regulations are unconstitutionally vague under the Fourteenth Amendment.

The U.S. Supreme Court has already weighed in on—and rejected—Plaintiffs' request. In August 2021, Plaintiffs brought a nearly identical request before this Court, which also included a claim that the Reason Regulations imposed an unconstitutional undue burden on the ability to obtain an abortion. The Court concluded that the Reason Regulations were unconstitutional on both counts—vagueness and undue burden. The State Defendants[1] sought a partial stay of the Court's preliminary injunction from the Ninth Circuit, which denied the stay request. Attorney General Brnovich then applied to the U.S. Supreme Court for a partial stay of the Court's preliminary injunction. The Attorney General's brief requested that the Court grant a stay of the injunction because it was likely to grant certiorari on both the vagueness and undue burden holdings and because both holdings were contrary to the Supreme Court's prior precedents. On the last day of the October 2021 term, the U.S. Supreme Court construed the Attorney General's stay application as a petition for certiorari, granted the petition, vacated this Court's preliminary injunction *in full*, and remanded for additional proceedings. Again, the Court's ruling was not limited to this Court's conclusion regarding undue burden, and thus necessarily concluded that Plaintiffs are not likely to succeed on the merits of their vagueness claim. As a result, the Reason Regulations went into effect.

---

[1] The State Defendants are Mark Brnovich, in his capacity as Arizona Attorney General; Arizona Department of Health Services; Don Herrington, in his capacity as Interim Director of the Arizona Department of Health Services; Arizona Medical Board ("AMB"); and Patricia McSorley, in her capacity as Executive Director of the AMB.

Undeterred, Plaintiffs seek to have this Court alter the status quo and re-enjoin the Reason Regulations. They do so primarily by quoting back the Court's prior ruling—the very ruling the Supreme Court vacated. And they otherwise make the same arguments that they made in support of the vacated injunction. The Court should take the Supreme Court's strong hint and refuse Plaintiffs' renewed request.

Even if the Court were working on a blank canvass, Plaintiffs' claim should fail. As the party now seeking to alter the status quo, Plaintiffs must show that the law and facts clearly favor their positions. Plaintiffs do no such thing. To begin, Plaintiffs' vagueness challenge is not ripe. Plaintiffs bring an entirely speculative pre-enforcement challenge, without presenting the Court with a concrete factual situation. The Court is, in turn, left to speculate about how the Reason Regulations might apply to hypothetical future situations.

But even if Plaintiffs' claim were ripe, to sustain a facial vagueness challenge, Plaintiffs must show that the Reason Regulations are impermissibly vague in all of their applications. The Reason Regulations are more than clear to notify doctors what conduct they regulate. The Reason Regulations proscribe a comprehensible course of conduct and contain an ascertainable standard for inclusion and exclusion. The Reason Regulations provide a definition of "genetic abnormality" that allows doctors to apply the applicable standard to the facts of each situation and that clearly applies when a genetic test exhibits the presence of the most prevalent genetic abnormalities. And the Plaintiffs' claim that the inclusion of a "knowing" mens rea requirement somehow renders the Reason Regulations unconstitutionally vague is inconsistent with binding Supreme Court precedent.

Finally, Plaintiffs have not satisfied the remaining elements required for injunctive relief. The Court should deny Plaintiffs' motion to re-enter a (vacated) injunction—a request that would alter the status quo.

## BACKGROUND

At issue is an Arizona law designed to protect the unborn who have been diagnosed with a genetic abnormality from discriminatory abortion. Thus, it is important to begin with the history that led the Arizona Legislature to pass this law.

2

**A.      Discrimination Against Individuals With Disabilities**

Discrimination against individuals with disabilities has been pervasive in our country's history.  By the 1920s, 376 universities and colleges taught eugenics courses. *Box v. Planned Parenthood of Ind. & Ky., Inc.*, 139 S. Ct. 1780, 1785 (2019) (Thomas, J., concurring).  But eugenics did not remain an academic concept reserved for classroom debate.  Discrimination permeated society, with municipalities going as far as "prohibiting certain individuals with disabilities from marrying, from voting, from attending public schools, and even from appearing in public." *Tennessee v. Lane*, 541 U.S. 509, 534 (2004) (Souter, J., concurring).  These types of practices prevented a child with cerebral palsy from attending public school "lest he 'produc[e] a depressing and nauseating effect' upon others." *Id*. at 535 (Souter, J., concurring) (discussing history of disability discrimination in America) (quoting *State ex rel. Beattie v. Bd. of Educ. of Antigo*, 172 N.W. 153 (1919)).

