# EXHIBIT 1

FILED
GARY L. HARRISON
CLERK, SUPERIOR COURT
9/23/2022 2:56:24 PM

ARIZONA SUPERIOR COURT, PIMA COUNTY

HON. KELLIE JOHNSON

CASE NO.     C127867

DATE:        September 22, 2022

PLANNED PARENTHOOD CENTER OF TUCSON, INC;
PLANNED PARENTHOOD OF ARIZONA, et al
    Plaintiffs

vs.

MARK BRNOVICH, Attorney General of the State of
Arizona, et al
    Defendants

---

## UNDER ADVISEMENT RULING

**UNDER ADVISEMENT RULING: ATTORNEY GENERAL'S MOTION TO SUBSTITUTE DR. ERIC HAZELRIGG AS INTERVENOR AND GUARDIAN AD LITEM AND ATTONREY GENERAL'S MOTION FOR RELIEF FROM JUDGMENT**

Pending before the Court and fully briefed are the Attorney General's Motion to Substitute Dr. Eric Hazelrigg as Intervenor and Guardian ad Litem and Motion for Relief from Judgment. Also pending if the Motion to Substitute is denied is Dr. Eric Hazelrigg's and Choice Pregnancy Center's Motion to Intervene. The Court has read the briefing submitted and considered the arguments of counsel made at the August 19, 2022, hearing. For the reasons set forth below, the Court grants the Motion to Substitute and the Motion for Relief from Judgment.

**FACTS AND PROCEDURAL HISTORY**

On July 22, 1971, Planned Parenthood Center of Tucson Inc.[1], 10 physicians,[2] and "Jane Doe," an anonymous pregnant woman who sought to have an abortion, filed the Complaint in this matter. The Complaint

---

[1] The parties agreed to substitute Planned Parenthood Arizona, Inc. as the Plaintiff in this matter due to corporate mergers resulting in a new corporate identity.

[2] At the hearing on August 19, 2022, the deaths of original Plaintiffs Pollock, McEvers, Costin, Lilien, Brunsting and Trisler were noted on the record. Plaintiffs Bloomfield, Rafael, and Edelberg have filed no responses after service of the motions.

                            R. Lee
                        Judicial Administrative Assistant

**UNDER ADVISEMENT RULING**

named the Arizona Attorney General and the Pima County Attorney as Defendants and asked the Court to declare then A.R.S. §§13-211–213 unconstitutional under both the Arizona and United States Constitutions. The Complaint also asked the Court to enter a permanent injunction against the Defendants enjoining them from enforcing or threatening to enforce the specified statutes.

In October 1971, the Court appointed Dr. Clifton Bloom as guardian ad litem for the unborn child of Jane Roe[3] and "all other unborn infants similarly situated." After the Court appointed Dr. Bloom as guardian ad litem, the parties stipulated to Dr. Bloom's intervention. Although Plaintiffs stipulated to allow intervention, Plaintiffs reserved objections to Dr. Bloom's appointment and reserved the right to move to terminate his intervention later. It is unclear whether the Court allowed intervention as permissive or as of right. Dr. Bloom participated as Intervenor and remained a party until the case concluded. Plaintiffs never sought to terminate intervention and did not raise any issue regarding the appointment and intervention on appeal. Dr. Bloom is now deceased.

The case proceeded to trial in 1971. Initially, the trial judge dismissed the case for lack of a justiciable controversy. The Court of Appeals reversed that ruling and ordered the trial judge to decide the case on the merits. *See, Planned Parent Ctr. Of Tucson v. Marks,* 17 Ariz. App. 308, 313 (1972). On September 29, 1972, the trial judge found the statutes at issue unconstitutional. The Attorney General, Pima County Attorney, and Intervenor appealed the ruling. The Court of Appeals reversed the trial judge and upheld the challenged laws as constitutional. *See, Nelson v. Planned Parenthood Ctr. of Tucson Inc.,* 19 Ariz. App. 142 (1973).

Less than 3 weeks later, the United States Supreme Court decided *Roe v. Wade,* 410 U.S. 113 (1973), and *Doe v. Bolton,* 410 U.S. 179 (1973). On rehearing, the Court of Appeals vacated its opinion on the sole and express grounds of the binding nature of the United States Supreme Court decisions. After further appellate review was denied, the trial judge, as required by the Court of Appeals' mandate, entered judgement declaring

R. Lee
Judicial Administrative Assistant

**UNDER ADVISEMENT RULING**

the statutes unconstitutional. The judgement also permanently enjoined the Attorney General, the Pima County Attorney, and all successors, agents, servants, employees, attorneys, and all persons in active concert or participation with them, from taking any action or threatening to take any action to enforce the provisions of the challenged statutes.

In the almost fifty years since the trial judge entered judgment, the Arizona Legislature has passed several statutes concerning abortion. In 1977, the Legislature re-enacted A.R.S. §§13-211-213 as §§13-3603-3605. In 2021, the Legislature repealed §13-3604, but left intact §13–3603, which criminalizes abortions except to save the life of a pregnant woman. Most recently in 2022, the Legislature enacted a 15-week gestational age limitation on abortion. The legislature expressly included in the session law that the 15-week gestational age limitation does not "[r]epeal, by implication or otherwise, section §13–3603 Arizona Revised Statutes, or any other applicable state law regulating or restricting abortion." 2022 Ariz. Sess. Laws ch. 105, §2 (2d Reg. Sess.).

On June 24, 2022, the United States Supreme Court overruled *Roe v. Wade* in *Dobbs v. Jackson Women's Health Org.,* 142 S. Ct. 2228 (2022). The Supreme Court held that the Constitution does not confer a right to abortion, and that "the authority to regulate abortion must be returned to the people and their elected representatives." *Dobbs*, 142. S. Ct. at 2279. The Attorney General's motions for substitution and for Rule 60(b)(5) relief followed the *Dobbs* decision.

**LEGAL ANALYSIS**

### 1. Motion to Substitute Dr. Eric Hazelrigg

The Attorney General asks the Court to appoint Dr. Eric Hazelrigg in the place of now deceased Dr. Bloom as guardian ad litem, and to substitute Dr. Hazelrigg as Intervenor under Ariz. R. Civ. P. 25(a)(1). Planned Parenthood opposes the request but did not object to Dr. Hazelrigg's participation in the briefing and argument

---

[3] Prior to trial, the original Plaintiff Jane Doe had an abortion out of state and was dismissed from the case. The Court substituted Jane Roe as Plaintiff. Jane Roe also had an abortion out of state and was dismissed from the case prior to trial.

**UNDER ADVISEMENT RULING**

on the Motion for Relief From Judgment. The Pima County Attorney takes no position on the Motion to Substitute.

In support of his request for substitution, the Attorney General argues that the Court, by previously appointing Dr. Bloom as guardian ad litem and then permitting his intervention, found intervention to be appropriate. The Attorney General argues that based on this previous finding, it is appropriate to allow an intervenor to continue in the role previously permitted. Planned Parenthood argues that it was improper to appoint a guardian fifty years ago, and that the Court should not permit the error to continue by allowing the substitution now.

The Court agrees with Planned Parenthood that the record is unclear as to why the Court determined intervention was appropriate. However, the parties stipulated to Dr. Bloom's intervention "without waiving any right to subsequent motions to quash the appointment of Clifton Bloom as guardian ad litem... and motions to terminate the intervention of the said guardian ad litem." *Minute Entry October 15, 1971*. No party, including Planned Parenthood, ever moved to quash Dr. Bloom's appointment or terminate his intervention. Instead, Dr. Bloom, represented by counsel, was permitted to participate as Intervenor through trial and two appellate processes. Dr. Bloom remained a party in intervention in 1973 when the Court entered the judgement from which the Attorney General now seeks relief.

Planned Parenthood makes several arguments in support of its position that appointment of a guardian ad litem was inappropriate during the original proceedings and remains inappropriate today. The Attorney General argues Planned Parenthood has waived their objections by never moving to terminate or otherwise challenge the intervention. The Attorney General also cites the law of the case doctrine as a basis for why the Court should not revisit the previous decision on intervention.

The Court agrees Planned Parenthood's objections are waived, or, under the law of the case doctrine, should not be reconsidered in the context of the Attorney General's Motion for Relief From Judgment. Planned

R. Lee
Judicial Administrative Assistant

Parenthood had multiple opportunities to challenge intervention during the initial proceedings at the trial and appellate levels. By allowing the matter to proceed to final judgment and appeal without challenging intervention, Planned Parenthood waived any objections it previously preserved.

Additionally, under the law of the case doctrine, "a court acts within its discretion in 'refusing to reopen questions previously decided in the same case by the same court or a higher appellate court' unless 'an error in the first decision renders it manifestly erroneous or unjust or when a substantial change occurs in essential facts or issues, in evidence, or in the applicable law.'" *See, Associated Aviation Underwriters v. Wood,* 209 Ariz. 137, 150-51, ¶40 (App. 2004), (quoting *State v.* Wilson, 207 Ariz. 12 ¶9 (App. 2004)). Planned Parenthood has not demonstrated that the original decision permitting intervention was "manifestly erroneous or unjust." While the Court recognizes there may be procedural irregularities surrounding the previous decision to permit intervention, it declines to address the merits of the issue given the procedural posture of the case. Additionally, the Court finds permitting continued intervention is not prejudicial to Planned Parenthood.

### 1. Motion for Relief from Judgment

Ariz. R. Civ. P. 60(b)(5) allows the Court to relieve a party from a final judgment if "applying it prospectively is no longer equitable." Rule 60(b)(5) relief is appropriate when "the party seeking relief from an injunction can show a significant change either in factual conditions or in law." *Agostini v. Felton,* 521 U.S. 203, 215 (1997). In determining whether relief under Rule 60(b)(5) is appropriate, "a court may recognize subsequent changes in either statutory or decisional law." *Id.*

The parties do not dispute that relief is appropriate under Rule 60(b)(5). Planned Parenthood agrees that *Dobbs* resulted in a significant change in the law and agrees that it is not equitable to enforce the judgment as originally entered. The parties disagree on the scope of the relief that should be granted. The Attorney General argues that the judgment should be vacated entirely because it was based solely on *Roe* which has been overruled. Planned Parenthood argues that fully vacating the judgment fails to acknowledge statutes which the

R. Lee
Judicial Administrative Assistant

**UNDER ADVISEMENT RULING**

Legislature passed over the last five decades, will create conflicts in Arizona law concerning abortion, and is inequitable given the harms at stake. Planned Parenthood argues the Court "has a duty to harmonize all of the Arizona Legislature's enactments as they exist today," and asks the Court to issue a modified injunction to "make clear that A.R.S §13–3603 can be enforceable in some respects but does not apply to abortions provided by licensed physicians under the regulatory scheme the Legislature enacted over the last 50 years." The Pima County Attorney joins in Planned Parenthood's request for a modified injunction.

The Attorney General argues that this Court's inquiry under Rule 60(b)(5) is narrow, and that the rule does not permit the Court to undertake the statutory analysis suggested by Planned Parenthood. Additionally, the Attorney General argues that Planned Parenthood's request for the Court to harmonize the laws and enter a modified injunction based on statutes enacted after the entry of the judgment is procedurally flawed. The Court agrees with the Attorney General's arguments.

The controlling Complaint seeks relief solely on constitutional grounds. The judgment entered in 1973 was based solely on those constitutional grounds. The Court finds modifying the injunction to harmonize laws not in existence when the Complaint was filed, on grounds for relief not set forth in the Complaint, is procedurally improper in the context of a Rule 60 (b)(5) motion. As discussed in the Attorney General's briefs, Planned Parenthood may move to amend its Complaint after relief is granted, or may file a new action to seek relief it believes appropriate.

Additionally, the requested modified injunction which would carve out an exception for physicians, is not consistent with the plain language of A.R.S. §13-3603 which contains no such exception. Significantly, when passing laws concerning abortion when *Roe v. Wade* was law, the Legislature repeatedly disclaimed that the statutes it enacted were creating a right to abortion. *See, e.g., Attorney General's Reply to Planned Parenthood's Opposition to Motion for Relief From Judgment page 6, lines 6-25.* Similarly, when enacting the

R. Lee
Judicial Administrative Assistant

**UNDER ADVISEMENT RULING**

| Page 7 | Date: September 22, 2022 | Case No.: C127867 |

15- week law, the Legislature specifically stated the statute did not repeal A.R.S. §13-3603. *See,* 2022 Ariz. Sess. Laws ch. 105 § 2 (2d Reg. Sess.).

Planned Parenthood urges the Court to consider other equitable factors in its decision. While the Court has considered those factors, the Court finds those factors do not make considering or entering the modified injunction procedurally or legally appropriate. The Court finds that because the legal basis for the judgment entered in 1973 has now been overruled, it must vacate the judgment in its entirety. The Court finds an attempt to reconcile fifty years of legislative activity procedurally improper in the context of the motion and record before it. While there may be legal questions the parties seek to resolve regarding Arizona statutes on abortion, those questions are not for this Court to decide here.

Accordingly,

**IT IS ORDERED** the Attorney General's Motion to Substitute Dr. Eric Hazelrigg as guardian ad litem and intervenor is ***GRANTED.***

**IT IS FURTHER ORDERED** that Eric Hazelrigg, M.D. is substituted for Clifton E Bloom as Intervenor and guardian ad litem for all unborn children.

**IT IS FURTHER ORDERED** Dr. Hazelrigg's Motion for Intervention is ***DENIED AS MOOT.***

**IT IS FURTHER ORDERED** the Attorney General's Motion for Relief from Judgment is ***GRANTED.***

**IT IS FURTHER ORDERED** that the Second Amended Declaratory Judgment and Injunction signed by the Court on March 27, 1973, and filed on or about the same date, no longer has any prospective application as to A.R.S. § 13-3603.

**IT IS FURTHER OREDERED** that no matters remain pending, and this ruling is entered as a final judgment under Ariz. R. Civ. P. 54 (c).

/s/

**HON. KELLIE JOHNSON**

(ID: 1ac4b254-274c-45ee-a977-80287bc82a23)

R. Lee
Judicial Administrative Assistant

**UNDER ADVISEMENT RULING**

Page  8                          Date:  September 22, 2022                    Case No.:  C127867

cc:     Brunn W Roysden III, Esq.
        Catherine Peyton Humphreville, Esq.
        David Andrew Gaona, Esq.
        Diana O Salgado, Esq.
        Kristen M Yost, Esq.
        Michael S Catlett, Esq.
        Samuel E Brown, Esq.
        Sarah Mac Dougall, Esq.
        Clerk of Court - Under Advisement Clerk
        Kevin H Theriot, Esq.

