# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Paul A Isaacson, et al., | No. CV-21-01417-PHX-DLR |
| Plaintiffs, | **NOTICE RE: Oral Argument Topics** |
| v. | |
| Mark Brnovich, et al., | |
| Defendants. | |

At issue is Plaintiffs' motion to preliminarily enjoin a collection of laws known in this case as the "Reason Regulations." Plaintiffs rely heavily on the Court's now-vacated September 28, 2021, order, which found the Reason Regulations were too vague and unduly burdened the then-existing right to terminate a pre-viability pregnancy. But much has changed since then.

Most significantly, the Supreme Court held in *Dobbs v. Jackson Women's Health Organization*, 142 S.Ct. 2228 (2022), that there is no constitutional right to terminate a pregnancy. When this Court first considered the constitutionality of the Reason Regulations, it viewed Plaintiffs' vagueness and undue burden claims as intertwined, and this was an important reason why the Court applied a relaxed standard for evaluating the ripeness and merits of Plaintiffs' pre-enforcement facial vagueness claim. But *Dobbs* extinguished the right to terminate a pregnancy. Plaintiffs' renewed motion focuses instead on the potential chilling effect on First Amendment rights. The Court declined to

address the First Amendment argument the previous go-around, other than to consider the impact on the doctor-patient relationship as part of the public interest factor.

Further, in the wake of *Dobbs*, the Supreme Court vacated this Court's preliminary injunction and remanded for further proceedings. The Court must consider these issues fresh and carefully ensure its analysis comports with *Dobbs*. Of note, the *Dobbs* majority observed: "The Court's abortion cases have diluted the strict standard for facial constitutional challenges. They have ignored the Court's third-party standing doctrine. They have disregarded standard res judicata principles. They have flouted the ordinary rules on the severability of unconstitutional provisions, as well as the rule that statutes should be read where possible to avoid unconstitutionality. And they have distorted First Amendment doctrines." *Dobbs*, 142 S.Ct. at 2275-76. To avoid engaging in the same distortions the *Dobbs* majority identified, the Court must take a harder look at, among other things, (1) whether Plaintiffs may properly challenge the Reason Regulations pre-enforcement and on their face, rather than as-applied in an enforcement action, (2) whether it is appropriate to analyze the Reason Regulations as a collective whole, rather than each provision on its own merits, (3) whether portions of the Reason Regulations can be severed, and (4) whether the Reason Regulations reasonably can be read in a way that avoids a constitutional problem.

What's more, the Supreme Court's abortion precedents are not the only cases that have been erased since this Court issued its first preliminary injunction order. The Court relied, too, on *Memphis Center for Reproductive Health v. Slatery*, 14 F.4th 409 (6th Cir. 2021), in which the Sixth Circuit affirmed a district court order preliminarily enjoining similar laws on vagueness grounds. But just over two months after this Court issued its preliminary injunction order, the full Sixth Circuit voted to rehear *Memphis Center for Reproductive Health*, vacating the panel decision this Court relied on. 18 F.4th 550 (6th Cir. 2021). And then, after *Dobbs*, the Sixth Circuit vacated the district court's preliminary injunction and remanded for further proceedings.

In light of these developments, it would be helpful if the parties came to the

October 25, 2022, oral argument prepared to address the following topics fresh, without relying on the Court's vacated order.

**<u>For Plaintiffs:</u>**

1. Plaintiffs argue that the Reason Regulations implicate First Amendment rights in order to show that they can bring a pre-enforcement facial vagueness claim, but at this stage they are not asking the Court to determine whether the Reason Regulations actually violate the First Amendment. They are asking the Court to determine only whether the Reason Regulations are too vague. Is this a correct understanding of Plaintiffs' motion?
2. States may regulate professional conduct even if doing so incidentally involves speech. *See Tingley v. Ferguson*, 47 F.4th 1055, 1074-77 (9th Cir. 2022). Why aren't the Reason Regulations best viewed as regulations of professional conduct that incidentally involve speech?
3. *Dobbs* criticized the way in which abortion cases had distorted principles of third-party standing. Outside the abortion context, what is Plaintiffs' best authority for the proposition that doctors have third-party standing to assert the First Amendment rights of their patients?
4. Aside from counseling and advice, how is a patient's motive medically relevant to the abortion procedure? For example, does a doctor need to know a patient's motive in order to safely perform the abortion? Does a patient's motive impact whether or how a doctor performs the procedure?
5. Arizona law defines "genetic abnormality" as: "the presence or presumed presence of an abnormal gene expression in an unborn child, including a chromosomal disorder or morphological malformation occurring as the result of abnormal gene expression." A.R.S. § 13-3603.02(G)(2).
   a. One of Plaintiffs' arguments is that doctors deal in probabilities, not certainties, so there rarely if ever is 100% certainty that a fetal condition

        exists or has a genetic cause. For this reason, Plaintiffs argue that they don't know what degree of probability brings a condition within the scope of the Reason Regulations. Plaintiffs also argue that doctors might disagree over the nature or cause of a fetal condition, so the Reason Regulations can expose doctors to liability if they guess wrong or if a prosecution expert testifies that she would have made a different call. How is this dynamic different from medical malpractice cases, where litigants routinely present competing medical experts offering different views on the standard of care and causation? Why is this type of uncertainty tolerable for medical malpractice but intolerable for the Reason Regulations?

    b. Does the medical community have an accepted or consensus view on the degree of probability required for a condition to be considered "present?"

