1   Jared G. Keenan (027068)
    American Civil Liberties Union
2   Foundation of Arizona
    3707 North 7th Street, Suite 235
3   Phoenix, Arizona 85014
4   Telephone: (602) 650-1854
    jkeenan@acluaz.org
5   *Counsel for Plaintiffs*

6   Jessica Leah Sklarsky, *pro hac vice*
7   Gail Deady, *pro hac vice*
    Catherine Coquillette, *pro hac vice*
8   Center For Reproductive Rights
    199 Water Street, 22nd Floor
9   New York, NY 10038
    Telephone: (917) 637-3600
10  jsklarsky@reprorights.org
11  gdeady@reprorights.org
    ccoquillette@reprorights.org
12  *Counsel for Paul A. Isaacson, M.D.,*
    *National Council of Jewish Women*
13  *(Arizona Section), Inc. and Arizona*
    *National Organization for Women*
14

15   COUNSEL CONTINUED
     ON NEXT PAGE
16

17              **IN THE UNITED STATES DISTRICT COURT**

                **FOR THE DISTRICT OF ARIZONA**
18

19   Paul A. Isaacson, M.D., on behalf of
     himself and his patients, et al.,
20
                                              Case No. 2:21-CV-1417-DLR
              Plaintiffs,
21                                            **PLAINTIFFS' SUPPLEMENTAL**
        v.                                    **BRIEFING PURSUANT TO COURT'S**
22                                            **ORDER (ECF No. 145)**
     Mark Brnovich, Attorney General of
23   Arizona, in his official capacity; et al.,

24            Defendants.

25

26

27

1

Jen Samantha D. Rasay, *pro hac vice*          Alexa Kolbi-Molinas, *pro hac vice*
Center For Reproductive Rights                Rebecca Chan, *pro hac vice*
2
1634 Eye Street, NW, Suite 600                Ryan Mendías, *pro hac vice*
Washington, DC  20006                         American Civil Liberties Union
3
Telephone: (202) 628-0286                     125 Broad Street, 18th Floor
4      jrasay@reprorights.org                        New York, NY 10004
                                               Telephone: (212) 549-2633
5      Beth Wilkinson, *pro hac vice*                akolbi-molinas@aclu.org
Anastasia Pastan, *pro hac vice*              rebeccac@aclu.org
6      Wilkinson Stekloff LLP                        rmendias@aclu.org
2001 M Street, NW                             *Counsel for Eric M. Reuss, M.D., M.P.H.,*
7
10th Floor                                    *and Arizona Medical Association*
8      Washington, DC 20036
Telephone: (202) 847-4000
9      bwilkinson@wilkinsonstekloff.com
apastan@wilkinsonstekloff.com
10

Ralia Polechronis, *pro hac vice*
11     Wilkinson Stekloff LLP
12     130 West 42nd Street 24th Floor
New York, NY 10036
13     Telephone: (212) 294-9410
rpolechronis@wilkinsonstekloff.com
14     *Counsel for Paul A. Isaacson, M.D.,*
*National Council of Jewish Women*
15     *(Arizona Section), Inc. and Arizona*
*National Organization for Women*
16

17

18

19

20

21

22

23

24

25

26

27

1    Plaintiffs submit this supplemental brief pursuant to this Court's December 7, 2022

2    Order (ECF No. 145).

3    **I.      Question 1: Plaintiffs' Pre-Enforcement Facial Vagueness Claim Satisfies the
         Three-Part Test for Constitutional Ripeness.**

4

5    "[T]he constitutional ripeness inquiry focuses on (1) whether the plaintiffs have

     articulated a concrete plan to violate the law in question, (2) whether the prosecuting

6

7    authorities have communicated a specific warning or threat to initiate proceedings, and

     (3) the history of past prosecution or enforcement under the challenged statute." *Alaska*

8

9    *Right to Life Pol. Action Comm. v. Feldman*, 504 F.3d 840, 849 (9th Cir. 2007). Plaintiffs

     clearly satisfy this three-part test.[1]

10

11   **(1)** The undisputed evidence shows that Plaintiffs satisfy the first prong. But for the

     Reason Scheme, Plaintiffs would continue their usual activities, which they have had to

12

13   curtail because they reasonably fear these activities could subject them to prosecution and

     severe criminal penalties under the Scheme's vague terms. *Tingley v. Ferguson*, 47 F.4th

14

15   1055, 1068 (9th Cir. 2022) (finding evidence of past acts that would violate the law and

     may reoccur satisfies first ripeness prong); *see also Valle del Sol, Inc. v. Whiting*, 732 F.3d

16

17   1006, 1014–15 (9th Cir. 2013) (allowing a pre-enforcement facial vagueness challenge to

     proceed where plaintiff's activities demonstrated a "reasonable likelihood" that the

18

19   challenged statute "could be enforced against her"). For example, prior to the Reason

     Scheme going into effect, Dr. Isaacson routinely served patients "seeking abortion care

20

21   because of medical indications, including following a diagnosis of a fetal condition."

