Kevin H. Theriot
AZ Bar No. 030446
Mark A. Lippelmann
AZ Bar No. 036553
ALLIANCE DEFENDING FREEDOM
15100 N. 90th Street
Scottsdale, AZ 85260
(480) 444-0020
(480) 444-0028 facsimile
ktheriot@ADFlegal.org
mlippelmann@ADFlegal.org

*Attorneys for Proposed Defendant-Intervenors President Petersen and Speaker Toma*

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF ARIZONA

PAUL A. ISAACSON. M.D., et al.,

Plaintiffs,

v.

KRIS MAYES, Attorney General of
Arizona, in her official capacity, et
al.,

Defendants,

WARREN PETERSEN, President of
the Arizona State Senate, in his
official capacity; BEN TOMA,
Speaker of the Arizona House of
Representatives, in his official
capacity,

Proposed Intervenors.

Case No. 2:21-cv-01417-DLR

**MOTION OF ARIZONA SENATE
PRESIDENT PETERSEN AND
SPEAKER OF THE ARIZONA
HOUSE OF REPRESENTATIVES
TOMA TO INTERVENE AS
DEFENDANTS AND
MEMORANDUM IN SUPPORT**

# TABLE OF CONTENTS

Table of Authorities ....................................................................................................ii

Introduction ................................................................................................................ 1

Factual Background .................................................................................................... 3

Legal Standard ............................................................................................................ 5

Argument ..................................................................................................................... 6

I.     The President and Speaker are entitled to intervention as of right. ............... 6

       A.     The motion is timely. ........................................................................ 6

       B.     The President and Speaker have a significant protectable interest
              in this matter that may be practically impaired or impeded without
              their participation. .......................................................................... 9

       C.     The existing parties do not adequately represent the Legislative
              Leaders. ........................................................................................... 14

II.    In the alternative, the Court should grant permissive intervention. ........... 16

Conclusion ................................................................................................................ 17

Certificate of Service .............................................................................................. 18

# TABLE OF AUTHORITIES

**Cases**

*Acosta v. Huppenthal*,
  No. CV 10-623-TUC-AWT, 2012 WL 12829994 (D. Ariz. Feb. 6, 2012) ................ 7

*Arakaki v. Cayetano*,
  324 F.3d 1078 (9th Cir. 2003) ................................................................. 14

*Arizonans for Fair Elections v. Hobbs*,
  335 F.R.D. 269 (D. Ariz. 2020) ............................................................... 13

*Berger v. North Carolina State Conference of the NAACP*,
  142 S. Ct. 2191 (2022) ....................................................................... passim

*Brnovich v. Isaacson*,
  142 S. Ct. 2893 (2022) ............................................................................ 6

*California Ex rel. Lockyer v. United States*,
  450 F.3d 436 (9th Cir. 2006) ................................................................... 9

*Cameron v. EMW Women's Surgical Center, P.S.C.*,
  142 S. Ct. 1002 (2022) .......................................................................... 11

*Center for Biological Diversity v. Jewell*,
  No. CV-15-00019-TUC-JGZ, 2015 WL 13037049 (D. Ariz. May 12, 2015) ........... 3

*Center for Biological Diversity v. United States Bureau of Land Management*,
  266 F.R.D. 369 (D. Ariz. 2010) ................................................................ 8

*Clairton Sportsmen's Club v. Pennsylvania Turnpike Commission*,
  882 F. Supp. 455 (W.D. Pa. 1995) ........................................................... 11

*Donnelly v. Glickman*,
  159 F.3d 405 (9th Cir. 1998) .................................................................... 5

*Forest Conservation Council v. United States Forest Service*,
  66 F.3d 1489 (9th Cir. 1995) ................................................................... 5

*Georgia v. United States Army Corps of Engineers*,
  302 F.3d 1242 (11th Cir. 2002) ................................................................ 8

*Hollingsworth v. Perry*,
  570 U.S. 693 (2013) ............................................................................. 11

*Horne v. Flores*,
  557 U.S. 433 (2009) ............................................................................. 11

*Isaacson v. Brnovich*,
  No. CV-21-01417-PHX-DLR, 2022 WL 2665932 (D. Ariz. July 11, 2022) ............ 7

*Kalbers v. United States Department of Justice*,
  22 F.4th 816 (9th Cir. 2021) ..................................................................... 7

*Karcher v. May,*
   484 U.S. 72 (1987) ................................................................................ 11

*Mille Lacs Band of Chippewa Indians v. State of Minnesota,*
   989 F.2d 994 (8th Cir. 1993) ................................................................. 8

*Miracle v. Hobbs,*
   333 F.R.D. 151 (D. Ariz. 2019) ............................................................ 13

*Powell v. Ridge,*
   247 F.3d 520 (3rd Cir. 2001) ................................................................ 11

*Prete v. Bradbury,*
   438 F.3d 949 (9th Cir. 2006) .................................................................. 5

