Jared G. Keenan (027068)
American Civil Liberties Union
Foundation of Arizona
3707 North 7th Street, Suite 235
Phoenix, Arizona 85014
Telephone: (602) 650-1854
jkeenan@acluaz.org
*Counsel for Plaintiffs*

Jessica Leah Sklarsky, *pro hac vice*
Gail Deady, *pro hac vice*
Catherine Coquillette, *pro hac vice*
Center For Reproductive Rights
199 Water Street, 22nd Floor
New York, NY 10038
Telephone: (917) 637-3600
jsklarsky@reprorights.org
gdeady@reprorights.org
ccoquillette@reprorights.org
*Counsel for Paul A. Isaacson, M.D., National Council of Jewish Women (Arizona Section), Inc. and Arizona National Organization for Women*

COUNSEL CONTINUED ON NEXT PAGE

**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF ARIZONA**

| | |
|---|---|
| Paul A. Isaacson, M.D., on behalf of himself and his patients, et al., <br><br> Plaintiffs, <br><br> v. <br><br> Kristin K. Mayes, Attorney General of Arizona, in her official capacity; et al., <br><br> Defendants. | Case No. 2:21-CV-1417-DLR <br><br> **PLAINTIFFS' RESPONSE IN OPPOSITION TO MOTION OF ARIZONA SENATE PRESIDENT PETERSEN AND SPEAKER OF THE ARIZONA HOUSE OF REPRESENTATIVES TOMA TO INTERVENE AS DEFENDANTS** |

Jen Samantha D. Rasay, *pro hac vice*
Center For Reproductive Rights
1634 Eye Street, NW, Suite 600
Washington, DC  20006
Telephone: (202) 628-0286
jrasay@reprorights.org

Beth Wilkinson, *pro hac vice*
Anastasia Pastan, *pro hac vice*
Wilkinson Stekloff LLP
2001 M Street, NW
10th Floor
Washington, DC 20036
Telephone: (202) 847-4000
bwilkinson@wilkinsonstekloff.com
apastan@wilkinsonstekloff.com

Ralia Polechronis, *pro hac vice*
Wilkinson Stekloff LLP
130 West 42nd Street 24th Floor
New York, NY 10036
Telephone: (212) 294-9410
rpolechronis@wilkinsonstekloff.com
*Counsel for Paul A. Isaacson, M.D., National Council of Jewish Women (Arizona Section), Inc. and Arizona National Organization for Women*

Alexa Kolbi-Molinas, *pro hac vice*
Rebecca Chan, *pro hac vice*
Ryan Mendías, *pro hac vice*
American Civil Liberties Union
125 Broad Street, 18th Floor
New York, NY 10004
Telephone: (212) 549-2633
akolbi-molinas@aclu.org
rebeccac@aclu.org
rmendias@aclu.org
*Counsel for Eric M. Reuss, M.D., M.P.H., and Arizona Medical Association*

# TABLE OF CONTENTS

INTRODUCTION .................................................................................................................. 1

ARGUMENT ......................................................................................................................... 2

I. The Proposed Intervenors have failed to satisfy Rule 24(a)(2)'s requirements for mandatory intervention……………………………………………………………….2

    A. The Proposed Intervenors failed to establish a significant protectable interest under S.B. 1457……………………………………………………………….3

    B. The Proposed Intervenors cannot establish a significant protectable interest under A.R.S. § 12-1841……..…………………………………………...5

        1. Under recent Supreme Court precedent, A.R.S. § 12-1841 lacks the features that create a significant protectable interest in legislative intervention………..……………………………………….5

        2. As a matter of statutory construction, A.R.S. § 12-1841 is inapplicable here…………………………………………………….8

II. This Court should deny the Proposed Intervenors' alternative request for permissive intervention…………………………………………………………..10

CONCLUSION ..................................................................................................................... 12

# TABLE OF AUTHORITIES

**CASES**

*Beckman Indus., Inc. v. Int'l Ins. Co.*, 966 F.2d 470 (9th Cir. 1992) .............................. 12

*Berger v. North Carolina State Conference of the NAACP*, 142 S. Ct. 2191 (2022) ........................................................................................................*passim*

*Boudette v. Barnette*, 923 F.2d 754 (9th Cir. 1991) ............................................................ 9

*Cal. Dep't of Toxic Substances Control v. Jim Dobbas, Inc.*, 54 F.4th 1078 (9th Cir. 2022) .................................................................................................... 2

*Canatella v. California*, 404 F.3d 1106 (9th Cir. 2005) ..................................................... 10

*Flowers-Carter v. Braun Corp.*, 530 F. Supp. 3d 818 (D. Ariz. 2021) .............................. 9

