Kevin H. Theriot
AZ Bar No. 030446
Mark A. Lippelmann
AZ Bar No. 036553
ALLIANCE DEFENDING FREEDOM
15100 N. 90th Street
Scottsdale, AZ 85260
(480) 444-0020
(480) 444-0028 facsimile
ktheriot@ADFlegal.org
mlippelmann@ADFlegal.org

*Attorneys for Proposed Defendant-Intervenors President Petersen and Speaker Toma*

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| PAUL A. ISAACSON. M.D., et al., <br><br> Plaintiffs, <br><br> v. <br><br> KRIS MAYES, Attorney General of Arizona, in her official capacity, et al., <br><br> Defendants, <br><br> WARREN PETERSEN, President of the Arizona State Senate, in his official capacity; BEN TOMA, Speaker of the Arizona House of Representatives, in his official capacity, <br><br> Proposed Intervenors. | Case No. 2:21-cv-01417-DLR <br><br> **REPLY IN SUPPORT OF MOTION TO INTERVENE** |

# TABLE OF CONTENTS

Table of Authorities ..................................................................................................... ii

Introduction.................................................................................................................. 1

Argument...................................................................................................................... 2

I.     The Legislative Leaders are entitled to intervention of right because they have a significant protectable interest. ...................................................... 2

     A.     The State of Arizona endowed the Legislative Leaders with an interest in defending laws via A.R.S. § 12-1841. ................................... 2

     B.     The Legislative Leaders' motion does not rely on Section 16 of S.B. 1457, but that law confirms their interest in this case. ................. 4

II.    In the alternative, the Court should grant permissive intervention. .............. 6

Conclusion ................................................................................................................... 7

Certificate of Service................................................................................................... 8

# TABLE OF AUTHORITIES

**Cases**

*Berger v. North Carolina State Conference of the NAACP*,
   142 S. Ct. 2191 (2022) .................................................................................. 1, 2, 3

*Epic Systems Corporation v. Lewis*,
   138 S. Ct. 1612 (2018) ........................................................................................... 4

*Spangler v. Pasadena City Board of Education*,
   552 F.2d 1326 (9th Cir. 1977) ............................................................................... 6

*United States v. Hernandez-Garcia*,
   44 F.4th 1157 (9th Cir. 2022) ................................................................................ 4

*Virginia House of Delegates v. Bethune-Hill*,
   139 S. Ct. 1945 (2019) ........................................................................................... 3

*Wilderness Society v. United States Forest Service*,
   630 F.3d 1173 (9th Cir. 2011) ............................................................................... 2

**Statutes**

A.R.S. § 12-1841 (2021) ............................................................................................ 2, 3

S.B. 1457 § 16, 55th Leg., 1st Reg. Sess. (Ariz. 2021) ............................................. 4, 5

**Rules**

Fed. R. Civ. P. 24 ...................................................................................................... 4, 6

*Rules of the Arizona House of Representatives, 56th Legislature 2023-2024*,
   available at https://bit.ly/3HuL9bz ...................................................................... 6

*Senate Rules, 56th Legislature 2023-2024*,
   available at https://bit.ly/3WXFLDv ................................................................... 5

**INTRODUCTION**

The President and the Speaker have a right to intervene, and the parties' responses confirm that no existing party will even try to defend the challenged laws. The Attorney General did not oppose intervention, admitted that she too challenges the constitutionality of the laws, and promised that she "will not defend the constitutionality of those laws going forward." *See* ECF No. 160. The Arizona Department of Health Services defendants and the Arizona Medical Board defendants also did not oppose intervention and stated that they will not actively participate to defend the challenged laws. *See* ECF Nos. 158, 161.

