Jared G. Keenan (027068)
American Civil Liberties Union
Foundation of Arizona
3707 North 7th Street, Suite 235
Phoenix, Arizona 85014
Telephone: (602) 650-1854
jkeenan@acluaz.org
*Counsel for Plaintiffs*

Jessica Leah Sklarsky, *pro hac vice*
Gail Deady, *pro hac vice*
Catherine Coquillette, *pro hac vice*
Center For Reproductive Rights
199 Water Street, 22nd Floor
New York, NY 10038
Telephone: (917) 637-3600
jsklarsky@reprorights.org
gdeady@reprorights.org
ccoquillette@reprorights.org
*Counsel for Paul A. Isaacson, M.D.,
National Council of Jewish Women
(Arizona Section), Inc. and Arizona
National Organization for Women*

COUNSEL CONTINUED
ON NEXT PAGE

**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF ARIZONA**

| | |
|---|---|
| Paul A. Isaacson, M.D., on behalf of himself and his patients, et al., <br><br> Plaintiffs, <br><br> v. <br><br> Kristin K. Mayes, Attorney General of Arizona, in her official capacity; et al., <br><br> Defendants. | Case No. 2:21-CV-1417-DLR <br><br> **PLAINTIFFS' SUPPLEMENTAL REPLY PURSUANT TO COURT'S ORDER (ECF NO. 175)** |

Jen Samantha D. Rasay, *pro hac vice*
Center For Reproductive Rights
1634 Eye Street, NW, Suite 600
Washington, DC  20006
Telephone: (202) 628-0286
jrasay@reprorights.org

Beth Wilkinson, *pro hac vice*
Anastasia Pastan, *pro hac vice*
Wilkinson Stekloff LLP
2001 M Street, NW
10th Floor
Washington, DC 20036
Telephone: (202) 847-4000
bwilkinson@wilkinsonstekloff.com
apastan@wilkinsonstekloff.com

Ralia Polechronis, *pro hac vice*
Wilkinson Stekloff LLP
130 West 42nd Street 24th Floor
New York, NY 10036
Telephone: (212) 294-9410
rpolechronis@wilkinsonstekloff.com
*Counsel for Paul A. Isaacson, M.D., National Council of Jewish Women (Arizona Section), Inc. and Arizona National Organization for Women*

Alexa Kolbi-Molinas, *pro hac vice*
Rebecca Chan, *pro hac vice*
Ryan Mendías, *pro hac vice*
Lindsey Kaley, *pro hac vice*
American Civil Liberties Union
125 Broad Street, 18th Floor
New York, NY 10004
Telephone: (212) 549-2633
akolbi-molinas@aclu.org
rebeccac@aclu.org
rmendias@aclu.org
lkaley@aclu.org
*Counsel for Eric M. Reuss, M.D., M.P.H., and Arizona Medical Association*

On September 28, 2021, this Court preliminarily enjoined Arizona's Reason Scheme, finding Plaintiffs were likely to succeed on the merits of their facial vagueness claim and met all the remaining factors for preliminary relief. After multiple rounds of briefing—from both the former Attorney General and Defendant-Intervenors—along with an appeal to the Ninth Circuit, nothing has emerged that could lead this Court to reach a different conclusion now.

Regardless of *Dobbs*, the Scheme is just as vague as it was before, *see* Prelim Inj. Order ("PI Order 1"), ECF No. 52, at 11–16. Plaintiffs' claim is still justiciable, *see Isaacson v. Mayes*, 84 F.4th 1089 (9th Cir. 2023). The Scheme still demands the most exacting vagueness review. Plaintiffs still need not meet the standard in *United States v. Salerno*, 481 U.S. 739, 745 (1987). And, Plaintiffs still demonstrate irreparable harm, regardless of whether abortion care is constitutionally protected. After enduring this unconstitutional law for more than a year, Plaintiffs urge the Court to grant their renewed motion for a preliminary injunction.

