**KRISTIN K. MAYES**
**ATTORNEY GENERAL**
(Firm State Bar No. 14000)

Joshua D. Bendor (No. 031908)
Alexander W. Samuels (No. 028926)
Hayleigh S. Crawford (No. 032326)
Luci D. Davis (No. 035347)
2005 N. Central Ave.
Phoenix, AZ 85004-1592
Telephone: (602) 542-3333
Joshua.Bendor@azag.gov
Alexander.Samuels@azag.gov
Hayleigh.Crawford@azag.gov
Luci.Davis@azag.gov
ACL@azag.gov

*Attorneys for Defendant Arizona Attorney General Kristin K. Mayes*

# UNITED STATES DISTRICT COURT

## DISTRICT OF ARIZONA

| | |
|---|---|
| Paul A. Isaacson, M.D., on behalf of himself and his patients, et al., <br><br> Plaintiffs, <br><br> v. <br><br> Kristin K. Mayes, Attorney General of Arizona, in her official capacity, et al., <br><br> Defendants. | Case No. 2:21-cv-01417-DLR <br><br> **ATTORNEY GENERAL'S SUPPLEMENTAL BRIEF REGARDING ARIZONA SUPREME COURT'S APRIL 9, 2024, DECISION** |

On April 9, 2024, the Court ordered the parties to address how the Arizona Supreme Court's decision in *Planned Parenthood Arizona Inc., et al. v. Hazelrigg, et al.*, No. CV-23-005-PR, 2024 WL 1517392 (Ariz. Apr. 9, 2024) ("*Hazelrigg*"), affects this litigation, including the pending motion for preliminary injunctive relief. Doc. 183.

In short, the *Hazelrigg* decision does not moot the claims here because that decision rested on a state law statutory construction analysis unrelated to the federal constitutional claims asserted here. If anything, the decision strengthens Plaintiffs' vagueness challenges because it raises additional questions about Title 36's application in light of the territorial-era ban in A.R.S. § 13-3603. The Court should therefore proceed with this litigation and decide the pending motion for injunctive relief.

## I. Plaintiffs assert vagueness challenges under the federal constitution.

Plaintiffs here challenge two Arizona laws as unconstitutionally vague.[1]

First, Plaintiffs challenge the "Reason Scheme" provisions of S.B. 1457 as unconstitutionally vague in violation of the Fourteenth Amendment. Doc. 1 at 30, ¶¶ 122-26. Those provisions, codified as A.R.S. §§ 13-3603.02, 13-3603.01(A)(2), 36-2157, 36-2158(A)(2)(d), and 36-2161(A)(25), prohibit a physician from "knowingly" providing abortion care when it is sought "solely because of" a fetal diagnosis of genetic abnormality, A.R.S. § 13-3603.02(A)(2), while simultaneously prohibiting abortion sought "because of" the covered fetal conditions, *see, e.g.*, A.R.S. §§ 13-3603.02(B)(2); *id.* § 36-2157(1)-(2). Plaintiffs argue that the Reason Scheme "does not give adequate notice about what fetal conditions bring abortion care within the scope of its prohibition, or what constitutes a provider's knowledge that a patient is seeking an abortion due to the prohibited reason within the meaning of the statute," nor does it "give adequate notice of what it means to 'knowingly' provide an abortion 'because of' or 'solely because of' a prohibited reason." Doc. 1 at 30, ¶¶ 123-24. Plaintiffs have asked this Court to

---

[1] The parties agreed to voluntarily dismiss the other claims in Plaintiffs' complaint on December 22, 2023. Doc. 178; *see also* Doc. 177-1 at 4 (parties' stipulation that Plaintiffs continue to challenge sections 1-2, 10-11, and 13 of S.B. 1457).

1

preliminarily enjoin the Reason Scheme; that request is pending.  *See* Doc. 125 (Renewed Motion for Preliminary Injunction).