Discrimination gradually shifted from keeping the disabled invisible to preventing them from being born.  In 1907, Indiana was the first state to enact a eugenic sterilization law, and by 1931, 28 States had followed Indiana's lead and adopted eugenic sterilization laws. *Box*, 139 S. Ct. at 1786 (Thomas, J., concurring).  The legitimacy of these laws was even upheld by the Supreme Court in its infamous opinion in *Buck v. Bell*, 274 U.S. 200, 207 (1927) ("It is better for all the world, if instead of waiting to execute degenerate offspring for crime, or to let them starve for their imbecility, society can prevent those who are manifestly unfit from continuing their kind . . . . Three generations of imbeciles are enough.").  As a result, "more than 60,000 people . . . were involuntarily sterilized between 1907 and 1983." *Box*, 139 S. Ct. at 1786 (Thomas, J., concurring).

In modern times, the ability to abort a child based on unwanted characteristics has greatly increased, such that "abortion can now be used to eliminate children with unwanted characteristics, such as a particular sex or disability." *Box*, 139 S. Ct. at 1784 (Thomas, J., concurring).  There is compelling evidence that abortion is being used for that exact purpose.  For example, unborn children diagnosed with Down syndrome have been a target of discriminatory abortions.  In Iceland, nearly 100% of unborn children diagnosed with Down syndrome are aborted. *Box*, 139 S. Ct. at 1790 (Thomas, J., concurring).  The rates

of discriminatory Down-syndrome-selective abortions are similarly high in other European countries: "98% in Denmark, 90% in the United Kingdom, [and] 77% in France." *Id*. at 1790–91. And unfortunately, the United States is not far behind with between 61% and 91% of mothers choosing to abort their unborn child if the child is diagnosed with Down syndrome. S.B. 1457 § 15. "The use of abortion to achieve eugenic goals is not merely hypothetical"; "a growing body of evidence suggests that eugenic goals are already being realized through abortion." *Box*, 139 S. Ct. at 1783, 1787 (Thomas, J., concurring).

Some within the medical profession itself may be driving this increase in eugenic abortion.[2] Studies show that the advice and care that follows prenatal testing can provide biased information and pressure to abort. During a 2017 study, "[a] mother shared that she was encouraged to terminate" and told by her healthcare professionals that if they were to personally experience the same issue, "they would choose to terminate as well."[3] Further, "[o]ther mothers who received a post-natal diagnosis were given the option and strongly encouraged to either institutionalize or allow their child to become a ward of the state after testing revealed indicators of D[own] [syndrome]."[4]

A 2013 study reported that many parents of children with Down syndrome had experienced "pressure to terminate the pregnancy."[5] A 2009 study noted that mothers who "received a prenatal diagnosis of D[own] [syndrome] and chose to continue their pregnancies . . . indicated that their physicians often provided incomplete, inaccurate, and, sometimes, offensive information about [D]own syndrome."[6] In a survey of 499 primary

---

[2]  *Preterm-Cleveland v. McCloud*, 994 F.3d 512, 518 (6th Cir. 2021) ("Academic literature confirms such practices within the United States medical community, including examples of health professionals who gave families 'inaccurate and overly negative information,' perceivably 'intended to coerce a woman into a decision to terminate her pregnancy if the fetus is diagnosed with Down syndrome.'").

[3]  Hannah Korkow-Moradi et al., *Common Factors Contributing to the Adjustment Process of Mothers of Children Diagnosed with Down Syndrome: A Qualitative Study*, 28 J. Fam. Psychotherapy 193, 197 (2017).

[4]  *Id.*

[5]  Briana S. Nelson Goff et al., *Receiving the Initial Down Syndrome Diagnosis: A Comparison of Prenatal and Postnatal Parent Group Experiences*, 51 Intellectual & Developmental Disabilities 446, 455 (2013).

[6]  Brian G. Skotko, W*ith New Prenatal Testing, Will Babies with Down Syndrome Slowly Disappear*, 94 Archives of Disease Childhood 823, 824 (2009).

care physicians, thirteen percent admitted that "they 'emphasize' the negative aspects of D[own] [syndrome] so that parents would favor a termination."[7]  It is precisely this type of discrimination and coercion that has resulted in laws regulating discriminatory abortions.

**B.     S.B. 1457**

### 1.      Arizona's Original Non-Discrimination Provision

In 2011, the Arizona Legislature enacted A.R.S. § 13-3603.02 in order to combat discriminatory abortions.  *See* 2011 Ariz. Legis. Serv. Ch. 9.  Since that time, § 13-3603.02 has prohibited persons from "knowingly" "perform[ing] an abortion knowing that the abortion is sought based on the sex or race of the child or the race of a parent of that child." A.R.S. § 13-3603.02(A)(1).  In its findings, the Legislature recognized that "[t]he purpose of [the statute] is to protect unborn children from prenatal discrimination in the form of being subjected to abortion based on the child's sex or race by prohibiting sex-selection or race-selection abortions."  2011 Ariz. Legis. Serv. Ch. 9, § 3.  It reasoned that "[t]here is no place for such discrimination and inequality in human society," especially where such "abortions are elective procedures that do not in any way implicate a woman's health."  *Id.*