                                                            R. Lee
                                               Judicial Administrative Assistant

# EXHIBIT 2

D. Andrew Gaona (028414)
Kristen Yost (034052)
**COPPERSMITH BROCKELMAN PLC**
2800 North Central Avenue, Suite 1900
Phoenix, Arizona 85004
T: (602) 381-5478
agaona@cblawyers.com
kyost@cblawyers.com

Diana O. Salgado*
**PLANNED PARENTHOOD FEDERATION OF AMERICA**
1110 Vermont Ave. NW, Suite 300
Washington, D.C. 20005
T: (212) 261-4399
diana.salgado@ppfa.org

Sarah Mac Dougall*
Catherine Peyton Humphreville*
**PLANNED PARENTHOOD FEDERATION OF AMERICA**
123 William St., 9th Floor
New York, New York 10038
T: (212) 261-4529
T: (212) 261-4594
sarah.macdougall@ppfa.org
catherine.humphreville@ppfa.org

*Admitted Pro Hac Vice*

*Attorneys for Plaintiff Planned Parenthood Arizona, Inc.*

**ARIZONA SUPERIOR COURT**

**PIMA COUNTY**

| | |
|---|---|
| PLANNED PARENTHOOD ARIZONA, INC., et al., | ) No. C127867 |
| | ) |
| Plaintiffs, | ) **PLANNED PARENTHOOD ARIZONA,** |
| | ) **INC.,'S EMERGENCY MOTION FOR** |
| v. | ) **STAY OF ORDER PENDING APPEAL** |
| | ) |
| MARK BRNOVICH, Attorney General of the State of Arizona, et al., | ) **(EXPEDITED CONSIDERATION** |
| | ) **REQUESTED)** |
| Defendants, | ) |
| | (Assigned to the Hon. Kellie Johnson) |

1119370.2

| | |
|---|---|
| 1 | and          ) |
| 2 |             ) |
| | ERIC HAZELRIGG, M.D., as guardian ad ) |
| 3 | litem of unborn child of plaintiff Jane Roe and ) |
| | all other unborn infants similarly situation, ) |
| 4 |     Intervenor.    ) |
| 5 |             ) |
| 6 | |

7    Under Ariz. R. Civ. P. 62(e), Plaintiff Planned Parenthood Arizona, Inc. ("PPAZ") moves

8 that this Court stay its September 23, 2022 Order modifying the Second Amended Declaratory

9 Judgment and Injunction so that it no longer has any prospective application to A.R.S. § 13-

10 3603, pending the outcome of PPAZ's appeal.

11    Rule 62(e), Ariz. R. Civ. P., states that, "[w]hile an appeal is pending from an

12 interlocutory order or final judgment that grants, continues, modifies, refuses, dissolves, or

13 refuses to dissolve or modify an injunction, the court may suspend, modify, restore, or grant an

14 injunction on such terms for bond, security, or otherwise that preserve the adverse party's rights."

15 Indeed, Rule 62(e), "allows the trial court to issue a stay that postpones the effect of the granting,

16 dissolution, or modification of the injunction." *State ex rel. Corbin v. Tolleson*, 152 Ariz. 376,

17 378 (App. 1986) (emphasis omitted). Further, "[t]he trial court may make the orders necessary

18 to preserve the status quo during the appeal and to protect the unsuccessful party from any

19 irreparable harm that would occur from enforcing the ruling on the injunction." *Id.*

20    A stay pending appeal is appropriate when the moving party establishes:

21    1.  A strong likelihood of success on the merits;

22    2.  Irreparable harm if the stay is not granted;

23    3.  That the harm to the requesting party outweighs the harm to the party

24       opposing the stay; and

25    4.  That public policy favors the granting of the stay.

26

1    *Smith v. Ariz. Citizens Clean Elections Comm'n*, 212 Ariz. 407, 410 ¶ 10 (2006) (en banc)

2    (citations omitted). "The scale is not absolute, but sliding. Nor should the result turn on counting

3    the factors that weigh on each side of the balance." *Id.* at 410–11 ¶ 10. "Rather, the moving party

4    may establish *either* 1) probable success on the merits and the possibility of irreparable injury;

5    *or* 2) the presence of serious questions and that the balance of hardships tips sharply in favor of

6    the moving party." *Id.* (emphasis added) (cleaned up). PPAZ meets either standard.

7           Notably, to satisfy the second standard, the Court does not have to agree that PPAZ is

8    likely to succeed on the merits of its request for a modified injunction harmonizing § 13-3603

9    with Arizona's other abortion-regulating laws in order to find that a stay is appropriate. Instead,

10   it is enough that PPAZ proved there are serious questions regarding the proper scope of a

11   statutory analysis under Rule 60(b) and the interaction among § 13-3603, the 15-Week Law, and

12   Arizona's other abortion statutes. Indeed, both parties submitted multiple rounds of briefing on

13   the complex legal issues presented by AG Brnovich's request to modify the Second Amended

14   Judgment in this case. And that makes sense, given the complicated procedural posture, the

15   intricate issues of statutory interpretation, and the extraordinarily unique historical and social

16   circumstances surrounding the AG's request.

17          In particular, citing *Agostini v. Felton*, 521 U.S. 203, 215 (1997), both parties agree that

18   this Court has the authority to consider whether there has been a "significant change either in

19   factual conditions or in law" since the final judgment was entered nearly 50 years ago. Att'y

20   Gen's Mot. for Relief from J. ("AG Mot.") at 8; *see also id.* (acknowledging that "[u]nder Rule

21   60(b)(5), '[a] court may recognize subsequent changes in either statutory or decisional law.'"

22   (quoting *Agostini*, 521 U.S. at 215)). And both parties agree that the "U.S. Supreme Court has

23   even rejected the notion that Rule 60(b)(5) does not apply where a movant uses it 'not as a means

24   of *recognizing* changes in the law, but as a vehicle for *effecting* them.'" AG Mot. at 9 (quoting

25   *Agostini*,  521 U.S. at 238 (emphasis in original)). Plaintiffs also cited case law explaining that:

26   (1) Rule 60(b) has a "flexible standard," PPAZ's Resp. to Defs.' R. 60(b) Mot. for Relief from

- 2 -

J. at 14–15 (quoting *Bredfeldt v. Greene*, No. 2 CA-CV 2016-0198, 2017 WL 6422341, at \*3 ¶ 10 (Ariz. App. Dec. 18, 2017) (quotation omitted)); and, (2) "in deciding whether Rule 60 relief is warranted, the superior court must consider *the totality of facts and circumstances*, and, therefore, is afforded extensive discretion in deciding whether relief is appropriate," PPAZ's Resp. to Dr. Hazelrigg & Choices Pregnancy Ctrs.' Proposed Reply in Supp. of Att'y Gen.'s Mot. for Relief from J. at 2–3 (quoting *AOW Mgmt. LLC v. Scythia Sols. LLC*, No. 1 CA-CV 20-0699, 2022 WL 2813523, at \*7 ¶ 36 (Ariz. App. July 19, 2022) (emphasis added) (cleaned up)).

Plaintiffs have thus presented, at minimum, a serious question as to whether this Court, in deciding the AG's Motion, can consider the comprehensive statutory changes to Arizona law that have evolved over the past 50 years—including a law allowing abortions no greater than 15 weeks that became law just days ago—and issue a modified judgment that effects those changes. Moreover, it can hardly be disputed that a serious question exists over how Arizona's laws interact. *See* Order at 7. ("[T]here may be questions the parties seek to resolve regarding Arizona statutes[.]"). Indeed, within hours of the Court's decision, Governor Doug Ducey stated that "as far as [he] is concerned, [the 15-week Law] takes effect as scheduled Saturday," September 24.[1] And as Plaintiffs have pointed out in prior briefing, immediately after the U.S. Supreme Court issued the *Dobbs* decision, AG Brnovich himself said "[t]he Arizona Legislature passed an identical law to the one upheld in *Dobbs*, which will take effect in approximately 90 days,"[2] before reversing course and filing the motion to modify the judgment.

In addition, the balance of hardships also tips sharply in favor of PPAZ (and Arizonans more broadly) and weighs in favor of a stay. The health and safety of Arizonans will be compromised if § 13-3603 remains enforceable against physicians who perform abortions while

---

[1] Howard Fischer, *Virtually all abortions in Arizona are now illegal, judge rules*, Tucson.com (September 23, 2022), https://tucson.com/news/local/virtually-all-abortions-in-arizona-are-now-illegal-judge-rules/article_4591db6c-3b93-11ed-9c3a-13031cb22643.html.

[2] Ariz. Att'y Gen., *Arizona Attorney General Mark Brnovich Applauds Supreme Court Decision to Protect Life* (June 24, 2022), https://www.azag.gov/press-release/arizona-attorney-general-mark-brnovich-applauds-supreme-court-decision-protect-life.

PPAZ appeals this Court's decision. As Plaintiffs predicted in briefing and argument, it is now unclear how § 13-3603 interacts with Arizona's other abortion laws. While the Governor maintains that S.B. 1164, which he signed earlier this year, allows abortions to be performed within the 15-week limit set in that law, *supra* note 1, the Attorney General has intimated that under the Court's ruling, § 13-3603 takes precedence over the 15-week limit.[3] As a result, PPAZ and other abortion providers throughout the state will be forced to steer away from providing abortions that are permissible under the clear language of the 15-week Law and the stated legislative intent. S.B. 1164, 55th Leg., 2nd Reg. Sess. (Ariz. 2022) ("This Legislature intends through this act and any rules and policies adopted hereunder, to restrict the practice of nontherapeutic or elective abortion to the period up to fifteen weeks of gestation."). This confusion is untenable and creates serious due process concerns. *See* Pima Cnty. Att'y's Joinder in PPAZ's Resp. to Att'y Gen.'s Mot. for Relief from J. at 3 ("The lifting of the current injunction, without the necessary modification to harmonize with the Legislature's subsequently enacted and less restrictive statutory scheme, will deny Arizonans of ordinary intelligence a reasonable opportunity to know what is prohibited[.]").

Significantly, the lack of clarity regarding abortion law extends to how § 13-3603's "life of the mother" exception relates to the contours of and emergency exceptions found in Arizona's other abortion laws. For example, the resurrection of § 13-3603 and its supposed coexistence with Arizona's other abortion statutes—now including S.B. 1164 as of this past Saturday—means that Arizona law allows abortion to save the life of the pregnant person (§ 13-3603), but it also requires a 24-hour waiting period pending the provision of certain information to the patient (A.R.S. § 36-2153 *et seq.* (2009)). The 24-hour waiting period law contains exceptions for specifically-defined "medical emergencies," A.R.S. § 36-2151, but that definition is not identical to § 13-3603's life exception. *Compare* A.R.S. § 13-3603 (" . . . unless necessary to

---

[3]  Mark Brnovich (@GeneralBrnovich), Twitter (Sept. 23, 2022, 3:45 PM), https://twitter.com/GeneralBrnovich/status/1573443589509910528?s=20&t=ctSGQLMBuCT MIXCcbeHpPw.

save [the patient's] life") *with* A.R.S. § 36-2151 ("'Medical emergency' means a condition that, on the basis of the physician's good faith clinical judgment, so complicates the medical condition of a pregnant woman as to necessitate the *immediate* abortion of her pregnancy to avert her death or for which a delay will create serious risk of substantial and irreversible impairment of a major bodily function." (emphasis added)).

Confusion on the scope of these exceptions seemingly at odds with one another could lead to doctors hesitating to treat patients in dire medical situations. And this is not just a hypothetical concern. The conflicting messages from state officials earlier this summer in the wake of the *Dobbs* decision caused providers to hesitate before providing care, which will be the case once again.[4] The absence of a stay will deprive many pregnant Arizonans of health care they require for an indeterminate period of time, while this case makes its way through the appellate process.

Further, the AG cannot establish that a stay will cause *any* injury to the State. This is unsurprising because there will be no harm to the State if harm to its citizens is avoided while the case proceeds on appeal. In fact, the opposite is true: the Court's order creates confusion over the meaning of Arizona's laws and has the practical effect of nullifying dozens of duly enacted laws that were passed more recently and deal more specifically with the subject matter, including the 15-week Law that the Governor maintains should be the law of the land today. *Cf. Abbott v. Perez*, __ U.S. __, 138 S. Ct. 2305, 2324 n.17 (2018) ("[I]nability to enforce its duly enacted plans clearly inflicts irreparable harm on the State.").

---

[4] *See* Kate Zernike, *Medical Impact of Roe Reversal Goes Well Beyond Abortion Clinics, Doctors Say*, N.Y. Times (Sept. 10, 2022), https://www.nytimes.com/2022/09/10/us/abortion-bans-medical-care-women.html ("Because [Arizona's] old law punishes those who 'aid and abet' an abortion, an anesthesiologist worried that he might be prosecuted for putting a patient to sleep for an abortion. A neonatologist worried about liability for declining to resuscitate a fetus judged no longer viable. 'We already work under a cloud of getting sued. That's what we signed up for,' [Scottsdale obstetrician] Dr. Kwatra said. 'This is different. This is criminal liability, not civil liability. This is jail time.'").

1    For all these reasons, Plaintiff PPAZ has established the presence of serious questions

2   and that the balance of hardships tips sharply in its favor. PPAZ thus respectfully requests that

3   this Court stay its September 23 order until the conclusion of PPAZ's appeal. Given the harm

4   PPAZ, its patients, and the general public will suffer in the absence of a stay, PPAZ also requests

5   that the Court set an expedited briefing schedule with Defendants' responses due September 27,

6   2022, and PPAZ's reply to be filed the following day—or rule on the stay motion without

7   awaiting further briefing. A proposed form of order accompanies this Motion.

8        RESPECTFULLY SUBMITTED this 26th day of September, 2022.

9                                          COPPERSMITH BROCKELMAN PLC

10                                         By: /s/ D. Andrew Gaona
                                              D. Andrew Gaona
11                                            Kristen Yost

12                                         PLANNED PARENTHOOD FEDERATION OF AMERICA
13                                            Diana O. Salgado*
                                              Sarah Mac Dougall *
14                                            Catherine Peyton Humphreville*
                                           *Admitted Pro Hac Vice
15
                                           Attorneys for Plaintiff Planned Parenthood Arizona,
16                                         Inc.