6. The "Reason Regulations" is an umbrella term that covers various provisions of Arizona law. Some of Plaintiffs' arguments require the Court to analyze the Reason Regulations collectively. For example, Plaintiffs argue the Reason Regulations are vague because one section prohibits doctors from performing abortions if they know the patient is seeking the procedure solely because of a fetal genetic abnormality, while other sections do not use the word solely. But it's common for different offenses to have different elements, and criminal laws aren't vague just because different offenses have slightly different elements. Why should the Court analyze the Reason Regulations as a collective whole, rather than each provision on its own merits?

For the remainder of these questions, the Court would appreciate if Plaintiffs would analyze each provision on its own, without reference to how the language of one provision might differ slightly from the language of another.

7. Section 13-3603.02(A)(2) says: "Except in a medical emergency, a person who knowingly . . . [p]erforms an abortion knowing that the abortion is sought solely because of a genetic abnormality of the child" is guilty of a class 6 felony. The Court will refer to this as the "Performance Provision."
    a. What is vague about the language of the Performance Provision?
    b. The Performance Provision applies when a fetal genetic abnormality is the **only reason** why the patient is seeking an abortion? If a patient has mixed motives or multiple but-for reasons for seeking an abortion, the Performance Provision does not apply. What is wrong with that interpretation?
    c. If a doctor wants to ensure that she does not violate this law, couldn't she ask the patient whether she is seeking the abortion solely because of a fetal genetic abnormality? Though the patient's answer might make it harder for her to receive an abortion (something she no longer has a constitutional right to anyway), wouldn't the answer put the doctor on sufficient notice of whether she can or cannot perform the procedure, which is the concern in a vagueness challenge?
8. Section 13-3603.02(B)(2) says: "Except in a medical emergency, a person who knowingly . . . [s]olicits or accepts monies to finance . . . an abortion because of a genetic abnormality of the child," is guilty of a class 3 felony. The Court will call this the "Solicitation Provision."
    a. What is vague about the language of the Solicitation Provision?
    b. The phrase "because of" means traditional, but-for causation. The Supreme Court has described but-for causation this way: "a but-for test directs us to change one thing at a time and see if the outcome changes. If it does, we have found a but-for cause." *See Bostock v. Clayton Cnty.*, 140 S.Ct. 1731, 1739 (2020). If a doctor wanted to ensure that she did not violate this law, couldn't she ask the patient whether she would still

       want an abortion if the fetus did not have a genetic abnormality? Why wouldn't the patient's answer to this question put the doctor on sufficient notice of whether she can or cannot perform the procedure?

9. Section 13-3603.02(D) says: "The father of the unborn child who is married to the mother at the time she receives . . . an abortion because of a genetic abnormality of the child, or, if the mother has not attained eighteen years of age at the time of the abortion, a maternal grandparent of the unborn child, may bring a civil action on behalf of the unborn child to obtain appropriate relief with respect to a violation of" the Performance or Solicitation Provisions. The Court will call this the "Civil Liability Provision." Assume the Performance and Solicitation Provisions are not vague. In that case, is there anything vague about the language of the Civil Liability Provision?

10. Section 13-3603.02(E) says: "A physician, physician's assistant, nurse, counselor or other medical or mental health professional who knowingly does not report known violations of [the Performance or Solicitation Provisions] to appropriate law enforcement authorities shall be subject to a civil fine of not more than $10,000." The Court will call this the "Reporting Provision." Assume the Performance and Solicitation Provisions are not vague. In that case, is there anything vague about the language of the Reporting Provision?

11. Section 36-2157 says: "A person shall not knowingly perform or induce an abortion before that person completes an affidavit that . . . [s]tates that the person making the affidavit is not aborting the child . . . because of a genetic abnormality of the child and has no knowledge that the child to be aborted is being aborted . . . because of a genetic abnormality of the child." The Court will call this the "Affidavit Provision." Assume the definition of genetic abnormality is not vague, and that "because of" means traditional, but-for causation. In that case, is there anything vague about the language of the Affidavit Provision?