     Declaration of Dr. Paul A. Isaacson, ECF No. 10-2 ("Isaacson Decl.") ¶ 9. Any day he may

22

23   encounter patients whom he knows—or will discover through the circumstances of their

     care—have received a fetal diagnosis. Supplemental Declaration of Dr. Paul A. Isaacson,

24

25

26   [1] Based on the Court's question, Plaintiffs assume that the Court rightly does not question
     the prudential ripeness of their pre-enforcement facial vagueness claim under *Webster v.*
     *Reproductive Health Services*, 492 U.S. 490 (1989).

27

1  ECF No. 125-2 ("Suppl. Isaacson Decl.") ¶¶ 9–10; *cf. Tingley*, 47 F.4th at 1068. Given the

2  uncertainty about what the Reason Scheme prohibits and how it will be enforced, Dr.

3  Isaacson is now forced to deny abortion care to any patient whom he knows (or suspects)

4  has a fetal diagnosis and is similarly afraid to provide abortion care to patients referred to

5  him by maternal-fetal medicine specialists or genetic counselors. Suppl. Isaacson Decl.

6  ¶¶ 4–5. Doing otherwise would potentially subject him to the severe penalties laid out in

7  the Scheme. Likewise, ArMA members who do not routinely provide abortion care fear

8  that continuing their typical practices of discussing abortion as one option during non-

9  directive options counseling sessions, or simply recommending fetal testing options to their

10  patients, could be interpreted by a prosecutor to be aiding and abetting an abortion

11  prohibited by the Reason Scheme. Supplemental Declaration of Dr. Katherine B. Glaser,

12  ECF No. 125-2 ("Suppl. Glaser Decl.") ¶¶ 5–7; Declaration of Dr. Katherine B. Glaser,

13  ECF No. 10-2 ("Glaser Decl.") ¶ 16.

14  A plaintiff need not "first expose himself to actual arrest or prosecution" for a

15  challenge to be ripe. *Steffel v. Thompson*, 415 U.S. 452, 459 (1974). Rather, a pre-

16  enforcement challenge is ripe where, as here, "a plaintiff is presented with the immediate

17  dilemma to choose between complying with newly imposed, disadvantageous restrictions

18  and risking serious penalties for violation." *San Luis & Delta-Mendota Water Auth. v.*

19  *Salazar*, 638 F.3d 1163, 1173 (9th Cir. 2011) (internal quotation omitted). Because

20  Plaintiffs have curtailed their usual patient care due to the uncertainty about what the

21  Reason Scheme prohibits, how it will be enforced, and its severe criminal, civil, and

22  regulatory penalties, Plaintiffs meet the first prong of the test.

23  **(2)** As to the second factor, "[o]ne does not have to await the consummation of

24  threatened injury to obtain preventive relief." *Ariz. Right to Life Pol. Action Comm. v.*

25  *Bayless*, 320 F.3d 1002, 1006 (9th Cir. 2003). Arizona clearly intends to enforce the

26  Reason Scheme and has pressed throughout this litigation for the immediate ability to do

27

2

1    so, including by seeking a partial stay of the September 2021 Reason Scheme injunction

2    from this Court (ECF No. 57), the Ninth Circuit, *see* Emergency Mot. Partial Stay Pending

3    Appeal, Isaacson v. Brnovich, Nos. 21-16645, 21-16711 (9th Cir. Oct. 22, 2021), and the

4    Supreme Court, *see* Appl. Partial Stay at 1, Brnovich v. Isaacson, et al., No. 21A-222 (U.S.

5    Dec. 14, 2021).

6         Where, as here, the State has not disavowed enforcement, but has repeatedly pressed

7    to enforce the Reason Scheme, Plaintiffs are "not without some reason in fearing

8    prosecution" and finding "a reasonable threat of prosecution, for standing purposes,

9    dispenses with any ripeness problem." *LSO, Ltd. v. Stroh*, 205 F.3d 1146, 1155–56 (9th

10   Cir. 2000) (internal quotation omitted); *see also Virginia v. Am. Booksellers Ass'n, Inc.*,

11   484 U.S. 383, 393 (1988) (where the "State has not suggested that the newly enacted law

12   will not be enforced," booksellers had "an actual and well-founded fear that the law will

13   be enforced against them").