*Safari Club International v. Jewell,*
   No. CV-16-00094-TUC-JGZ, 2016 WL 7786478 (D. Ariz. May 13, 2016) .............. 7

*Sawyer v. Bill Me Later, Inc.,*
   No. CV 10-04461 SJO (JCGx), 2011 WL 13217238 (C.D. Cal. Aug. 8, 2011) ........ 7

*Smith v. Los Angeles Unified School District,*
   830 F.3d 843 (9th Cir. 2016) ............................................................... 6, 7

*Southwest Center for Biological Diversity v. Berg,*
   268 F.3d 810 (9th Cir. 2001) .................................................................. 6

*Spangler v. Pasadena City Board of Education,*
   552 F.2d 1326 (9th Cir. 1977) .............................................................. 16

*Trbovich v. United Mine Workers of America,*
   404 U.S. 528 (1972) ......................................................................... 14, 15

*United States v. Alisal Water Corporation,*
   370 F.3d 915 (9th Cir. 2004) .................................................................. 5

*Virginia House of Delegates v. Bethune-Hill,*
   139 S. Ct. 1945 (2019) ........................................................................ 11

*Wilderness Society v. United States Forest Service,*
   630 F.3d 1173 (9th Cir. 2011) ............................................................. 6, 9

*Yniguez v. State of Arizona,*
   939 F.2d 727 (9th Cir. 1991) ................................................................ 11

**Statutes**

A.R.S. § 12-1841 (2021) ...................................................................... 5, 9, 12, 13

A.R.S. § 1-219 (2021) ................................................................................ 1, 4

A.R.S. § 13-3603.02 (2021) ..................................................................... 1, 3

A.R.S. § 36-2151 (2021) ............................................................................. 3

iii

1

N.C. GEN. STAT. ANN. § 1–72.2 ............................................................... 10

2

**Other Authorities**

3

Associated Press, *U.S. Supreme Court: Arizona Can Enforce Genetic Issue*
*Abortion Ban*, KTAR NEWS (June 30, 2022), http://bit.ly/3RvhRy5 ................. 2, 14

4

AZ Family Digital News Staff, *Attorney General Kris Mayes talks future of*
*abortion in Arizona, rule of law*, ARIZONA'S FAMILY, https://bit.ly/3jsIyHc (Jan.
4. 2023) ........................................................................................................ 15

5

6

Ethan Cohen, *Recount Confirms Democrat Kris Mayes Won Arizona Attorney*
*General Race*, CNN (Dec. 29, 2022), http://bit.ly/3JE6HFi ............................... 2, 6

7

8

Greg Hahne, *Arizona Attorney General Kris Mayes Will Not Challenge Appellate*
*Ruling on Territorial Abortion Law*, KJZZ (Jan. 3, 2023),
https://bit.ly/40u4ORO ................................................................................... 2, 15

9

10

Jonathan J. Cooper, *After Narrow Election, Democrat Katie Hobbs Sworn in as*
*Arizona Governor*, PBS (Jan. 2, 2023), http://bit.ly/3Hywtbn ................................ 2

11

Kris Mayes, *12 Point Plan*, https://bit.ly/3DEiEHf................................................. 2, 14

12

**Rules**

13

FED. R. CIV. P. 24 ............................................................................................ 5

14

State of Arizona, *Rules of the Ariz. House of Representatives 56th Legislature*
*2023-2024*, Rule 4(K), available at https://bit.ly/3HuL9bz ................................ 5, 10

15

State of Arizona, *Senate Rules Fifty-Sixth Legislature 2023-2024*, Rule 2(N),
available at https://bit.ly/3WXFLDv ................................................................ 5, 10

16

17

18

19

20

21

22

23

24

25

26

27

**INTRODUCTION**

Proposed Intervenors Warren Petersen, President of the Arizona State Senate, and Ben Toma, Speaker of the Arizona House of Representatives (together "the Legislative Leaders" or "President" and "Speaker"), seek intervention to defend their interests, which include exercising statutory rights to defend the constitutionality of state statutes, and advocating for the life and equal dignity of vulnerable unborn children. The President and Speaker are entitled to intervene as a matter of statutory right, and no other party will represent their interests or adequately defend the challenged laws.

An Arizona law expressly permits the Legislative Leaders to intervene in cases challenging the constitutionality of state statutes. *See* A.R.S. § 12-1841 (2021). The U.S. Supreme Court recently held that such state laws plainly authorize intervention by legislative leaders. *Berger v. N.C. State Conf. of the NAACP*, 142 S. Ct. 2191 (2022). Here, Plaintiffs challenge the constitutionality of *two* state statutes. The first law prohibits the discriminatory killing of an unborn child because of his or her race, sex, or genetic abnormality ("Reason Regulations"). A.R.S. § 13-3603.02(A) (2021). The second law requires that state laws be interpreted to acknowledge that unborn children share all rights and privileges available to other persons ("Interpretation Policy"). A.R.S. § 1-219(A) (2021).