*Garcia v. JPMorgan Chase Bank NA*, No. CV-16-01023-PHX-DLR, 2018 WL 1570249 (D. Ariz. Mar. 30, 2018) ....................................................... 8

*Miracle v. Hobbs*, 333 F.R.D. 151 (D. Ariz. 2019) ........................................................ 6, 7

*Orange County v. Air Cal.*, 799 F.2d 535 (9th Cir. 1986) ............................................... 10

*Perry v. Proposition 8 Off. Proponents*, 587 F.3d 947 (9th Cir. 2009) ....................... 3, 10

*RadLAX Gateway Hotel, LLC v. Amalgamated Bank*, 566 U.S. 639 (2012) .............. 9, 10

*San Jose Mercury News, Inc. v. U.S. Dist. Ct. - N. Dist. (San Jose)*, 187 F.3d 1096 (9th Cir. 1999) ................................................................................ 10

*Santiago Salgado v. Garcia*, 384 F.3d 769 (9th Cir. 2004) ............................................... 9

*State v. Ariz. Bd. of Regents*, 507 P.3d 500 (2022) ........................................................... 8

*United States v. Arizona*, No. CV 10-1413-PHX-SRB, 2010 WL 11470582 (D. Ariz. Oct. 28, 2010) ...................................................................................... 8

*United States v. Mehrmanesh*, 689 F.2d 822 (9th Cir. 1982) .......................................... 10

*United States v. Navarro*, 160 F.3d 1254 (9th Cir. 1998) ................................................. 9

*Walker v. City of Scottsdale*, 786 P.2d 1057 (Ariz. Ct. App. 1989) ........................... 9, 10

**STATUTES**

A.R.S. § 12-1841 .........................................................................................................*passim*

A.R.S. § 1-219 ..................................................................................................................... 3

A.R.S. § 13-3603.02 ........................................................................................................... 3

A.R.S. § 36-2151 ................................................................................................................ 3

A.R.S. § 36-2157 ................................................................................................................ 3

A.R.S. § 36-2158 ................................................................................................................ 3

A.R.S. § 36-2161 ................................................................................................................ 3

A.R.S. § 41-193 .................................................................................................................. 7

N.C. Gen. Stat. Ann. § 120-32.6 ....................................................................................... 7

N.C. Gen. Stat. Ann. § 1-72.2 ........................................................................................... 6

S.B. 1457, 55th Leg., 1st Reg. Sess. (Ariz. 2021) ....................................................*passim*

**OTHER AUTHORITIES**

Ariz. Legis. Council, *The Arizona Legislative Bill Drafting Manual 2023-2024*, https://www.azleg.gov/alisPDFs/council/2023-2024_bill_drafting_manual.pdf ...................................................................... 3, 4

Pet'r's Resp. to Brs. of Amici Curiae, State ex rel. Brnovich v. Ariz. Bd. of Regents, 476 P.3d 307 (Ariz. 2020) (No. CV-19-0247-PR), 2020 WL 5746248 ............................................................................................................ 8

State of Ariz., *Rules of the Arizona House of Representatives, 56th Legislature 2023-2024*, Rule 8, https://www.azhouse.gov/alispdfs/AdoptedRulesofthe56thLegislature.pdf ............................................................... 4

State of Ariz., *Senate Rules, 56th Legislature 2023-2024*, Rule 2(J), https://www.azsenate.gov/alispdfs/SenateRules2023-2024.pdf ................................. 4

**RULES**

Fed. R. Civ. P. 24 ............................................................................................*passim*

**INTRODUCTION**

The motion to intervene of the President of the Arizona State Senate, Warren Petersen, and the Speaker of the Arizona House of Representatives, Ben Toma (together, "the Proposed Intervenors"), should be denied in its entirety. The Proposed Intervenors have ignored the requirements for intervention by legislators contained in the law they purport to defend, and, consequently, they have no significant protectable interest. Additionally, their request for permissive intervention should similarly be denied because it otherwise would allow the Proposed Intervenors to evade those express statutory requirements for legislative intervention. They are therefore not entitled to intervention as of right pursuant to Federal Rule of Civil Procedure 24(a)(2) *or* permissive intervention under Rule 24(b).