Only Plaintiffs oppose intervention, but they misunderstand the Legislative Leaders' motion and misstate the law establishing their interests in this litigation. To begin, even Plaintiffs do not dispute that the motion is timely, that existing parties will not adequately defend the laws, or that any interest in defending the laws would be practically impaired—indeed, annihilated—without intervention. Instead, Plaintiffs only argue that the Legislative Leaders lack an interest in this litigation. But their primary argument relates to a provision that the Legislative Leaders do not even rely on, and they try in vain to distinguish the U.S. Supreme Court's decision in *Berger v. N.C. State Conf. of the NAACP*, 142 S. Ct. 2191 (2022), which broadly controls when any state endows legislative leaders with authority to defend state laws, *see id.* at 2197–2202. The Legislative Leaders are entitled to intervention of right.

In the alternative, Plaintiffs do not dispute that the Legislative leaders satisfy all the requirements for permissive intervention. At a minimum, the Court should grant permissive intervention because the Legislative Leaders' defense shares common questions of law and fact with this action. Without intervention, this case would consist only of parties unwilling to defend the laws or the unborn children they protect. The Court should grant intervention.

1

# ARGUMENT

## I. The Legislative Leaders are entitled to intervention of right because they have a significant protectable interest.

Plaintiffs do not dispute that the Legislative Leaders' motion is timely, that no existing party will adequately defend the challenged laws, or that if the Legislative Leaders have an interest in defending the laws, it would be practically impaired absent intervention. So intervention is required so long as the Legislative Leaders have a significant protectable interest in this case. Consistent with courts' liberal policy in favor of intervention, the Ninth Circuit has clarified that Rule 24(a)(2) does not require proposed intervenors to identify any specific statutory, legal, or equitable interest. *Wilderness Soc'y v. U.S. Forest Serv.*, 630 F.3d 1173, 1179 (9th Cir. 2011) (citation omitted). "Rather, it is generally enough that the interest is protectable under some law, and that there is a relationship between the legally protected interest and the claims at issue." *Id.* (cleaned up). The Legislative Leaders have such an interest.

### A. The State of Arizona endowed the Legislative Leaders with an interest in defending laws via A.R.S. § 12-1841.

Plaintiffs do not dispute that "States possess a legitimate interest in the continued enforcement of their own statutes," or that Arizona is among the states that have "empowered the leaders of its two legislative houses to participate in litigation" to defend state laws against constitutional challenges. *Berger*, 142 S. Ct. at 2201, 2197 (cleaned up). Indeed, the State of Arizona expressly authorizes the Legislative Leaders to "intervene" and file briefs in any case challenging the constitutionality of state laws, ensuring that they "shall be entitled to be heard." A.R.S. § 12-1841(D), (A) (2021). For this reason, plaintiffs challenging state laws must notify the Legislative Leaders and facilitate their participation. *Id.* § 12-1841 (A) & (B).

2

1  Instead, Plaintiffs try in vain to distinguish *Berger* by grasping for
2 differences between the laws allowing legislative intervention in Arizona and North
3 Carolina. But this is wrong, and it misses the point. The Supreme Court's decision
4 in *Berger* did not rest on any particular nuance in the text of North Carolina's law.
5 *See* 142 S. Ct. 2201–03. Rather, what was important was that North Carolina's law
6 was one of many instances in which a state chose to authorize legislative leaders to
7 participate in defending its state laws. *Id.* And regardless of the state or the
8 particular statutory language used, the Supreme Court broadly reiterated that "a
9 State must be able to designate agents to represent it in federal court and may
10 authorize its legislature" if it so desires. *Id.* at 2202 (quoting *Va. House of Delegates*
11 *v. Bethune-Hill*, 139 S. Ct. 1945, 1951–52 (2019) (cleaned up)). "The choice belongs
12 to the sovereign State." *Id.* at 2202 (cleaned up).

13  Arizona's law is like North Carolina's law in this relevant respect. Plaintiffs
14 concede that the Legislative Leaders are "entitled to be heard," Pls.' Opp'n to Mot.
15 to Intervene 6, ECF No. 159, and the statute goes further, specifically authorizing
16 the President and the Speaker to "intervene as a party," A.R.S. § 12-1841 (D). To be
17 sure, they must satisfy all of the other requirements of Rule 24—none of which are
18 disputed here—but the statute creates a legal interest in intervention and
19 participation in lawsuits like this. The State's delegation of defense invokes the
20 Supreme Court's analysis in *Berger* and establishes a significant protectable
21 interest.