**I.     Plaintiffs Are Still Likely to Succeed on the Merits.**

    **A.     The Reason Scheme Cannot Escape the Most Stringent Review.**

Multiple factors determine the "degree of vagueness that the Constitution tolerates," including whether a law imposes "civil rather than criminal penalties"; whether a law "threatens to inhibit the exercise of constitutionally protected rights"; and whether a scienter requirement "mitigate[s] a law's vagueness." *Village of Hoffman Estates v. Flipside, Hoffman Ests., Inc.*, 455 U.S. 489, 498–99 & n.14 (1982).[1] Each demands stringency here. As this Court already correctly determined, the Scheme imposes severe criminal and civil penalties, discourages First Amendment-protected physician-patient speech, and the Scheme's *mens rea* requirement does nothing to save it. PI Order 1 at 11, 14, 28.

---

[1] Under *Kashem v. Barr*, 941 F.3d 358 (9th Cir. 2019), Defendant-Intervenors contend that the most stringent vagueness review is only appropriate in "exceptional circumstances." As explained *infra* Sec. I.B., *Kashem* has nothing to do with the stringency of review.

1

### 1. The Scheme Imposes Severe Criminal, Civil, and Licensure Penalties.

Attempting to sidestep the "most exacting scrutiny" that criminal laws plainly require, *see* Interp. Policy Prelim Inj. Order ("IP PI Order"), ECF No. 121, at 5–6, Defendant-Intervenors suggest that the Scheme is mostly civil. Def.-Ints.' Resp. Mot. Prelim. Inj. ("DI Suppl. Br."), ECF No. 176, at 6. But, as the Court already knows, *see* PI Order 1 at 11, the Scheme imposes severe criminal and quasi-criminal penalties.

Both the Solicitation and Performance Provisions impose severe criminal punishment. Indeed, the Court previously referred to these provisions collectively as the "Criminal Liability Provisions." PI Order 1 at 3. The Solicitation Provision is a class 3 felony, and the Performance Provision is a class 6 felony, punishable by up to 8.75 years' and up to two years' imprisonment, respectively. *See* A.R.S. §§ 13-3603.02, 13-702(D). And the Scheme's other provisions threaten extreme consequences, including the loss of medical licensure and the imposition of civil penalties. PI Order 1 at 11. Given this severity, due process demands the most exacting review, regardless of whether the Scheme inhibits constitutional rights, as discussed *infra*. *See Hoffman Ests.*, 455 U.S. at 498–99 (stringent review is necessary where the "consequences of imprecision" are more "severe").

### 2. The Scheme "Abut(s) Upon Sensitive . . . First Amendment Freedoms."

Courts are also especially vigilant in rooting out vagueness when a "statute 'abut(s) upon sensitive areas of basic First Amendment freedoms,'" to avoid inhibiting "the exercise of (those) freedoms." *Grayned v. City of Rockford*, 408 U.S. 104, 109 (1972). The Scheme's vagueness indisputably chills First Amendment-protected speech between Plaintiff Physicians and their patients, *see Conant v. Walters*, 309 F.3d 629, 637 (9th Cir. 2002); *see also* Glaser Decl. ¶¶ 18–21; Reuss Decl. ¶¶ 67, 72; Isaacson Decl. ¶ 54; Suppl. Isaacson Decl. ¶¶ 5–8; Suppl. Reuss Decl. ¶ 6; Suppl. Glaser Decl. ¶¶ 5–7; Order Denying Prelim. Inj. ("PI Order 2"), ECF No. 152, at 9–10.

Plaintiff Physicians' uncontested declarations highlight how uncertainty about the meaning of this law discourages their conversations with patients by instilling fear that they

will learn circumstantial evidence that will force them to deny care, even if it is arguably permitted.[2] Similarly, Plaintiff Physicians who do not even offer, but refer for abortion care fear they may be prosecuted under Arizona's facilitation statutes should the abortion provider be arbitrarily prosecuted under the Scheme—perhaps based on their referral alone. Suppl. Glaser Decl. ¶¶ 5–7; *see also* Suppl. Reuss Decl. ¶ 6; Suppl. Isaacson Decl. ¶¶ 5–6. Likewise, the Scheme chills patients' speech with their doctors—curtailing the open and honest dialogue needed most in these complex situations. Suppl. Reuss Decl. ¶¶ 5–6; Suppl. Isaacson Decl. ¶¶ 7–8; Glaser Decl. ¶¶ 18–21; PI Order 1 at 22, 28.