Second, Plaintiffs challenge the "Personhood Provision" in S.B. 1457 as unconstitutionally vague in violation of the Fourteenth Amendment.  Doc. 1 at 31-32, ¶¶ 130-34.  That provision, codified as A.R.S. § 1-219, provides that "[t]he laws of this State shall be interpreted and construed to acknowledge, on behalf of an unborn child at every stage of development, all rights, privileges and immunities available to other persons, citizens and residents of the state, subject only to the Constitution of the United States and decisional interpretations thereof by the United States Supreme Court."  Plaintiffs allege that "[i]t is unclear how the Personhood Provision . . . effectively amends other provisions of the Arizona Revised Statutes that include the term 'person,' 'child,' or similar words, or otherwise effectuates 'rights, privileges and Immunities' for 'unborn children,'" thus making it "impossible for pregnant patients and medical providers to know what actions are forbidden or required, and thus do not provide adequate notice of what actions are prohibited or required."  Doc. 1 at 31, ¶¶ 131-33.  This Court preliminarily enjoined the Interpretation Policy on July 11, 2022, as unconstitutionally vague in violation of the Fourteenth Amendment.  *See* Doc. 121 at 16-17.

**II.    *Hazelrigg* addresses a state law statutory construction question.**

The question presented to the Arizona Supreme Court in *Hazelrigg* was whether "[t]he Arizona Legislature repeal[ed] or otherwise limit[ed] [A.R.S. § 13-3603] by later enacting *Roe*-era laws like [A.R.S. § 36-2322] that forbid certain physician-performed abortions."  Pet. for Review at 2 (Mar. 1, 2023).  The Court issued an opinion on April 9, 2024, holding that the later-enacted 15-week law in A.R.S. § 36-2322 did not repeal or limit the near-total ban on abortion in A.R.S. § 13-3603 and thus "§ 13-3603 is now enforceable."  *Hazelrigg*, No. CV-23-005-PR, slip op. at 5 ¶ 2.[2]

In doing so, however, the Court was careful to qualify the narrow scope of its

---

[2] However, as explained *infra* at pages 4-5, enforcement of § 13-3603 is stayed until at least June.

decision. First, the Court explicitly noted that it was not addressing the constitutionality of § 13-3603. *Hazelrigg*, No. CV-23-005-PR, slip op. at 4 ¶ 1 ("§ 13-3603's constitutionality . . . is not before us"). Second, the Court explained that it was *not* opining on the continued validity of any other provisions in Title 36 beyond A.R.S. § 36-2322. *Hazelrigg*, No. CV-23-005-PR, slip op. at 20 ¶¶ 45-46 ("We refrain . . . from crafting an advisory opinion as to the operability of any Title 36 provision not squarely before us.").

**III.  *Hazelrigg* does not moot plaintiffs' claims.**

Although both this case and *Hazelrigg* involve Arizona laws relating to abortion, each case challenges a different set of laws, on different legal bases.

*Hazelrigg* is a statutory construction case applying Arizona law. The Court was careful to circumscribe its opinion to the particular statutory provisions before it, namely, the territorial-era ban in A.R.S. § 13-3603 and the 15-week law in A.R.S. § 36-2322. In contrast, Plaintiffs in this case ask the Court to grant injunctive and declaratory relief from several *other* Arizona statutes, based on alleged violations of the Fourteenth Amendment.

*Hazelrigg* did not repeal or moot any of the statutes at issue in this case. While the Arizona Supreme Court noted in dicta that "[a]ny portion of Title 36 solely applicable to elective abortion under the defunct federal constitutional right arguably may no longer be operative simply for want of purpose," *Hazelrigg*, No. CV-23-005-PR, slip op. at 20 ¶ 45, it also observed that "[v]arious other Title 36 provisions . . . regulating abortion-related conduct and entailing criminal and regulatory sanctions remain relevant when § 13-3603's elective abortion ban is enforceable," *id.* at 21 ¶ 47.

Such is the case with the Reason Scheme. The fact that § 13-3603 prohibits abortions except where necessary to save the life of the mother does not necessarily render the prohibitions on abortion for reason of genetic abnormality and associated reporting requirements inoperative "for want of purpose" and moot Plaintiffs' challenge to them. Indeed, *Hazelrigg* specifically identified the "reporting requirements" in A.R.S. §§ 36-2161 to -2164 as potentially applicable "to abortions necessary to save a woman's life." *Hazelrigg*, No. CV-23-005-PR, slip op. at 21 ¶ 47. And Plaintiffs specifically challenge

the reporting requirements in § 36-2161 as part of the Reason Scheme. Doc. 1 at 32 ¶ 1 (Prayer for Relief); *see also* Doc. 177-1 at 4 (maintaining challenge to section 13 in S.B. 1457). This case continues to present a concrete and pressing controversy for providers given that a violation of those challenged requirements continues to threaten criminal, civil, and licensing penalties. *See, e.g.*, A.R.S. § 36-2163(H)-(J).