### 2.      The Reason Regulations

On April 22, 2021, the Arizona Legislature passed S.B. 1457 (the "Act") to further the State's interests in protecting against discriminatory abortion.  2021 Ariz. Legis. Serv. Ch. 286.  S.B. 1457 includes several provisions intended to "protect[] the disability community from discriminatory abortions, including for example Down-syndrome-selective abortions."  S.B. 1457 § 15.  In particular, Section 2 adds to the pre-existing prohibitions of A.R.S. § 13-3603.02 by including a provision prohibiting a person from performing an abortion if that person knows "that the abortion is sought solely because of a genetic abnormality of the child."  The Act defines "genetic abnormality" as "the presence or presumed presence of an abnormal gene expression in an unborn child, including a chromosomal disorder or morphological malformation occurring as the result

---

[7]  Brian G. Skotko, *Prenatally Diagnosed Down Syndrome: Mothers Who Continued Their Pregnancies Evaluate Their Health Care Providers*, 192 Am. J. Obstetrics & Gynecology 670, 670–71 (2005).

of abnormal gene expression." A.R.S. § 13-3603.02(G)(2)(a). A knowing violation of this provision is a class 6 felony. A.R.S. § 13-3603.02(A). Section 2 of the Act further amends A.R.S. § 13-3603.02 by making it a class 3 felony for any person to "[s]olicit[] or accept[] monies to finance . . . an abortion because of a genetic abnormality of the child." The statute explicitly exempts "[a] woman on whom . . . an abortion because of a child's genetic abnormality is performed" from all criminal or civil liability. A.R.S. § 13-3603.02(F).

The Act, however, provides two exceptions to these provisions. First, a "genetic abnormality" for purposes of this section does not include "a lethal fetal condition," which is "a fetal condition that is diagnosed before birth and that will result, with reasonable certainty, in the death of the unborn child within three months after birth." § 13-3603.02(G); A.R.S. § 36-2158(G)(1). Second, the Act adds a "medical emergency" exception that allows a physician to use "good faith clinical judgment" to terminate a woman's pregnancy "to avert her death" or to protect her from "substantial and irreversible impairment of a major bodily function," even if the abortion would otherwise be prohibited under the statute. *See* A.R.S. § 13-3603.02(A), (G)(3); § 36-2151(9).

The Act also amends several related statutes. Section 10 amends A.R.S. § 36-2157, which requires a person to complete an affidavit prior to performing an abortion. The amendment requires that the affidavit include a statement that the person "is not aborting the child . . . because of a genetic abnormality," and that the person "has no knowledge" that the child is being aborted "because of a genetic abnormality." A.R.S. § 36-2157(A)(1). Section 11 amends A.R.S. § 36-2158 by adding additional information a person must share with a woman whose unborn child has been diagnosed with a nonlethal fetal condition when obtaining her informed consent to perform an abortion. Specifically, the Act adds that a woman must be informed "[t]hat section 13-3603.02 prohibits abortion because of the unborn child's sex or race or because of a genetic abnormality." A.R.S. § 36-2158(A)(2)(d). Last, Section 13 amends the abortion reporting requirements of A.R.S. § 36-2161(A)(25) to require a facility reporting the abortion to the Arizona Department of Health Services to also include "[w]hether any genetic abnormality of the unborn child was

detected at or before the time of the abortion by [any form of] genetic testing."

## LEGAL STANDARD

Injunctive relief is "an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief[.]" *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 22, 24 (2008). Plaintiffs seeking a preliminary injunction must establish: (1) that they are "likely to succeed on the merits;" (2) that they are "likely to suffer irreparable harm in the absence of preliminary relief;" (3) "that the balance of equities tips in [their] favor;" and (4) "that an injunction is in the public interest." *Id.* at 20.

After the U.S. Supreme Court's decision vacating this Court's preliminary injunction, the Reason Regulations became effective. Plaintiffs here seek a mandatory injunction altering the status quo to again enjoin the Reason Regulations. As this Court has recognized, "[w]here the movant seeks a mandatory injunction, rather than a prohibitory injunction, injunctive relief is 'subject to a heightened scrutiny and should not be issued unless the facts and law clearly favor the moving party.'" *Kumar v. Barr*, No. CV-2019-04594, 2019 WL 13214454, *2 (D. Ariz. July 3, 2019) (Rayes, J.); *Feldman v. Ariz. Sec. of State's Office*, No. CV-16-01065, 2016 WL 5900127, *2 (D. Ariz. Oct. 11, 2016) (Rayes, J.) ("Generally, 'mandatory injunctions are not granted unless extreme or very serious damage will result and are not issued in doubtful cases.'").

## ARGUMENT

### I.   Plaintiffs Are Unlikely To Succeed On The Merits.

Plaintiffs cannot meet the heavy burden of showing that the facts and law clearly support their claim that the Reason Regulations are unconstitutionally vague.