17

18   ORIGINAL of the foregoing efiled and
     COPY sent by email on September 26, 2022, to:
19
     The Honorable Kellie Johnson
20   Civil Presiding Judge
     Pima County Superior Court
21   Roxanne Lee, Judicial Assistant
     rlee@sc.pima.gov
22
     Stanley Feldman
23   sfeldman@mpfmlaw.com
     Miller Pitt Feldman & McAnally PLC
24   One Church Avenue, Suite 1000
     Tucson, Arizona 85701
25   Attorneys for Plaintiffs
     Brunn W. Roysden III
26

1  beau.roysden@azag.gov
Michael S. Catlett
2  michael.catlett@azag.gov
Kate B. Sawyer
3  kate.sawyer@azag.gov
Katlyn J. Divis
4  katlyn.divis@azag.gov
2005 North Central Avenue
5  Phoenix, Arizona 85004
6  *Attorneys for Defendant Mark Brnovich Attorney
General State of Arizona*
7
Samuel E. Brown
8  sam.brown@pcao.pima.gov
Chief Civil Deputy
9  Pima County Attorney's Office
32 North Stone Avenue, Suite 2100
10  Tucson, Arizona 85701
11  *Attorneys for Defendant Laura Conover, County Attorney
of Pima County, Arizona*
12
Kevin Theriot
13  ktheriot@adflegal.org
Alliance Defending Freedom
14  15100 North 90th Street
Scottsdale, Arizona 85260
15  *Attorneys for Eric Hazelrigg, M.D., as guardian ad litem of unborn child of
Plaintiff Jane Roe and all other unborn infants similarly situated*
16

17  /s/ Diana J. Hanson
18
19
20
21
22
23
24
25
26

- 7 -

# EXHIBIT 3

FILED
GARY L. HARRISON
CLERK, SUPERIOR COURT
9/26/2022 4:33:04 PM

ARIZONA SUPERIOR COURT, PIMA COUNTY

HON. KELLIE JOHNSON

CASE NO.      C127867

DATE:         September 26, 2022

PLANNED PARENTHOOD CENTER OF TUCSON
    Plaintiff

VS.

---

## O R D E R

**IN CHAMBERS ORDER RE:  PLANNED PARENTHOOD OF ARIZONA'S EMERGENCY MOTION FOR STAY OF ORDER PENDING APPEAL**

Pending before the Court is Planned Parenthood of Arizona's Emergency Motion for Stay of Order Pending Appeal.

**IT IS ORDERED** any party may file a Response or joinder in the Motion by September 27, 2022. Planned Parenthood's Reply to any Response shall be filed September 28, 2022.

cc:    Brunn W Roysden III, Esq.
       Catherine Peyton Humphreville, Esq.
       David Andrew Gaona, Esq.
       Diana O Salgado, Esq.
       Kristen M Yost, Esq.
       Michael S Catlett, Esq.
       Samuel E Brown, Esq.
       Sarah Mac Dougall, Esq.
       Kevin H. Theriot, Esq.

R. Lee
Judicial Administrative Assistant

# EXHIBIT 4

FILED
Gary Harrison
CLERK, SUPERIOR COURT
7/20/2022 10:54:24 AM
BY: JAMES R. ORR /S/
DEPUTY

Case No. C127867
HON. KELLIE JOHNSON

1   D. Andrew Gaona (028414)
    Kristen Yost (034052)
2   **COPPERSMITH BROCKELMAN PLC**
    2800 North Central Avenue, Suite 1900
3   Phoenix, Arizona 85004
    T: (602) 381-5478
4   agaona@cblawyers.com
    kyost@cblawyers.com
5
    Diana O. Salgado*
6   **PLANNED PARENTHOOD FEDERATION OF AMERICA**
    1110 Vermont Ave. NW, Suite 300
7   Washington, D.C. 20005
    T: (212) 261-4399
8   diana.salgado@ppfa.org
9   Sarah Mac Dougall*
    Catherine Peyton Humphreville*
10  **PLANNED PARENTHOOD FEDERATION OF AMERICA**
    123 William St., 9th Floor
11  New York, New York 10038
    T: (212) 261-4529
12  T: (212) 261-4594
    sarah.macdougall@ppfa.org
13  catherine.humphreville@ppfa.org
14  *Application for Pro Hac Vice Forthcoming
15  Attorneys for Plaintiff Planned Parenthood Arizona, Inc.,
    successor-in-interest to Plaintiff Planned Parenthood Center
16  of Tucson, Inc.

17

18                       **ARIZONA SUPERIOR COURT**

19                              **PIMA COUNTY**

20  PLANNED PARENTHOOD CENTER OF          )   No. C127867
    TUCSON, INC., et al.,                 )
21                                        )
              Plaintiffs,                 )   **PLANNED PARENTHOOD ARIZONA'S**
22                                        )   **RESPONSE TO DEFENDANTS' RULE**
    v.                                    )   **60(b) MOTION FOR RELIEF FROM**
23                                        )   **JUDGMENT**
    MARK BRNOVICH, Attorney General of the)
24  State of Arizona, et al.,             )   (Assigned to the Hon. Kellie Johnson)
                                          )
25            Defendants,                 )
                                          )
26                                        )
                                          )

1  and                                                              )
                                                                    )
2  CLIFTON E. BLOOM, as guardian ad litem of                       )
   unborn child of plaintiff Jane Roe and all other                )
3  unborn infants similarly situation,                             )
                                                                    )
4                        Intervenor.                                )
                                                                    )
5  _____)

6                            **INTRODUCTION**

7         For nearly 50 years, abortion has been legal in Arizona and relied on by pregnant

8  Arizonans and their families to decide whether, when, and how they want to welcome children.

9  It is also the subject of ongoing debate and legislation by Arizonans' elected representatives who

10 have invested significant time and political capital to pass and modify abortion laws over the last

11 50 years. The result is a complex statutory scheme that regulates the provision of abortion by

12 licensed physicians.

13        Most recently, the Legislature passed, and Governor Ducey signed, a law permitting

14 physicians to provide abortions up until 15 weeks of pregnancy[1] ("15-week Law"), which will

15 take effect September 24, 2022. Unlike other state legislatures around the country that passed

16 "trigger" abortion bans in anticipation of the U.S. Supreme Court's decision in *Dobbs v. Jackson*

17 *Women's Health Organization*, the Arizona Legislature passed the 15-week Law.

18        Since *Dobbs* overturned *Roe v. Wade*, providers in Arizona have been left to navigate

19 inconsistent statements by elected officials about the status of the laws. Specifically, it has been

20 entirely unclear whether state officials—notwithstanding the mosaic of more recent abortion

21 statutes that permit abortion performed by physicians—believe they have the authority to enforce

22 a criminal ban on abortion, which can be traced back to 1864 and is currently codified as

23 A.R.S. § 13-3603 (the "Territorial Law"), to criminalize otherwise legal, physician-provided

24 abortions. For weeks, state officials, including Defendant Attorney General Brnovich (the

25

26 [1] Pregnancy is commonly measured from the first day of a pregnant person's last menstrual
   period or LMP. A full-term pregnancy is around 40 weeks LMP.

                                    - 1 -

1    "AG"), either refused to state which abortion laws are in effect or gave inconsistent positions on

2    the matter, even though A.R.S. § 13-3603 has been enjoined since 1973. This confusion brought

3    abortion services to a halt across the state.

4          The AG has moved this Court for full relief from the judgment and injunction against

5    A.R.S. § 13-3603 and has asked this Court to "return[] [the law] to what it was prior to

6    *Roe*"—blatantly ignoring that Arizona's statutory code today includes dozens of laws that

7    plainly permit physicians to provide abortions. Att'y Gen's Mot. for Relief from J. ("Mot.") at

8    10.[2]

9          Contrary to the AG's arguments, this Court has a duty to harmonize *all* of the Arizona

10   Legislature's enactments as they exist today. Doing so here would result in a modification of

11   this Court's judgment to make clear that A.R.S. § 13-3603 can be enforceable in some respects

12   but does *not* apply to abortions provided by licensed physicians under the regulatory scheme the

13   Legislature enacted over the last 50 years. Indeed, the State will not be harmed if all laws the

14   Legislature enacted are harmonized, rather than granting the AG an undemocratic windfall in

15   the full reanimation of a long-dead law. On the other hand, irreparable harm will befall Arizonans

16   if this Court's 1973 injunction is modified to allow the State to enforce A.R.S. § 13-3603 in a

17   manner that criminalizes nearly all abortions in the state.

18                                     **BACKGROUND**

19   **I.    The Territorial Law**

20         As the State acknowledges, A.R.S. § 13-3603 was first enacted when Arizona was still a

21   U.S. Territory, long before women were allowed to vote. Mot. at 3 n.2. A.R.S. § 13-3603 was

22   formerly codified as § 13-211 and codified in a different part of the code prior to that. In fact,

23   this near total criminal ban on abortion is so antiquated that it can be traced back to 1864 when

24   the 1st Arizona Territorial Legislature enacted the "Howell Code" as a basis for Arizona's law.

25

26   [2] Among other procedurally improper arguments, the AG has also moved to substitute Dr. Eric Hazelrigg as intervenor and guardian ad litem in this case. PPAZ will oppose this motion.

1   The Howell Code, attached as <u>Exhibit A</u>, included a ban on providing abortions that is

2   substantially similar to A.R.S. § 13-3603. A.R.S. § 13-3603 today provides:

3       A person who provides, supplies or administers to a pregnant woman, or procures
        such woman to take any medicine, drugs or substance, or uses or employs any
4       instrument or other means whatever, with intent thereby to procure the miscarriage
        of such woman, unless it is necessary to save her life, shall be punished by
5       imprisonment in the state prison for not less than two years nor more than five
6       years.

7   A.R.S. § 13-3603, in effect, bans the provision of abortion, except when necessary to save a

8   pregnant person's life. It does not contain any exceptions to allow abortions in the case of threats

9   to the patient's health, rape, or incest. A.R.S. § 13-3603 was operative from its passage until

10  enjoined by an Order of this Court in 1973. Ex. A to Mot.

11  **II.    *Planned Parenthood Center of Tucson, Inc. v. Nelson***

12      In 1971, the Planned Parenthood Center of Tucson, Inc.—a predecessor organization to

13  Planned Parenthood Arizona, Inc. ("PPAZ")—and several medical providers filed suit in Pima

14  County Superior Court, arguing that the Territorial Law [3] violated the Arizona and U.S.

15  Constitutions. Ex. B to Mot. After a bench trial, the trial court agreed with the plaintiffs, entered

16  a declaratory judgment that the Territorial Law violated federal and state law, and permanently

17  enjoined enforcement of the Territorial Law. Ex. C to Mot.

18      The court of appeals disagreed with that conclusion and reversed. *Nelson v. Planned*

19  *Parenthood Ctr. of Tucson, Inc.*, 19 Ariz. App. 142, 150 (1973). However, ten days later, the

20  U.S. Supreme Court decided *Roe v. Wade*, 410 U.S. 113 (1973). On January 30, 1973, the court

21  of appeals granted plaintiffs-appellees' motion for rehearing and held that its "former opinion is

22  vacated." *Nelson*, 19 Ariz. App. at 152. It further stated that, based on *Roe*, "the decision of the

23

24  [3] At issue in the case were two other statutes: A.R.S. § 13-3604 (formerly § 13-212), which
25  criminalized soliciting an abortion, and A.R.S. § 13-3605 (formerly § 13-213), which
    criminalized advertising abortion and contraception. Neither are at issue here; A.R.S. § 13-3604
26  has been repealed and the AG is not seeking to vacate or modify the injunction as to
    A.R.S. § 13-3605. Mot. at 1 n.1.

- 3 -

[*Nelson*] trial court is affirmed except that part of the decision limiting the effect of the decision to the parties only is modified in that the statutes in question are unconstitutional as to all." *Id.* This Court then entered a modified order and permanently enjoined the taking of action or threatening to take action to enforce the Territorial Law as to all persons. Ex. A to Mot.

### III.    Abortion Laws Enacted Since 1973

In the nearly five decades since 1973 (and since *Roe*), the Legislature has enacted a complex regulatory scheme that recognizes and regulates abortion as a lawful medical procedure in our state. This includes, for example:

- A.R.S. § 36-2301.01(A) (1984) (amended 2017) (allowing the performance of an abortion up to viability, meaning approximately 24-weeks, with limited exceptions to "preserve the life or health of the woman" after viability) (the "Post-viability Law");

- A.R.S. § 36-449.01, *et seq.* (1999) (amended 2021) (requirements for the licensure and operation of abortion facilities, including but not limited to, pre-abortion screening procedures, equipment that must be present in the facility, and procedures to be followed after an abortion is provided)[4];

- A.R.S. § 36-2155 (2009) (prohibiting anyone other than a "physician" from performing a "surgical abortion"), A.R.S. § 36-2160 (2021) (stating "[a]n abortion-inducing drug may be provided only by a qualified physician") (the "Physician-only Laws"[5]);

---

[4] *See also* A.A.C. R9-10-101(1); A.A.C. R9-10-902(C)(6); A.A.C. R9-10-1501 *et seq.* (implementing A.R.S. § 36-449.01 *et seq.*).

[5] There are a collection of statutes and administrative rules that prohibit anyone other than a licensed physician from providing abortions and related services (the "Physician-only Laws"). *See* A.R.S. §§ 32-1606(B)(12) (prohibiting the State Nursing Board from "decid[ing] scope of practice relating to abortion"); 32-2531(B) (prohibiting physician assistants from performing "surgical abortions"); 32-2532(A)(4) (prohibiting physician assistants from performing medication abortions); 36-449.03(C)(3) (requiring a physician to be "available" at a clinic at

- **A.R.S. § 36-2153 *et seq.* (2009) (amended 2021)** (requiring patients to give informed consent, provided certain information is given 24 hours prior to abortion) (the "24-hour Law");

- **A.R.S. § 36-2161 (2010) (amended 2021)** (requiring a hospital or health care facility where abortions are performed to submit reports to the Department of Health Services ("Department") that must include, among other things, demographic information about the patient, informed consent, whether any complications occurred, and fetal tissue disposition).

Further, the Legislature has repeatedly amended Title 13 (*i.e.* criminal code) laws on abortion since 1973. In 1997, the Legislature enacted A.R.S. § 13-3603.01, prohibiting "partial-birth abortion." Then, in 2011, it passed A.R.S. § 13-3603.02, prohibiting abortions "based on . . . sex or race." *Id.* In 2021, it amended A.R.S. § 13-3603.02 to also prohibit abortions "sought solely because of a genetic abnormality of the child," (the "Reason Law"); *Isaacson v. Brnovich*, 563 F. Supp. 3d 1024 (D. Ariz. 2021), *vacated*, No. 21-1609, 2022 WL 2347565 (U.S. June 30, 2022). The Legislature provided an exception for medical emergencies (which is broader than the exception in the Territorial Law) in the race and sex-selective abortion

---

which medication or aspiration abortions are performed); 36-449.03(D)(5), (G)(4), (5), (8) (requiring a physician to estimate the gestational age of the fetus, to be physically present at, or in the vicinity of, a clinic where medication or aspiration abortions are performed, to provide counseling, and to provide specific follow-up); 36-2152(A), (B), (H)(1), (M) (permitting only physicians to provide minors with abortion services); 36-2153(A) (requiring physicians to provide counseling), (E) (prohibiting non-physicians from performing "surgical abortion"); 36-2155 (same); 36-2156(A) (requires "the physician who is to perform the abortion" or "the referring physician" to facilitate provision of an ultrasound); 36-2158(A) (requiring physicians to provide information "orally and in person"); 36-2160 ("[a]n abortion-inducing drug may be provided only by a qualified physician"); 36-2161(A)(16), (20)–(21), (D) (requiring "the physician performing the abortion" to create certain records); 36-2162.01(A), (C) (requiring physicians to complete certain records as either the "referring physician" or the "physician who is to perform the abortion"). The Physician-only Laws also include the following regulations: A.A.C. R9-10-1507(B)(2), (3); A.A.C. R9-10-1509(A)(2), (B)(1), (5), (C), (D)(3)(a); A.A.C. R9-10-1510(B)(1); and A.A.C. R9-10-1512(A)(6) and (D)(3)(d).

prohibition and the Reason Law. A.R.S. §§ 13-3603.02(A); 36-2151(9). In the same bill that passed the Reason Law, the Legislature repealed A.R.S. § 13-3604, removing the ability to prosecute people who seek an abortion.