12. Section 36-2158(A)(2)(d) requires that, "[i]n the case of a woman seeking an abortion of her unborn child diagnosed with a nonlethal fetal condition," the doctor performing the abortion or the referring doctor inform the patient, orally and in person, that the § 13-3603.02 "prohibits abortion . . . because of a genetic abnormality." The Court will call this the "Notification Provision."
    a. There is a reasonable argument that the Notification Provision requires doctors to inaccurately describe § 13-3603.02 to their patients, but how does that make it vague?
    b. Is this an accurate description of Plaintiffs' argument: If a woman is seeking an abortion of a fetus diagnosed with a nonlethal fetal condition, there is nothing vague about what the Notification Provision requires doctors to do. But because the definition of "nonlethal fetal condition" is vague, it is unclear how doctors are to determine when the Notification Provision is triggered.
    c. Arizona law defines "nonlethal fetal condition" as "a fetal condition that is diagnosed before birth and that will not result in the death of the unborn child within three months after birth but may result in physical or mental disability or abnormality." § 36-2158(G)(2). What is vague about this language?
    d. Suppose Arizona law defined nonlethal fetal condition this way: "A fetal condition that is diagnosed before birth and that, **to a reasonable degree of medical certainty**, will not result in the death of the unborn child within three months after birth but may result in physical or mental disability or abnormality." Would that definition be vague?
    e. Typically, when medical experts testify in court, they must testify to a reasonable degree of medical certainty. Why isn't it reasonable to interpret the Reason Regulations as incorporating that standard of probability? For example, in a criminal prosecution, wouldn't a state

- 7 -

      medical expert need to testify to a reasonable degree of medical certainty in order for the state to obtain a conviction?

13. Section 36-2161(A)(25) adds to a list of information that doctors performing abortions must report to the state health department the following: "Whether any genetic abnormality of the unborn child was detected at or before the time of the abortion by genetic testing, such as maternal serum tests, or by ultrasound, such as nuchal translucency screening, or by other forms of testing."
    a. Other than the definition of genetic abnormality, what about this language is vague?
    b. Does the medical community have a common, accepted understanding of what is means to "detect" something that is different from the ordinary dictionary definition of the word?
    c. If "detected" is too vague, what verb would make the statute clear? Would "diagnosed" satisfy Plaintiffs?

**For Defendants:**

1. In general, a plaintiff may not bring a facial vagueness claim unless the law at issue implicates First Amendment rights or is vague in all applications. *See Easyriders Freedom F.I.G.H.T. v. Hannigan*, 92 F.3d 1486, 1493-94 (9th Cir. 1996). Defendants argue the Reason Regulations do not implicate First Amendment rights because a state may regulate professional conduct that incidentally involves speech without violating the First Amendment. But that argument conflates laws that **implicate** First Amendment rights with laws that **violate** First Amendment rights. In *Tingley*, the plaintiff brought a facial vagueness and First Amendment challenge to laws banning conversion therapy. The Ninth Circuit found the laws did not violate the First Amendment and were not vague. But the Ninth Circuit rejected the vagueness argument on

its merits, not on ripeness grounds. Doesn't *Tingley* support the view that a plaintiff may bring a facial vagueness challenge so long as the laws at issue implicate First Amendment rights, regardless of whether the laws actually violate those rights? Are Defendants aware of any cases that address whether "implicate" means "violate" in this context?

2. Arizona law defines "genetic abnormality" as: "the presence or presumed presence of an abnormal gene expression in an unborn child, including a chromosomal disorder or morphological malformation occurring as the result of abnormal gene expression." § 13-3603.02(G)(2).
    a. What does it mean for an abnormal gene expression to be "present?"
    b. What does it mean for an abnormal gene expression to be "presumed present?"
        i. What level of probability (if any) is required for something to be "presumed" present?
        ii. Who must be doing the presuming?
    c. Suppose a patient sincerely believes that if she carries her pregnancy to term, the child will be born with down syndrome. And suppose her belief is based entirely on a vivid dream and not on any medical evidence whatsoever. If that patient were to tell her doctor that the sole reason she's seeking an abortion is because she believes, based on her dream, that her child will have down syndrome, may the doctor lawfully perform the abortion?
3. Outside the context of abortion, are Defendants aware of any other offenses that require a defendant to know the subjective motives of another person?
4. Defendants argue that, if the Court finds discrete sections of the Reason Regulations vague, it has an obligation to determine whether those section may be severed.
    a. Suppose the Court finds the definition of "genetic abnormality" vague.

How would severability work in that case?

    b. Suppose the Court finds only that the "presumed presence" portion of the definition of "genetic abnormality" vague. How would severability work in that case?

5. One of Plaintiffs' arguments is that doctors deal in probabilities, not certainties, and they don't know what degree of probability brings a condition within the scope of the Reason Regulations. Do Defendants have a view on what degree of probability is required to bring a condition within the scope of the Reason Regulations?

6. Can Defendants walk the Court through how they envision a prosecution under the Performance Provision playing out? For example, would the state retain a medical expert to testify to a reasonable degree of medical certainty that the aborted fetus had a nonlethal fetal genetic abnormality?

7. Defendants argue that many of Plaintiffs' concerns are addressed by the reasonable doubt standard in criminal cases. But the Reason Regulations also have civil liability provisions, and the ordinary standard for liability in civil cases is a preponderance of the evidence. How does Defendants' argument fare in the civil context?

Dated this 21st day of October, 2022.

Douglas L. Rayes
United States District Judge