14        **(3)** Under Ninth Circuit precedent, the third factor, "past prosecution or

15   enforcement, has little weight in [a court's] analysis" when the challenged law is "relatively

16   new and the record contains little information as to enforcement or interpretation." *Wolfson*

17   *v. Brammer*, 616 F.3d 1045, 1060 (9th Cir. 2010); *see also Doe v. Bolton*, 410 U.S. 179,

18   188–89 (1973) (finding justiciable controversy regarding "recent and not moribund"

19   statute, even prior to enforcement, distinguishing from century-old statute under which

20   only one person had been prosecuted), *abrogated on other grounds by Dobbs v. Jackson*

21   *Women's Health Org.*, 142 S. Ct. 2228 (2022); *accord N.H. Right to Life Pol. Action*

22   *Comm. v. Gardner*, 99 F.3d 8, 14–15 (1st Cir. 1996). Because the Reason Scheme has only

23   recently taken effect, this factor has little weight in the constitutional ripeness analysis.

24        Accordingly, Plaintiffs' pre-enforcement facial vagueness claim satisfies the three-

25   part constitutional test and is ripe for review.

26

27
                                            3

## II.    Question 2: *Kashem v. Barr* Does Not Bar Plaintiffs' Pre-Enforcement Facial Vagueness Challenge.

### A. The "Longstanding Rule" Articulated in *Kashem* Does Not Apply Here.

The "longstanding rule," referenced in *Kashem v. Barr*, 941 F.3d 358, 376 (9th Cir. 2019), that "a litigant whose conduct is clearly prohibited by a statute cannot be the one to make a facial vagueness challenge," *id.*, did nothing to alter the general rule that Plaintiffs may bring a facial challenge to vindicate *their own* rights. *Cf. Warth v. Seldin*, 422 U.S. 490, 499–500 (1975). Here, Plaintiffs are not using the rights of others, in different situations not before the Court, to evade application of a statute that is not unconstitutionally vague *as to them*, and therefore does not inflict *on them* any of the harms the vagueness doctrine seeks to prevent. *See Kashem*, 941 F.3d at 375–76. Rather, based on their own pre-existing practices, Plaintiffs' claim is that the Reason Scheme *writ large* fails to provide adequate standards to guide Plaintiffs in conforming their behavior to the law or to guide police, prosecutors, judges, or juries in its enforcement. As such, Plaintiffs raise their own procedural due process rights and there can be no bar under *Kashem* or otherwise. *Cf. Warth*, 422 U.S. at 499–500.

Prior to *Johnson v. United States*, 576 U.S. 591 (2015), many courts—including the Ninth Circuit—found that such a facial vagueness claim could not proceed (pre- or post-enforcement) if a statute could be applied to the challenger constitutionally in any instance because the statute necessarily would not be vague "in all its applications." *See, e.g.*, *Easyriders Freedom F.I.G.H.T. v. Hannigan*, 92 F.3d 1486, 1493–94 (9th Cir. 1996) (quoting *Village of Hoffman Estates v. Flipside*, *Hoffman Estates*, 455 U.S. 489, 495 (1982)). *Johnson*, however, summarily rejected this oft-repeated requirement for facial relief as clearly "contradict[ed]" by the Court's prior holdings. 576 U.S. at 602–03 (referring to Court holdings striking down laws as facially vague that prohibited grocers from charging an "unjust or unreasonable rate," even though "a thousand dollars for a

4

1    pound of sugar would surely be unjust and unreasonable," *United States v. L. Cohen*

2    *Grocery Co.*, 255 U.S. 81, 89 (1921), and that prohibited people on sidewalks from acting

3    in a manner "annoying to persons passing by," even though "spitting in someone's face

4    would surely be annoying," *Coates v. Cincinnati*, 402 U.S. 611 (1971)).