This Court previously denied intervention by a pro-life advocate, Sharing Down Syndrome, for the sole reason that its interests would be advanced by existing defendants through former Attorney General Mark Brnovich. ECF No. 83 at 3. It held that "Defendants and Sharing Down Syndrome share the same ultimate objective—the preservation of the Reason Regulations and the Interpretation Policy." *Id.* At 2. At that time, the Court held that Sharing Down Syndrome's concern that "Defendants could change or adjust their policy or position during the course of the litigation" was "too speculative to rebut the presumption of adequate

representation." *Id.* At 3. But Sharing Down Syndrome's concerns have now become an unfortunate reality.

Kris Mayes was sworn in as the Arizona Attorney General on January 2, 2023.[1] In stark contrast to the prior attorney general, Attorney General Mayes has publicly expressed her belief that the challenged discriminatory abortion law is "unconstitutional" and "violate[s] Arizona's privacy clause."[2] Attorney General Mayes has promised not to prosecute doctors and other medical professionals who perform abortions in violation of Arizona law, and vowed to use her supervisory authority to prevent county attorneys from prosecuting illegal abortions.[3] And Attorney General Mayes has refused to appeal the Arizona Court of Appeals' ruling invalidating Arizona's pre-*Roe* pro-life law.[4] Simply put, Attorney General Mayes has publicly expressed that she will *not* defend and enforce Arizona's abortion laws, including the laws at issue here.

The President and Speaker have a unique interest in defending the constitutionality of laws duly enacted by the Arizona Legislature. Because Attorney General Mayes will not defend the constitutionality of the challenged laws, the existing parties do not adequately represent the Legislative Leaders' interests, and the Court should grant their motion to intervene.[5]

---

[1] Ethan Cohen, *Recount Confirms Democrat Kris Mayes Won Arizona Attorney General Race*, CNN (Dec. 29, 2022), http://bit.ly/3JE6HFi; Jonathan J. Cooper, *After Narrow Election, Democrat Katie Hobbs Sworn in as Arizona Governor*, PBS (Jan. 2, 2023), http://bit.ly/3Hywtbn .

[2] Associated Press, *U.S. Supreme Court: Arizona Can Enforce Genetic Issue Abortion Ban*, KTAR NEWS (June 30, 2022), http://bit.ly/3RvhRy5.

[3] Kris Mayes, *12 Point Plan*, https://bit.ly/3DEiEHf.

[4] Greg Hahne, *Arizona Attorney General Kris Mayes Will Not Challenge Appellate Ruling on Territorial Abortion Law*, KJZZ (Jan. 3, 2023), https://bit.ly/40u4ORO.

[5] Consistent with the Ninth Circuit's practical approach to interpreting Rule 24(c), the Legislative Leaders have not included a proposed pleading with their motion, which itself notifies the existing parties of the Leaders' interests in the litigation. *See Ctr. for Biological Diversity v. Jewell*, No. CV-15-00019-TUC-JGZ, 2015 WL

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

# FACTUAL BACKGROUND

**The Challenged Laws**

Since 2011, Arizona has protected the most vulnerable members of society from discrimination by prohibiting any person from "perform[ing] an abortion knowing that the abortion is sought based on the sex or race of the child or the race of a parent of that child." A.R.S. § 13-3603.02 (A)(1). In 2021, Arizona extended the Reason Regulations' safeguards by promulgating S.B. 1457 to also "protect[] the disability community from discriminatory abortions, including for example Down-syndrome-selective abortions." S.B. 1457 § 15. The new law prohibits any person from "perform[ing] an abortion knowing that the abortion is sought solely because of a genetic abnormality of that child." S.B. 1457 § 2. "Genetic abnormality" is defined as "the presence or presumed presence of an abnormal gene expression in an unborn child, including a chromosomal disorder or morphological malformation occurring as the result of abnormal gene expression." A.R.S. § 13-3603.02 (G)(2).

The Act contains two exceptions. First, a "[g]enetic abnormality . . . [d]oes not include a lethal fetal condition." *Id*. Second, a "medical emergency" exception permits abortions necessary, in "the physician's good faith clinical judgment," to prevent the death or "substantial and irreversible impairment of a major bodily function" of the pregnant woman. A.R.S. § 13-3603.02 (A), (G)(3); § 36-2151(6). Moreover, the Act explicitly exempts "[a] woman on whom … an abortion because of a child's genetic abnormality is performed" from all criminal or civil liability. A.R.S. § 13-3603.02 (F).

---

13037049, at *1 (D. Ariz. May 12, 2015) ("[W]ithin the Ninth Circuit, failure to comply with the technical requirements of Rule 24, by failing to attach a pleading, will not affect the outcome of a motion for intervention, assuming the motion otherwise meets Rule 24's substantive requirements).