First, the Proposed Intervenors failed to follow the explicit requirements for intervention set out in the statute challenged in this lawsuit. The statute at issue specifies that the Arizona Legislature may, "by concurrent resolution," "appoint one or more of its members . . . to intervene as a matter of right in any case in which the constitutionality of this act is challenged." S.B. 1457 § 16, 55th Leg., 1st Reg. Sess. (Ariz. 2021) (the "Act"). There has been no concurrent resolution by the Arizona Legislature appointing either of the Proposed Intervenors, nor have they alleged as much. And, perhaps most strikingly, the Proposed Intervenors have every reason to be familiar with the statute's requirements: Proposed Intervenor "President Petersen was a co-sponsor of S.B. 1457, and personally advocated" for it, and Proposed Intervenor "Speaker Toma also personally advocated and voted for S.B. 1457." Mot. of Ariz. Sen. Pres. Petersen & Speaker of the Ariz. House of Reps. Toma to Intervene as Defs. & Mem. in Supp., ECF No. 155 ("Intervention Mot.") at 5. Their failure to adhere to the statutory intervention requirements for legislators is a sufficient basis to deny the Proposed Intervenors' motion.

Second, having failed to comply with the intervention requirements that they voted into Arizona law, the Proposed Intervenors instead assert that they have a significant protectable interest on the basis of an unrelated statute that applies to proceedings in

1

Arizona state court. But even if that general statute could confer a significant protectable interest—and, as explained *infra*, Part I.B.1., it does not—it would violate fundamental tenets of statutory construction to simply ignore the Arizona Legislature's more specific, later-in-time enactment specifying how a putative legislative intervenor is to establish such an interest. Thus, because they have not actually asserted any significant protectable interest, the Proposed Intervenors have not satisfied the requirements of Rule 24(a)(2).

Finally, the Proposed Intervenors' alternative request for permissive intervention should also be denied. While Rule 24(b) does not require the articulation of a significant protectable interest, the Proposed Intervenors' failure to follow the clear command of the Arizona Legislature should nonetheless doom their request. Put simply, allowing the Proposed Intervenors to intervene permissively would effectively nullify an enactment of the Arizona Legislature, permitting just two members to skirt the mandate of the entire body—and, by extension, the mandate of the "people of Arizona, on whose behalf they enacted those laws." Intervention Mot. at 15.

**ARGUMENT**

**I.   The Proposed Intervenors have failed to satisfy Rule 24(a)(2)'s requirements for mandatory intervention.**

In the Ninth Circuit, a district court must permit a non-party to intervene pursuant to Rule 24(a)(2) only when it demonstrates that "(1) it has a significant protectable interest as to the property or transaction that is the subject of the action; (2) the disposition of the action may, as a practical matter, impair or impede the applicant's ability to protect its interest; (3) the application is timely; and (4) the existing parties may not adequately meet the applicant's interest." *Cal. Dep't of Toxic Substances Control v. Jim Dobbas, Inc.*, 54 F.4th 1078, 1086 (9th Cir. 2022). As to the first factor, "at an irreducible minimum Rule 24(a)(2) requires that the asserted interest be protectable under some law and that there exist a relationship between the legally protected interest and the claims at issue. If these two core elements are not satisfied, a putative intervenor lacks any 'interest' under Rule 24(a)(2), full stop." *Id.* at 1088 (internal quotation marks and citation omitted).

"A putative intervenor has the burden of establishing all four requirements," *id.* at 1086, and the "[f]ailure to satisfy any one of the requirements is fatal to the application," *Perry v. Proposition 8 Off. Proponents*, 587 F.3d 947, 950 (9th Cir. 2009). Here, the Proposed Intervenors cannot satisfy the first requirement to demonstrate that they have a significant protectable interest in this action. Accordingly, the Proposed Intervenors' motion for intervention as of right should be denied, and the Court "need not reach the remaining elements." *Id.*

**A. The Proposed Intervenors failed to establish a significant protectable interest under S.B. 1457.**

The Proposed Intervenors readily acknowledge that they were central to the passage of S.B. 1457, *see* Intervention Mot. at 5, the enactment that codified into law the provisions at issue in this case. *See* S.B. 1457 § 1, A.R.S. § 1-219(A), incorporating A.R.S. § 36-2151(16) (the Interpretation Policy), §§ 2, 10, 11, 13, A.R.S. §§ 13-3603.02(A)(2), (B)(2), (D), (E), 36-2157(A)(1), 36-2158(A)(2)(d), 36-2161(A)(25) (the Reason Scheme). Despite their roles in sponsoring, advocating for, and ultimately passing S.B. 1457, the Proposed Intervenors nonetheless ignore the fact that the very enactment that they now seek to defend *expressly details the circumstances when legislative intervention may occur.* Those circumstances have not transpired.