22  Next, Plaintiffs suggest that Section 12-1841 might only allow the Legislative
23 Leaders to intervene in state court actions. But the plain language of the statute
24 provides no such limitation, and broadly empowers the Legislative Leaders to
25 intervene "[i]n *any* proceeding in which a state statute . . . is alleged to be
26 unconstitutional . . . ." A.R.S. § 12-1841 (A) (emphasis added). And for good reason.
27 The State has an interest in defending its laws against constitutional challenges,

3

1 and it would make no sense to enact a statute only authorizing a defense in state
2 court while providing no defense against federal challenges equally capable of
3 striking down state laws. Section 12-1841 applies "in any proceeding," including
4 this federal lawsuit.

5       Finally, Plaintiffs ask this Court to ignore Section 12-1841 because another
6 statute *also* allows intervention in some cases (S.B. 1457 § 16, 55th Leg., 1st Reg.
7 Sess. (Ariz. 2021)), and Plaintiffs say that statute is more recent and specific. Opp'n
8 at 8–10. It is true that canons of statutory construction provide that *when two*
9 *statutes conflict*, specific or recent statutes can govern over more general or older
10 statutes. *United States v. Hernandez-Garcia*, 44 F.4th 1157, 1164 (9th Cir. 2022).
11 But there is no irreconcilable conflict between Section 12-1841 and S.B. 1457, and
12 Plaintiffs do not even argue that a conflict exists. Both permit intervention under
13 different circumstances, and the Legislative Leaders can invoke either using
14 different means. Indeed, the Supreme Court has recognized that a separate canon
15 prohibits reading conflicts into statutes whenever possible. *Epic Sys. Corp. v. Lewis*,
16 138 S. Ct. 1612, 1618 (2018). Because Plaintiffs have established no conflict between
17 the statutes, the cited canons do not apply, and the Court should not disregard the
18 interests created by Section 12-1841.

19       The State of Arizona has endowed the Legislative Leaders with a unique and
20 important right to intervene and participate in constitutional challenges, and under
21 *Berger*, they have a significant protectable interest. Because no party disputes the
22 other elements for intervention of right, "the court must permit" the Legislative
23 Leaders to intervene. FED. R. CIV. P. 24(a).

24       **B.**    **The Legislative Leaders' motion does not rely on Section 16 of S.B. 1457, but that law confirms their interest in this case.**
25       The Legislative Leaders' motion mainly relies on Section 12-1841 when
26 identifying their interest in defending the constitutionality of state laws. As
27

4

1 explained above, Section 12-1841 is alone sufficient to establish a significant
2 protectable interest.

3       Plaintiffs' opposition mainly concerns Section 16 of S.B. 1457, a separate
4 provision on which the Legislative Leaders' motion does not mainly rely. Opp'n at
5 3–4. That section provides that "[t]he Legislature, by concurrent resolution, may
6 appoint one or more of its members who sponsored or cosponsored this act in the
7 member's official capacity to intervene as a matter of right in any case in which the
8 constitutionality of this act is challenged." S.B. 1457 § 16. Plaintiffs concede that
9 President Petersen cosponsored S.B. 1457, but argue that the Legislative Leaders
10 are foreclosed from intervening without a concurrent resolution from the
11 Legislature. Opp'n at 4. Plaintiffs' argument fails for at least two reasons.

12       First, the Legislative Leaders' interest in this case is separately and
13 sufficiently established by Section 12-1841, so intervention is required *regardless* of
14 whether the requirements in Section 16 of S.B. 1457 are also satisfied. S.B. 1457
15 created *another* intervention right beyond those that already exist (under Section
16 12-1841 and elsewhere), as sponsors of bills seldom have such intervention rights.
17 Simply put, Section 16 of S.B. 1457 is one of many options available for intervention,
18 a reality confirmed by the fact that the law simply provides that the Legislature
19 "may" invoke Section 16 to appoint legislative intervenors. Nothing in S.B. 1457
20 suggests that Section 16 is the exclusive source of authority for intervention.