These impacts on First Amendment-protected speech are not undermined because Plaintiffs no longer press a First Amendment claim and regardless of whether Plaintiff Physicians' inhibited speech constitutes the Article III injury of "self-censorship." Indeed, "it is exceedingly unlikely that *Hoffman Estates* intended to reserve exacting scrutiny for enactments already adjudged to violate the Constitution—an approach that would render 'constitutional' vagueness review duplicative of ordinary constitutional adjudication." Daniel B. Rice, *Reforming Variable Vagueness*, 23 U. Pa. J. Const. L. 960, 990 (2021).

Thus, Plaintiffs' uncontested showing that the Scheme threatens to "inhibit[] the exercise of" First Amendment rights, *see* PI Order 2 at 9—even absent an explicit violation of those rights—independently demands the most stringent review. *See Grayned*, 408 U.S. at 109; *Conant*, 309 F.3d at 637.

### 3. The Scienter Requirement Does Not Mitigate the Scheme's Vagueness.

Defendant-Intervenors lastly suggest that the Scheme deserves only cursory review because it contains a scienter requirement. DI Suppl. Br. at 6–8. As the Supreme Court has made clear, the existence of a scienter requirement "*may* mitigate a law's vagueness" when, unlike here, the law requires a defendant to know their conduct is proscribed. *See Hoffman Ests.*, 455 U.S. at 499 & n.14; *see also Boyce Motor Lines v. United States*, 342 U.S. 337,

---

[2] Unfortunately, more conversation will not mitigate this issue, as the Court suggested, PI Order 2 at 10 n.7, because the Scheme fails to provide physicians and law enforcement with clear guidelines to determine who may receive care. *See id.* at 15–16; *infra* Sec. I.C.

3

342 (1952); *Screws v. United States*, 325 U.S. 91, 101–03 (1945); *Planned Parenthood Sw. Ohio Region v. DeWine*, 696 F.3d 490, 505 (6th Cir. 2012); *see also* Reply Supp. Prelim. Inj. ("Pls.' Reply"), ECF No. 129, at 9; Pls.' Opp. Stay, ECF No. 63, at 8 n.7; Reply Supp. Prelim. Inj., ECF No. 48, at 9. As Defendant-Intervenors acknowledge, the Reason Scheme's *mens rea* requirement offers no such protection, and, thus, plainly does not mitigate the Scheme's vagueness nor justify less stringent review. *See* DI Suppl. Br. at 11 (noting that Arizona's definition of "knowingly" explicitly "does not require any knowledge of unlawfulness of the act or omission").

Moreover, Defendant-Intervenors' reliance on Judge Thapar's partial dissent to the vacated Sixth Circuit opinion in *Memphis Center for Reproductive Health v. Slatery*, 14 F.4th 409 (6th Cir. 2021) is misplaced—for reasons beyond its lack of precedential value. DI Suppl. Br. at 7–8.[3] First, Supreme Court and Ninth Circuit precedent establish that vagueness is not alleviated by requiring someone to "know" something when it is unclear what must be known. *See, e.g.*, *Boyce Motor Lines*, 342 U.S. at 342; *Screws*, 325 U.S. at 101–03; *Gallardo v. Lynch*, 818 F.3d 808, 821 (9th Cir. 2016); *see also Nova Records, Inc. v. Sendak*, 706 F.2d 782, 789 (7th Cir. 1983) ("A scienter requirement cannot eliminate vagueness, therefore, if it is satisfied by an 'intent' to do something that is in itself ambiguous."). Second, Judge Thapar's dissent does not disagree, but instead argues that determining whether a patient is seeking an abortion "because of" a Down syndrome diagnosis is not impermissibly subjective. *See Slatery*, 14 F.4th at 459–61. This Court previously, *see* PI Order 1 at 14, and rightly, *see infra* Sec. I.C, disagreed with Judge Thapar. Regardless, Arizona's Scheme contains several additional layers of ambiguity (not present in Tennessee) that render what physicians must "know" too subjective anyway.[4]

---

[3] Judge Thapar's dissent has also never been vindicated. Neither the district court's nor the Sixth Circuit panel's opinion was ever overruled. Plaintiffs voluntarily dismissed their claims—in the face of opposition from defendants—because the law was poised to be superseded by Tennessee's Trigger Ban after *Dobbs*. *See* Order Dismissing Case, *Memphis Ctr. for Reprod. Health v. Slatery*, No. 3:20-cv-00501 (M.D. Tenn. July 28, 2022).