Furthermore, *Hazelrigg* did not opine on whether the Reason Scheme provisions in Title 36 comport with the Fourteenth Amendment. To the contrary, the Court was careful to avoid constitutional rulings at all, given that the only question before it was a statutory interpretation one. And the only commentary the Court offered regarding due process was specifically tailored to the interplay between § 13-3603 and § 36-2322—two statutes not at issue in this case. *See, e.g.*, *Hazelrigg*, No. CV-23-005-PR, slip op. at 21-22 ¶¶ 48-53.

Importantly, plaintiffs' pending motion for injunctive relief is based on its Fourteenth Amendment vagueness challenge to the Reason Scheme. *See* Doc. 125 at 7. Because *Hazelrigg* did not repeal or moot these statutes, nor otherwise opine on their constitutionality, nothing has changed in the posture of this case.

Nor does *Hazelrigg* impact Plaintiffs' challenge to the Interpretation Policy in A.R.S. § 1-219(A). In dicta, the Arizona Supreme Court cited the Interpretation Policy as evidence of "the public policy of the state" that "belie[d] the notion that the legislature intended to create independent statutory authority for elective abortion." No. CV-23-005-PR, slip. op. at 16-17 ¶ 32. Whether § 1-219 represents public policy for state statutory construction purposes has no bearing on its constitutionality under the Fourteenth Amendment. That is a question for this Court. *See id.* ("This statute further illustrates that access to abortion in Arizona is, and remains, confined to a federal constitutional right beyond the reach of Arizona's legislature.").

Finally, as a practical matter, dismissing Plaintiffs' claims as moot would be premature at the very least. The Arizona Supreme Court has not yet issued the final mandate in *Hazelrigg*, and the Attorney General anticipates filing a motion for

4

reconsideration today. In addition, once the mandate does issue, enforcement of § 13-3603 is stayed for 45 days thereafter. Order Granting Stipulation, *Isaacson v. State*, No. CV2022-013091 (Maricopa Cnty. Super. Ct. Oct. 25, 2022). Last but not least, *Hazelrigg* itself remands the matter for further proceedings and the legislature is actively considering repealing § 13-3603. Thus, even assuming this case would be moot if § 13-3603 took effect, that will not happen until at least June, and may never happen at all.

### IV.  *Hazelrigg* actually heightens the constitutional vagueness concerns.

If anything, *Hazelrigg* underscores the propriety of proceeding with this litigation. The Arizona Supreme Court expressly advised that "[t]he enforceability of Title 36 provisions" other than § 36-2322 "must be revisited by the legislature or adjudicated by the courts as controversies arise." *Hazelrigg*, No. CV-23-005-PR, slip op. at 20 ¶ 45. This is one such controversy. And while the ruling in *Hazelrigg* clarifies the answer to one narrow question regarding Title 36 (whether §36-2322 must be harmonized with § 13-3603), it creates even more questions about the application of Title 36's other provisions, including the Reason Scheme provisions. *See, e.g.*, *id.* at 21 ¶ 47 (noting that the reporting requirements in the Reason Scheme "may apply" to abortions under § 13-3603). In other words, *Hazelrigg* only increases the vagueness concerns here.

For example, after *Hazelrigg*, it is unclear whether a doctor faced with an emergency requiring an abortion to save a patient's life, as permitted by § 13-3603, must not perform the procedure until he or she complies with the separate affidavit requirement in A.R.S. § 36-2157 ("A person *shall not* knowingly perform or induce an abortion before that person completes an affidavit . . . ."). If a patient is hemorrhaging on the table, must the doctor stop to fill out a form, or otherwise face separate civil and criminal penalties under the Reason Scheme? And if the doctor does so and the patient dies as a result of the delay, can he or she then be held civilly liable or lose medical licensure for failing to provide life-saving care? These are not abstract questions after *Hazelrigg*.

For these reasons, the Court should proceed with ruling on the pending motion for injunctive relief and otherwise permit the litigation to continue in due course.

5

RESPECTFULLY SUBMITTED this 23rd day of April, 2024.

**KRISTIN K. MAYES**
**ATTORNEY GENERAL**

By <u>/s/ Hayleigh S. Crawford</u>
    Joshua D. Bendor
    Alexander W. Samuels
    Hayleigh S. Crawford
    Luci D. Davis
    Office of the Arizona Attorney General
    2005 N. Central Ave.
    Phoenix, Arizona 85004

*Attorneys for Defendant Arizona Attorney General Kristin K. Mayes*