#### A.   The U.S. Supreme Court Vacated The Court's Injunction Based On Vagueness And Nothing Has Changed.

The Court previously granted a preliminary injunction of the Reason Regulations based on vagueness. Doc. 52 at 9–16. The Court rejected the argument that Plaintiffs' vagueness claim was not ripe. In so doing, the Court concluded that this case likely qualified for an "exceptional circumstances" exception to the usual requirement that "if a statute could clearly be applied in at least some circumstances, a plaintiff cannot challenge

it facially." Doc. 52 at 9–10.  The Court concluded that Plaintiffs were exempt from that requirement because Plaintiffs' vagueness and undue burden claims were intertwined.  *Id.* at 10.  The Court concluded that the Reason Regulations were likely unconstitutionally vague because there is insufficient guidance to determine which fetal conditions trigger application of the Reason Regulations and the Reason Regulations contain a "knowing" mens rea requirement.  *Id.* at 11–16.  The Court also concluded that the Plaintiffs were also likely to succeed on their claim that the Reasons Regulations imposed an undue burden to abortion under *Roe* and *Casey*.  *Id.* at 16–29.

The State Defendants appealed the Court's preliminary injunction order to the Ninth Circuit and sought an emergency order staying the preliminary injunction as to section 2 of S.B. 1457.  The State Defendants argued that the requirements in section 2 did not impose an undue burden on abortion and were not unconstitutionally vague.  The Ninth Circuit denied the emergency motion for a partial stay.  No. 21-16711, Doc. 29.

The Attorney General filed an Application for Partial Stay ("Application") with the U.S. Supreme Court.  No. 21A222.  The Application predicted that the Court would grant a writ of certiorari as to undue burden and vagueness, and that there was a fair prospect that the Court would then vacate the injunction because Plaintiffs' undue burden and vagueness claims were unlikely to succeed.  The Attorney General argued, among other things, that Plaintiffs' "facial [vagueness] challenge [] fails, and Arizona courts should be permitted to apply the Reason Regulation in concrete factual situations, with any remaining vagueness issues being resolved through as-applied challenges."  App. at 21.

While the Application was pending, the U.S. Supreme Court decided *Dobbs v. Jackson Women's Health Organization*, 142 S. Ct. 2228 (2022).  In *Dobbs*, the Court overruled *Roe* and *Casey*, explaining that "[t]he Constitution makes no reference to abortion, and no such right is implicitly protected by any constitutional provision, including the one on which the defenders of *Roe* and *Casey* now chiefly rely—the Due Process Clause of the Fourteenth Amendment."  142 S. Ct. at 2242.  The Court held that state abortion regulations would be subject only to rational basis review under the U.S.

Constitution. And the Court rejected a constitutional challenge to the Mississippi Gestational Age Act's limitation on abortions performed after fifteen weeks. Justice Thomas separately complained that "our vagueness doctrine . . . has been deployed . . . to nullify even mild regulations of the abortion industry." *Id.* at 2303 (Thomas, J., concurring) (internal quotations omitted).

On June 30, 2022, the Supreme Court issued an order addressing the Attorney General's Application. The Court did not just grant the requested stay, it went much further. The Court treated the Application as a petition for certiorari and granted the petition, thereby accepting pre-judgment jurisdiction over the entire preliminary injunction. The Court then provided that "[t]he September 28, 2021 order of the United States District Court for the District of Arizona is vacated, and the case is remanded to the United States Court of Appeals for the Ninth Circuit with instructions to remand to the District Court for further consideration in light of *Dobbs v. Jackson Women's Health Organization*, 597 U. S. ___ (2022)." *Brnovich v. Isaacson*, 142 S. Ct. 2893 (2022). In so doing, the Supreme Court necessarily disagreed with this Court's conclusion that Plaintiffs are likely to succeed on their vagueness challenge to the Reason Regulations, while giving this Court a chance to determine *Dobbs'* impact on that challenge.

Nothing in *Dobbs* supports Plaintiffs' vagueness challenge, and Plaintiffs' do not dispute that reality. *Dobbs* only cuts against Plaintiffs' vagueness challenge—in concluding that stare decisis did not dictate sticking with *Roe* and *Casey*, the Court reasoned that "*Roe* and *Casey* have led to the distortion of many important but unrelated legal doctrines." 142 S. Ct. at 2275. As one example of such distortion, the Court pointed out that "the Court's abortion cases have diluted the strict standard for facial constitutional challenges" and "they have distorted First Amendment doctrines." *Id.* at 2275–76. As will be explained, this Court's prior order relied on a watered-down standard for facial constitutional challenges and, as a result, misapplied the vagueness doctrine.

Rather than attempt to explain to the Court how *Dobbs* supports their renewed request for injunctive relief, Plaintiffs admit that it dooms their undue burden claim. But

when it comes to their vagueness claim, they think the Supreme Court left the prior preliminary injunction untouched and that *Dobbs* has no bearing.  If the Supreme Court believed that the prior preliminary injunction was valid, it could have simply denied the Application altogether, granted it in part with respect to undue burden (preserving the injunction based on vagueness), or granted certiorari but affirmed the preliminary injunction on vagueness grounds.  The Supreme Court, however, took none of those three routes, instead vacating the preliminary injunction in full.  Because *Dobbs* does not further Plaintiffs' vagueness challenge, the Court should reject the renewed motion outright.