### A.    2022 Legislative Session

During the 2022 legislative session, the Legislature considered but did not pass several bills regarding abortion. Namely, it considered adding a new section, A.R.S. § 13-3604, that would have prohibited medication abortion. H.B. 2811, 55th Leg., 2nd Reg. Sess. (Ariz. 2022). It also considered a privately-enforced ban on abortion after approximately six weeks LMP. S.B. 1339, 55th Leg., 2nd Reg. Sess. (Ariz. 2022); H.B. 2483, 55th Leg., 2nd Reg. Sess. (Ariz. 2022).

Ultimately, the Legislature instead passed the 15-week-Law, S.B. 1164, which provides that "[e]xcept in a medical emergency, a physician may not perform, induce or attempt to perform or induce an abortion" after 15 weeks LMP. S.B. 1164, 55th Leg., 2nd Reg. Sess. (Ariz. 2022). After signing S.B. 1164 into law, Governor Ducey announced that "the law of the land today in Arizona is the 15-weeks' law . . . and that will remain the law," even if the Supreme Court decides to overrule *Roe v. Wade*.[6]

### B.    *Dobbs v. Jackson Women's Health Organization* and Aftermath

On June 24, 2022, the U.S. Supreme Court upheld Mississippi's ban on abortions after 15 weeks LMP. *Dobbs v. Jackson Women's Health Org.*, 597 U.S. ___, 142 S. Ct. 2228 (2022). Immediately following the *Dobbs* decision, the AG released a statement that "[t]he Arizona Legislature passed an identical law to the one upheld in *Dobbs*, which will take effect in approximately 90 days."[7] The AG also highlighted his defense of the Reason Law on his Twitter

---

[6] Howard Fischer, *Arizona Gov. Ducey: abortion illegal after 15 weeks*, KAWC (Apr. 24, 2022), https://www.kawc.org/news/2022-04-24/arizona-gov-ducey-abortion-illegal-after-15-weeks.

[7] Ariz. Att'y Gen., *Arizona Attorney General Mark Brnovich Applauds Supreme Court Decision to Protect Life* (June 24, 2022), https://www.azag.gov/press-release/arizona-attorney-general-mark-brnovich-applauds-supreme-court-decision-protect-life.

- 6 -

account.[8]

The Republican Caucus of the Senate, however, issued a press release claiming that "effective immediately is ARS 13-3603," but that S.B. 1164, once it becomes effective, will operate "in addition to ARS 13-3603."[9] On June 26, 2022, Maricopa County Attorney Rachel Mitchell appeared on a television news program and stated that after *Dobbs* "[s]ome abortion is going to be illegal in terms of the providers providing it," that "it is complicated," that some abortion statutes have been "found to be unconstitutional," that the *Nelson* injunction is still in effect, and that this was going to be a "complex question for the courts."[10] A spokesman for Governor Ducey maintained that "the governor's intention was clear" when he signed the law that abortions should only be banned after 15 weeks.[11]

Although the AG did not initially take the position that A.R.S. § 13-3603 would take effect post-*Dobbs*—and despite being subject to the *Nelson* injunction—on June 30, 2022, he posted on Twitter that his office had determined that "ARS 13-3603 is back in effect and will not be repealed in 90 Days by SB1164." The tweet added, "[w]e will soon be asking the court to vacate the injunction which was put in place following Roe v. Wade in light of the Dobbs decision earlier this month."[12] Two weeks later he filed the present motion.

---

[8] Mark Brnovich (@GeneralBrnovich), Twitter (June 24, 2022, 7:47 AM), https://twitter.com/GeneralBrnovich/status/1540345852715098113.

[9] *See* AZSenateRepublicans (@AZSenateGOP), Twitter (June 24, 2022, 11:39 AM), https://twitter.com/AZSenateGOP/status/1540404293315964930?s=20&t=dhnDUIqZVdw0rSUy6dIVJA.

[10] *Rachel Mitchell weighs in on the past and future of abortion in Arizona*, 12News (June 26, 2022), https://www.12news.com/video/news/politics/sunday-square-off/sunday-square-off-rachel-mitchell-on-the-past-and-future-of-abortion-in-arizona/75-f43ab60f-2b64-4a38-8ec1-86bb651111c9.

[11] *Arizona has 2 abortion laws on the books. The governor and legislators can't agree which one is in force*, 12News (updated June 29, 2022), https://www.12news.com/article/news/politics/governor-ducey-gop-lawmaker-disagree-abortion-law/75-4154b84e-9211-43c3-8dd7-5a5973b7dc04.

[12] Mark Brnovich (@GeneralBrnovich), Twitter (June 29, 2022, 3:34 PM), https://twitter.com/GeneralBrnovich/status/1542275229925249024?s=20&t=SnCquVRA2z9oe

1

2          **LEGAL STANDARD**

3          "A party seeking modification or dissolution of a final permanent injunction [under Rule

4    60(b)(5)] bears the burden of establishing a significant change in facts or law warranting revision

5    or dissolution of the injunction because applying it prospectively is no longer equitable."

6    *Tegowski v. Bareiss*, No. 2 CA-CV 2018-0155, 2019 WL 2157785, at *2 ¶ 6 (Ariz. App. May

7    17, 2019) (quotation omitted).[13] Under Rule 60(b)(5), "[a] court may recognize subsequent

8    changes in either statutory or decisional law." *Agostini v. Felton*, 521 U.S. 203, 215 (1997).

9          The AG makes an alternate argument under Rule 60(b)(6). Mot. at 13. PPAZ does not

10   dispute that Rule 60(b)(5) is the appropriate vehicle for the AG's request. Therefore, the Court

11   should not reach the Rule 60(b)(6) question. *See, e.g.*, *Liljeberg v. Health Servs. Acquisition*

12   *Corp.*, 486 U.S. 847, 863 & n.11 (1988) (motions for relief under Rule 60(b)(6) require a

13   showing of "extraordinary circumstances" that is mutually exclusive of grounds covered under

14   the other subdivisions of the Rule); *Edsall v. Superior Ct. In & For Pima Cnty.*, 143 Ariz. 240,

15   243 (1984) (cleaned up) (same).

16         **ARGUMENT**

17   **I.    *Dobbs* Warrants a Modified Judgment Regarding A.R.S. § 13-3603, Not Vacatur.**

18         There is no question that the *Dobbs* decision overturned *Roe v. Wade*. This affects the

19   Court's 1973 order enjoining § 13-3603 since that injunction was based on *Roe*, and PPAZ

20   agrees that a modification of the order is warranted. *See* Ex. A to Mot. But the effect of *Dobbs*

21   is only one part of the wholly changed legal landscape in Arizona since 1973.[14] Therefore, this

---

22   OmpQB0S1g; *Arizona's Attorney General Says a Pre-1901 Abortion Ban is Enforceable*, NPR
23   (June 30, 2022), https://www.npr.org/2022/06/30/1108871251/arizonas-attorney-general-says-
     pre-1901-abortion-ban-is-enforceable.
     [13] PPAZ cites this memorandum decision under Ariz. Sup. Ct. R. 111(c)(1)(C).
24   [14] The AG asserts without explanation that, post-*Dobbs*, "[t]he law has therefore returned to what
25   it was prior to *Roe*, and for Arizona this means the well-reasoned panel opinion in *Nelson*." Mot.
     at 10. To the extent the AG means that the court of appeals panel opinion in *Nelson* is somehow
26   revived, this is simply not the case. "A vacated judgment lacks force or effect and places parties

1  Court should not unqualifiedly grant the AG's motion, because simply granting the relief the AG

2  requests, Mot. at 14, is too blunt a remedy as it ignores—and implicitly repeals—other applicable

3  laws.

4          As discussed above and as the AG acknowledges, Mot. at 2, the Legislature has

5  "authorize[d] what had previously been forbidden," *California v. EPA*, 978 F.3d 708, 715 (9th

6  Cir. 2020) (quotation omitted) (cited in Mot. at 9), under A.R.S. § 13-3603 by passing the less-

7  restrictive statutes that have governed since 1973 and continue to govern abortion in Arizona. A

8  proper Rule 60(b)(5) analysis, therefore, requires this Court to consider not only the change in

9  decisional law but also statutory law when determining the new bounds of the injunction. *See*

10  *Agostini*, 521 U.S. at 215 ("A court may recognize subsequent changes in either statutory or

11  decisional law."). To do so, this Court must consider the mosaic of laws regulating abortion that

12  have been passed since 1973—including, for example, the Physician-only Laws and most

13  recently the 15-week Law—and reconcile those laws with A.R.S. § 13-3603. This is because

14  when "statutes relate to the same subject matter, [courts] construe them together as though they

15  constitute one law," *Fleming v. State Dep't of Pub. Safety*, 237 Ariz. 414, 417 ¶ 12 (2015), and

16  "whenever possible, [courts must] adopt a construction that reconciles one with the other, giving

17  force and meaning to all statutes involved," *UNUM Life Ins. Co. of Am. v. Craig*, 200 Ariz. 327,

18  333 ¶ 28 (2001).

19          Such an analysis is well-within Rule 60(b)(5)'s scope. *See, e.g.*, *Agostini*, 521 U.S. at 223,

20  238–39 (analyzing under Rule 60(b)(5) whether and to what extent the law had changed since

21  injunction entered); *Texas v. Alabama-Coushatta Tribe*, 918 F.3d 440, 447 (5th Cir. 2019)

22  (noting that review of district court's denial of Rule 60(b)(5) relief from permanent injunction

23  "turns on whether a judicial precedent—holding that the Restoration Act and IGRA conflict and

24  that the former, not the latter, applies to the Tribe's gaming activity—or a later contrary agency

25  _____

26  in the position they occupied before entry of the judgment." *Nielson v. Patterson*, 204 Ariz. 530, 533 ¶ 12 (2003). Because the court of appeals vacated the panel opinion in *Nelson* on rehearing, "nothing remain[s]" of it. *Id.*

1    interpretation should control"); *Williams v. Butz*, 843 F.2d 1335, 1339 (11th Cir. 1988) (noting

2    that it was "a question for the district court on remand" whether the prospective injunctive relief

3    at issue should be "either vacated or modified" to comport with the intent for more recently-

4    promulgated federal regulation), *abrogated on other grounds by Blackmun v. Wille*, 980 F.2d

5    691 (11th Cir. 1993); *see also Sys. Fed'n No. 91, Ry. Emps. Dep't, AFL-CIO v. Wright*, 364 U.S.

6    642, 647 (1961) ("There is . . . no dispute but that a sound judicial discretion may call for the

7    modification of the terms of an injunctive decree if the circumstances, whether of law or fact,

8    obtaining at the time of its issuance have changed, or new ones have since arisen.").[15]

9    **II.    A.R.S. § 13-3603 Must be Harmonized with the Legislature's Subsequently**

10        **Enacted Scheme of Regulation for Abortion Providers.**

11        A.R.S. § 13-3603 and Arizona's current regulatory scheme for abortion "relate to the

12    same subject matter," *Fleming*, 237 Ariz. at 417 ¶ 12, because A.R.S. § 13-3603 prohibits

13    "procur[ing] the miscarriage" unless "necessary to save [the woman's] life," and Arizona's other

14    abortion laws, such as the Physician-only Laws, Post-viability Law, and the Reason Law, would

15    instead allow abortion in a broader range of circumstances. Courts thus must construe all these

16    provisions "together as though they constitute one law." *Fleming*, 237 Ariz. at 417 ¶ 12. In doing

17    so and when possible, they should "avoid interpretations that result in contradictory provisions."

18    *Premier Physicians Grp., PLLC v. Navarro*, 240 Ariz. 193, 195 ¶ 9 (2016).

19        When interpreting and harmonizing statutes, courts "first look to the plain language of

20    the statute as the most reliable indicator of its meaning." *Advanced Prop. Tax Liens, Inc. v.*

21    *Sherman*, 227 Ariz. 528, 531 ¶ 14 (App. 2011); *see also Ridgell v. Ariz. Dep't of Child Safety*,

22    253 Ariz. 61, ¶ 15 (App. 2022). "When an ambiguity or contradiction exists, however, [courts]

23    attempt to determine legislative intent by interpreting the statutory scheme as a whole and

24    consider the statute's context, subject matter, historical background, effects and consequences,

25

26    ――――――――――――――
[15] As the AG stated, Arizona Rule 60(b)(5) and Fed. R. Civ. P. 60(b)(5), as well as their analyses,
are identical. *See* Mot. at 8 n.7.

1   and spirit and purpose." *UNUM Life Ins. Co. of Am.*, 200 Ariz. at 330 ¶ 12 (quotation omitted).

2   And, importantly, "when there is conflict between two statutes, the more recent, specific statute

3   governs over the older, more general statute." *In re Guardianship/Conservatorship of Denton*,

4   190 Ariz. 152, 157 (1997) (quotation omitted).

5      **A.      The Plain Language of Many Arizona Laws Makes Clear that Physicians**

6               **May Provide Abortion.**

7           The plain language of Arizona's more recent, more specific statutes regulating abortion

8   supports a harmonized reading of those laws together with A.R.S. § 13-3603. The text of the

9   Physician-only Laws and Post-viability Law, for example, is clear: licensed physicians are

10  allowed to provide abortions up until those gestational ages, while A.R.S. § 13-3603's

11  prohibition applies to non-physicians. This interpretation properly gives effect to *all* the

12  Legislature's enactments. And it stands far apart from the untenable interpretation the AG posits:

13  that A.R.S. § 13-3603—which is over one hundred years old—somehow preempts a host of other

14  subsequently enacted laws and criminalizes nearly all abortions in Arizona, even abortions

15  performed by physicians within the longstanding framework established by the Legislature.