5         In *Kashem*, the Ninth Circuit held that *Johnson* did not "altogether abolish" this

6    "longstanding rule" in all cases, because it also reflects an independent, prudential concern;

7    namely, that in most cases, "constitutional rights are personal and may not be asserted

8    vicariously." *Kashem*, 941 F.3d at 375–76 (quoting *Broadrick v. Oklahoma*, 413 U.S. 601,

9    610–11 (1973)). Thus, in a post-enforcement context, where the application of the statute

10   to the defendant's charged conduct does not raise any vagueness concerns, a defense that

11   the statute is nevertheless unconstitutional because the statute "may conceivably be applied

12   unconstitutionally to others" in "other situations not before the court" arguably runs afoul

13   of this principle by seeking to adjudicate the rights of others. *Id*. As set forth above,

14   however, such prudential concerns do not exist where, as here, Plaintiffs claim that a

15   statute's "hopeless indeterminacy," *Johnson*, 576 U.S. at 598, violates *their own* procedural

16   due process rights by failing to provide adequate guidance to ordinary persons regarding

17   how to conform their behavior to the law and begets arbitrary enforcement. Declaration of

18   Dr. Eric M. Reuss, ECF No. 10-2 ("Reuss Decl.") ¶¶ 68–71; Glaser Decl. ¶¶ 15–16;

19   Isaacson Decl. ¶¶ 31–34, 36–43, 57, 59, 63; Supplemental Declaration of Dr. Eric M.

20   Reuss, ECF No. 125-2 ("Suppl. Reuss Decl.") ¶¶ 5, 7; Suppl. Glaser Decl. ¶¶ 5–6; Suppl.

21   Isaacson Decl. ¶¶ 4–5. As such, the "longstanding rule" articulated in *Kashem* has no

22   application here nor must Plaintiffs meet any exceptions to this rule.

23   **B. The Court's Facial Analysis Should Focus on the Reason Scheme's Statutory
     Language Rather Than Hypothetical Scenarios.**

24
         In any facial vagueness challenge—whether pre- or post-enforcement—the Court's

25
     inquiry should focus on the statutory language on its face using "fundamental canon[s] of

26
     statutory construction," which preclude construing the Reason Scheme's words "in a

27
                                        5

vacuum" and require them to "be read in their context" with "a view to their place in the overall statutory scheme." *Davis v. Michigan Dept. of Treasury*, 489 U.S. 803, 809 (1989). In facial challenges, courts cannot refuse to apply these canons, and instead merely consider whether the law may be sufficiently clear in *some* hypothetical scenario so as to provide notice of what conduct is prohibited or to preclude arbitrary application. *Cf. Valle del Sol, Inc. v. Whiting*, 732 F.3d 1006 (9th Cir. 2013) (striking down Arizona statute as facially vague based on statutory language, not any hypothetical applications to plaintiffs or others); *F.C.C. v. Fox Television Stations, Inc.*, 567 U.S. 239, 254 (2012). *See also Sessions v. Dimaya*, 138 S. Ct. 1204, 1223 (2018); *Johnson*, 576 U.S. at 596; *City of Chicago v. Morales*, 527 U.S. 41, 64 (1999); *Kolender v. Lawson*, 461 U.S. 352, 358–61 (1983).

Here, consistent with these canons, the Court should focus on the language of the Reason Scheme and assess its clarity within its statutory, factual, and legal context. *Davis*, 489 U.S. at 809. Reading the Scheme within its "overall statutory" "context" requires the Court to consider how the interplay between each of the Scheme's individual provisions impacts its overall clarity. *Id.*; *see also Johnson*, 576 U.S. at 603 ("The phrase 'shades of red,' standing alone, does not generate confusion or unpredictability; but the phrase 'fire-engine red, light pink, maroon, *navy blue*, or colors that otherwise involve shades of red' assuredly does." (emphasis in original)).

Likewise, the Court's assessment cannot take place in a "vacuum," *Davis*, 489 U.S. at 809, but must consider the factual and legal backdrop of fetal testing and diagnosis, abortion decision-making, abortion care, and other Arizona laws against which the Scheme operates. For example, the Court must take into account these uncontested facts:

- Testing for fetal conditions is a multi-dimensional medical process with inherent uncertainties and limitations, Reuss Decl. ¶¶ 18, 21, 23–26, 33–35, 39–40, 68–70; Isaacson Decl. ¶¶ 34–35, including regarding how any condition will manifest after birth, Reuss Decl. ¶ 31; Isaacson Decl. ¶¶ 37–42.