In passing the law, Arizona found that "prohibiting persons from performing abortions knowing that the abortion is sought because of a genetic abnormality of the child advances at least three compelling state interests." S.B. 1457 § 15. The Act: (1) "protects the disability community from discriminatory abortions, including for example Down-syndrome-selective abortions," (2) protects Arizona citizens from coercive medical practices "that encourage selective abortions of persons with genetic abnormalities," and (3) "protects the integrity and ethics of the medical profession by preventing doctors from becoming witting participants in genetic-abnormality-selective abortion." *Id.*

In addition to the non-discrimination protection for individuals with a genetic abnormality, the Arizona Legislature also enacted a statute—the Interpretation Policy—which provides that "[t]he laws of this state shall be interpreted and construed to acknowledge, on behalf of an unborn child at every stage of development, all rights, privileges and immunities available to other persons, citizens and residents of this state, subject only to the Constitution of the United States and decisional interpretations thereof by the United States Supreme Court." A.R.S. § 1-219 (A).

**Plaintiffs' Lawsuit**

On August 17, 2021, Plaintiffs filed a complaint seeking injunctive and declaratory relief. ECF No. 1. On the same day, Plaintiffs filed a motion for preliminary injunction. ECF No. 10. Plaintiffs allege that the Reason Ban violates the right to privacy and liberty under the Fourteenth Amendment, is unconstitutionally vague, and infringes physicians' speech under the First Amendment. ECF No. 1 at 29–32. Plaintiffs also allege that the Interpretation Policy is unconstitutionally vague under the Fourteenth Amendment. *Id.*

**Proposed Intervenors**

The President and Speaker, on behalf of their respective legislative houses, are entitled to intervene and be heard in this case. *See* Ariz. Const. art. 4, pt. 2, § 8 (authorizing each house of the Legislature to "determine its own rules of procedure"); A.R.S. § 12-1841(A), (D) (granting the President and Speaker "the right to be heard" and the right to "intervene as a party" in "any proceeding in which a state statute... is alleged to be unconstitutional"); Ariz. House of Representatives Rule 4(K); Arizona State Senate Rule 2(N). President Petersen was a co-sponsor of S.B. 1457, and personally advocated and voted for the Interpretation Policy and non-discrimination protections for unborn children with genetic abnormalities. President Petersen has consistently advocated for pro-life legislation during his time as a Representative (2012 to 2016) and as a Senator (2016 to present). Speaker Toma also personally advocated and voted for S.B. 1457, and seeks to defend the laws challenged in this action. Speaker Toma has also promoted pro-life legislation since his election to the Arizona House of Representatives in 2017.

## LEGAL STANDARD

Under Federal Rule of Civil Procedure 24, a court must permit intervention when (1) the application is timely; (2) the applicant has a significant protectable interest in the action; (3) the disposition of the action may, as a practical matter, impair or impede the applicant's ability to protect its interest; and (4) the existing parties may not adequately represent the applicant's interest. *See* FED. R. CIV. P. 24(a)(2); *Prete v. Bradbury*, 438 F.3d 949, 954 (9th Cir. 2006); s*ee also Donnelly v. Glickman*, 159 F.3d 405, 409 (9th Cir. 1998). Courts may also grant permissive intervention when an applicant has a claim or defense that shares common questions of law or fact with the main action. FED. R. CIV. P. 24(b)(1)(B).

"[T]he requirements for intervention are broadly interpreted in favor of intervention," *United States v. Alisal Water Corp.*, 370 F.3d 915, 919 (9th Cir. 2004),

precisely because a "liberal policy in favor of intervention serves both efficient resolution of issues and broadened access to the courts." *Forest Conservation Council v. United States Forest Serv.*, 66 F.3d 1489, 1496 n.8 (9th Cir. 1995) (internal citation omitted) (abrogated by further broadening of intervention under a specific statute in *Wilderness Soc'y v. United States Forest Serv.*, 630 F.3d 1173 (9th Cir. 2011)). In evaluating this motion, this Court should "take all well-pleaded, nonconclusory allegations in the motion to intervene . . . and declaration[] supporting the motion as true absent sham, frivolity or other objections." *Sw. Ctr. for Biological Diversity v. Berg*, 268 F.3d 810, 820 (9th Cir. 2001).

## ARGUMENT

## I.    The President and Speaker are entitled to intervention as of right.

### A.    The motion is timely.

Courts evaluate three factors when assessing timeliness: "(1) the stage of the proceeding at which an applicant seeks to intervene; (2) the prejudice to other parties; and (3) the reason for and length of the delay." *Smith v. L.A. Unified Sch. Dist.*, 830 F.3d 843, 854 (9th Cir. 2016) (citation omitted). The "crucial date" for determining timeliness is when the proposed intervenor "should have been aware that their interests would not be adequately protected by the existing parties." *Id.* (citation omitted). Here, the President and Speaker first became aware that their interests would not be adequately represented on December 29, 2022, when recount results confirmed that Kris Mayes would become the Attorney General of Arizona.[6] Because this proceeding remains in its early stages and the Legislative Leaders only recently learned of their need to intervene, all relevant factors demonstrate that their motion is timely.

---

[6] Cohen, http://bit.ly/3Hywtbn (Dec. 29, 2022).