Section 16 of S.B. 1457 provides that the Arizona Legislature may, "by concurrent resolution," "appoint one or more of its members . . . to intervene as a matter of right in any case in which the constitutionality of this act is challenged." S.B. 1457 § 16.[1] The

---

[1] Section 16 of S.B. 1457, which was, like the rest of the Act, passed by both houses of the Arizona Legislature and signed by the Governor, was not codified in the Arizona Revised Statutes and is therefore deemed a "temporary law." However, "[t]he fact that a law is temporary in nature and not codified in Arizona Revised Statutes does not mean that it is subordinate to statutory law. Any law that is enacted by the legislature has the same status as any other enacted law and may be enforced and applied according to its terms regardless of whether it has permanent or temporary effect." Ariz. Legis. Council, *The Arizona Legislative Bill Drafting Manual 2023-2024* § 2.2, https://www.azleg.gov/alisPDFs/council/2023-2024_bill_drafting_manual.pdf (emphasis in original). Furthermore, "[a]lthough a law may appear to be temporary in nature," unless a temporary law contains

3

members, who are appointed in their "official capacity," must have sponsored or cosponsored the Act. *Id.* Plaintiffs have lodged a constitutional challenge to several sections of S.B. 1457. Accordingly, § 16 applies, and a legislator may "intervene as a matter of right" only if they were appointed by a "concurrent resolution" voted on by the full Arizona Legislature.[2] The Proposed Intervenors' motion, however, disregards § 16 entirely and lacks any indication that the Proposed Intervenors have even attempted to fulfill these unambiguous requirements for legislative intervention. For example, Speaker Toma does not even appear to be eligible to serve as a legislative intervenor pursuant to § 16, as he was neither a "sponsor or cosponsor" of S.B. 1457.

If S.B. 1457 affords certain members of the Legislature a protectable interest in defending the constitutionality of the Act, it does so *only if* they are appointed by the Legislature by concurrent resolution. Any putative legislative intervenor's interest in defending the law is predicated on fulfillment of the conditions laid out in § 16. Here, the Proposed Intervenors have failed to follow the plain language of the law they ostensibly wish to defend. Consequently, they cannot claim a legally protectable interest under § 16 that could satisfy the requirements of Rule 24(a)(2).

---

a date of termination, "the law is subject to any continuing application that can be derived from its terms." *Id.* Thus, § 16 has the same force of law as any codified provision in the Act.

[2] A concurrent resolution "is processed through both houses but is not signed by the governor." *See* Ariz. Legis. Council, *The Arizona Legislative Bill Drafting Manual 2023-2024* § 3.1, https://www.azleg.gov/alisPDFs/council/2023-2024_bill_drafting_manual.pdf. The two houses of the Arizona Legislature impose significant procedural requirements on the passage of resolutions, including concurrent resolutions. For example, under Senate Rule 2, "[e]very . . . resolution . . . shall be referred by the President to one or more standing committees," where it is entitled to a hearing. State of Ariz., *Senate Rules, 56th Legislature 2023-2024*, Rule 2(J), https://www.azsenate.gov/alispdfs/SenateRules2023-2024.pdf; *see also* State of Ariz., *Rules of the Arizona House of Representatives, 56th Legislature 2023-2024*, Rule 8, https://www.azhouse.gov/alispdfs/AdoptedRulesofthe56thLegislature.pdf (prescribing process governing the passage of resolutions).

4

**B. The Proposed Intervenors cannot establish a significant protectable interest under A.R.S. § 12-1841.**

Ignoring the statutory requirements of § 16, the Proposed Intervenors instead attempt to rely on A.R.S. § 12-1841 for their purported protectable interest. This attempt fails for two reasons. First, the language in § 12-1841 does not satisfy the Supreme Court's latest articulation of the standard for demonstrating a "legally protectable interest" sufficient for legislative intervention. Second, privileging A.R.S. § 12-1841 over S.B. 1457 § 16 as the source of the Proposed Intervenors' protectable interest would violate well-established principles of statutory interpretation.

**1. Under recent Supreme Court precedent, A.R.S. § 12-1841 lacks the features that create a significant protectable interest in legislative intervention.**

The Proposed Intervenors lean heavily on the Supreme Court's recent decision in *Berger v. North Carolina State Conference of the NAACP*, 142 S. Ct. 2191 (2022), but the statute at issue in *Berger* differs markedly from § 12-1841 in several dispositive respects. For instance, unlike North Carolina's statute in *Berger*, § 12-1841 lacks any indication that the Speaker and President are authorized to intervene *on behalf of the State*. Nor does § 12-1841 explicitly contemplate intervention in federal proceedings—and may, in fact, not apply in federal court at all, *see infra* pages 7–8. And, while another North Carolina law made that state's legislative leaders necessary parties in any constitutional attack on a state statute, § 12-1841 does precisely the opposite.