21       Second, in arguing that under Section 16 of S.B. 1457 the President and the
22 Speaker lack authority to intervene on behalf of the Legislature without a
23 concurrent resolution, Opp'n at 4, Plaintiffs overlook the fact that the Senate and
24 the House of Representatives recently amended their rules, expressly authorizing
25 the President and the Speaker to assert claims or rights "on behalf of" their
26 respective houses, *see Senate Rules, 56th Legislature 2023-2024*, Rule 2(N),
27 available at https://bit.ly/3WXFLDv; *Rules of the Ariz. House of Representatives,*

1  *56th Legislature 2023-2024*, Rule 4(K), available at https://bit.ly/3HuL9bz. Here,
2  the Legislative Leaders speak on behalf of the Legislature as a whole because they
3  assert rights and interests in defending state laws, which would be injured absent
4  intervention. Thus, even without a formal concurrent resolution, the practical
5  requirements of Section 16 are satisfied because the President and Speaker act on
6  behalf of their houses under the Legislature's new rules.

7  Because the Legislative Leaders have established an interest in defending
8  state laws under Section 12-1841, and because they speak on behalf of the
9  Legislature itself, the President and the Speaker are entitled to intervention.

10 **II.    In the alternative, the Court should grant permissive intervention.**

11 At a minimum, this Court should grant permissive intervention to ensure
12 actual adversity and a real defense on the merits. Under Rule 24(b), courts may
13 grant permissive intervention to anyone who "has a claim or defense that shares
14 with the main action a common question of law or fact." In determining whether
15 permissive intervention is appropriate, courts may consider "the nature and extent
16 of the intervenors' interest, their standing to raise relevant legal issues, the legal
17 position they seek to advance, and its probable relation to the merits of the case."
18 *Spangler v. Pasadena City Bd. of Educ.*, 552 F.2d 1326, 1329 (9th Cir. 1977). It "may
19 also consider whether changes have occurred in the litigation so that intervention
20 that was once denied should be reexamined, whether the intervenors' interests are
21 adequately represented by other parties, whether intervention will prolong or
22 unduly delay the litigation, and whether parties seeking intervention will
23 significantly contribute to full development of the underlying factual issues in the
24 suit and to the just and equitable adjudication of the legal questions presented." *Id.*

25 Plaintiffs do not dispute that the Legislative Leaders satisfy all the
26 requirements for permissive intervention. Nor could they. The Legislative Leaders'
27 defense—that the challenged laws are constitutional— shares common questions of

6

law and fact with this action. As explained above, the Legislative Leaders have an important interest in defending the challenged laws, and the other parties have publicly expressed that they will not defend the laws. Given these weighty interests and the need for parties willing to defend the challenged laws, the Court should grant permissive intervention.

## CONCLUSION

The Legislative Leaders have unique interests in defending legislation that the existing parties will not protect. Intervention is therefore proper. Thus, the Legislative Leaders respectfully request that this Court grant them intervention as of right, or in the alternative, permissive intervention.

Respectfully submitted this 24th day of February, 2023.

<u>s/Kevin Theriot</u>
Kevin H. Theriot
AZ Bar No. 030446
Mark A. Lippelmann
AZ Bar No. 036553
ALLIANCE DEFENDING FREEDOM
15100 N. 90th Street
Scottsdale, AZ 85260
(480) 444-0020
(480) 444-0028 facsimile
ktheriot@ADFlegal.org
mlippelmann@ADFlegal.org

*Attorneys for Proposed Defendant-Intervenors President Petersen and Speaker Toma*

7

**CERTIFICATE OF SERVICE**

I hereby certify that on February 24, 2023, I electronically filed this paper with the Clerk of Court using the ECF system which will send notification of such filing to all counsel of record.

*s/ Kevin Theriot*
Kevin H. Theriot