[4] Unlike Arizona, Tennessee's law employs one motivational standard ("because of"); applies to only one condition (Down syndrome), and requires knowledge throughout, *see* Tenn Code. Ann. § 39-15-217.

4

### B.     Plaintiffs Need Not Show the Scheme is Vague in Every Application.

The Supreme Court in *Johnson v. United States*, 576 U.S. 591, 595 (2015), and *Sessions v. Dimaya*, 138 S. Ct. 1204, 1223 (2018), "expressly rejected the notion that a statutory provision survives a facial vagueness challenge merely because some conduct clearly falls within the statute's scope." *Guerrero v. Whitaker*, 908 F.3d 541, 544 (9th Cir. 2018); *see also* Pls.' Suppl. Br., ECF No. 146, at 4–5, 8–10; Pls.' Suppl. Reply, ECF. No. 149, at 3. Defendant-Intervenors argue that Plaintiffs must satisfy *Salerno* and show that the Scheme "is vague in all its applications" for facial relief, based on an erroneous theory that the Ninth Circuit's decision in *Kashem* limits *Johnson* and *Dimaya*'s holding to "exceptional circumstances." *See* DI Suppl. Br. at 5. This misreads *Kashem*.[5]

*Kashem* merely explains that *Johnson* and *Dimaya*'s holding—with respect to *when* facial relief is appropriate—did not disrupt the longstanding prudential principle regarding *who* may bring a facial challenge. *See* Pls.' Suppl. Br. at 4–5; Pls.' Suppl. Reply at 3; *Kashem*, 941 F.3d at 375–76. *Kashem* holds that—**post-enforcement**—where the statute clearly applied to the defendant's charged conduct, a defense that the statute is unconstitutional because it "may conceivably be applied unconstitutionally to others" in "other situations not before the court" arguably runs afoul of the principle that "constitutional rights are personal and may not be asserted vicariously." 941 F.3d at 375–76.[6]

There are no such prudential concerns here—**pre-enforcement**—where Plaintiffs claim that the Scheme's vagueness violates their *own* procedural due process rights by failing to provide adequate guidance and begetting arbitrary enforcement. Reuss Decl.

---

[5] Plaintiffs aver that the Court adopted this misreading of *Kashem* in its first preliminary injunction order, but correctly declined to apply *Salerno* regardless based on its finding of "exceptional circumstances." PI Order 1 at 10.

[6] Indeed, this is the only viable reading of *Kashem*, as the Ninth Circuit may not "narrow[]," PI Order 1 at 10, the Supreme Court's clear holdings in *Johnson* and *Dimaya* regarding *when* facial relief is appropriate. *See Rodriguez de Quijas v. Shearson/Am. Exp., Inc.*, 490 U.S. 477, 484 (1989).

5

¶¶ 68–71; Glaser Decl. ¶¶ 15–16; Isaacson Decl. ¶¶ 31–34, 36–43, 57, 59, 63; Suppl. Reuss Decl. ¶¶ 5, 7; Suppl. Glaser Decl. ¶¶ 5–6; Suppl. Isaacson Decl. ¶¶ 4–5. As such, the *Salerno* standard does not apply—even in the absence of "exceptional circumstances."