## B.    Plaintiffs' Vagueness Challenge Is Not Ripe.

Plaintiffs' vagueness challenge faces the almost impossible obstacle of being a pre-enforcement challenge.  Ordinarily, when considering whether statutory terms are too vague, a federal court must consider how they have been interpreted and applied.  Thus, the Court has turned away vagueness challenges where the terms had been, or likely would be, narrowed through adjudication.  *See, e.g.*, *Civil Serv. Comm'n v. Nat'l Ass'n of Letter Carriers*, 413 U.S. 548, 574–75 (1973); *Rose v. Locke*, 423 U.S. 48, 52 (1975); *see also Bauer v. Shepard*, 620 F.3d 704, 716 (7th Cir. 2010) ("When a statute is accompanied by [a] system that can flesh out details, the due process clause permits those details to be left to that system.").  By bringing a pre-enforcement vagueness claim, Plaintiffs have deprived the federal courts of the ability to "consider any limiting construction that a state court or enforcement agency has proffered."  *Vill. of Hoffman Ests. v. Flipside, Hoffman Ests., Inc.*, 455 U.S. 489, 494 n.5 (1982).  Thus, an entirely "speculative" pre-enforcement challenge "where 'no evidence has been, or could be, introduced to indicate whether the [Act] has been enforced in a discriminatory manner or with the aim of inhibiting [constitutionally protected conduct]'" should be viewed with caution.  *Gonzales v. Carhart,* 550 U.S. 124, 150 (2007) (rejecting the argument "that the Act should be invalidated on its face because it encourages arbitrary or discriminatory enforcement.").

Under the Ninth Circuit's standard for ripeness, a plaintiff must provide "a 'concrete factual situation . . . to delineate the boundaries of what conduct the government may or

may not regulate without running afoul' of the Constitution." *Alaska Right to Life Pol. Action Comm. v. Feldman*, 504 F.3d 840, 849 (9th Cir. 2007); *Easyriders Freedom F.I.G.H.T. v. Hannigan*, 92 F.3d 1486, 1495 (9th Cir. 1996) ("Where there are insufficient facts to determine the vagueness of a law as applied, the issue is not ripe for adjudication.").

Plaintiffs still fail to provide the Court with the concrete factual situation (i.e., real situations involving real patients where they have been unable to apply the Reason Regulations' terms). Instead, Plaintiffs would have the Court again engage in guesswork about questions that might be raised in hypothetical future situations. Under binding precedent, the State Defendants are entitled to notice of those concrete factual situations where Plaintiffs believe application of the Reason Regulations will be vague. Otherwise, Arizona state courts should first be permitted to interpret and apply the Reason Regulations in concrete factual situations. Facing such situations, Plaintiffs could assert a due process challenge if they really believed S.B. 1457 did not put them on adequate notice that the law would be enforced in the particular manner at issue. *See San Diego Cnty. Gun Rights Comm. v. Reno*, 98 F.3d 1121, 1133 (9th Cir. 1996). Having failed to come forward with any such situations, Plaintiffs' vagueness challenge is not ripe.

This Court previously concluded that the Ninth Circuit's opinions in *Guerrero v. Whitaker*, 908 F.3d 541, 544 (9th Cir. 2018), and *Kashem v. Barr*, 941 F.3d 358 (9th Cir. 2019), altered the ripeness standard for vagueness challenges, thereby allowing it to consider Plaintiffs' claim. Doc. 52 at 10. But neither case addressed the standard for when vagueness challenges are ripe. Instead, those decisions discuss when litigants may assert a facial vagueness challenge. Neither case altered the ripeness standard for pre-enforcement vagueness challenges, which requires presentation of a concrete factual situation. *See Alaska Right to Life Pol. Action Comm.*, 504 F.3d at 849.

### C. The Reason Regulations Are Not Vague.

#### 1. Plaintiffs Are Required To Show That The Reason Regulations Are Vague In All Applications.

Plaintiffs also have an exceedingly high burden to succeed on a facial vagueness challenge. A plaintiff seeking to render a law unenforceable in all of its applications must

11

show that there is no set of circumstances under which a law would be valid. *United States v. Salerno*, 481 U.S. 739, 745 (1987). A court "should uphold [a facial vagueness] challenge only if the enactment is impermissibly vague in all of its applications." *Vill. of Hoffman Estates*, 455 U.S. at 495.