16          Such a reading would not only nullify decades of laws passed by the people's elected

17  representatives, but it also would conflict with the presumption that the "more recent, specific

18  statute governs over an older, more general statute," since each of the more recently enacted

19  statutes provide more specific regulations for abortion than A.R.S. § 13-3603. *UNUM Life Ins.*

20  *Co.*, 200 Ariz. at 333 ¶ 29 (cleaned up). Through this same lens, the Court can also harmonize

21  A.R.S. § 13-3603 and the recently-enacted 15-week Law[16]: The Legislature chose, more recently

22

23  [16] The 15-week Law is not effective until September 24, 2022, which is 90 days after the

24  legislative session ended. But because the same analysis applies to the harmonization of that law
     with A.R.S. § 13-3603, this Court should provide clarity for PPAZ and the public at large as to

25  how the 15-week Law should be harmonized once it is in effect. There is nothing to suggest that
     it will not become law; no application for serial number to refer the bill has been filed with the

26  Secretary of State. *See Initiative, Referendum and Recall Applications,* State of Ariz. Sec'y of
     State, https://apps.arizona.vote/info/irr/2022-general-election/33/0 (last updated July 11, 2022).

1    and specifically, to allow licensed physicians to provide abortions up until 15 weeks LMP, while

2    A.R.S. § 13-3603's prohibition applies to non-physicians.

3          The AG points to language in S.B. 1164 (the 15-week Law), stating that that law does not

4    "[r]epeal, by implication or otherwise, section 13-3603, Arizona Revised Statutes, or any other

5    applicable state law regulating or restricting abortion," to support his argument. Mot. at 7. But

6    PPAZ does not argue that A.R.S. § 13-3603 has been repealed; rather, according to Arizona law,

7    S.B. 1164 must be harmonized with more recent legislative enactments. Indeed, the AG ignores

8    the second half of the sentence he cites: it in fact continues by saying that it also does not repeal,

9    "*any other* applicable state law regulating or restricting abortion" (emphasis added). This clause

10   logically must be read to include, for example, Arizona's Physician-only Laws. The

11   Legislature's intent therefore was to preserve the ability to have all its abortion laws coexist. The

12   AG's argument further ignores the section on "legislative intent" in S.B. 1164, which states that

13   "[t]his legislature intends through this act and any rules and policies adopted hereunder, to

14   restrict the practice of nontherapeutic or elective abortion to the period up to fifteen weeks of

15   gestation." S.B. 1164, 55th Leg., 2nd Reg. Sess. (Ariz. 2022). Nothing in this unequivocal

16   statement supports the AG's position that the Legislature intended to impose a near total criminal

17   ban on abortion.

18        **B.    Other Indications Similarly Support This Harmonization.**

19        Other relevant indicators of statutory intent also support a harmonized reading. For

20   example, the "context of the statute," *Glazer v. State*, 237 Ariz. 160, 163 ¶ 12 (2015) (quotation

21   omitted), refers to an interpretation that "give[s] effect to an entire statutory scheme," *Backus v.*

22   *State*, 220 Ariz. 101, 104 ¶ 10 (2009). *See also Oaks v. McQuiller*, 191 Ariz. 333, 334 ¶ 5 (App.

23   1998) (interpreting a claim brought under a single workers' compensation statute within "the

24   context of the entire statutory scheme" of workers' compensation statutes "of which it is a part,"

25   which was designed to protect workers, not tortfeasors). The context of A.R.S. § 13-3603 is that

26   it exists as only one part of a robust regulatory scheme that Arizona has developed for abortion

providers over the last 50 years. In fact, the Legislature enacted some of these more specific laws in the same title and chapter as § 13-3603, which is further evidence that the provisions must be read harmoniously. *See supra* Section III.

Further, the historical background, purpose, and effect of Arizona's abortion laws, including the imminent 15-week Law, also support this harmonization. Other proposed legislation that was *not* passed by the Legislature in the most recent session proves that the currently elected lawmakers considered and rejected other more stringent regulations on abortion. As noted above, *supra* Section III.A, the Legislature considered—but failed to pass—a law criminalizing all medication abortion. H.B. 2811, 55th Leg., 2nd Reg. Sess. (Ariz. 2022). It also considered and failed to pass a privately enforced prohibition on abortions after approximately 6 weeks LMP. S.B. 1339, 55th Leg., 2nd Reg. Sess. (Ariz. 2022); H.B. 2483, 55th Leg., 2nd Reg. Sess. (Ariz. 2022). And 2022 was no outlier; indeed, during the prior session in 2021, the Legislature considered (but failed to pass) two bills that would have replaced A.R.S. § 13-3603 altogether and made abortion eligible for prosecution under the homicide chapter—proving that the Legislature knew how to pass more restrictive criminal abortion laws. *See* H.B. 2650, 55th Leg., 1st Reg. Sess. (Ariz. 2021); H.B. 2878, 55th Leg., 1st Reg. Sess. (Ariz. 2021).

Beyond that, unlike many other state legislatures that passed "trigger laws" under which restrictive abortion laws would immediately spring into place upon the U.S. Supreme Court overruling *Roe v. Wade*, Arizona's Legislature did not do so.[17] *See, e.g.*, La. Rev. Stat. § 40:1061

---

[17] The AG argues that, by recodifying § 13-3603, the 1977 Legislature "took affirmative steps to ensure [its] continuing validity in the event that *Roe* was overruled." Mot. at 6–7. But this ignores the actual history of abortion legislation in Arizona. In 1977–78, the Legislature re-codified *all* of Arizona's criminal statutes in an effort to modernize the criminal code. *See, e.g.*, *State v. Gunnison*, 127 Ariz. 110, 111 n.1 (1980) ("[C]itations to criminal statutes in this opinion are to the Arizona Revised Statutes in force prior to 1 October 1978, when the most recent criminal code and laws revised pursuant to it became effective."); *State v. Heylmun*, 147 Ariz. 97, 99 n.1 (App. 1985) ("We also note the definition of 'offense' in § 13–105(18) was adopted

- 13 -

("The provisions of this Act shall become effective immediately upon, and to the extent permitted, by the occurrence of any of the following circumstances: (1) Any decision of the United States Supreme Court which reverses, in whole or in part, *Roe v. Wade* . . . , thereby, restoring to the state of Louisiana the authority to prohibit abortion.").[18] This background of the Legislature's decision to not pass a trigger law or other more restrictive abortion bans, and instead pass the 15 Week Law, demonstrates that the extreme position the AG is taking in his Motion—that nearly all abortions should be banned in the state—is squarely at odds with the intent of the Legislature. Indeed, Governor Ducey and Senate Republicans have stated that the 15-week Law will be the operative law upon its effective date in September—a statement that the AG also agreed with until reversing course on Twitter several days later.[19]

Because a harmonized interpretation of Arizona's abortion statutes exists (under which meaning can be given to all the Legislature's enactments), this Court should give them that effect and reject the AG's request to dissolve the prior judgment of this Court in full without modification (which would instead nullify decades of legislative work and dozens of enactments). *Cf. State ex rel. Montgomery v. Brain*, 244 Ariz. 525, 531 ¶ 21 (App. 2018) (courts should interpret statutes "sensibly to avoid reaching an absurd conclusion" (quotation omitted)).

### III.    The Equities Weigh Strongly Against Granting Unqualified Relief from Judgment.

Under the "flexible standard" of Rule 60(b)(5), *Bredfeldt v. Greene*, No. 2 CA–CV 2016–0198, 2017 WL 6422341, at *3 ¶ 10 (Ariz. App. Dec. 18, 2017) (quotation omitted), consideration is given to whether applying the injunction prospectively "is no longer equitable,"

---

as part of the revised criminal code in 1978."). This was therefore not an effort specific to A.R.S. § 13-3606, but instead a wide-ranging code maintenance effort.

[18] *See also* Elizabeth Nash & Isabel Guarnieri, *13 States Have Abortion Trigger Bans—Here's What Happens When Roe is Overturned*, Guttmacher Inst. (June 6, 2022), https://www.guttmacher.org/article/2022/06/13-states-have-abortion-trigger-bans-heres-what-happens-when-roe-overturned.

[19] Ariz. Att'y Gen., *supra* note 7 ("The Arizona Legislature passed an identical law to the one upheld in Dobbs, which will take effect in approximately 90 days."); Brnovich, *supra* note 12.

*Tegowski*, 2019 WL 2157785, at *2 ¶ 6 (quoting Ariz. R. Civ. P. 60(b)(5)).[20] Here, PPAZ acknowledges that some modification of the judgment is appropriate, but the AG's requested relief is not equitable and does not account for the harms at stake.

   *First*, the State will not be harmed by modifying the injunction in a manner that harmonizes *all* of Arizona's laws, as PPAZ urges. But modifying the injunction to allow the State to "bring[] prosecutions against doctors who perform . . . abortions," Mot. at 9,[21] would nullify in one fell swoop dozens of duly enacted laws, which have been passed more recently and which deal more specifically with the subject matter—thereby actually *preventing* the State from carrying out all its duly enacted laws. *Cf. Abbott v. Perez*, __ U.S. __, 138 S. Ct. 2305, 2324 n.17 (2018) ("[I]nability to enforce its duly enacted plans clearly inflicts irreparable harm on the State.").

   *Second*, the real-world result of nullifying dozens of more recently enacted statutes and "return[ing] [the law] to what it was prior to *Roe*," Mot. at 10, would impose grievous irreparable harm to thousands of Arizonans of all racial and ethnic backgrounds,[22] reproductive age,[23]

---

[20] PPAZ cites the two memorandum decisions in this paragraph under Ariz. Sup. Ct. R. 111(c)(1)(C).

[21] The AG states that the first court of appeals opinion in *Nelson* "framed the purpose" of the Territorial Law on abortion provision as, in part, "to protect the health and life of pregnant women by keeping them from incompetent abortionists." Mot. at 4–5 (quoting *Nelson*, 19 Ariz. App. at 144). This concern is clearly no longer valid given that in the past 50 years, Arizona has enacted a complex statutory scheme that regulates abortion and allows only licensed physicians to perform abortions. Arizona public data confirms that complications are highly rare and non-fatal. *See* Marguerite L.S. Kemp et al., Ariz. Dep't of Health Servs., *Abortions in Arizona: 2020 Abortion Report* (Sept. 21, 2021), https://azdhs.gov/documents/preparedness/public-health-statistics/abortions/2020-arizona-abortion-report.pdf. The Department's report is a public record of which the Court can take judicial notice. *See, e.g.*, *Hernandez v. Frohmiller*, 68 Ariz. 242, 258 (1949).

[22] Approximately 40.5% of the abortions among Arizona residents in 2020 were to people who self-identified as "Hispanic or Latinos;" 35.5% Non-Hispanic White; 12.1% Black/African American; 2.8% American Indian or Alaska Native; 4.2% Asian or Pacific Islander; and 2.5% of multiple races. Kemp et al., *supra* note 19, at 8 tbl.4.

[23] The age range for Arizonans receiving abortions in 2020 was 10 to 50 years, with the average age being 27.1 years. Kemp et al., *supra* note 19, at 6.

- 15 -

relational, marital, and familial status[24], and education levels[25] who decide to have abortions. According to the most recent publicly available vital statistics data compiled from reports submitted by PPAZ and other abortion providers in the state to the Department, 13,273 abortions were provided in Arizona in 2020.[26] Publicly available data also confirm that Arizonans decide to have abortions for many different reasons, including because of their medical or personal emotional/mental health; because they were victims of domestic violence, sexual assault, or physical abuse; because they are unprepared to have a child at that time, or do not desire another child; or because of financial, work, career, unemployment, or education reasons that prevent them from being able to have a child.[27] Denying thousands of Arizonans control over their reproductive lives by denying them the ability to have a safe, legal abortion provided by a licensed physician under Arizona's existing laws—particularly when such a result lacks popular electoral support, as evidenced by the Legislature's recent enactment of the 15-week law—would gravely harm the public interest.

## CONCLUSION

For all these reasons, PPAZ requests that the State's Rule 60(b) Motion for Relief from Judgment should be granted in part and denied in part. The Court should issue a modified injunction making clear that Defendants Mark Brnovich, Attorney General of the State of Arizona, and Laura Conover, County Attorney of Pima County, Arizona, their successors, agents, servants, employees, attorneys, and all persons in active concert or participation with

---

[24] Close to 15% of abortion patients in 2020 reported they were married, and approximately 55% reported having given birth to one or more children. Kemp et al., *supra* note 19, at 9 fig.2, 11 tbl.5.

[25] While the education status of almost half of Arizonans who received an abortion in 2020 was unknown, approximately 20% had completed 12 years of education, and approximately 20% some postsecondary education. Kemp et al., *supra* note 19, at 10 fig.3.

[26] Kemp et al., *supra* note 19, at 4. 92.5% of abortions were performed prior to 13 weeks gestational age, *id.* at 14 tbl.7, and 99.6% in an abortion clinic, *id.* at 19 tbl.12.

[27] Kemp et al., *supra* note 19, at 16 tbl.9.

them,[28] are permanently enjoined from taking any action or threatening to enforce the provisions of A.R.S. § 13-3603 with respect to abortions provided by licensed physicians who are authorized to do so consistent with Arizona's duly enacted laws and regulations, including A.R.S. § 36-2155 and A.R.S. § 36-2160. A proposed order is submitted simultaneously for the Court's consideration.

RESPECTFULLY SUBMITTED this 20th day of July, 2022.

**COPPERSMITH BROCKELMAN PLC.**

By: /s/ D. Andrew Gaona
        D. Andrew Gaona
        Kristen Yost

**PLANNED PARENTHOOD FEDERATION OF AMERICA**
        Diana O. Salgado*
        Sarah Mac Dougall *
        Catherine Peyton Humphreville*
*Application for Pro Hac Vice Forthcoming*

*Attorneys for Plaintiff Planned Parenthood Arizona, Inc., successor-in-interest to Plaintiff Planned Parenthood Center of Tucson, Inc.*

ORIGINAL of the foregoing efiled and
COPY sent by email on July 20, 2022, to:

The Honorable Kellie Johnson
Civil Presiding Judge
Pima County Superior Court
Roxanne Lee, Judicial Assistant
rlee@sc.pima.gov

---

[28] This prohibition therefore applies to the county attorney of each county in Arizona. *See* A.R.S. § 11-532(A)(1) (county attorneys carry out prosecutions "on behalf of the state."); *see also Crosby-Garbotz v. Fell in & for Cnty. of Pima*, 246 Ariz. 54, 60 ¶ 24 (2019) (rejecting the State's argument that there was no mutuality of parties between a state agency and the county attorney because, even though "different legal offices handle different cases," the State is still "a party in both actions" and because the Attorney General's Office represented the state agency in the earlier proceedings and "has supervisory authority over county attorneys" (citing A.R.S. § 41-193(A)(4))).