6

- Every patient's decision-making process is "deeply personal," complex, and unique; patients may weigh many factors, including their values, culture, religion, health, family circumstance, and other personal information. Reuss Decl. ¶¶ 46–51. It is thus difficult to discern a patient's decision-making or determine how any one factor contributed to the decision. *Id.*

- Physicians learn of potential fetal conditions in many ways, e.g., referrals by genetic counselors and maternal-fetal medicine specialists, Isaacson Decl. ¶¶ 45– 46; medical histories that contain information about fetal testing done prior to the abortion appointment, *id.* ¶ 48; questions asked by a patient prior to the abortion, *id.* ¶ 49; or a patient may simply indicate on Arizona's state-mandated reporting forms that the abortion is "due to fetal health considerations." *Id.* ¶ 50; *see* A.R.S. § 36-2161(A)(12).

- Arizona law defines "knowingly" to mean "that a person is aware or believes that the person's conduct is of that nature or that the circumstance exists." A.R.S. § 13-105(10)(b). Knowledge can be and most often is proven through circumstantial evidence. *See State v. Tison*, 633 P.2d 355, 363–64 (Ariz. 1981); *State v. Noriega*, 928 P.2d 706, 710 (Ariz. Ct. App. 1996); Preliminary 4, RAJI (Criminal) 5th, https://www.azbar.org/media/jl5lzdpl/2019-raji-criminal-5th-ed.pdf.

- Once a physician is aware there may be a fetal condition, it can be difficult for a physician to avoid the inference that a fetal condition played some role in the patient's decision to end the pregnancy. Isaacson Decl. ¶¶ 44–63; Reuss Decl. ¶ 73; Suppl. Isaacson Decl. ¶¶ 4–7; Suppl. Reuss Decl. ¶ 5.

- Patients cannot be compelled to answer questions or testify in any investigation or prosecution regarding a potential violation of the Reason Scheme. Oct. 25, 2022 Oral Arg. Tr. (ECF No. 144) at 75–76.

In view of these undisputed facts, the plain language, and statutory structure, the Reason

7

1    Scheme fails on its face to provide adequate standards that could guide Plaintiffs in

2    conforming their conduct to the law, or police, prosecutors, judges, or juries in its

3    enforcement. Renewed Mot. (ECF No. 125) at 11–14.[2]

4    **III.    Question 3: Plaintiffs Have More Than Met Their Burden For Facial Relief.**

5          A statute is facially vague when it fails to "give[] people of ordinary intelligence a

6    reasonable opportunity to know what is prohibited" or "to provide explicit standards" such

7    that the law begets "arbitrary and discriminatory enforcement." *Grayned v. City of*

8    *Rockford*, 408 U.S. 104, 108–09 (1972). In such cases, the law fails to "establish any core

9    of *unquestionably* prohibited activities." *Valle del Sol, Inc.*, 732 F.2d at 1020–21 (emphasis

10   added) (quoting *Forbes v. Napolitano*, 236 F.3d 1009, 1012 (9th Cir. 2000)).

11         While *Johnson* made abundantly clear that the Court's holdings "squarely contradict

12   the theory that a vague provision is constitutional merely because there is some conduct

13   that clearly falls within the provision's grasp," it did not articulate a precise quantum of

14   unclear or clear applications that either warrant or preclude facial relief. 576 U.S. at 602

15   (Scalia, J.). However, Supreme Court precedent provides some guideposts. To defeat facial

16   relief, a statute must "clearly apply without vagueness or imprecision" to a "substantial

17   range of conduct." *Parker v. Levy*, 417 U.S. 733, 754 (1974). But, "merely" "some" clear

18   applications are insufficient. *Johnson*, 576 U.S. at 602–03; *see also Guerrero v. Whitaker*,

19   908 F.3d 541, 544 (9th Cir. 2018); *Helicopters for Agriculture v. County of Napa*, 384 F.

20   Supp. 3d 1035, 1039 (N.D. Cal. 2019).

21         Here, the Court need not decide what constitutes a "substantial range of conduct"

22   because the Reason Scheme lacks even "some" clear applications. Plaintiffs have

23   repeatedly highlighted how—amidst the statutory, factual, and legal backdrop of the

24   Reason Scheme—they do not know how to conform their behavior to the law and fear they

25   ───────────────

26   [2] Plaintiffs' prior examples of hypothetical scenarios were intended merely to illuminate
     how—in this factual and legal context—the Reason Scheme fails to provide adequate
     guiding principles or standards.