First, the motion is timely because this case remains in its early stages and merits briefing has not yet begun. The Supreme Court vacated this Court's original preliminary injunction on June 20, 2022, *Brnovich v. Isaacson*, 142 S. Ct. 2893 (2022), and this Court issued its order on Plaintiffs' renewed motion for a preliminary injunction on July 11, 2022, *Isaacson v. Brnovich*, No. CV-21-01417-PHX-DLR, 2022 WL 2665932 (D. Ariz. July 11, 2022). Dispositive motions are not due until July 14, 2023. Under these circumstances, timeliness is satisfied. *See, e.g.*, *Safari Club Int'l v. Jewell*, No. CV-16-00094-TUC-JGZ, 2016 WL 7786478, at *1 (D. Ariz. May 13, 2016) (finding motion to intervene timely when filed after issuance of a scheduling order and within three months of scheduled merits briefing); *Sawyer v. Bill Me Later, Inc.*, No. CV 10-04461 SJO (JCGx), 2011 WL 13217238, at *3-6 (C.D. Cal. Aug. 8, 2011) (finding timely a motion to intervene filed one year after the case started where the court had already ruled on a motion to dismiss and choice-of-law arguments and document discovery had recently begun, and noting that other "district courts in the Ninth Circuit have regularly found motions to intervene timely in cases where the stage of the proceedings had advanced further than the instant case"); *Acosta v. Huppenthal*, No. CV 10-623-TUC-AWT, 2012 WL 12829994, at *2 (D. Ariz. Feb. 6, 2012) (granting permissive intervention when motion was filed more than fourteen months after plaintiffs' complaint was filed, noting that "no discovery ha[d] taken place[,] . . . briefing on the parties' summary judgment motions [was] still ongoing . . . [and] . . . [t]he Court ha[d] yet to deeply engage with the substantive issues").

Second, the existing parties will not suffer any prejudice from the Legislative Leaders' intervention. The Ninth Circuit has emphasized that "one key principle guides our prejudice analysis: The only 'prejudice' that is relevant . . . is that which flows from a prospective intervenor's failure to intervene after he knew, or reasonably should have known, that his interests were not being adequately

represented." *Kalbers v. United States Dep't of Just.*, 22 F.4th 816, 825 (9th Cir. 2021) (quoting *Smith*, 830 F.3d at 857). In other words, courts may only consider the proposed intervenors' delay in filing a motion, and "the fact that including another party in the case might make resolution more difficult does not constitute prejudice." *Id.* The Legislative Leaders' motion is not prejudicial to the parties because the litigation remains in its early stages, summary judgment briefing has not yet begun, and the President and Speaker filed this motion just weeks after learning that Attorney General Mayes would take office.

Finally, the President and Speaker did not delay in filing this motion. This Court previously denied intervention by pro-life advocates on the basis that the *prior* Attorney General, Mark Brnovich, would adequately advance their interests and arguments. *See* ECF No. 83 at 2–3. The Legislative Leaders first learned that those interests and arguments may no longer be advanced when Attorney General Mayes's recount victory was announced on December 29, 2022. The Legislative Leaders contacted counsel and began work to intervene.

Attorney General Mayes was sworn in just weeks ago and she has not yet taken any action in this case. And because dispositive motions are not due for several months, there can be little question that this motion is timely. *See, e.g.*, *Ctr. for Biological Diversity v. U.S. Bureau of Land Mgmt.*, 266 F.R.D. 369, 373 (D. Ariz. 2010) (finding that motion to intervene as of right was timely when filed "approximately nine months after the case was filed and six months after the Amended Complaint"); *Georgia v. U.S. Army Corps of Eng'rs*, 302 F.3d 1242, 1259-60 (11th Cir. 2002) (finding motion to intervene as of right was timely even though intervenor knew of case for six months before moving to intervene, at which time "discovery was largely complete"); *Mille Lacs Band of Chippewa Indians v. State of Minn.*, 989 F.2d 994, 999 (8th Cir. 1993) (finding motion to intervene timely even

though filed "some eighteen months after suit had been commenced and nine months after the deadline for filing motions to add parties").

**B.  The President and Speaker have a significant protectable interest in this matter that may be practically impaired or impeded without their participation.**

Consistent with courts' liberal policy in favor of intervention, the Ninth Circuit has clarified that Rule 24(a)(2) does not require proposed intervenors to identify any specific statutory, legal, or equitable interest. *Wilderness Soc'y v. U.S. Forest Serv.*, 630 F.3d 1173, 1179 (9th Cir. 2011) (citation omitted). "Rather, it is generally enough that the interest is protectable under some law, and that there is a relationship between the legally protected interest and the claims at issue." *Id.* (cleaned up). When a proposed intervenor has a protectable interest, courts often "have little difficulty concluding that the disposition of a case may, as a practical matter, affect" their interest. *Cal. Ex rel. Lockyer v. United States*, 450 F.3d 436, 442 (9th Cir. 2006).