In *Berger*, the Supreme Court made abundantly clear that the "dispositive" consideration in assessing legislators' claimed interest was whether a State had "empowe[red]" the putative intervenor "to defend its sovereign interests in federal court." 142 S. Ct. at 2202 (quoting *Cameron v. EMW Women's Surgical Ctr., P.S.C.*, 142 S. Ct. 1002, 1011 (2022)). That is, the putative legislative intervenor could show a protectable interest for purposes of Rule 24 because it demonstrated that the State had "designate[d]" it as an "agent[] to represent [the State] in federal court." *Id.* (quoting *Va. House of Delegates v. Bethune-Hill*, 139 S. Ct. 1945, 1951 (2019)).

1    The plain text of the North Carolina statute left little doubt that the legislative
2 intervenors had been so designated. That law provided that "the public policy of the State
3 of North Carolina" was that, "in any action in any federal court in which the validity or
4 constitutionality" of a state law "is challenged," "the General Assembly, jointly through
5 the Speaker of the House of Representatives and the President Pro Tempore of the Senate"
6 "*constitute the State of North Carolina*," along with the governor. N.C. Gen. Stat. Ann.
7 § 1-72.2(a) (emphasis added). The law explicitly asserted that, whenever "the State of
8 North Carolina is named as a defendant in such cases," the legislative leaders *were* the
9 State. *Id.* Moreover, under the North Carolina statute, "a federal court presiding over any
10 such action . . . is requested to allow . . . the legislative branch . . . of the State of North
11 Carolina to participate in any such action as a party." *Id.* The statute separately conferred
12 upon the Speaker of the House and Senate President "standing to intervene on behalf of
13 the General Assembly as a party in any judicial proceeding challenging a North Carolina
14 statute or provision of the North Carolina Constitution." *Id.* § 1-72.2(b). The clear directive
15 that the Speaker and the President shall "constitute the State of North Carolina" for the
16 purposes of defending the constitutionality of a state law "in any action in any federal
17 court," *id.* § 1-72.2(a), supported the conclusion that North Carolina had expressly
18 permitted the legislative intervenors "to speak for the State in federal court." *Berger*, 142
19 S. Ct. at 2202 (quoting *Hollingsworth v. Perry*, 570 U.S. 693, 710 (2013)).

20    In stark contrast, § 12-1841 does not specifically authorize the Speaker and
21 President to act as agents *for* the State in any court, let alone a federal one. Rather, § 12-
22 1841 merely provides that the Speaker and President are "entitled to be heard" in a
23 challenge to the constitutionality of any Arizona law. *See* A.R.S. § 12-1841(A); *see also*
24 *id.* § 12-1841(D) (legislative intervention is entirely discretionary); *Miracle v. Hobbs*, 333
25 F.R.D. 151, 155 (D. Ariz. 2019) (holding that § 12-1841 "does not confer blanket authority

6

upon Proposed Intervenors to defend the constitutionality of a state law").[3] The permissive nature of § 12-1841 is wholly distinct from the North Carolina statutory scheme that established a protectable interest in *Berger*. For instance, in North Carolina, "the Speaker of the House of Representatives and the President Pro Tempore of the Senate, *as agents of the State* through the General Assembly" are "necessary parties" "[w]henever the validity or constitutionality of an act of the General Assembly or a provision of the Constitution of North Carolina is the subject of an action in any . . . federal court." N.C. Gen. Stat. Ann. § 120-32.6(b) (emphasis added). In Arizona, however, § 12-1841 "shall not be construed to compel . . . the speaker of the house of representatives or the president of the senate to intervene as a party in any proceeding or to permit them to be named as defendants in a proceeding." A.R.S. § 12-1841(D); *see also Miracle*, 333 F.R.D. at 153 n.3 ("Subsection (D)" of § 12-1841 "clarifies that these . . . parties *may* intervene—not that they *must* be named as parties").[4]

Further, it is also far from obvious that § 12-1841 even applies in federal court. As an initial matter, § 12-1841 is located in the Arizona Uniform Declaratory Judgments Act, which applies only to actions brought in Arizona state courts. Indeed, the Attorney General has, in briefing before the Arizona Supreme Court, characterized § 12-1841 as "providing [an] intervention right *in state court*." Pet'r's Resp. to Brs. of Amici Curiae, State ex rel.

---

[3] The Proposed Intervenors claim that *Miracle* "pre-dates the Supreme Court's decision in *Berger* and is therefore no longer valid." Intervention Mot. at 13. But nothing in *Berger* invalidated the *Miracle* court's accurate observation that the text of § 12-1841 lacks anything conferring "blanket authority," 333 F.R.D. at 155, on the Proposed Intervenors to litigate on behalf of the State in any constitutional attack on an Arizona statute. *Berger*, as explained more fully above, *supra* pages 5–7, involved a North Carolina law that "expressly authorized the legislative leaders to defend the State's practical interests in litigation." *See* 142 S. Ct. at 2202. If anything, the dramatic differences between § 12-1841 and the North Carolina law that gave the legislative intervenors a protectable interest in *Berger* actually vindicate the court's reasoning in *Miracle*.