### C. The Scheme Does Not "Clearly Apply Without Vagueness or Imprecision" to a "Substantial Range of Conduct."

To survive a facial challenge, a law must "clearly apply without vagueness or imprecision" to a "substantial range of conduct." *Parker v. Levy*, 417 U.S. 733, 754 (1974); *see also* DI Suppl. Br. at 8 (indicating that, under Ninth Circuit precedent, the Scheme "needs to be clear in the vast majority of its intended applications" to survive facial review). Merely "some" clear applications are insufficient. *Johnson*, 576 U.S. at 602–03; *see also Guerrero*, 908 F.3d at 544; *United States v. Cook*, 970 F.3d 866, 875 (7th Cir. 2020).

Consistent with this Court's own holding, *see* PI Order 1 at 11–16, the Scheme fails this standard because it does not make clear (1) what fetal conditions are included within its definition of "genetic abnormality"; (2) what role a fetal condition must play in a patient's decision-making; (3) how physicians are to assess a patient's subjective motivations for seeking abortion care; (4) what level of knowledge a physician must possess about a patient's prohibited motivation; and (5) what circumstantial evidence ultimately could be used to prove the physician possessed this unclear level of knowledge. *See* Pls.' Mot. Prelim. Inj., ECF No. 10, at 14–18; Pls.' Renewed Mot. for Prelim. Inj., ECF No. 125, at 11–14; Pls.' Reply at 6–8. Like the former Attorney General, Defendant-Intervenors offer no viable explanation that could clarify the Scheme and instead ask the Court to ignore their own prior inconsistent interpretations, Supreme Court precedent, and the Scheme's multiple layers of ambiguity.

Contrary to both the former Attorney General's repeated admonitions[7] and

---

[7] S*ee, e.g.*, Oct. 25, 2022 Oral Arg. Tr. ("Oct. Tr."), ECF No. 144, at 64–67; Defs.' Resp. Renewed Mot. at 12–16; Sept. 22, 2021 Oral Arg. Tr., ECF No. 61, at 50, 56, 58, 70–73; Resp., ECF No. 46, at 2, 8–12, 16, 20.

Defendant-Intervenors' own representations to the Ninth Circuit and the media[8]—that the Scheme *only applies* when a patient tells the physician that the abortion is sought "solely because" of a "genetic abnormality"—Defendant-Intervenors now suggest each provision should be read alone such that the Solicitation Provision prohibits care sought for several reasons. *See* DI Suppl. Br. at 12. This extreme discordance only highlights how the Scheme fails to provide adequate notice and begets arbitrary enforcement.

Furthermore, Defendant-Intervenors' piecemeal reading contradicts Supreme Court guidance requiring statutory language to be considered "in [its] context" with "a view to [its] place in the overall statutory scheme," rather than "in a vacuum." *Davis v. Michigan Dep't of Treasury*, 489 U.S. 803, 809 (1989). Thus, the Court must consider how the interplay between each of the Scheme's provisions impacts its overall clarity. S*ee* Pls.' Suppl. Br. at 5–8; *see also Johnson*, 576 U.S. at 603 ("The phrase 'shades of red,' standing alone, does not generate confusion or unpredictability; but the phrase 'fire-engine red, light pink, maroon, *navy blue*, or colors that otherwise involve shades of red' assuredly does.").

In any event, even if the Court improperly reads each provision in isolation, the Scheme's vagueness remains. *First*, an isolated reading does not clarify the Scheme's definition of "genetic abnormality." *See* PI Order 1 at 12–14. Defendant-Intervenors double down on the former Attorney General's indefensible explanation, Oct. Tr. at 66–67, that the definition is irrelevant because all that matters is the patient's belief, DI Suppl. Br. at 9–10. But an abortion cannot be sought "because of" or "solely because of" a "genetic abnormality" where none exists—even if a patient incorrectly believes that one does exist. In either case, the source of a patient's motivation is a mistaken belief—not a "genetic

---

[8] *See, e.g.*, DI Suppl. Br. at 13–14; Ninth Circuit Court of Appeals, *Paul Isaacson v. Kristin Mayes, No. 23-15234*, at 36:38–37:22 (Sept. 11, 2023), https://www.ca9.uscourts.gov/media/video/?20230911/23-15234; Howard Fischer, *GOP Lawmakers' Lawyers Ask Court to Block Bid to Delay Genetic Defects Abortion Ban*, Daily Independent (Sept. 11, 2023, 3:13 P.M.), http://tinyurl.com/59zwdpxj.