This Court previously concluded that the Ninth Circuit has "clarified that it remains the law that 'a litigant whose conduct is clearly prohibited by a statute cannot be the one to make a facial vagueness challenge.'" Doc. 52 at 10. But the Court found an exception based on the existence of "exceptional circumstances" because Plaintiffs also raised an "intertwined" undue burden claim. *See id.* To the extent case law supported the existence of such an exception before *Dobbs*, after *Dobbs* such an exception is not legitimate. Allowing a claimant to skirt the "no set of facts" test because of the existence of an undue burden claim would ignore that *Dobbs* overruled the existence of a federal right to be free from undue burdens on abortion and, in so doing, expressly called out abortion-specific exceptions to otherwise applicable legal tests. *Dobbs*, 142 S. Ct. at 2275–76. As the Eleventh Circuit recently explained, "we can no longer engage in . . . abortion distortions in light of a Supreme Court decision instructing us to cease doing so." *SisterSong Women of Color Reprod. Just. Collective v. Governor of Ga.*, 40 F.4th 1320, 1328 (11th Cir. 2022) (rejecting a vagueness challenge to a Georgia statute defining "a natural person to include unborn humans in the womb at any stage of development").

Plaintiffs also attempt to avoid the requirements for a facial vagueness challenge by asserting that the Reason Regulations limit protected speech. But the Reason Regulations regulate conduct—the performance of discriminatory abortions—not speech. All medical professionals in Arizona remain free to advise their patients about their medical options, including obtaining an abortion. The Reason Regulations do not allow a physician or other third party to perform an abortion (*i.e.*, engage in certain conduct) if a patient has disclosed that the sole reason for obtaining an abortion is the presence of a genetic abnormality.[8] But

---

[8] Requiring medical or mental health professionals to report known violations of law to appropriate law enforcement authorities, *see* A.R.S. § 13-3603.02(E), does not implicate the First Amendment any more than requirements—common throughout the United States—on lawyers to report known violations of ethical rules.

12

Plaintiffs admit that does not happen often, *see* Doc. 10-2 (Decl. of Paul A. Isaacson, M.D. ¶ 13), and their medical community *amici* admit that such information "is not clinically required." Ex. A. at 20. If such disclosure occurs, a patient is permitted to find a physician who can conduct an abortion without discriminatory intent.[9]

The Supreme Court has held that state regulation of professional conduct does not implicate the First Amendment, even where speech is incidentally involved. *See Nat'l Inst. of Family & Life Advocs. v. Becerra*, 138 S. Ct. 2361, 2373 (2018) ("*NIFLA*") ("[T]his Court has upheld regulations of professional conduct that incidentally burden speech."); *Tingley v. Ferguson*, ____F.4th____, No. 2022 WL 4076121, *11 (9th Cir. Sept. 6, 2022) ("At the other end of the continuum is where the regulation of professional *conduct* falls. . . . At this end, the state's power to regulate is 'great' even though this type of regulation 'may have an incidental effect on speech.'"). The U.S. Supreme Court has explained that even "words can in some circumstances violate laws directed not against speech but against conduct." *R.A.V. v. St. Paul*, 505 U.S. 377, 389 (1992). Contrary to Plaintiffs' citation (at 10) to *Grayned*, the Reason Regulations do not "abut[] upon sensitive areas of basic First Amendment freedoms." 408 U.S. 104, 109 (1972).

Plaintiffs are required, but do not attempt, to show that the Reason Regulations are vague in all applications or that certain of their conduct is not clearly prohibited. Neither could they if they tried. It is not difficult from the plain language of the Reason Regulations to glean an obvious circumstance when it would apply—a patient approaches a physician and expressly says that she recently discovered that her unborn child has a third copy of chromosome 21, that she presumes the unborn child will be born with Down syndrome, and solely for that reason, she desires to terminate the pregnancy. The Reason Regulations would clearly apply to prevent Plaintiffs from performing the abortion, and any ordinary physician reading the Reason Regulations would know it.

### 2. The Reason Regulations Are Not Vague.

Plaintiffs' assertion that the Reasons Regulations are facially vague is not likely to

---

[9] To the extent Plaintiffs are trying to assert potential First Amendment rights of their patients, as explained (Doc. 46 at 14–15), Plaintiffs lack standing to do so.

succeed.  Due to the pitfalls with facial vagueness challenges, the Supreme Court has explained that such challenges will only succeed when the statutory restriction at issue "proscribe[s] no comprehensible course of conduct at all." *U.S. v. Powell*, 423 U.S. 87, 92 (1975); *see also Smith v. Goguen*, 415 U.S. 566, 578 (1974) (a facial challenge to a statutory restriction will only succeed where the statute exhibits an "absence of any ascertainable standard for inclusion and exclusion"); *Coates v. City of Cincinnati*, 402 U.S. 611, 614 (1971) (examining whether an ordinance was facially vague "in the sense that no standard of conduct is specified at all").  If "it is clear what the [law] as a whole prohibits," a facial vagueness challenge fails.  *Grayned v. City of Rockford*, 408 U.S. 104, 110 (1972).  Similarly, when considering a facial vagueness challenge, the Court has commented that "perfect clarity and precise guidance have never been required," even for criminal laws that implicate constitutional rights.  *United States v. Williams*, 553 U.S. 285, 304 (2008).