- 17 -

1    Stanley Feldman
     sfeldman@mpfmlaw.com
2    Miller Pitt Feldman & McAnally PLC
     One Church Avenue, Suite 1000
3    Tucson, Arizona 85701
     *Former Attorney for Plaintiffs*
4

5    Brunn W. Roysden III
     beau.roysden@azag.gov
6    Michael S. Catlett
     michael.catlett@azag.gov
7    Kate B. Sawyer
     kate.sawyer@azag.gov
8    Katlyn J. Divis
     katlyn.divis@azag.gov
9    2005 North Central Avenue
     Phoenix, Arizona 85004
10   *Attorneys for Defendant Mark Brnovich Attorney*
     *General State of Arizona*
11

12   Samuel E. Brown
     sam.brown@pcao.pima.gov
13   Chief Civil Deputy
     Pima County Attorney's Office
14   32 North Stone Avenue, Suite 2100
     Tucson, Arizona 85701
15   *Attorneys for Defendant Laura Conover, County Attorney*
     *of Pima County, Arizona*
16

17   Kevin Theriot
     ktheriot@adflegal.org
18   Alliance Defending Freedom
     15100 North 90th Street
19   Scottsdale, Arizona 85260
     *Attorneys for Eric Hazelrigg, M.D. proposed Successor-in-Interest*
20   *to Clifton E. Bloom, as guardian ad litem of unborn child of*
     *Plaintiff Jane Roe and all other unborn infants similarly situated*
21

22   /s/ Diana J. Hanson _____

23

24

25

26

- 18 -

Exhibit A

Case 2:21-cv-01417-DLR   Document 131-2   Filed 09/30/22   Page 42 of 65

# THE HOWELL CODE.

ADOPTED BY THE

## First Legislative Assembly

OF THE

# TERRITORY OF ARIZONA.

Session begun on the Twenty-sixth day of September, and ended on the Tenth day of November, 1864, at Prescott.



Property of . . . . STATE LIBRARY of ARIZONA
32C47
AUG 17 1910

PRESCOTT:

OFFICE OF THE ARIZONA MINER,

OFFICIAL PAPER OF THE TERRITORY,

1865.

# CODE.

[PUBLIC—No. 23.]

AN ACT to confirm the apportionment and amend certain laws of the Territory of
Arizona.

*Be it enacted by the Senate and House of Representatives of the United
States of America in Congress assembled,* That the apportionment of mem-
bers of the legislative assemblies of the Territory of Arizona, elected
and convened in the years eighteen hundred and sixty-six, eighteen
hundred and sixty-seven, and eighteen hundred and sixty-eight, made
by the governor in accordance with the laws of said Territory, be, and
is hereby, declared legal and valid under the organic act.

SEC. 2. *And be it further enacted,* That an election for members of the
next legislative assembly, and for all township, county, and district offi-
cers, and for delegate to the forty-second Congress of the United States,
shall be held upon the Tuesday after the first Monday of November, in
the year eighteen hundred and seventy, and the governor shall order
such election by proclamation to be issued not less than two months pre-
vious to said day.  In said proclamation he shall declare the number of
members of each branch of the legislature to which each county or dis-
trict of said Territory shall be entitled, and such apportionment shall
be based upon the population as shown by the census to be taken in the
year eighteen hundred and seventy, under the law of the United States,
and if such census is not completed in time, then the apportionment
shall be made according to the population as shown by the best infor-
mation to be obtained.  Said election shall be conducted in conformity
to the laws of the Territory and of Congress; and the term of office of
all township, county, and district officers shall expire upon the thirty-
first day of December, eighteen hundred and seventy, and that of all
officers elected as herein provided shall begin upon the first day of Jan-
uary, eighteen hundred and seventy-one.

SEC. 3. *And be it further enacted,* That the persons thus elected to
the next legislative assembly shall meet at the Capitol on the second
Wednesday in January, eighteen hundred and seventy-one.

SEC. 4. *And be it further enacted,* That the governor shall fill by ap-
pointment all vacancies in township, county, or district offices in said
Territory, until the thirty-first day of December, eighteen hundred and
seventy; and until the same time he may remove township, county, and
district officers, and fill their places whenever in his judgment the pub-
lic interest will be promoted thereby.

SEC. 5. *And be it further enacted,* That justices of the peace in said
Territory of Arizona shall not have jurisdiction of any matter in con-
troversy where the title or boundaries of land may be in dispute, or
where the debt or sum claimed shall exceed three hundred dollars.

Approved, March 23, 1870.

# CERTIFICATE.

TERRITORY OF ARIZONA,

OFFICE OF THE SECRETARY.

I, RICHARD C. McCORMICK, Secretary of the Territory of Arizona, do hereby certify that the HOWELL CODE, as herein contained, is printed as passed by the first Legislative Assembly of the Territory, according to the enrolled copy upon file in my office.



WITNESS my hand and the Seal of the Territory, given at Prescott, this first day of December, A. D. eighteen hundred and sixty-four.

RICHARD C. McCORMICK,

Secretary of the Territory.

With greetings and best wishes to
S L Kingan Esq Tucson arizona Please accept
this copy of the "Howell Code" which for many
Years I have preserved as a treasure as it was
my first companion in practice in Tucson
32 years ago.
I know you will cherish and preserve the
old pioneer copy of the first born laws of
arizona
Tucson January 1st 1904                    Sincerely R C Hughes

# THE ORGANIC ACT.

AN ACT to provide a temporary government for the Territory of ARIZONA, and for other purposes.

BE IT ENACTED BY THE SENATE AND HOUSE OF REPRESENTATIVES OF THE UNITED STATES OF AMERICA, IN CONGRESS ASSEMBLED: That all that part of the present Territory of New Mexico situate west of a line running due south from the point where the south-west corner of the Territory of Colorado joins the northern boundary of the Territory of New Mexico to the southern boundary line of said Territory of New Mexico, be, and the same is hereby, erected into a temporary government by the name of the Territory of Arizona: Provided, that nothing contained in the provisions of this act shall be construed to prohibit the Congress of the United States from dividing said Territory or changing its boundaries in such manner and at such time as it may deem proper: Provided, further, that said government shall be maintained and continued until such time as the people residing in said Territory shall, with the consent of Congress, form a State government, republican in form, as prescribed in the Constitution of the United States, and apply for and obtain admission into the Union as a State, on an equal footing with the original States.

SEC. 2. And be it further enacted, that the government hereby authorized shall consist of an executive, legislative, and judicial power. The executive power shall be vested in a governor. The legislative power shall consist of a council of nine members, and a house of representatives of eighteen. The judicial power shall be vested in a supreme court, to consist of three judges, and such inferior courts as the Legislative Council may by law prescribe; there shall also be a secretary, a marshal, a district-attorney, and a surveyor-general for said Territory, who, together with the governor and judges of the supreme court, shall be appointed by the President, by and with the advice and consent of the Senate, and the term of office for each, the manner of their appointment, and the powers, duties, and the compensation of the governor, legislative assembly, judges of the supreme court, secretary, marshal, district attorney, and surveyor-general aforesaid, with their clerks, draughtsman, deputies, and sergeant-at-arms, shall be such as are conferred upon the same officers by the act organizing the Territorial government of New Mexico, which subordinate officers shall be appointed in the same manner, and not exceed in number those created by said act; and acts amendatory thereto, together with all legislative enactments of the Territory of New Mexico not inconsistent with the provisions of this act, are hereby extended to and continued in force in the said Territory of Arizona, until repealed or amended by future legislation: Provided, that no salary shall be due or paid the officers created by this act until they have entered upon the duties of their respective offices within the said Territory.

SEC. 3. And be it further enacted, that there shall neither be slavery nor involuntary servitude in the said Territory, otherwise than in the punishment of crimes, whereof the parties shall have been duly convicted; and all acts and parts of acts, either of Congress or of the Territory of New Mexico, establishing, regulating, or in any way recognizing the relation of master and slave in said Territory, are hereby repealed.

Approved February 24, 1863.

54 CODE OF ARIZONA.

viction thereof, be punished by imprisonment in the Territorial prison for any term not exceeding three years nor less than one year, and be fined in a sum not exceeding one thousand dollars.

SEC. 42. If any person shall willingly and knowingly carry or deliver any written challenge, or verbally deliver any message intended as, or purporting to be a challenge, or shall be present at the fighting of any duel as aforesaid as a second, or aid or give countenance thereto, such person being duly convicted thereof, shall be punished by imprisonment in the Territorial prison for any term not exceeding three years nor less than one year, and be fined in a sum not exceeding one thousand dollars.

SEC. 43. If any person shall post another, or in writing or print shall use any reproachful or contemptuous language to or concerning another for not fighting a duel, or for not sending or accepting a challenge, he shall be imprisoned in the county jail for a term not exceeding six months, and fined in any sum not exceeding one thousand dollars.

SEC. 44. If any person shall, without deadly weapons, upon previous concert and agreement, upon any wager, or for money or any other reward, fight one with another, upon conviction thereof, they or either or any of them, and all persons present aiding and abetting, shall be punished by imprisonment in the Territorial prison for a term not exceeding two years. Should death ensue to any person in such fight, the person or persons causing such death shall be punished by imprisonment in the Territorial prison for a term not more than ten nor less than three years.

SEC. 45. Every person who shall wilfully and maliciously administer or cause to be administered to or taken by any person, any poison or other noxious or destructive substance or liquid, with the intention to cause the death of such person, and being thereof duly convicted, shall be punished by imprisonment in the Territorial prison for a term not less than ten years, and which may extend to life. And every person who shall administer or cause to be administered or taken, any medicinal substances, or shall use or cause to be used any instruments whatever, with the intention to procure the miscarriage of any woman then being with child, and shall be thereof duly convicted, shall be punished by imprisonment in the Territorial prison for a term not less than two years nor more than five years: Provided, that no physician shall be affected by the last clause of this section, who in the discharge of his professional duties deems it necessary to produce the miscarriage of any woman in order to save her life.

SEC. 46. Mayhem consists in unlawfully depriving a human being of a member of his or her body, or disfiguring or rendering it useless. If any person shall unlawfully cut out or disable the tongue, put out an eye, slit the nose, ear, or lip, or disable any limb or member of another, or shall voluntarily and of purpose put out an eye or eyes, every such person shall be guilty of mayhem, and on conviction shall be punished by imprisonment in the Territorial prison for a term not less than one nor more than five years.

SEC. 47. Rape is the carnal knowledge of a female, forcibly and against her will. Every person of the age of fourteen years and upwards, who shall have carnal knowledge of any female child under the age of ten years, either with or without her consent, shall be adjudged to be guilty of the crime of rape, and shall be punished by imprisonment in the Territorial pri-

# EXHIBIT 5

**MARK BRNOVICH**
**ATTORNEY GENERAL**
(Firm State Bar No. 14000)

Brunn (Beau) W. Roysden III (No. 28698)
Michael S. Catlett (No. 25238)
Kate B. Sawyer (No. 34264)
Katlyn J. Divis (No. 35583)
  *Assistant Attorneys General*
OFFICE OF THE ARIZONA ATTORNEY GENERAL
2005 N. Central Ave.
Phoenix, Arizona 85004
Telephone: (602) 542-3333
Facsimile: (602) 542-8308
beau.roysden@azag.gov
acl@azag.gov

*Attorneys for Defendant Mark Brnovich*
*Attorney General of the State of Arizona*

## IN THE SUPERIOR COURT OF THE STATE OF ARIZONA

## IN AND FOR THE COUNTY OF PIMA

| | |
|---|---|
| PLANNED PARENTHOOD CENTER OF TUCSON, INC., et al., | Case No.:  C127867 |
| Plaintiffs, | **ATTORNEY GENERAL'S MOTION FOR RELIEF FROM JUDGMENT** |
| v. | **EXPEDITED CONSIDERATION REQUESTED** |
| MARK BRNOVICH, Attorney General of the State of Arizona, et al., | **ORAL ARGUMENT REQUESTED** |
| Defendants, | |
| and | |
| CLIFFTON E. BLOOM, as guardian ad litem of the unborn child of plaintiff Jane Roe and all other unborn infants similarly situated, | |
| Intervenor. | |

**INTRODUCTION**

Pursuant to Arizona Rule of Civil Procedure 60(b)(5) and (6), Defendant the Arizona Attorney General moves this Court for relief from the "Second Amended Declaratory Judgment and Injunction Pursuant to the Mandate of the Court of Appeals, Division II," which was entered in this case on or about March 27, 1973 (the "Second Amended Final Judgment," attached as Exhibit A).

Just weeks after the U.S. Supreme Court issued its opinions in *Roe v. Wade*, 410 U.S. 113 (1973) and *Doe v. Bolton*, 410 U.S. 179 (1973), this Court issued the Second Amended Final Judgment declaring unconstitutional former A.R.S. § 13-211, now numbered as § 13-3603, which makes it a crime for a person to provide "any medicine, drugs or substance" or use "any instrument or other means whatever, with intent thereby to procure the miscarriage" of a "pregnant woman," unless "necessary to save her life." The Second Amended Final Judgment declared this statute unconstitutional and enjoined the Attorney General and the Pima County Attorney from "taking any action or threatening to take any action to enforce the provisions … against all persons." Second Amended Final Judgment at 3–4.[1]

Relief is warranted because the Second Amended Final Judgment was based solely and expressly on decisions the U.S. Supreme Court has now overruled. *See Nelson v. Planned Parenthood Ctr. of Tucson, Inc.*, 19 Ariz. App. 142, 152 (1973) (Opinion on Rehearing) (relying solely on the U.S. Supreme Court's decisions in *Roe* and *Doe* to vacate prior panel opinion upholding abortion restrictions). While *Roe* (and *Planned Parenthood of Southeastern Pennsylvania v. Casey*, 505 U.S. 833 (1992)) previously represented the law on abortion, on June 24, 2022, the U.S. Supreme Court "h[e]ld that the Constitution does not confer a right to abortion" and that "*Roe* and *Casey* must be overruled, and the authority to regulate abortion must be returned to the people and their elected representatives." *Dobbs v. Jackson Women's Health Org.*, 142 S. Ct. 2228, 2279

---

[1] The Second Amended Final Judgment also declared unconstitutional and enjoined former A.R.S. § 13-212, renumbered in 1977 as A.R.S. § 13-3604, which applied to a woman who obtained an abortion, and former A.R.S. § 13-213, renumbered in 1977 as A.R.S. § 13-3605.  This Motion does not seek relief from judgment as to these statutes.

(2022).   Therefore, the sole basis for the Second Amended Final Judgment—the U.S. Supreme Court's recognition of a federal right to abortion—has been "overruled," and this Court must now grant relief from that judgment consistent with the U.S. Supreme Court's directive that "the authority to regulate abortion must be returned to the people and their elected representatives." *Id.*

The Arizona Legislature has never acquiesced in the conclusion that former § 13-211 is unconstitutional.   Rather, in anticipation that the U.S. Supreme Court could overrule *Roe*, the Legislature has repeatedly preserved Arizona's statutory prohibition on performing abortions except to save the life of the mother.   Four years after the Second Amended Final Judgment, the Legislature enacted H.B. 2054, which re-codified § 13-211 as § 13-3603.   *See* 1977 Ariz. Sess. Laws ch. 142, § 99 (1st Reg. Sess.).   And since then, Arizona courts have recognized this 1977 law as "re-enact[ing]" or "enact[ing]" this statutory provision anew.   *Summerfield v. Super. Ct.*, 144 Ariz. 467, 476 (1985); *Vo v. Super. Ct.*, 172 Ariz. 195, 201 (App. 1992).   And just this year, even while enacting a 15-week gestational age limitation on abortions prior to the issuance of the *Dobbs* opinion (when it was uncertain how the Supreme Court would rule), the Legislature also expressly included in the session law that the 15-week gestational age limitation does not "[r]epeal, by implication or otherwise, section 13-3603, Arizona Revised Statutes, or any other applicable state law regulating or restricting abortion."   *See* 2022 Ariz. Sess. Laws ch. 105, § 2 (2d Reg Sess.).