27                                                    8

1    will be arbitrarily subject to prosecution. Reuss Decl. ¶¶ 68–71; Glaser Decl. ¶¶ 15–16;

2    Isaacson Decl. ¶¶ 31–34, 36–43, 57, 59, 63; Suppl. Reuss Decl. ¶¶ 5, 7; Suppl. Glaser Decl.

3    ¶¶ 5–6; Suppl. Isaacson Decl. ¶¶ 4–5. Rather than distilling any standard from the Reason

4    Scheme that could guide Plaintiffs' conduct or prevent arbitrary enforcement, and despite

5    multiple opportunities to do so, Defendants have repeatedly—and selectively—

6    regurgitated the statutory language and have only been able to articulate one instance in

7    which the Reason Scheme arguably could be constitutionally applied: where a patient

8    discloses to the physician that the abortion is sought "solely because" of a "genetic

9    abnormality."[3] But, "as the [Supreme] Court has made clear," the fact that Defendants can

10   "envision some"—really only one—"factual scenario[] that would violate" this

11   "ambiguously-worded statute is not enough to rescue the statute from a facial vagueness

12   challenge." *United States v. Cook*, 970 F.3d 866, 875 (7th Cir. 2020); *Johnson*, 576 U.S. at

13   602–03.

14           Defendants' repeated failure to articulate any standard that could guide the conduct

15   of Plaintiffs, law enforcement, prosecutors, judges, or juries (or even to raise one additional

16   hypothetical in which the Scheme could clearly apply) evinces what is plain: the Reason

17   Scheme's "hopeless indeterminacy" is no different than that which afflicted the residual

18   clause struck down in *Johnson*. Just like the residual clause, the Reason Scheme suffers

19   from multiple layers of uncertainties. 576 U.S. at 597 (noting that "two features of the

20   residual clause conspire to make it unconstitutionally vague"). As Plaintiffs' previous

21   briefing has articulated, the Reason Scheme employs not only several vague terms, *see,*

22   *e.g.*, Renewed Mot. (ECF No. 125) at 12–14, but its interlocking provisions employ

23   _____

     [3] Reply in Supp. Appl. Partial Stay at 3, 7, Brnovich v. Isaacson, et al., No. 21A-222

24   (U.S. Dec. 22, 2021); Appl. Partial Stay at 20–21, 24, 29, 31–34, Brnovich v. Isaacson, et
     al., No. 21A-222 (U.S. Dec. 14, 2021); Defs.' Br. at 30–31, 60–61, ECF No. 27,

25   Brnovich v. Isaacson, et al., Nos. 21-16645, 21-16711 (9th Cir. Nov. 15, 2021); Oct. 25,
     2022 Oral Arg. Tr. (ECF No. 144) at 64–67; Resp. Opp. Renewed Mot. (ECF No. 127) at

26   12–16; Stay Reply (ECF No. 64) at 6; Sept. 22, 2021 Oral Arg. Tr. (ECF No. 61) at 50,
     56, 58, 70–73; Stay Mot. (ECF No. 57) at 11; Resp. (ECF No. 46) at 2, 8–12, 16, 20.

27                                                9

1    multiple motivational standards making it unclear what role a "genetic abnormality" must

2    play in a patient's decision-making to trigger the Scheme's prohibitions.

3            Perhaps most analogous to the residual clause, though, is the Reason Scheme's

4    failure to provide any guidance to Plaintiffs, law enforcement, judges, or juries regarding

5    the "nature of the inquiry one is supposed to conduct and the kinds of factors one is

6    supposed to consider" when assessing a patient's subjective motivations for acting. 576

7    U.S. at 601. The residual clause in *Johnson* improperly required one to "imagine[]" an

8    "'ordinary case' of a crime," *id.* at 597, without any guidance regarding how to determine

9    the "ordinary case," and then determine whether, in that "imagined ordinary case," the

10   crime "involves conduct that presents a serious potential risk," *id.* at 598. The Reason

11   Scheme similarly requires one to "imagine" what is in the mind of a patient, without any

12   guidance regarding how to conduct that inquiry, and then determine whether a "genetic

13   abnormality" played the requisite (unclear) causal role in the patient's decision-making.