These standards are easily satisfied here. The State of Arizona has expressly authorized the President of the State Senate and the Speaker of the House of Representatives to intervene and file briefs in any case challenging the constitutionality of a state statute. A.R.S. § 12-1841(D). Simply put, when a state statute is challenged as unconstitutional, the Legislative Leaders "shall be entitled to be heard." *Id.* § 12-1841(A). For this reason, Arizona law requires plaintiffs challenging state statutes to notify the Speaker and President and provide information to facilitate their participation. *Id.* § 12-1841(A) & (B). Accordingly, the Legislative Leaders have a crucial interest—bestowed by the people of Arizona through their elected representatives in the Legislature—in defending the constitutionality of state statutes.

Consistent with the Legislative Leaders' rights under § 12-1841, the Arizona State Senate Rules authorize the President "to bring or assert in any forum on

9

behalf of the Senate any claim or right arising out of any injury to the Senate's powers or duties under the constitution or laws of this state." State of Arizona, *Senate Rules, 56th Legislature 2023-2024*, Rule 2(N), available at https://bit.ly/3WXFLDv. Likewise, the Arizona House of Representatives Rules authorize the Speaker "to bring or assert in any forum on behalf of the House any claim or right arising out of any injury to the House's powers or duties under the Constitution or Laws of this state." State of Arizona, *Rules of the Ariz. House of Representatives, 56th Legislature 2023-2024*, Rule 4(K), available at https://bit.ly/3HuL9bz. Accordingly, the Legislative Leaders do not merely speak for themselves; they speak on behalf of their respective houses of the Arizona Legislature as a whole.

The U.S. Supreme Court recently held that statutes like § 12-1841 endow legislative leaders with a protectable interest that would be impaired absent intervention. *Berger*, 142 S. Ct. at 2194. Like Arizona, North Carolina has a law that allows the leaders of its legislature to participate in proceedings challenging the constitutionality of state statutes. *Id.* at 2198 (citing N.C. GEN. STAT. ANN. § 1–72.2). The district court and Fourth Circuit denied the legislative leaders' motions to intervene, but the Supreme Court reversed. *Id.*

The Supreme Court began its analysis by reiterating that "States possess a legitimate interest in the continued enforcement of their own statutes," and that "States may organize themselves in a variety of ways." *Id.* at 2201 (cleaned up). When faced with a constitutional challenge, some states have organized themselves to mount a defense through the single voice of an attorney general. *Id.* at 2197. But "not every State has structured itself this way." *Id.* "Some have chosen to authorize multiple officials to defend their practical interests in cases like these." *Id.* Like Arizona, North Carolina "empowered the leaders of its two legislative houses to participate in litigation on the State's behalf under certain circumstances and with

counsel of their own choosing." *Id.* The Supreme Court noted that such an approach is "understandable" because, as here, a partisan attorney general may "oppose[] laws enacted by the [Legislature] and decline[] to defend them fully in federal litigation." *Id.*

The Supreme Court's teachings on this issue have been "many, clear, and recent." *Id.* at 2202. States are "free to empower multiple officials to defend its sovereign interests in federal court." *Id.* (quoting *Cameron v. EMW Women's Surgical Ctr., P.S.C.*, 142 S. Ct. 1002, 1011 (2022)) (cleaned up). A state "must be able to designate agents to represent it in federal court" and may authorize its legislature "to litigate on the State's behalf, either generally or in a defined class of cases." *Va. House of Delegates v. Bethune-Hill*, 139 S. Ct. 1945, 1951–52 (2019) (cleaned up). "The choice belongs to [the sovereign State]." *Id.* at 1952 (cleaned up). "[S]tate law may provide for other officials, besides an attorney general, to speak for the State in federal court as some States have done for their presiding legislative officers. *Id.* (citation omitted).

The Supreme Court recounted its prior decisions concluding that "state legislative leaders authorized under state law to represent the State's interests in federal court could defend state laws there as parties." *Id.* (citing *Karcher v. May*, 484 U.S. 72, 81–82 (1987)) (cleaned up). Indeed, intervention by legislative leaders is commonplace. *See, e.g., Horne v. Flores*, 557 U.S. 433, 443 (2009) (noting that the President of Arizona State Senate and Speaker of the Arizona House of Representatives were allowed to intervene); *Yniguez v. State of Ariz.*, 939 F.2d 727, 732 (9th Cir. 1991) ("[T]he Supreme Court held that state legislators who intervened in their official capacities to defend a lawsuit challenging the constitutionality of a statute" only lacked standing after they left office); *Powell v. Ridge*, 247 F.3d 520, 522 (3rd Cir. 2001) (granting legislative leaders' motion to intervene as defendants to "articulate to the Court the unique perspective of the

legislative branch of the Pennsylvania government"); *Clairton Sportsmen's Club v. Pa. Turnpike Comm'n*, 882 F. Supp. 455, 462-463 (W.D. Pa. 1995) (permitting intervention of state legislators to submit briefs and make arguments concerning the decision to build a highway system).