[4] In contrast to the Senate President and Speaker of the House, who are merely permitted to intervene in state court constitutional challenges if they so choose, the Attorney General is explicitly empowered—indeed, required—by Arizona law to "[r]epresent this state in any action in a federal court." *See* A.R.S. § 41-193(3).

7

Brnovich v. Ariz. Bd. of Regents, 476 P.3d 307 (Ariz. 2020) (No. CV-19-0247-PR), 2020 WL 5746248, at *25 n.16 (emphasis added). Thus, any "entitle[ment] to be heard," A.R.S. § 12-1841(A), is likely restricted to those actions challenging the constitutionality of state statutes *in state court* and could not give rise to a protectable interest that would compel mandatory intervention in a federal proceeding.

Irrespective of the Proposed Intervenors' specific rights to be heard under § 12-1841, there is simply no reading of that section that renders the Proposed Intervenors "duly authorized representatives" of the State in this federal proceeding. *Berger*, 142 S. Ct. at 2201.[5]

**2.  As a matter of statutory construction, A.R.S. § 12-1841 is inapplicable here.**

Regardless of whether § 12-1841 generally authorizes the Proposed Intervenors to litigate on behalf of the State in federal court, basic principles of statutory construction make clear that the applicable statute for assessing whether the Proposed Intervenors have a protectable interest in this case is § 16 of S.B. 1457 and not § 12-1841. It is a "well-settled principle that 'a specific statute governs over a general statute on the same subject and will control.'" *Garcia v. JPMorgan Chase Bank NA*, No. CV-16-01023-PHX-DLR, 2018 WL 1570249, at *6 (D. Ariz. Mar. 30, 2018) (Rayes, J.) (quoting *Lange v. Lotzer*, 727 P.2d 38, 39–40 (Ariz. Ct. App. 1986)). In addition, basic statutory construction principles provide that more recent legislative enactments "govern[] over . . . older, more general statute[s]." *State v. Ariz. Bd. of Regents*, 507 P.3d 500, 507 (2022) (citation omitted). Under these basic principles, it is clear that § 16 rather than § 12-1841 should frame the Court's analysis.

---

[5] To the extent that the Proposed Intervenors seek to intervene, not as designated State representatives, but as individual legislators involved in passing S.B. 1457, such involvement is insufficient to bestow upon them a significant protectable interest under Rule 24(a)(2). *See United States v. Arizona*, No. CV 10-1413-PHX-SRB, 2010 WL 11470582, at *2 (D. Ariz. Oct. 28, 2010) ("The Ninth Circuit Court of Appeals has observed that individual legislators do not have legally protectable interests in challenging or defending legislation sufficient to support intervention as a matter of right in the absence of some sort of actual personal injury." (citing *Newdow v. U.S. Congress*, 313 F.3d 495, 498–500 (9th Cir. 2002))).

8

Both § 16 and § 12-1841 discuss legislative intervention in certain classes of cases. However, because § 16 sets the standard for legislative intervention in cases alleging the unconstitutionality of S.B. 1457—*i.e.*, the gravamen of Plaintiffs' lawsuit—it is the far more specific, and thus governing, legislative enactment. Even if the Court were to credit the Proposed Intervenors' argument that § 12-1841 generally grants them a legally protectable interest in challenges to the constitutionality of Arizona statutes in state *and* federal court, it would not apply here, where § 12-1841 is necessarily "trumped by the more specific" § 16. *See Santiago Salgado v. Garcia*, 384 F.3d 769, 773–74 (9th Cir. 2004); *see generally Flowers-Carter v. Braun Corp.*, 530 F. Supp. 3d 818, 847 (D. Ariz. 2021) (collecting Arizona cases). In addition, § 16, as the "statute last in time," and the one specifically applicable to the subject matter of this case, "prevails as the most recent expression of the legislature's will" in any conflict with the older § 12-1841. *See Boudette v. Barnette*, 923 F.2d 754, 757 (9th Cir. 1991) (citation omitted).