abnormality." This explanation also requires the Court to view the Scheme's definitions as largely superfluous—contrary to Arizona law, which, "consistent with ordinary principles of statutory interpretation, requires that each word, phrase, clause, and sentence of a statute . . . be given meaning so that no part will be void, inert, redundant, or trivial." *Chicanos Por La Causa, Inc. v. Napolitano*, 558 F.3d 856, 868 (9th Cir. 2009), *aff'd sub nom. Chamber of Com. v. Whiting*, 563 U.S. 582 (2011) (cleaned up). It also leads to nonsensical results.[9] Defendant-Intervenors' explanation is so far afield from what a "person of ordinary intelligence" would predict that it only underscores the lack of fair notice and potential for arbitrary enforcement.

*Second*, Defendant-Intervenors do not explain whether physicians must have "actual knowledge" regarding their patient's prohibited motivation, as the Solicitation and Performance Provisions suggest, or whether they must have "no knowledge," as the Affidavit Provision suggests. *See* A.R.S. §§ 13-3603.02(A)(2), (B)(2); 36-2157(A)(1). Nor do Defendant-Intervenors explain why, under the Notification Provision, the physician would be required to lie and tell any patient "diagnosed with a nonlethal fetal condition" that Arizona law "prohibits abortion . . . because of a genetic abnormality," *see id.* § 36-2158(A)(2)(d), when, under Defendant-Intervenors' interpretation, the patient may seek care regardless of their reason, and a physician is only prohibited from providing care "because of a genetic abnormality" if they are paid to do so. DI Suppl. Br. at 12. Given that both the Affidavit and Notification Provisions must be satisfied before a physician can provide abortion care, it is simply untenable to suggest that the Scheme's multiple inconsistencies are rectified by reading each provision alone.

*Third*, Defendant-Intervenors' explanation regarding why the Solicitation and

---

[9] Why would the Scheme's definitions be premised on doctors' "specialized knowledge," *see* DI Suppl. Br. at 10, if it is only the patient's belief that matters? Indeed, does this mean that a patient's belief that a fetal condition is "lethal" renders the statute inapplicable under the definition's exception?

8

Performance Provisions are clear given the definitions of "solely because of" and "because of," *see* DI Suppl. Br. at 11–12, misses the point. It assumes that a physician receives complete and honest disclosure from their patients to determine whether a fetal condition was a "sole" or "but for" cause for the patient's decision; and, that liability under the Scheme only attaches with such explicit disclosures. Both assumptions are wrong. As this Court already concluded, the Scheme may be triggered without explicit patient disclosure, *see* PI Order 1 at 15 (citing *State v. Noriega*, 928 P.2d 706, 710 (Ariz. Ct. App. 1996)), and it encourages patients with potentially prohibited motivations "to conceal this information from or lie to [their] doctor." *Id.* at 28; *see also id.* at 22, 24. The Scheme forces doctors— along with law enforcement, prosecutors, judges, and juries—to assess a patient's subjective motivations based on the circumstances surrounding a patient's care which, in "many realistic scenarios," could cause one to "infer a patient's motive for terminating a pregnancy, even though the patient might not have explicitly disclosed that information." *Id.* at 13. As this Court rightly concluded, tying severe criminal and civil penalties to such a subjective determination regarding another's motivations—without guidance on how to perform that assessment—impermissibly "rel[ies] on the discretion of 'police officers, prosecutors, and judges' to essentially define the crimes that Arizona's legislature has created." *Id.* at 15–16 (quoting *Knox v. Brnovich*, 907 F.3d 1167, 1182 (9th Cir. 2018)); *see also Johnson*, 576 U.S. at 601.