The Reason Regulations proscribe a comprehensible course of conduct and contain an ascertainable standard for inclusion and exclusion.  A statute is not unconstitutionally vague merely because it "provides an uncertain standard to be applied to a wide range of fact-specific scenarios."  *Guerrero*, 908 F.3d at 545.  That is true here.  The Reason Regulations provide definitions that allows doctors to apply the facts of each situation. S.B. 1457 § 2 (defining "genetic abnormality"); *see Tingley*, 2022 WL 4076121, *26 ("[I]f the law regulates the 'conduct of a select group of persons having specialized knowledge,' then the 'standard is lowered' for terms with a 'technical' or 'special meaning.'").

In almost all cases, it will be obvious whether the Reason Regulations apply.  As the State Defendants have previously pointed out, in 2019, out of approximately 13,000 abortions reported in Arizona, only 161 women "reported that their primary reason for obtaining an abortion was due to fetal health/medical considerations."  Doc. 46-1, Decl. of Steven Robert Bailey ¶ 10.  An additional 30 women who reported "other" as their primary reason included "genetic risk/fetal abnormality" as a detailed reason.  *Id.*  Thus, in over 98% of cases in 2019, the Reason Regulations' inapplicability would have been obvious to any physician.  Even among the very small percentage of cases when the Reason

14

Regulations might apply, the statute's applicability based on the existence (or presumed existence) of a genetic abnormality will remain obvious. When far less than 191 out of 13,000 instances might result in application of a law, and otherwise the law's application is clear, the law cannot be unconstitutionally vague on its face.

This Court seemed to believe previously that sufficient proof of vagueness could be established by identifying hypothetical scenarios where there could be uncertainty about the Reason Regulations' application. But "the mere fact that close cases can be envisioned" under a statute does not establish vagueness. *Williams*, 553 U.S. at 305. "Close cases can be imagined under virtually any statute." *Id.* at 306.

In any event, the scenarios the Court previously expressed concern about are not close cases. The Court previously worried that "there can be considerable uncertainty as to whether a fetal condition exists, has a genetic cause, or will result in death within three months after birth." Doc 52 at 12. But where such "considerable uncertainty" exists, the provider may perform the abortion without running afoul of the Reason Regulations. The Court was also concerned that "patients sometimes report that they are terminating a pregnancy because they lack the financial, emotional, family, or community support to raise a child with special and sometimes challenging needs." *Id.* at 14. The Reason Regulations do not prohibit an abortion when multiple reasons are expressed.

The Court also previously concluded that the Reason Regulations' knowledge requirement creates—rather than alleviates—vagueness concerns. The Reason Regulations apply only when a provider has *actual knowledge* that the abortion is being sought solely because of a genetic abnormality. Although this Court acknowledged that "scienter requirements ordinarily alleviate vagueness concerns," it did not follow that rule, instead concluding that "this law requires that a doctor know the motivations underlying the action of another person to avoid prosecution."[10] Doc. 52 at 13. But the Reason Regulations do not *require* a provider to know why someone is seeking an abortion. To

---

[10]  To support this proposition, the Court cited *Memphis Ctr. for Reproductive Health v. Slatery*, 14 F.3d 409 (6th Cir. 2021). Doc. 52 at 13, 16. The en banc Sixth Circuit later vacated that decision. *See* 18 F.4th 550 (2021).

the contrary, the Regulations apply only when the provider in fact knows that the abortion is being sought solely because of a genetic abnormality. If the provider does not know, then she is not required to find out, and the Reason Regulations do not apply.

Admittedly, in rare cases it might be difficult to determine what a person knew about the motivations of another, but that problem is addressed "not by the doctrine of vagueness, but by the requirement of proof beyond a reasonable doubt." *Williams*, 553 U.S. at 305–06. "What renders a statute vague is not the possibility that it will sometimes be difficult to determine whether the incriminating fact it establishes has been proved[,] but rather the indeterminacy of precisely what that fact is." *Id.* at 306.

Whether a physician knew that an abortion was being sought solely for a proscribed reason "is a true-or-false determination, not a subjective judgment such as whether conduct is 'annoying' or 'indecent.'" *Id.* It is not problematic to allow state courts to make that determination. To the contrary, "courts and juries every day pass upon knowledge, belief and intent." *Id.* As to the Reason Regulations, the term "knowingly" thus "alleviates vagueness concerns, narrows the scope of [the] prohibition, and limits prosecutorial discretion." *McFadden v. United States*, 576 U.S. 186, 197 (2015) (cleaned up).

Finally, the Reason Regulations do not implicate arbitrary enforcement concerns. In this pre-enforcement challenge, "no evidence has been, or could be, introduced to indicate whether the [law] has been enforced in a discriminatory manner." *Vill. of Hoffman Ests.*, 455 U.S. at 503. And "the speculative danger of arbitrary enforcement does not render" a law void for vagueness. *Id.*; *see Tingley*, 2022 WL 4076121, *26 (rejecting a vagueness challenge because the law at issue "provides ascertainable standards").[11]

## II. Plaintiffs Have Not Demonstrated That Irreparable Harm Is Likely.

To obtain a preliminary injunction, a plaintiff must prove "that irreparable injury is *likely* in the absence of an injunction" as opposed to merely speculative. *See Winter*, 555

---

[11]  If the Court concludes that any individual section of S.B. 1457 is unconstitutional, it should sever that provision without enjoining the remaining. *See* S.B. 1457 § 18 (severance provision); *Ayotte v. Planned Parenthood of N. New England*, 546 U.S. 320, 328–29 (2006) (applying severability principles in the abortion context).