This Motion seeks relief under Arizona Rule of Civil Procedure 60(b)(5) and (6) from prospective application of the declaratory and injunctive relief in the Second Amended Final Judgment as applied to A.R.S. § 13-3603.   This is consistent with principles of equity, the Legislature's intent in re-enacting this provision following the Second Amended Final Judgment, and the Supreme Court's express return in *Dobbs* of the authority to regulate abortion to the people and their elected representatives.

**FACTUAL AND PROCEDURAL BACKGROUND**

Leading up to *Roe*, Arizona repeatedly enforced the prohibitions in former § 13-211. There are multiple published opinions stemming from convictions under this statute. *See, e.g.*, *State v. Wahlrab*, 19 Ariz. App. 552 (1973) (noting Wahlrab was convicted under § 13-211 but vacating conviction because "although [the court] disagree[s] with the [*Roe v.*] *Wade* opinion we are bound by the U.S. Supreme Court decision"); *State v. Keever*, 10 Ariz. App. 354 (1969) (reversing conviction under § 13-211 based on reasonable doubt but not questioning the law's constitutionality); *State v. Boozer*, 80 Ariz. 8 (1955) (affirming conviction under § 13-211, as previously codified in 1939 Code § 43-301); *Hightower v. State*, 62 Ariz. 351 (1945) (same); *Kinsey v. State*, 49 Ariz. 201 (1937) (affirming conviction under § 13-211, as previously codified in 1928 Code § 4645).[2] Similarly, in the instant case, the former Pima County Attorney testified during deposition that § 13-211 "would be enforced as any other criminal statute[]," and "during oral argument, in response to questioning by the court, the deputy county attorney advised the court that the office of the County Attorney for Pima County will uphold the statutes and that prosecution is always a matter of proof." *Planned Parenthood Ctr. of Tucson, Inc. v. Marks*, 17 Ariz. App. 308, 312 (1972).

Against this backdrop of enforcement, Planned Parenthood Center of Tucson, Inc. ("Planned Parenthood"); ten named physicians ("Named Physicians"); and "Jane Doe," an anonymous pregnant woman who wished to have an abortion, filed the Complaint in this case on July 22, 1971. *See* Exhibit B (the "Complaint"). The Complaint sought declaratory and injunctive relief, alleging that "except for the risk of criminal prosecution," Planned Parenthood would refer some of its clients to physicians in order that abortions could be performed "although the procedures were not necessary to save the lives of such pregnant women," and Named Physicians "would respectively perform

---

[2]   Section 13-211 can be traced back to section 243 of the 1901 penal code, and when the people adopted the Arizona Constitution, they provided that "[a]ll laws of the Territory of Arizona now in force, not repugnant to this Constitution, shall remain in force as laws of the State of Arizona until they expire by their own limitations or are altered or repealed by law … ." Ariz. Const. art. 22, § 2.

or arrange for the performance of abortions." *Nelson*, 19 Ariz. App. at 143.  The named Defendants are the Arizona Attorney General and the Pima County Attorney.  Final Judgment at 2.[3]  In addition, intervention was granted for a Guardian ad Litem of the unborn child of plaintiff Jane Roe and all other unborn infants similarly situated.  *Id.*

The case proceeded to trial in late 1971.  Second Amended Final Judgment at 1. After trial, the case was dismissed for lack of a justiciable controversy, but the Court of Appeals reversed, and ordered this Court to "proceed to a resolution of the case on its merits."  *Marks*, 17 Ariz. App. at 313.  This Court then filed a memorandum opinion on September 29, 1972, which held

> that a fetus is not a person entitled to Fourteenth Amendment rights and does not have constitutionally protected rights; that A.R.S. § 13-211 is overbroad and violates the fundamental right of marital and sexual privacy of women guaranteed by the Ninth and Fourteenth Amendments to the United States Constitution; and that A.R.S. § 13-211 also violates the constitutional rights of physicians who attend to the medical needs of pregnant women because it denies each physician his right to practice medicine in a manner which permits him to fulfill his professional ethical obligation to his patient.

*Nelson*, 19 Ariz. App. at 143.  This Court entered an Amended Declaratory Judgment and Injunction in favor of Planned Parenthood and the Named Doctors on October 2, 1972 (Exhibit C).[4]  The Attorney General, Pima County Attorney, and Guardian ad Litem then appealed to the Court of Appeals.  Second Amended Final Judgment at 2.

The Court of Appeals issued a well-reasoned opinion that reversed on all grounds and upheld the challenged laws as constitutional.  *Nelson*, 19 Ariz. App. at 142−50.  As a threshold matter, the Court of Appeals made clear that its analysis did not hinge on whether a fetus is a person entitled to Fourteenth Amendment rights but rather framed the purpose of the Arizona abortion statutes as "to embody the belief in the right to life and the necessity of preserving human life even when the existence of 'human life' is

---

[3]  A similar complaint was filed in Maricopa County against the Attorney General and Maricopa County Attorney (Maricopa County Superior Court Case No. C249461). Neither the Court of Appeals Opinions in *Nelson* and *Marks* nor the Second Amended Final Judgment say anything about that case or the Maricopa County Attorney.
[4]  By this time, "Jane Roe" had been substituted for "Jane Doe," *Nelson*, 19 Ariz. App. at 143, but the Second Amended Final Judgment dismissed Jane Roe entirely from the action.  Second Amended Final Judgment at 4.

-4-

1    problematic to some degree, and to protect the health and life of pregnant women by

2    keeping them from incompetent abortionists … ."  *Id.* at 144; *see also id.* at 147 (court

3    need not decide whether a fetus is a "person" under the U.S. and Arizona Constitutions).

4        The court then addressed six different challenges to the statute brought by

5    Plaintiffs.  The court first rejected Plaintiffs' vagueness challenge, relying on *United*

6    *States v. Vuitch*, 402 U.S. 62 (1971) and other cases.  *Nelson*, 19 Ariz. App. at 146–47.

7    Second, it rejected the argument that the abortion statutes violate women's rights under

8    the Ninth Amendment to the U.S. Constitution.  *Id.* at 147.  Third, it rejected Plaintiffs'

9    overbreadth challenge, which was brought on the ground that the law does not make

10   exceptions for cases of rape or a "defective" fetus.  *Id.* at 149.  The court said "the

11   legislature can legitimately decide that the primary consideration is the protection of

12   life[.]"  *Id.*  Fourth, the court rejected the "claimed infringement of rights to conduct

13   family planning, choice of medical treatment and freedom to follow the dictates of their

14   profession … in the face of th[e Legislature's] valid exercise of the police power."  *Id.* at

15   150.  Fifth, the court rejected the argument that § 13-211 violates the establishment of

16   religion or free exercise of religion.  *Id.*  Sixth, the court rejected the argument that the

17   statute discriminates against poor women.  *Id.*  The court concluded as follows:

> [W]e are unable to find that appellees have sustained their burden of
> overcoming the presumption in favor of constitutionality. After every
> intendment has been indulged by us in favor of the validity of the statute we
> are also not satisfied beyond a reasonable doubt that the statutes are
> unconstitutional.
>
> Appellees' complaints against the abortion statutes are peculiarly within the
> field occupied by the legislature and any problem concerning abortion
> should be solved by that body. We can only reiterate that we are not a
> super-legislature.
>
> In view of our disposition of this case we need not decide the cross-appeal.
> The judgment of the trial court is reversed, the case is remanded and the
> trial court is ordered to enter a judgment in favor of appellants and against
> appellees denying injunctive relief and upholding the constitutionality of
> the statutes.

27   *Id.*

28

-5-

But less than three weeks later, the U.S. Supreme Court issued *Roe* and *Doe*. The court of appeals then issued an Opinion on Rehearing, which vacated its prior panel opinion on the sole and express ground of the binding nature of these two cases. *Nelson*, 19 Ariz. App. at 152; *see also* U.S. Const. art. VI ("The Constitution … of the United States …. shall be the supreme law of the land; and the judges in every state shall be bound thereby… ."); *McLaughlin v. Jones*, 243 Ariz. 29, 35 ¶25 (2017) ("The United States Supreme Court's interpretation of the Constitution is binding on state court judges… .").[5]   The combined effect of the panel opinion (*Nelson*, 19 Ariz. App. at 142–50) and Opinion on Rehearing (*id.* at 152), taken as a whole, was to affirm the prior judgment of this Court on the sole ground of the newly recognized federal constitutional right to abortion. *See id.* at 152 (using word "[a]ccordingly" to modify the vacatur of the prior panel opinion; expressly and solely basing its reasoning on the court being "bound by" U.S. Supreme Court decisions interpreting the Constitution; and providing no other reasoning or suggestion that the Court of Appeals had changed its position on the other issues presented on appeal and addressed in the prior panel opinion).

After the Opinion on Rehearing, further appellate review was denied and jurisdiction was returned to this Court, which then entered the Second Amended Final Judgment "[p]ursuant to the Mandate of the Court of Appeals, Division II."   Second Amended Final Judgment at 1.   The Second Amended Final Judgment declared former A.R.S. §§ 13-211 through -213 unconstitutional.  Second Amended Final Judgment at 3. It also permanently enjoined the Arizona Attorney General and Pima County Attorney, and all successors, agents, servants, employees, attorneys, and all persons in active concert or participation with them, from taking any action or threatening to take any action to enforce the provisions of A.R.S. §§ 13-211 through -213.  Second Amended Final Judgment at 4.

The Legislature, however, did not acquiesce in the declaration that these laws were unconstitutional but rather took affirmative steps to ensure their continuing validity in the

_____
[5]   The Opinion on Rehearing also directed this Court to modify its decision so "that the statutes in question are unconstitutional as to all." *Nelson*, 19 Ariz. App. at 152.

1   event that *Roe* was overruled.  In 1977, the Legislature re-enacted former § 13-211 as
2   § 13-3603, former § 13-212 as § 13-3604, and former § 13-213 as § 13-3605.  *See* 1977
3   Ariz. Sess. Laws ch. 142, § 99 (1st Reg. Sess.).[6]  The Arizona courts have at least twice
4   expressly recognized this 1977 law as "re-enact[ing]" or "enact[ing]" the new statutes.
5   *See Summerfield*, 144 Ariz. at 476; *Vo*, 172 Ariz. at 201.   In 2021, the Legislature
6   repealed § 13-3604, indicating its intent not to continue criminalizing abortion as to the
7   mother of an unborn child.   *See* 2021 Ariz. Laws ch. 286, § 3 (1st Reg. Sess.).  But the
8   Legislature did not likewise repeal § 13-3603.  And this year, even while it enacted a 15-
9   week gestational age limitation on abortions prior to the issuance of the *Dobbs* opinion
10  (when it was uncertain how the Supreme Court would rule), the Legislature also
11  expressly included in the session law that the 15-week gestational age limitation does not
12  "[r]epeal, by implication or otherwise, section 13-3603, Arizona Revised Statutes, or any
13  other applicable state law regulating or restricting abortion."  *See* 2022 Ariz. Sess. Laws
14  ch. 105, § 2 (2d Reg Sess.).

15          Then on June 24, 2022, the U.S. Supreme Court issued its opinion in *Dobbs*,
16  overruling *Roe* and thereby paving the way for § 13-3603 to continue in effect
17  unimpeded, as the Legislature intended.   In *Dobbs*, the Supreme Court "h[e]ld that the
18  Constitution does not confer a right to abortion. *Roe* and *Casey* must be overruled, and
19  the authority to regulate abortion must be returned to the people and their elected
20  representatives." *Dobbs*, 142 S. Ct. at 2279.  Dobbs further recognized that "States may
21  regulate abortion for legitimate reasons, and when such regulations are challenged under
22  the Constitution, courts cannot 'substitute their social and economic beliefs for the
23  judgment of legislative bodies.'"  *Id.* at 2283–84.   "These legitimate interests include
24  respect for and preservation of prenatal life at all stages of development[.]" *Id.* at 2284
25  (citing *Gonzales v. Carhart*, 550 U.S. 124, 157–58 (2007)).   Ultimately, *Dobbs* held

26
27
28
---
[6]  The first 38 sections of 1977 Ariz. Sess. Laws ch. 142 repeal many provisions in
Title 13.  But nowhere among the repeals are former §§ 13-211 through -213.  Instead,
the Legislature intentionally transferred these statutes for placement in Chapter 36 of
Title 13, "Family Offenses."

"[t]he Constitution does not prohibit the citizens of each State from regulating or prohibiting abortion." *Id.*

This Motion seeks to set aside the Second Amended Final Judgment's permanent injunction, as applied to A.R.S. § 13-3603, prospectively because such prospective application is no longer equitable, and it seeks to similarly eliminate any prospective effect of the declaratory judgment as to that statute.

## ARGUMENT

## I. Relief from the Second Amended Final Judgment is warranted under Rule 60(b)(5)

Relief from the Second Amended Final Judgment is warranted here under Rule of Civil Procedure 60(b)(5).

### A. The Rule 60(b)(5) Standard

Rule 60(b)(5) permits relief where "applying [the judgment] prospectively is no longer equitable." This portion of Rule 60(b)(5), which allows a judgment to be set aside when prospective application is no longer equitable, "encompasses the traditional power of a court of equity to modify its decree in light of changed circumstances." *Frew ex rel. Frew v. Hawkins*, 540 U.S. 431, 441 (2004); *see also* Wright & Miller, Judgment Satisfied or No Longer Equitable, 11 Fed. Prac. & Proc. Civ. § 2863 (3d ed.).[7] "[I]t is appropriate to grant a Rule 60(b)(5) motion when the party seeking relief from an injunction or consent decree can show 'a significant change either in factual conditions or in law.'" *Agostini v. Felton*, 521 U.S. 203, 215 (1997). Under Rule 60(b)(5), "[a] court may recognize subsequent changes in either statutory or decisional law." *Id.*; *see also Horne v. Flores*, 557 U.S. 433, 447 (2009) (Rule 60(b)(5) relief appropriate when a significant change in either factual conditions or in law renders continued enforcement of the judgment detrimental to the public interest). In fact, "[a] court errs when it refuses to modify an injunction or consent decree in light of such changes." *Agostini*, 521 U.S. at

---

[7] Because the grounds in Arizona Rule 60(b) are "identical" to Federal Rule of Civil Procedure 60(b), Arizona courts "give 'great weight' to federal court interpretations of this rule." *Bredfeldt v. Greene*, No. 2 CA-CV 2016-0198, 2017 WL 6422341, at *2 ¶6 (Ariz. Ct. App. Dec. 18, 2017) (quoting *Estate of Page v. Litzenburg*, 177 Ariz. 84, 93 (App. 1993)).