14   As if this guessing game isn't impossible enough, given that patients cannot be compelled

15   to testify, Oct. 25, 2022 Oral Arg. Tr. (ECF No. 144) at 75–76, an entire criminal

16   prosecution and the physician's liberty will hinge on it.

17           While any one of the Reason Scheme's issues "*may* be tolerable in isolation,"

18   (emphasis added), "their sum makes a task . . . which at best could be only guesswork."

19   *Johnson*, 576 U.S. at 602. "[C]ondemn[ing] one to prison" through such a "shapeless

20   provision" "does not comport with the Constitution's guarantee of due process." *Id*. Given

21   these deficiencies, Plaintiffs are entitled to facial relief—even if it is possible to envision

22   "some" hypothetical circumstances where the Reason Scheme might constitutionally

23   apply.

24                                   **CONCLUSION**

25           Based on the foregoing, Plaintiffs respectfully request that the Court grant their

26   Renewed Motion for Preliminary Injunction against the Reason Scheme.

27

1    Respectfully submitted this 12th day of December, 2022.

2       By: */s/ Jessica Leah Sklarsky*

3       Jessica Leah Sklarsky, *pro hac vice*

4       Gail Deady, *pro hac vice*
        Catherine Coquillette, *pro hac vice*

5       Center For Reproductive Rights
        199 Water Street, 22nd Floor

6       New York, NY 10038
        Telephone: (917) 637-3600

7       jsklarsky@reprorights.org

8       gdeady@reprorights.org
        ccoquillette@reprorights.org

9       *Counsel for Paul A. Isaacson, M.D.,*

10      *National Council of Jewish Women
        (Arizona Section), Inc., and Arizona*

11      *National Organization for Women*

12      Jen Samantha D. Rasay, *pro hac vice*
        Center For Reproductive Rights

13      1634 Eye Street, NW, Suite 600
        Washington, DC  20006

14      Telephone: (202) 628-0286

15      jrasay@reprorights.org
        *Counsel for Paul A. Isaacson, M.D.,*

16      *National Council of Jewish Women
        (Arizona Section), Inc., and Arizona*

17      *National Organization for Women*

18      Jared G. Keenan (027068)

19      American Civil Liberties Union
        Foundation of Arizona

20      3707 North 7th Street, Suite 235
        Phoenix, AZ 85014

21      Telephone (602) 650-1854
        jkeenan@acluaz.org

22      *Counsel for Plaintiffs*

23

24

25      COUNSEL CONTINUED
        ON NEXT PAGE

26

27
                                11

1   Alexa Kolbi-Molinas, *pro hac vice*
    Rebecca Chan, *pro hac vice*
2   Ryan Mendías, *pro hac vice*
    American Civil Liberties Union
3   125 Broad Street, 18th Floor
    New York, NY 10004
4   Telephone: (212) 549-2633
    akolbi-molinas@aclu.org
5   rebeccac@aclu.org
    rmendias@aclu.org
6   *Counsel for Eric M. Reuss, M.D., M.P.H.,*
7   *and Arizona Medical Association*

8
    Beth Wilkinson, *pro hac vice*
9   Anastasia Pastan, *pro hac vice*
    Wilkinson Stekloff LLP
10  2001 M Street, NW
    10th Floor
11  Washington, DC 20036
    Telephone: (202) 847-4000
12  bwilkinson@wilkinsonstekloff.com
13  apastan@wilkinsonstekloff.com
    *Counsel for Paul A. Isaacson, M.D.,*
14  *National Council of Jewish Women*
    *(Arizona Section), Inc., and Arizona*
15  *National Organization for Women*

16
    Ralia Polechronis, *pro hac vice*
17  Wilkinson Stekloff LLP
    130 West 42nd Street
18  24th Floor
    New York, NY 10036
19  Telephone: (212) 294-9410
20  rpolechronis@wilkinsonstekloff.com
    *Counsel for Paul A. Isaacson, M.D.,*
21  *National Council of Jewish Women*
    *(Arizona Section), Inc., and Arizona*
22  *National Organization for Women*

23

24

25

26

27
                            12

1

**CERTIFICATE OF SERVICE**

2

3          I hereby certify that on December 12, 2022, I electronically transmitted the attached
document to the Clerk's Office using the CM/ECF System for filing. All counsel of record
are registrants and are therefore served via this filing and transmittal.

4

5                                              */s/ Jessica Leah Sklarsky*
                                               Jessica Leah Sklarsky
6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

13