In *Berger*, the Supreme Court cautioned that "[a]ppropriate respect for these realities suggests that federal courts should rarely question that a State's interests will be practically impaired or impeded if its duly authorized representatives are excluded from participating in federal litigation challenging state law." 142 S. Ct. at 2201. "To hold otherwise," the Court reasoned, would (1) "evince disrespect for a State's chosen means of diffusing its sovereign powers among various branches and officials,"(2) "risk turning a deaf federal ear to voices the State has deemed crucial to understanding the full range of its interests," (3) "encourage plaintiffs to make strategic choices to control which state agents they will face across the aisle in federal court," and (4) "tempt litigants to select as their defendants those individual officials they consider most sympathetic to their cause or most inclined to settle favorably and quickly." *Id.* Taken together, this would "risk a hobbled litigation rather than a full and fair adversarial testing of the State's interests and arguments." *Id.*

"These principles and precedents are dispositive here." *Id.* at 2202. Like North Carolina, Arizona has expressly authorized the Legislative Leaders to intervene, participate, and file briefs to defend the constitutionality of state statutes. A.R.S. § 12-1841(D). And for good reason. Attorney General Mayes has publicly expressed her opposition to the challenged discriminatory-abortion law and has vowed not to enforce Arizona abortion laws. If the Speaker and President are not allowed to intervene, they will not be able to exercise their statutory right to mount a defense, and the duly enacted laws challenged here may receive no defense at all. Indeed, Attorney General Mayes could reach an agreement with the Plaintiffs

to "settle favorably and quickly." *Berger*, 142 S. Ct. at 2201. As the Supreme Court advised, federal courts should not second-guess who a State selects to represent its interests. *Id*. The Legislative Leaders have a statutorily granted interest in defending the challenged laws as intervenors.

To be sure, prior to *Berger*, one decision in this District held that "A.R.S. § 12-1841 does not confer blanket authority upon [the President of the State Senate and Speaker of the House of Representatives] to defend the constitutionality of a state law—particularly where the attorney general is already defending the law." *Miracle v. Hobbs*, 333 F.R.D. 151, 155 (D. Ariz. 2019). But *Miracle* is readily distinguishable because Attorney General Mayes will *not* vigorously defend the challenged statutes. More importantly, *Miracle* pre-dates the Supreme Court's decision in *Berger* and is therefore no longer valid. Notably, another decision in this District characterized *Miracle*'s holding as just one side of a then-still-disputed issue, presenting the matter as a "close call" that this Court had not yet "resolve[d]." *See Arizonans for Fair Elections v. Hobbs*, 335 F.R.D. 269, 274 (D. Ariz. 2020). Indeed, the Court recounted the plain language of § 12-1841 and noted that there is "force to the argument that, at least under Arizona law, the House Speaker and Senate President possess a unique stature that resembles that of the Attorney General and distinguishes them from a run-of-the-mill individual legislator whose generalized interest in defending the constitutionality of a statute would be insufficient to confer standing." *Id*.

To the extent that this District previously questioned the effect of A.R.S. § 12-1841, *Berger* definitively resolved that question in favor of intervention for legislative leaders. Because Arizona authorizes the Speaker and President to defend state statutes, they have a significant protectable interest that would be impaired if the Plaintiffs were to prevail and the laws are enjoined and declared unconstitutional.

13

### C.   The existing parties do not adequately represent the Legislative Leaders.

Courts consider three factors when determining whether existing parties adequately represent the interests of the proposed intervenor: "(1) whether the interest of a present party is such that it will *undoubtedly* make all of a proposed intervenor's arguments; (2) whether the present party is capable and willing to make such arguments; and (3) whether a proposed intervenor would offer any necessary elements to the proceeding that other parties would neglect." *Arakaki v. Cayetano*, 324 F.3d 1078, 1086 (9th Cir. 2003) (emphasis added). The Speaker and President must only show "that representation of [its] interest '*may be*' inadequate" to satisfy this element for intervention. *Trbovich v. United Mine Workers of Am.*, 404 U.S. 528, 538 n.10 (1972) (citation omitted) (emphasis added). And "the burden of making that showing should be treated as minimal." *Id.*

This Court previously denied a pro-life advocate's motion to intervene because, at that time, "Defendants and Sharing Down Syndrome share[d] the same ultimate objective—the preservation of the Reason Regulations and the Interpretation Policy." ECF No. 83 at 2. But all of that changed with the change of the administration to Attorney General Mayes. The Attorney General no longer shares pro-life advocates' "ultimate objective" of preserving the Reason Regulations. On the contrary, she has publicly stated that she believes the discriminatory abortion law is "unconstitutional" and "violate[s] Arizona's privacy clause."[7] She has also stated that she intends to refuse to enforce Arizona's abortion laws.[8] Clearly, Defendants and the President and Speaker do not "share the same ultimate objective."