The Supreme Court has explained that a fundamental reason underpinning the "general/specific canon" is to ensure that a more "general authorization," like § 12-1841, does not nullify "a more limited, specific authorization," like § 16, so that they can "exist side-by-side." *RadLAX Gateway Hotel, LLC v. Amalgamated Bank*, 566 U.S. 639, 645 (2012). Specifically, "the canon avoids . . . the superfluity of a specific provision that is swallowed by a general one, 'violat[ing] the cardinal rule that, if possible, effect shall be given to every clause and part of a statute.'" *Id.* (quoting *D. Ginsberg & Sons, Inc. v. Popkin*, 285 U.S. 204, 208 (1932) (alteration in original)); *see also United States v. Navarro*, 160 F.3d 1254, 1256 (9th Cir. 1998) (noting the "elementary tenet of statutory construction that . . . a specific statute will not be . . . nullified by a general one" (citation omitted)); *Walker v. City of Scottsdale*, 786 P.2d 1057, 1061 (Ariz. Ct. App. 1989) (Arizona courts are "forbidden to construe a statute in such a manner" as to render statutory text "surplusage"; "instead each word, phrase, clause, and sentence must be given meaning so that no part of the statute will be void, inert, redundant, or trivial."); *United States v.*

9

*Mehrmanesh*, 689 F.2d 822, 829 (9th Cir. 1982) ("We may not construe a statute so as to make any part of it mere surplusage.").

Here, if the Proposed Intervenors are correct, and the Court can determine whether they have a protectable interest on the basis of § 12-1841 alone, then they will have effectively nullified an entire section of S.B. 1457. While it may be more procedurally—or politically—straightforward for the Proposed Intervenors to ignore the actual text of S.B. 1457 and stake their claim to mandatory intervention on § 12-1841, doing so would impermissibly render § 16 "void, inert, redundant, or trivial." *See Walker*, 786 P.2d at 1061; *see also RadLAX Gateway Hotel, LLC*, 566 U.S. at 645–46 (explaining that a party may not avoid specific statutory requirements by resorting to the broad provisions of a more general statute). Indeed, if § 16 does not—despite its unambiguous language—dictate when certain legislators may be able to legislatively intervene in a constitutional challenge to S.B. 1457, then it is difficult to imagine why it exists at all.

In short, Proposed Intervenors' motion fails to assert any significant protectable interest. Their "[f]ailure to satisfy" even "one of the requirements [of Rule 24(a)(2)] is fatal" to their application for mandatory intervention. *Perry*, 587 F.3d at 950.

## II. This Court should deny the Proposed Intervenors' alternative request for permissive intervention.

"A motion for permissive intervention pursuant to Rule 24(b) is directed to the sound discretion of the district court." *San Jose Mercury News, Inc. v. U.S. Dist. Ct. – N. Dist. (San Jose)*, 187 F.3d 1096, 1100 (9th Cir. 1999). "Even if an applicant satisfies [the] threshold requirements, the district court has discretion to deny permissive intervention." *Canatella v. California*, 404 F.3d 1106, 1117 (9th Cir. 2005) (alteration in original) (citation omitted). The Court should exercise its "broad discretion" here to deny the Proposed Intervenors' alternative motion for permissive intervention. *See Orange County v. Air Cal.*, 799 F.2d 535, 539 (9th Cir. 1986). To do otherwise would allow just two members of Arizona's Legislature to flout the specific mechanism for legislative

intervenors to defend S.B. 1457 that the entire body—including both of the Proposed Intervenors—considered, debated, and enacted into law.

As the Supreme Court recognized in *Berger*, respect "for a State's chosen means of diffusing its sovereign powers among various branches and officials" may require "[p]ermitting the participation of *lawfully authorized* state agents." 142 S. Ct. 2201–02 (emphasis added). Arizona's "chosen means" for the defense of S.B. 1457 are abundantly clear from § 16 of the Act: The Legislature must pass a concurrent resolution appointing either a sponsor or cosponsor of the bill to intervene. This process ensures that the entirety of the Arizona Legislature has the opportunity to consider whether to authorize a member to intervene and to determine which of S.B. 1457's several cosponsors are best positioned to serve as intervenors.

Because the Proposed Intervenors failed to follow the procedure set forth in § 16, we do not know whether they would have been appointed by the Legislature to intervene in defense of S.B. 1457's constitutionality, nor is there any guarantee that the Legislature would have even deemed intervention appropriate at all. And, notably, the Speaker would not even have been eligible for the appointment because he was not a sponsor or cosponsor of the law. *See* S.B. 1457 § 16. Allowing the Proposed Intervenors to permissively intervene would remove the intervention decision from the hands of *all* of the people's elected representatives and give it to two individual legislators who have never been "lawfully authorized [as] state agents," *Berger*, 142 S. Ct at 2202. Doing so would "evince disrespect for a State's chosen means of diffusing its sovereign powers among various branches and officials." *Id.* at 2201. Those means *may* have been intervention by the sponsors or cosponsors of S.B. 1457 after appointment by the Arizona Legislature upon a concurrent resolution; but it is also possible that the Legislature determines no intervenor need be appointed at all and that the Attorney General's voice suffices.