*Finally*, Defendant-Intervenors' argument that Plaintiffs' vagueness claim fails because they have not presented evidence of arbitrary enforcement since Arizona's and "ten other States[']" similar bans have gone into effect, DI Suppl. Br. at 13–14, is a red herring. Since the Scheme went into effect, Plaintiffs have engaged in significant overcompliance to avoid as best they can the possibility of prosecution. Suppl. Isaacson Decl. ¶¶ 4–6; Suppl. Reuss Decl. ¶¶ 5–6; Suppl. Glaser Decl. ¶¶ 5–7; *see also* Reuss Decl. ¶¶ 65–73; Isaacson Decl. ¶¶ 28–63; Glaser Decl. ¶¶ 19–21; *cf. Isaacson*, 84 F.4th at 1099–

9

1100 (recognizing that history of prosecution is unlikely where Plaintiffs have attempted to eliminate threat of prosecution). The lack of evidence from "ten other States" is even less relevant. In seven, abortion has been completely banned—for nearly any reason.[10] In the other three, the laws are demonstrably different than Arizona's—limiting their application to Down syndrome and utilizing one motivational standard.[11]

In short, nothing offered by the former Attorney General or Defendant-Intervenors reasonably distills any standard to guide Plaintiffs' conduct or prevent arbitrary enforcement.

## II. Plaintiffs Still Meet All Other Factors for Relief.

Although it is "well established that the deprivation of constitutional rights 'unquestionably constitutes irreparable injury.'" *Melendres v. Arpaio*, 695 F.3d 990, 1002 (9th Cir. 2012) (quoting *Elrod v. Burns*, 427 U.S. 347, 373 (1976)); *see also* PI Order 1 at 29; IP PI Order at 15, Defendant-Intervenors attempt to cast aside Plaintiffs' constitutional due process injuries by characterizing them as only "economic," DI Suppl. Br. at 15–16. Contrary to the Ninth Circuit's and this Court's holdings, Defendant-Intervenors conflate the violation of Plaintiffs' constitutional rights with their distinct Article III economic injuries, *Isaacson*, 84 F.4th at 1096; *Valle del Sol Inc. v. Whiting*, 732 F.3d 1006, 1029 (9th Cir. 2013); IP PI Order at 15,[12] and invite the Court to decline to find irreparable harm in the face of a likely constitutional violation.

Although Defendant-Intervenors misleadingly suggest otherwise, none of their cited

---

[10] *See* Ark. Code Ann. §§ 5-61-301–04; Ind. Code § 16-34-2-1; Ky. Rev. Stat. § 311.772; La. Stat. Ann. §§ 40.87.7, 14.87.8, 40:1061; S.D. Codified Laws § 22-17-5.1; Tenn. Code Ann. § 39-15-213.

[11] *See* N.C. Gen. Stat. § 90-21.121 (restricting abortion only if sought "in whole or in part, because of" Down syndrome); Ohio Rev. Code Ann. § 2919.10 (same); Utah Code Ann. § 76-7-302.4 (restricting abortion where "sole reason" is Down syndrome).

[12] Defendant-Intervenors' contention that Plaintiffs must sue "Defendants in their individual capacities to avoid the Eleventh Amendment" or sue for damages in state court to redress the ongoing economic injuries, DI Suppl. Br. at 16, is inapposite given both the constitutional and other irreparable harms present here.

cases make this leap. Instead, each case cited by Defendant-Intervenors finds an unlikelihood of success on the merits, *see Apartment Ass'n of Los Angeles Cnty., Inc. v. City of Los Angeles*, 500 F. Supp. 3d 1088, 1100 (C.D. Cal. 2020), *aff'd*, 10 F.4th 905 (9th Cir. 2021); *Keyoni Enters., LLC v. County of Maui*, No. 15-00086, 2015 WL 1470847 (D. Haw. Mar. 30, 2015), or harm isolated to damages, *see Amwest Sur. Ins. Co. v. Reno*, 52 F.3d 332, 1995 WL 230357 (9th Cir. 1995) (unpublished).