U.S. at 22–23.  As explained, Plaintiffs cannot succeed on their vagueness challenge.  The Court previously noted that "deprivation of constitutional rights unquestionably constitutes irreparable injury."  Doc. 52 at 29.  Because Plaintiffs cannot satisfy the stringent standard for a facial vagueness challenge, there is no deprivation of constitutional rights.  Plaintiffs' self-regulation (at 15–16) cannot support irreparable harm.

**III.  The Equities And Public Interest Favor The State Defendants.**

When the government is a party to the litigation, the balance of the equities and the public interest factors merge.  *Roman v. Wolf*, 977 F.3d 935, 940–41 (9th Cir. 2020).  Enjoining a constitutional law—which has already been in effect for several months—injures the State and the public interest by preventing the enforcement of a statute "enacted by representatives of its people." *Maryland v. King*, 567 U.S. 1301, 1303 (2012) (Roberts, C.J., in chambers); *see also Abbott v. Perez*, 138 S. Ct. 2305, 2324 n.17 (2018) ("[T]he inability to enforce its duly enacted plans clearly inflicts irreparable harm on the State.").  And that is especially true when an injunction subjects the decisions of public officials entrusted with "'the safety and the health of the people'" in "'areas fraught with medical and scientific uncertainties'" to "second-guessing by an 'unelected federal judiciary.'"  *S. Bay United Pentecostal Church v. Newsom*, 140 S. Ct. 1613, 1613–14 (2020) (Roberts, C.J., concurring) (brackets and citations omitted).

States have an interest in remedying discrimination towards those with mental or physical disabilities. *See Bd. of Dirs. of Rotary Int'l v. Rotary Club of Duarte*, 481 U.S. 537, 549 (1987) (States have a "compelling interest in eliminating discrimination").  States also have a legitimate interest "in promoting the life or potential life of the unborn." *Gonzales*, 550 U.S. at 163.  And "[t]here can be no doubt the government 'has an interest in protecting the integrity and ethics of the medical profession.'"  *Id.* at 157.  A preliminary injunction would disserve the public interest by preventing Arizona from effectuating the interests served by the Reason Regulations.

**CONCLUSION**

For the above reasons, the Court should deny Plaintiffs' renewed motion.

RESPECTFULLY SUBMITTED this 16th day of September, 2022.

**MARK BRNOVICH**
**ATTORNEY GENERAL**

By  */s/ Michael S. Catlett*
Brunn W. Roysden III (No. 28698)
Michael S. Catlett (No. 25238)
Kate B. Sawyer (No. 34264)
Katlyn J. Divis (No. 35583)
Office of the Arizona Attorney General
2005 N. Central Ave.
Phoenix, Arizona 85004
Telephone: (602) 542-3333
Fax: (602) 542-8308
Beau.Roysden@azag.gov
Michael.Catlett@azag.gov
Kate.Sawyer@azag.gov
Katlyn.Divis@azag.gov

*Attorneys for Defendant Mark Brnovich in his*
*official capacity as Arizona Attorney General*

**MARK BRNOVICH**
**ATTORNEY GENERAL**

By  */s/ Kevin Ray*
Kevin Ray (No. 007485)
Aubrey Joy Corcoran (No. 025423)
Office of the Arizona Attorney General
2005 N. Central Ave.
Phoenix, AZ 85004
Telephone: (602) 542-8328
Fax: (602) 364-0700
Kevin.Ray@azag.gov
AubreyJoy.Corcoran@azag.gov

*Attorneys for Defendants Arizona Department*
*of Health Services and Don Herrington in his*
*official capacity as Interim Director of the*
*Arizona Department of Health Services*

**MARK BRNOVICH**
**ATTORNEY GENERAL**

By _/s/ Mary D. Williams_
Mary D. Williams (No. 013201)
Carrie H. Smith (No. 022701)
Office of the Arizona Attorney General
2005 N. Central Ave.
Phoenix, AZ 85004
Telephone: (602) 542-7992
Fax: (602) 364-3202
MaryD.Williams@azag.gov

_Attorneys for Defendants Arizona Medical
Board and Patricia McSorley in her official
capacity as Executive Director of the Arizona
Medical Board_

1

**CERTIFICATE OF SERVICE**

I hereby certify that on this 16th day of September, 2022, I electronically filed the foregoing with the Clerk of the Court for the United States District Court for the District of Arizona using the CM/ECF filing system. Counsel for all parties are registered CM/ECF users and will be served by the CM/ECF system pursuant to the notice of electronic filing.


*/s/ Michael S. Catlett*