-8-

215. The U.S. Supreme Court has even rejected the notion that Rule 60(b)(5) does not apply where a movant uses it "not as a means of *recognizing* changes in the law, but as a vehicle for *effecting* them." *Id.* at 238; *id.* at 239 (granting "a party's request under Rule 60(b)(5) to vacate a continuing injunction entered some years ago in light of a bona fide, significant change in subsequent law").

Similarly, in *Edsall v. Superior Court*, the Arizona Supreme Court recognized that Rule 60(b)(5) can be used to reopen final orders where there has been "a change in the law affecting substantial rights of a litigant." 143 Ariz. 240, 243 (1984). And the Ninth Circuit has "recognized as settled that '[w]hen a change in the law authorizes what had previously been forbidden, it is an abuse of discretion for a court to refuse to modify an injunction founded on superseded law.'" *California v. EPA*, 978 F.3d 708, 715 (9th Cir. 2020) (quoting *Toussaint v. McCarthy*, 801 F.2d 1080, 1090 (9th Cir. 1986)); *see also Prudential Ins. Co. of Am. v. Nat'l Park Med. Ctr., Inc.*, 413 F.3d 897, 903 (8th Cir. 2005) ("When prospective relief is at issue, a change in decisional law provides sufficient justification for Rule 60(b)(5) relief.").

## B. Prospective application of the Second Amended Final Judgment is no longer equitable following *Dobbs*

Here, the Attorney General is not using Rule 60(b)(5) as a vehicle for effecting legal change; that change has unequivocally occurred in *Dobbs*, which overruled *Roe* and *Casey* and abrogated numerous other cases recognizing a federal right to abortion. *Dobbs*, 142 S. Ct. at 2242. *Dobbs*, therefore, clearly represents a significant change in the law affecting substantial rights of the State (acting through the enjoined prosecutors), as well as the unborn.

It is beyond dispute that *Dobbs* represents a change in the very law that was the sole and express basis for the Second Amended Final Judgment. Before *Roe*, Arizona had repeatedly enforced the criminal ban (codified then as § 13-211) on performing abortions other than to save the life of the mother by bringing prosecutions against doctors who performed such abortions. *See supra* at page 3 (citing cases). And less than three weeks before *Roe*, the Arizona Court of Appeals held, in a well-reasoned and

thorough opinion, that this law was constitutional.  *Nelson*, 19 Ariz. App. at 142–50. However, *Roe*'s recognition of a federal right to abortion changed everything.  The Arizona Court of Appeals entered the Opinion on Rehearing, which summarily reversed its prior panel opinion upholding §§ 13-211 to -213, and this Opinion on Rehearing was based solely on the newly-recognized federal right in *Roe*.

That *Roe* was the sole impediment to enforcement of Arizona's abortion statute is further supported by other Court of Appeals decisions addressing the abortion statutes. *See, e.g.*, *Wahlrab*, 19 Ariz. App. at 553 (citing *Nelson* and vacating conviction because "although [the court] disagree[s] with the [*Roe v.*] *Wade* opinion we are bound by the U.S. Supreme Court decision"); *see also State v. New Times, Inc.*, 20 Ariz. App. 183, 185 (1973) (citing *Nelson* and *Wahlrab*, noting that the issue of the constitutionality of the state laws "at this juncture, is essentially moot," and reasoning the court "need only say that we are bound by the conclusions previously reached by the courts, most notably the [U.S.] Supreme Court").  Years later, the Court of Appeals similarly "note[d] that the abortion statutes, as currently codified, may be unenforceable under the constitutional principles articulated in *Roe*...."  *Vo*, 172 Ariz. at 202 n.6 (citing *Wahlrab* and *Nelson*).

On remand in this case, the Court expressly amended its prior judgment based exclusively on the Opinion on Rehearing and entered the Second Amended Final Judgment pursuant to the Court of Appeals' mandate, thereby enjoining the Attorney General and Pima County Attorney from taking any further action to enforce § 13-211. At that time, the Court also expanded the scope of persons covered by the injunction to include not only the plaintiffs and their patients, but all persons—again based expressly on the Opinion on Rehearing.

But when, on June 24, 2022, *Dobbs* overruled *Roe*, the Supreme Court returned the issue to the democratic process—specifically the States acting through their elected representatives or the people themselves.  The law has therefore returned to what it was prior to *Roe*, and for Arizona this means the well-reasoned panel opinion in *Nelson*. Simply put, that opinion held § 13-211 was constitutional, and it rejected the various

-10-

challenges brought by Plaintiffs here.  That opinion is even more clearly correct given the reasoning in *Dobbs*.  There has thus been a change in the law, *i.e.*, a return to the pre-*Roe* understanding of the absence of a federal right to abortion.  This change "authorizes what had previously been forbidden," *California*, 978 F.3d at 715 (citation omitted), which is the enforcement of the criminal prohibition on performing abortions except to save the life of the mother, and it would be "an abuse of discretion for [this] court to refuse to modify [the] injunction founded on superseded law."  *Id.*

Moreover, this change in the law and facts "affect[s] substantial rights of a litigant."  *Edsall*, 143 Ariz. at 243.  There are two classes of litigants in this action whose substantial rights are affected.  First, the Attorney General and Pima County Attorney are enjoined from taking any action to enforce § 13-211, a duly-enacted statute of the Arizona Legislature.  When prosecutors act to enforce state law they act on behalf of the state to enforce its sovereign interests in carrying out its criminal laws.  In fact, the Plaintiffs made that precise allegation in this case.  *See Marks*, 17 Ariz. App. at 312 ("The petitioners were permitted to amend the complaint to include an allegation that the State of Arizona, through its prosecuting authorities, intended to enforce the abortion statutes through appropriate action.").  Erroneously depriving a State of the ability to enforce its laws, even for a brief period, is a form of irreparable injury.  *See Maryland v. King*, 567 U.S. 1301, 1303 (2012) (Roberts, C.J., in chambers) (brackets and citation omitted) ("Any time a state is enjoined by a court from effectuating statutes enacted by representatives of its people, it suffers a form of irreparable injury."); *Abbott v. Perez*, 138 S. Ct. 2305, 2324 n.17 (2018) ("[T]he inability to enforce its duly enacted plans clearly inflicts irreparable harm on the State").  Thus the continued existence of the Second Amended Final Judgment going forward affects the substantial rights of the State, through its enjoined prosecutors.

Second, the unborn are also a represented party in this case, and their substantial rights are clearly affected.  This Court granted intervention by Cliffton Bloom as Guardian ad Litem of the unborn children affected by abortion.  Second Amended Final

-11-

Judgment at 1-2.  And the Legislature has made clear that abortion affects the substantial rights of the unborn.  *See Summerfield*, 144 Ariz. at 476 (citing several Arizona statutes to support the conclusion that "we also discern, in other areas of the law, a legislative goal of protecting the fetus"); *Vo*, 172 Ariz. at 201 n.6 (relying upon A.R.S. §§ 13-3603 to -3605 for the purpose of "ascertaining the scope of the protection the legislature intended to afford a fetus in enacting the existing criminal law").   Further, in 2021 the Legislature adopted an interpretation provision, § 1-219, which similarly informs that intervention should be permitted in this civil action.[8]  Clearly the substantial rights of this litigant are also affected by the change of law in *Dobbs*.

Plaintiffs' prior arguments regarding overbreadth and the right of physicians to practice their chosen profession do not establish that A.R.S. § 13-3603 is unconstitutional and therefore do not provide bases to deny relief now.  The Court of Appeals specifically addressed—and rejected—those arguments.  *See Nelson*, 19 Ariz. App. at 149–50.  The overbreadth argument was based on the lack of exceptions for rape and "defective fetuses."  The Mississippi abortion law in *Dobbs* did not contain an exception for rape, and yet the U.S. Supreme Court upheld the law as constitutional.  *See* 142 S. Ct. 2284; *id.* at 2344 (Breyer, Sotomayor, and Kagan, JJ., dissenting) ("The Mississippi law at issue here, for example, has no exception for rape or incest[.]").  And nothing outside of the decisions in *Roe* and *Casey* and their now-abrogated progeny cast doubt on the panel opinion's conclusion that "[i]t is . . . within the province of the state legislature to weight the competing interests and enact, as the legislature has done in this state, a statute which prohibits all abortions except those necessary to save the life of the mother."  *Nelson*, 19 Ariz. App. at 150.  The right to practice one's profession argument is akin to an argument under *Lochner*, and the argument clearly fails under rational basis review.  *See Conn v. Gabbert*, 526 U.S. 286, 291–92 (1999) (explaining that the right to choose one's field of

---

[8] The District of Arizona has preliminarily enjoined certain Arizona government officials from "enforcing A.R.S. § 1-219 as applied to abortion care that is otherwise permissible under Arizona law."  *Isaacson v. Brnovich*, —F. Supp. 3d—, 2022 WL 2665932, *10 (D. Ariz. July 11, 2022).  That preliminary injunction has no application here.

private employment is "a right which is nevertheless subject to reasonable government regulation").

Finally, this motion is made in a "reasonable time" under Rule 60(c)(1). "[W]here a change in law is the basis for [a Rule 60(b)] motion, the date of the challenged order provides little guidance in measuring its timeliness; valid grounds for reconsideration may arise long after a final judgment has been entered." *Bynoe v. Baca*, 966 F.3d 972, 980 (9th Cir. 2020). Timeliness in this instance is measured "as of the point in time when the moving party has grounds to make [a Rule 60(b)] motion, regardless of the time that has elapsed since the entry of judgment." *Id.* This Motion is plainly timely.

## II. Alternatively, relief from the Second Amended Final Judgment is warranted under Rule 60(b)(6)

In the alternative, if the Court does not grant relief under Rule 60(b)(5), relief is warranted under Rule 60(b)(6) because the overruling of *Roe* is an extraordinary circumstance that justifies relief. *See Kemp v. United States*, 142 S. Ct. 1856, 1865 (2022) (Sotomayor, J., concurring) (Rule 60(b)(6) is available "to reopen a judgment in extraordinary circumstances, including a change in controlling law" (citing cases)); *see also Edsall*, 143 Ariz. at 243 (Rule 60(b)(5) and (6) "have been used liberally in reopening otherwise final court orders where there has been a change in the law affecting substantial rights of a litigant."). While the relief requested fits squarely within the contours of Rule 60(b)(5), if the Court disagrees, relief under Rule 60(b)(6) is equally appropriate here.

## III. Notice Regarding Rule 25 Motions

In the years since entry of the Second Amended Final Judgment, there have been changes affecting the parties to this case that will be reflected in concurrent notices and a motion filed under Rule 25. On information and belief, the interest of Plaintiff Planned Parenthood has transferred to its current successor-in-interest, Planned Parenthood of Arizona, Inc. ("PPAZ").[9] On information and belief, of the ten Named Physicians, six

---

[9] The undersigned received an email from PPAZ's counsel indicating PPAZ's desire to be served and participate in this action. Consistent with that request, the Attorney General

-13-

have passed away, and the Attorney General will file a statement noticing death under Rule 25(a)(2).  On information and belief, the other four Named Physicians are still alive, although none currently hold active physician licenses in Arizona.  The current Attorney General and Pima County Attorney are substituted automatically as defendants under Rule of Civil Procedure 25(d).  On information and belief, the Intervenor Cliffton E. Bloom, as Guardian ad Litem of the unborn child of plaintiff Jane Roe and all other unborn infants similarly situated, has passed away, and the Attorney General is filing a motion under Rule 25(a)(1) to substitute Dr. Eric Hazelrigg, an OB/GYN and Medical Director of Choices Pregnancy Centers of Greater Phoenix, Inc., as Guardian ad Litem.

## CONCLUSION

For the foregoing reasons, Defendant the Attorney General respectfully requests that this Court grant relief under Arizona Rule of Civil Procedure 60(b)(5) or 60(b)(6) from prospective application of the declaratory and injunctive relief contained in the Second Amended Final Judgment as applied A.R.S. § 13-3603.

RESPECTFULLY SUBMITTED this 13th day of July, 2022.

MARK BRNOVICH
ATTORNEY GENERAL

By:  /s/ *Brunn (Beau) W. Roysden III*
Brunn (Beau) W. Roysden III (No. 028698)
Michael S. Catlett (No. 25238)
Kate B. Sawyer (No. 34264)
Katlyn J. Divis (No. 35583)
    *Assistant Attorneys General*
OFFICE OF THE ARIZONA ATTORNEY GENERAL
2005 N. Central Ave.
Phoenix, Arizona 85004
beau.roysden@azag.gov
acl@azag.gov
*Attorneys for Defendant Mark Brnovich*
*Attorney General of the State of Arizona*

---

will serve PPAZ with a copy of this Motion and will cooperate to have the current successor-in-interest of Plaintiff Planned Parenthood substituted in as a party.

**CERTIFICATE OF SERVICE**

I certify that on July 13, 2022, the original of the foregoing was electronically filed with the Clerk of the Court for Pima County Superior Court via TurboCourt, and electronically delivered to:

Stanley Feldman
Miller Pitt Feldman & McAnally PLC
One S. Church Ave., Ste 1000
Tucson, AZ 85701-1620
Office/Firm: 520-792-3836
sfeldman@mpfmlaw.com
*Attorneys for Plaintiffs*

David Andrew Gaona
Coppersmith Brockelman PLC
2800 N. Central Ave., Ste. 1900
Phoenix, AZ 85004
Office/Firm: 602-224-0999
agaona@cblawyers.com
*Attorneys for Planned Parenthood Arizona, Inc., successor-in-interest to Plaintiff Planned Parenthood Center of Tucson, Inc.*

Samuel E. Brown
Chief Civil Deputy
Pima County Attorney's Office
32 N. Stone Ave., Suite 2100
Tucson, AZ 85701
Office/Firm: 520-724-5600
sam.brown@pcao.pima.gov
*Attorneys for Defendant Laura Conover, County Attorney of Pima County, Arizona*

Kevin Theriot
Alliance Defending Freedom
15100 N. 90th Street
Scottsdale, AZ 85260
480-444-0020
ktheriot@adflegal.org

*Attorneys for Eric Hazelrigg, M.D., proposed Successor-in-Interest to Cliffton E. Bloom, as guardian ad litem of unborn child of Plaintiff Jane Roe and all other unborn infants similarly situated*

By: /s/ Brunn W. Roysden III