---

[7] Associated Press, *U.S. Supreme Court: Arizona Can Enforce Genetic Issue Abortion Ban*, KTAR NEWS (June 30, 2022), https://bit.ly/3RvhRy5.
[8] Kris Mayes, 12 Point Plan, https://bit.ly/3DEiEHf.

1   Moreover, pro-life advocates' concern that Defendants may change their legal
2   position is no longer "speculative." Attorney General Kris Mayes has already
3   changed course in one Arizona abortion case,[9] and has promised to "reverse the
4   position of former Attorney General Brnovich and [] state that the State of Arizona
5   believes it is unconstitutional to ban abortion . . . ."[10] When it comes to Arizona's
6   abortion regulations, Attorney General Mayes admitted that there is a "big
7   difference" between her positions and those held by former Attorney General
8   Brnovich. *Id.* There is certainly a big difference between Attorney General Mayes'
9   position on the challenged laws and the position of the Legislative Leaders and
10   people of Arizona, on whose behalf they enacted those laws.

11   The Supreme Court has confirmed that intervention of right is warranted
12   where, as here, a proposed intervenor has raised "sufficient doubt about the
13   adequacy of representation[.]" *Trbovich*, 404 U.S. at 538. In *Trbovich*, the official
14   prosecuting the law was "performing his duties, broadly conceived, as well as can
15   be expected," but the Supreme Court recognized that the individual whose interests
16   were at stake may have valid concerns about deficiencies in the official's
17   representation and may not take "precisely the same approach to the conduct of the
18   litigation." *Id.* at 539. Intervention is even more appropriate here, where the
19   Attorney General's interests are directly contrary to those of the proposed
20   intervenor. The Legislative Leaders have a significant protectable interest in
21   defending the constitutionality of state statutes protecting the life and dignity of

---

25   [9] Greg Hahne, *Arizona Attorney General Kris Mayes Will Not Challenge Appellate Ruling on Territorial Abortion Law*, KJZZ (Jan. 3, 2023), https://bit.ly/40u4ORO.
26   [10] AZ Family Digital News Staff, *Attorney General Kris Mayes talks future of abortion in Arizona, rule of law*, ARIZONA'S FAMILY, https://bit.ly/3jsIyHc (Jan. 4. 2023) (discussion from 0:28 to 2:30).

15

unborn children, and that interest may be impaired by an order enjoining the challenged laws. The Speaker and President are entitled to intervention of right.

**II.     In the alternative, the Court should grant permissive intervention.**

In the alternative, and at a minimum, this Court should exercise its discretion to grant permissive intervention. Under Rule 24(b), courts may grant permissive intervention to anyone who "has a claim or defense that shares with the main action a common question of law or fact." A court's discretion in determining whether permissive intervention is appropriate may be guided by factors such as "the nature and extent of the intervenors' interest, their standing to raise relevant legal issues, the legal position they seek to advance, and its probable relation to the merits of the case." *Spangler v. Pasadena City Bd. of Educ.*, 552 F.2d 1326, 1329 (9th Cir. 1977). It "may also consider whether changes have occurred in the litigation so that intervention that was once denied should be reexamined, whether the intervenors' interests are adequately represented by other parties, whether intervention will prolong or unduly delay the litigation, and whether parties seeking intervention will significantly contribute to full development of the underlying factual issues in the suit and to the just and equitable adjudication of the legal questions presented." *Id.*

The Legislative Leaders' anticipated defense—that the challenged laws are constitutional—plainly shares common questions of law and fact with Plaintiffs' action. As explained above, *see supra* Sections I.B. and I.C, the President and Speaker have an important interest in defending the challenged laws, and the new attorney general has publicly expressed her view that the laws are unconstitutional, vowing to reverse the positions of former Attorney General Brnovich. Given these weighty interests and the apparent need for parties willing to defend the challenged laws, the Court should grant permissive intervention.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

## CONCLUSION

The Speaker and President have unique interests in defending legislation that the Attorney General will not protect. Intervention is therefore proper. Accordingly, the Legislative Leaders respectfully request that this Court grant them intervention as of right, or in the alternative, permissive intervention.

Respectfully submitted this 3rd day of February, 2023.

<div style="margin-left: 40%;">

<u>*s/Kevin Theriot*</u>
Kevin H. Theriot
AZ Bar No. 030446
Mark A. Lippelmann*
AZ Bar No. 036553
ALLIANCE DEFENDING FREEDOM
15100 N. 90th Street
Scottsdale, AZ 85260
(480) 444-0020
(480) 444-0028 facsimile
ktheriot@ADFlegal.org
mlippelmann@ADFlegal.org

*Attorneys for Proposed Defendant-Intervenors President Petersen and Speaker Toma*

*Admission forthcoming

</div>

1

**CERTIFICATE OF SERVICE**

2       I hereby certify that on February 3, 2023, I electronically filed the foregoing

3  paper with the Clerk of Court using the ECF system which will send notification of

4  such filing to all counsel of record.

5

6

7                         *s/ Kevin Theriot*
                          Kevin H. Theriot

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27