While the Proposed Intervenors themselves argue that "federal courts should not second-guess who a State selects to represent its interests," Intervention Mot. at 13, that is precisely what the Proposed Intervenors seek to do here by circumventing the clear

11

requirements of § 16. To establish a significant protectable interest, § 16 requires the Legislature to consider, debate, and pass a concurrent resolution which both deems intervention appropriate and appoints certain members to represent the body. Here, the Proposed Intervenors seek to bypass the State's "chosen means" of "duly authoriz[ing] representatives" to participate "in federal litigation challenging state law," which is the exact result the Supreme Court sought to avoid in *Berger*. 142 S. Ct. at 2201. The Court should therefore refuse the Proposed Intervenors' invitation to skirt state law and the democratic process and deny their alternative request for permissive intervention.

If the Court is inclined to grant the Proposed Intervenors' motion, its order should make clear that they are permitted to intervene on behalf of themselves *as individual legislators*, and not as designated representatives of the State. *Cf. Beckman Indus., Inc. v. Int'l Ins. Co.*, 966 F.2d 470, 472 (9th Cir. 1992) (permitting intervention of non-party for limited purpose).

## CONCLUSION

The Proposed Intervenors have disregarded the Arizona Legislature's clear procedure for would-be legislative intervenors seeking to defend the constitutionality of S.B. 1457, and, instead, have alleged a significant protectable interest under a statute that provides no such thing. Accordingly, Plaintiffs respectfully request that this Court deny the motion to intervene in its entirety.

Respectfully submitted this 17th day of February, 2023.

By: */s/ Jessica Leah Sklarsky*

Jessica Leah Sklarsky, *pro hac vice*
Gail Deady, *pro hac vice*
Catherine Coquillette, *pro hac vice*
Center For Reproductive Rights
199 Water Street, 22nd Floor
New York, NY 10038
Telephone: (917) 637-3600
jsklarsky@reprorights.org
gdeady@reprorights.org
ccoquillette@reprorights.org
*Counsel for Paul A. Isaacson, M.D., National Council of Jewish Women (Arizona Section), Inc., and Arizona National Organization for Women*

Jen Samantha D. Rasay, *pro hac vice*
Center For Reproductive Rights
1634 Eye Street, NW, Suite 600
Washington, DC  20006
Telephone: (202) 628-0286
jrasay@reprorights.org
*Counsel for Paul A. Isaacson, M.D., National Council of Jewish Women (Arizona Section), Inc., and Arizona National Organization for Women*

Jared G. Keenan (027068)
American Civil Liberties Union Foundation of Arizona
3707 North 7th Street, Suite 235
Phoenix, AZ 85014
Telephone (602) 650-1854
jkeenan@acluaz.org
*Counsel for Plaintiffs*

COUNSEL CONTINUED ON NEXT PAGE

Alexa Kolbi-Molinas, *pro hac vice*
Rebecca Chan, *pro hac vice*
Ryan Mendías, *pro hac vice*
American Civil Liberties Union
125 Broad Street, 18th Floor
New York, NY 10004
Telephone: (212) 549-2633
akolbi-molinas@aclu.org
rebeccac@aclu.org
rmendias@aclu.org
*Counsel for Eric M. Reuss, M.D., M.P.H., and Arizona Medical Association*

Beth Wilkinson, *pro hac vice*
Anastasia Pastan, *pro hac vice*
Wilkinson Stekloff LLP
2001 M Street, NW
10th Floor
Washington, DC 20036
Telephone: (202) 847-4000
bwilkinson@wilkinsonstekloff.com
apastan@wilkinsonstekloff.com
*Counsel for Paul A. Isaacson, M.D., National Council of Jewish Women (Arizona Section), Inc., and Arizona National Organization for Women*

Ralia Polechronis, *pro hac vice*
Wilkinson Stekloff LLP
130 West 42nd Street
24th Floor
New York, NY 10036
Telephone: (212) 294-9410
rpolechronis@wilkinsonstekloff.com
*Counsel for Paul A. Isaacson, M.D., National Council of Jewish Women (Arizona Section), Inc., and Arizona National Organization for Women*

**CERTIFICATE OF SERVICE**

      I hereby certify that on February 17, 2023, I electronically transmitted the attached document to the Clerk's Office using the CM/ECF System for filing. All counsel of record are registrants and are therefore served via this filing and transmittal.

                          */s/ Jessica Leah Sklarsky*
                           Jessica Leah Sklarsky