Regardless, irreparable harm need not be constitutional harm, and as the Court recognized, the Scheme's vagueness chills the provision of time-sensitive abortion care, PI Order 1 at 23–25, and "visit[s] concrete harms to Plaintiffs and their patients," *id.* at 29, by "discouraging frank, open, and honest communication . . . adversely impact[ing] the quality of care as a result" and "damag[ing] . . . the doctor-patient relationship." *Id.* at 28. These harms are irreparable regardless of whether there is a constitutional right to abortion or a First Amendment violation because "they cannot be remedied by money damages." *Pac. Radiation Oncology, LLC v. Queen's Med. Ctr.*, 555 F. App'x 730, 732 (9th Cir. 2014); *see also* IP PI Order at 15; *Bellotti v. Baird*, 443 U.S. 622, 643 (1979); *Harris v. Bd. of Supervisors*, 366 F.3d 754, 766 (9th Cir. 2004).

Finally, Defendant-Intervenors' arguments on the balance of the equities and public interest simply rehash the incorrect assertion that the harms here are merely economic. Not only will a preliminary injunction "prevent the violation of [Plaintiffs'] constitutional rights," which is "always in the public interest," *Melendres*, 695 F.3d at 1002, but the Court already determined that any public interest in enforcing this likely unconstitutional law is "outweigh[ed] by the concrete harms" the Scheme inflicts. PI Order 1 at 28.

\* \* \* \* \*

For the above reasons, Plaintiffs request that their Renewed Motion for Preliminary Injunction be granted.

Respectfully submitted this 19th day of January, 2024.

By: */s/ Jessica Leah Sklarsky*

Jessica Leah Sklarsky, *pro hac vice*
Gail Deady, *pro hac vice*
Catherine Coquillette, *pro hac vice*
Center For Reproductive Rights
199 Water Street, 22nd Floor
New York, NY 10038
Telephone: (917) 637-3600
jsklarsky@reprorights.org
gdeady@reprorights.org
ccoquillette@reprorights.org
*Counsel for Paul A. Isaacson, M.D., National Council of Jewish Women (Arizona Section), Inc., and Arizona National Organization for Women*

Jen Samantha D. Rasay, *pro hac vice*
Center For Reproductive Rights
1634 Eye Street, NW, Suite 600
Washington, DC  20006
Telephone: (202) 628-0286
jrasay@reprorights.org
*Counsel for Paul A. Isaacson, M.D., National Council of Jewish Women (Arizona Section), Inc., and Arizona National Organization for Women*

Jared G. Keenan (027068)
American Civil Liberties Union Foundation of Arizona
3707 North 7th Street, Suite 235
Phoenix, AZ 85014
Telephone (602) 650-1854
jkeenan@acluaz.org
*Counsel for Plaintiffs*

COUNSEL CONTINUED ON NEXT PAGE

Alexa Kolbi-Molinas, *pro hac vice*
Rebecca Chan, *pro hac vice*
Ryan Mendías, *pro hac vice*
Lindsey Kaley, *pro hac vice*
American Civil Liberties Union
125 Broad Street, 18th Floor
New York, NY 10004
Telephone: (212) 549-2633
akolbi-molinas@aclu.org
rebeccac@aclu.org
rmendias@aclu.org
lkaley@aclu.org
*Counsel for Eric M. Reuss, M.D., M.P.H., and Arizona Medical Association*

Beth Wilkinson, *pro hac vice*
Anastasia Pastan, *pro hac vice*
Wilkinson Stekloff LLP
2001 M Street, NW
10th Floor
Washington, DC 20036
Telephone: (202) 847-4000
bwilkinson@wilkinsonstekloff.com
apastan@wilkinsonstekloff.com
*Counsel for Paul A. Isaacson, M.D., National Council of Jewish Women (Arizona Section), Inc., and Arizona National Organization for Women*

Ralia Polechronis, *pro hac vice*
Wilkinson Stekloff LLP
130 West 42nd Street
24th Floor
New York, NY 10036
Telephone: (212) 294-9410
rpolechronis@wilkinsonstekloff.com
*Counsel for Paul A. Isaacson, M.D., National Council of Jewish Women (Arizona Section), Inc., and Arizona National Organization for Women*

**CERTIFICATE OF SERVICE**

    I hereby certify that on January 19, 2024, I electronically transmitted the attached document to the Clerk's Office using the CM/ECF System for filing. All counsel of record are registrants and are therefore served via this filing and transmittal.

                          */s/ Jessica Leah Sklarsky*
                            Jessica Leah Sklarsky